QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (SBN: 090378)
johnquinn@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

Stephen A. Swedlow (*Pro hac vice*)
stephenswedlow@quinnemanuel.com
500 W. Madison Street, Suite 2450
Chicago, Illinois  60661-2510
Telephone:	(312) 705-7400
Facsimile:	(312) 705-7401

Arthur M. Roberts (SBN: 275272)
arthurroberts@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA  94111-4788
Telephone: (415) 875-6600
Facsimile: (415) 875-6700

Attorneys for Defendant
Uber Technologies, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREN EHRET,<br><br>             Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, Inc.,<br><br>             Defendant. | Case No. 3:14-cv-00113-EMC<br><br>**NOTICE OF MOTION AND MOTION TO DISMISS COMPLAINT**<br><br>Hearing: April 17, 2014 at 1:30 PM |

**NOTICE OF MOTION TO DISMISS COMPLAINT**

Please take notice that, on April 17, 2014 at 1:30 PM or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, defendant Uber Technologies, Inc., will, and hereby does, move for dismissal of the complaint in this action pursuant to Rule 12 of the Federal Rules of Civil Procedure.

The motion is based on this notice of motion, the memorandum set forth below, the reply memorandum, the pleadings and papers on file in this action, and any other written or oral argument presented to the Court.

**STATEMENT OF ISSUES**

(Civil Local Rule 7-4)

1. Has Plaintiff failed to state a claim for violation of California's Business and Professions Code § 17200, where the price for the services she bought was fully disclosed and where she has not alleged any damages?

2. Does Business and Professions Code § 17200 apply to Plaintiff, who is a citizen of Illinois asserting a claim based on conduct that occurred in Chicago?

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION TO DISMISS COMPLAINT ................................................................... i

STATEMENT OF ISSUES ........................................................................................................... ii

TABLE OF CONTENTS ............................................................................................................. iii

TABLE OF AUTHORITIES ....................................................................................................... iv

INTRODUCTION ......................................................................................................................... 1

LEGAL STANDARD ................................................................................................................... 2

FACTUAL ALLEGATIONS ........................................................................................................ 3

ARGUMENT ................................................................................................................................. 4

I.   Plaintiff Fails to Allege Unfair, Fraudulent, or Unlawful Conduct Under the UCL ............. 4

    A.   Plaintiff Fails to State a Claim Under the "Unfair" Prong of the UCL Because, Among Other Reasons, the 20% Charge Was Properly Disclosed ............ 4

    B.   Plaintiff Fails to State a Claim Under the "Fraud" Prong of the UCL Because Plaintiff Has No Legitimate Interest in Knowing How Much of the Mandatory 20% Charge Goes to Taxi Drivers ............................................................ 7

    C.   Plaintiff Fails to State a Claim Under the "Unlawful" Prong of the UCL Because She Fails to Allege a Violation of Any Law ............................................... 8

    D.   Plaintiff Lacks Standing Under the UCL Because She Fails to Allege She Has Suffered Harm ........................................................................................................ 9

II.  The UCL Does Not Apply to Non-California Residents and Non-California Conduct ................................................................................................................................ 10

III. Plaintiff's Request for Punitive Damages, Nonrestitutionary Disgorgement, and Compensatory Damages Should Be Dismissed .................................................................. 12

CONCLUSION ........................................................................................................................... 13

# TABLE OF AUTHORITIES

**Page(s)**

### Cases

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .................................................................................................................2

*Bell Atlantic v. Twombly*,
  550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007) .......................................................2

*Birdsong v. Apple, Inc.*,
  590 F.3d 955 (9th Cir. 2009) ..................................................................................................10

*Boysen v. Walgreen Co.*,
  No. C 11–06262 SI, 2012 WL 2953069 (N.D. Cal. July 19, 2012) .........................................10

*Cannon v. Wells Fargo Bank N.A.*,
  917 F. Supp. 2d 1025 (N.D. Cal. 2013) ..................................................................................12

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*,
  20 Cal. 4th 163 (1999) ........................................................................................................8, 12

*Ferrington v. McAfee, Inc.*,
  10-CV-01455-LHK, 2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ...........................................8

*Gentges v. Trend Micro Inc., C 11-5574 SBA*,
  No. C 11-5574 SBA, 2012 WL 2792442 (N.D. Cal. July 9, 2012) ..........................................11

*Kasky v. Nike, Inc.*,
  27 Cal. 4th 939 (2002) ..............................................................................................................7

*Korea Supply Co. v. Lockheed Martin Corp.*,
  29 Cal. 4th 1134 (2003) ..........................................................................................................12

*Norwest Mortgage, Inc. v. Superior Court*,
  72 Cal. App. 4th 214 (1999) ...................................................................................................11

*Plotkin v. Sajahtera, Inc.*,
  106 Cal. App. 4th 953 (2003) ...................................................................................................5

*S. Bay Chevrolet v. General Motors Acceptance Corp.*,
  72 Cal. App. 4th 861 (1999) ..................................................................................................4, 5

*Searle v. Wyndham Int'l*,
  102 Cal. App. 4th 1327 (2002) ..........................................................................1, 2, 4, 5, 6, 7, 8, 9

*Spiegler v. Home Depot USA, Inc.*,
  349 F. App'x 174 (9th Cir. 2009) .............................................................................................5

*Spiegler v. Home Depot U.S.A., Inc.*,
  552 F. Supp. 2d 1036 (C.D. Cal. 2008) ...................................................................................5

*St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*,
    536 F.3d 1049 (9th Cir. 2008)..................................................................................................2

*Stocco v. Gemological Inst. of Am., Inc.*,
    No. 12-CV-1291 WQH DHB, 2013 WL 76220 (S.D. Cal. Jan. 3, 2013)..................................11

*Sullivan v. Oracle Corp.*,
    51 Cal. 4th 1191 (2011)..........................................................................................................11

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
    No. CV 13-7431-JFW VBKX, 2014 WL 211462 (C.D. Cal. Jan. 9, 2014)...........................9, 10

*In re Tobacco II Cases*,
    46 Cal. 4th 298 (2009).............................................................................................................7

*In re Toyota Motor Corp. Hybrid Brake Litig.*,
    915 F. Supp. 2d 1151 (C.D. Cal. 2013)...................................................................................10

*Wayne v. Staples, Inc.*,
    135 Cal. App. 4th 466 (2006)...............................................................................................2, 5

### **Statutes**

Cal. Bus. & Prof. Code § 17200...........................................................................................1, 4, 8

Cal. Bus. & Prof. Code § 17204....................................................................................................9

Cal. Bus. & Prof. Code § 17500....................................................................................................9

Cal. Civil Code § 1572.................................................................................................................8

Cal. Civil Code § 1709 ................................................................................................................8

Cal. Civil Code § 1710.................................................................................................................8

Federal Rules of Civil Procedure 12(b)(6)....................................................................................2

# INTRODUCTION

Defendant Uber Technologies, Inc. has developed a mobile phone application that enables users to request transportation services from third-party transportation providers, including taxicabs. Plaintiff seeks to represent a nationwide class of people who used Uber's application to request trips from third-party taxicab drivers and alleges a single count under California's Unfair Competition Law (UCL).[1] She claims that Uber deceived her when it represented that it would add a mandatory 20% gratuity to her fare, but then did not remit the full 20% charge to the taxicab driver. But under controlling precedent, her allegations are not actionable under the UCL.

The primary issue presented in this motion is whether a consumer, who has full knowledge of all the charges and fees she will pay for services, is also entitled to know what exactly will be done with the payment received. The California Court of Appeals has already answered this question and held that a consumer has "no legitimate interest" in what a company does with mandatory charges added to bills. *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, 1334 (2002).

In *Searle*, the plaintiff was a hotel guest who was charged a mandatory 20% service charge on her room-service bill, but was not told that the entire 20% charge went to the room-service server. *Id.* at 1330. She claimed that because the hotel did not advise her of this fact, she and other guests would be induced to pay an additional gratuity that they otherwise would not have paid had they known the server was already receiving the 20% mandatory charge. *Id.* But the court held that "[b]ecause the service charge is mandatory and because the hotel is free to do with the charge [] as it pleases, the service charge is simply not a gratuity which is subject to the discretion of the individual patron." *Id.* at 1335. Moreover, there was "no allegation the hotel deceives its guests about the costs of its room service meals" and hotel patrons were free to obtain meals elsewhere or add as large or as little gratuity as they wanted. *Id.* at 1330. For these reasons, the court held that "the hotel's billing practice is not actionable." *Id.*

The holding of *Searle* applies squarely to Plaintiff's claim. Both cases deal with additional mandatory charges that are added onto the price for the actual services provided. Both plaintiffs

---

[1] Cal. Bus. & Prof. Code § 17200.

were free to use other services or pay as much or as little additional gratuity as they would like. And neither plaintiff alleges any deception about the total cost of the services provided. Several other courts have held that when a plaintiff fails to allege any deception regarding the total price of goods or services, a plaintiff has no cause of action based on alleged deception regarding the components of that total price. *See, e.g., Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 484 (2006) (holding that ambiguity regarding whether total price included a merchant surcharge was not misleading under the UCL because there was a "clear disclosure of the actual price [defendant] would charge its customers"). On these alleged facts, under the controlling precedent set forth in *Searle* and several other cases, Plaintiff fails to state a claim under the UCL.

Plaintiff's UCL claim should also be dismissed because California's UCL does not apply to extraterritorial conduct outside of California. Plaintiff is an Illinois citizen who used the Uber app to arrange and pay for a taxicab ride in Chicago. Many courts have held that a non-California plaintiff cannot assert a UCL claim based on non-California conduct because California's UCL does not apply outside of California, even when the defendant is headquartered in the State.

For these reasons and the others discussed below, the Court should dismiss Plaintiff's Complaint.

**LEGAL STANDARD**

Uber moves to dismiss the Complaint under Federal Rules of Civil Procedure 12(b)(6) for failure to state a claim. In considering whether the complaint is sufficient to state a claim, the court must accept as true all of the factual allegations contained in the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). But the court need not accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008). Although detailed factual allegations are not required, factual allegations "must be enough to raise a right to relief above the speculative level." *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007).

# FACTUAL ALLEGATIONS

Plaintiff alleges that Uber provides a mobile phone application ("app") that allows users to "summon, arrange and pay for taxicab rides and other transportation services electronically via their mobile phones." Compl. ¶¶ 1, 8. According to Plaintiff, users pay for the transportation with their credit card-accounts, which they enter into the app. *Id.* ¶ 8.

Plaintiff claims that Uber, on its website, states: "We automatically charge your credit card the metered fare + 20% *gratuity*." *Id.* ¶ 9 (italics in original). Plaintiff also claims that the "text of the app represents to users that a 20% *gratuity* will be automatically added to the metered fare." *Id.* (italics in original). Uber, Plaintiff alleges, intends users to rely on those representations when requesting transportation through Uber's app. *Id.* ¶ 10. Plaintiff does not allege that Uber made any other specific representations to users regarding gratuities. *See generally* Compl. (including allegations only regarding what users would be charged).

Plaintiff believes Uber's representations are false and misleading because Uber "does not remit the full amount of the charge that it represents to consumers . . . is a '*gratuity*' to the taxi driver/owner and/or company actually providing the transportation service." *Id.* ¶ 11. Instead, Plaintiff alleges, Uber "keeps a substantial portion of this additional charge for itself." *Id.*

In reality, charges for transportation services requested through the Uber app are processed by a third-party payment processor. A user's payment of the charge for a trip—including the full amount of the gratuity paid to taxi drivers—is passed by Uber to the taxi drivers who use the app, less a fee charged by Uber to the taxi driver for use of its software and services. But because Plaintiff's factual allegations must be accepted as true on a motion to dismiss, this Motion addresses Plaintiff's incorrect characterization of the payment structure.

On September 9, 2012, Plaintiff claims she used Uber's app to arrange and pay for taxicab rides in Chicago, Illinois and paid 20% over the stated metered fare for each ride, in reliance on Uber's alleged representation that this additional 20% charge was a "gratuity." *Id.* ¶ 13. She further claims that "Uber retained for itself a substantial portion of the 20% so-called '*gratuity*.'" *Id.* ¶ 13 (italics in original). She alleges that but for Uber's alleged representations, she would not have agreed to pay the full amount that she paid. *Id.* ¶ 14.

Plaintiff does not allege that Uber misrepresented anything about the total amount that would be charged for transportation services. *See* Compl. ¶¶ 1–29.  Nor does Plaintiff allege that Uber represented it would pay the entire mandatory 20% charge directly to taxi drivers. *See id.*

Plaintiff alleges a single count under Business & Professions Code § 17200 ("UCL"). Compl. ¶ 23–29.  Plaintiff invokes all three types of UCL liability, alleging that Uber's alleged actions are unlawful, unfair, and fraudulent. *Id.*

## ARGUMENT

### I. Plaintiff Fails to Allege Unfair, Fraudulent, or Unlawful Conduct Under the UCL

Under Business and Professions Code section 17200, there are three types of liability: unlawful, unfair, or fraudulent. *See S. Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 878 (1999).  A business practice can be actionable under any of these three "prongs" of the UCL, each of which applies a different standard of liability, *see id.*, but Plaintiff fails to allege facts establishing liability under any prong.

#### A. Plaintiff Fails to State a Claim Under the "Unfair" Prong of the UCL Because, Among Other Reasons, the 20% Charge Was Properly Disclosed

To state a claim under the "unfair" prong of the UCL, a plaintiff must allege facts establishing that the defendant's actions are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, 1335 (2002) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).  Plaintiff's allegations fail to state a UCL "unfairness" claim because the California Court of Appeals has affirmed the dismissal of a very similar claim under the UCL, stating that a defendant "has no obligation to advise consumers about what it does with the revenue it receives from them." *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, 1335 (2002).

In *Searle*, the plaintiff asserted a UCL claim based on a *mandatory* 17% service charge that a hotel added to her room-service bill. *Id.* at 1330.  The hotel gave the entire 17% charge directly to the room-service servers, a fact that the hotel did not disclose to the plaintiff. *Id.*  The plaintiff alleged the hotel's failure to disclose that the entire charge went to the room-service servers

induced guests to pay additional gratuities that they "would not otherwise feel obligated to provide." *Id.* at 1330.

The court held that the plaintiff had failed to state a claim under the UCL. *Id.* It reasoned that the plaintiff, once she had agreed to pay for services at a stated price, had "no legitimate interest in what the hotel does with the service charge." *Id.* at 1334. The court's core holding is that a consumer, who as part of a transaction agrees to pay a mandatory charge, has no say over what a company does with that charge, and the company "has no obligation to advise consumers about what it does with the revenue it receives from them." *Id.* at 1335. This holding applies squarely to the allegations in this case, and as discussed below, all of the factors that the court in *Searle* used to supports its holding are equally present here.

First, the court in *Searle* focused on the lack of any allegation that the consumer was deceived about the *total cost* of the services it received from the defendant. *Id.* at 1330 (dismissing claim in part "[b]ecause there is no allegation the hotel deceives its guests about the costs of its room service meals"). Several other courts have also held that when a plaintiff does not allege deception regarding the *total cost* of goods or services, there is no UCL liability. *See, e.g., Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 484 (2006) (holding that ambiguity regarding whether total price included a merchant surcharge was not misleading under the UCL because there was a "clear disclosure of the actual price [defendant] would charge its customers").[2] Here, as in *Searle* and several other cases, Plaintiff fails to allege that she was deceived about the total cost she was charged; in fact, she admits that Uber discloses the 20% charge to users on both its website and in the app. Compl. ¶ 9. Moreover, she does not allege that Uber represented that the

---

[2] *See also Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008) *aff'd sub nom. Spiegler v. Home Depot USA, Inc.*, 349 F. App'x 174 (9th Cir. 2009) (citing *Searle*, 102 Cal. App. 4th at 1334–35) (dismissing UCL claim because "plaintiffs agreed to pay the contract price irrespective of the components included in that price"); *Plotkin v. Sajahtera, Inc.* 106 Cal. App. 4th 953, 965–966 (2003) (holding that unambiguous notice of valet parking charges on parking ticket defeated UCL claim notwithstanding failure of parking operators to notify customers of charges in advance); *S. Bay Chevrolet v. GM Acceptance Corp.*, 72 Cal. App. 4th 861, 878, 889–89 (1999) (holding method of calculating interest was not deceptive under UCL because plaintiff "knew, understood, agreed, and expected" it).

1   entire 20% charge would go to the taxi driver.  *See* Compl. ¶¶ 1–29.  "Because there is no
2   allegation [Uber] deceives its [riders] about the costs of [transportation services] . . . , [Uber's]
3   billing practice is not actionable."  *Searle*, 102 Cal. App. 4th at 1330.

4       Second, the *Searle* court stated that "[b]ecause the service charge is *mandatory* and
5   because the hotel is *free to do with the charge* [] *as it pleases*, the service charge is simply not a
6   gratuity which is subject to the discretion of the individual patron."  *Searle*, 102 Cal. App. 4th at
7   1335 (emphasis added).  The hotel is "free to retain for itself . . . the service charge, or to remit all
8   or some of the revenue to its employees," and "[w]hat a hotel does with the revenue it earns . . . is
9   of no direct concern to hotel guests."  *Id.* at 1334.  Here, too, the 20% charge is allegedly
10  mandatory, Compl. ¶ 9 (stating Uber "automatically" charges 20%), and according to *Searle*, Uber
11  should be allowed "to do with the charge [] as it pleases," 102 Cal. App. 4th at 1335.  Thus, for
12  mandatory charges, Uber is free to pass "all or some" or none of the mandatory 20% charge to taxi
13  drivers, and the specific amount passed on to the drivers "is of no direct concern to" Plaintiff.  *Id.*
14  at 1334.

15      Third, the court stated that the plaintiff's desire to know the financial arrangement between
16  the hotel and the server was mere "curiosity about something, i.e., the server's financial condition,
17  in which the tipper has no legitimate interest."  *Searle*, 102 Cal. App. 4th at 1335.  And mere
18  curiosity is insufficient to create a duty to disclose "what the server receives from his employer."
19  *Id.*  Although taxicab drivers are not employees—they are licensees of the Uber app, who receive
20  the fare and gratuities and pay Uber a fee—the same reasoning applies here.  If the plaintiff in
21  *Searle* "has no legitimate interest" in knowing what the servers received in tips, then the Plaintiff
22  here has no legitimate interest in what the drivers allegedly receive from Uber or what fee the
23  drivers pay to Uber for use of its software.  *Id.*  There is no reason why Plaintiff would have a
24  comparatively greater need to know the financial arrangement between a taxi driver and Uber, and
25  Plaintiff's desire to know how much of the 20% charge is passed to the taxi driver is nothing more
26  than "curiosity" that is not actionable under the UCL.  *Id.*

27      Fourth, because the hotel patrons in *Searle* were "free to both obtain meals outside their
28  rooms and to provide as small or large a gratuity as they wish, the hotel's billing practice is not

actionable." *Id.* at 1330.  The same is true here.  Because Plaintiff, who knew exactly what rates and fees she would be charged, was free to request transportation services by any other means and was also free to provide, directly to the taxi driver, "as small or large a gratuity as [she] wish[ed], [Uber's] billing practice is not actionable." *Id.*

All of the primary reasons justifying the holding in *Searle* are equally present here, and Plaintiff's "unfairness" claim under the UCL should be dismissed.

### B.   Plaintiff Fails to State a Claim Under the "Fraud" Prong of the UCL Because Plaintiff Has No Legitimate Interest in Knowing How Much of the Mandatory 20% Charge Goes to Taxi Drivers

To plead a claim for fraud under the UCL, a plaintiff must allege that "members of the public are likely to be deceived."  *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)) (quotation marks omitted).  For largely the same reasons why Plaintiff's UCL "unfairness" claim should be dismissed, the Court should likewise dismiss Plaintiff's UCL fraud claim.

The court in *Searle* dismissed the plaintiff's fraud claim "[f]or largely the same reasons [it] reject[ed]" the "unfairness" claim.  *Searle*, 102 Cal. App. 4th at 1335.  The court first recognized that, to state a claim under the fraud prong of the UCL, a plaintiff need only allege that the public is "likely to be deceived."  *Id.*  And the court acknowledged that the plaintiff had alleged at least *some deception* insofar as some hotel guests might pay an additional gratuity on top of the mandatory 17% charge because they were not told that the 17% charge went directly to the room-service servers.  *See id.* (acknowledging that plaintiff alleged deceit in "fail[ing] to clearly notify hotel guests").

But even though the plaintiff had alleged some deception, the court still dismissed the UCL fraud claim because, "in arguing that it is deceitful to fail to clearly notify hotel guests that the service charge is paid to the server, [the plaintiff] again assumes the patron has some right to know what the hotel is paying the room service server."  *Searle*, 102 Cal. App. 4th at 1335.  But the patron has no such right to know "how much a server is being paid by his or her employer." *Id.* "In sum, in failing to advise its guests as to how it compensates its employees, the hotel is not guilty of any deceit even under the broad provisions of the UCL." *Id.*

Like the plaintiff in *Searle*, Plaintiff here alleges Uber fails to disclose that it retains a portion of the mandatory 20% charge for itself. Compl. ¶ 11. But under the precedent established in *Searle*, Plaintiff has no "right to know" the arrangement between Uber and the taxi drivers, what portion of the mandatory charge, if any, is kept by Uber, or what fee the driver pays to Uber. 102 Cal. App. 4th at 1335. "[Uber] has no obligation to advise consumers about what it does with the revenue it receives from them." *Id.* Moreover, as explained above, Plaintiff fails to plead that members of the public will be deceived because Plaintiff admits that Uber discloses the 20% charge to users; they know exactly what they will be charged, which is the only material aspect of the transaction, and what Uber or the driver "does with the revenue it earns . . . is of no direct concern to" Plaintiff. *Searle*, 102 Cal. App. 4th at 1334.

### C. Plaintiff Fails to State a Claim Under the "Unlawful" Prong of the UCL Because She Fails to Allege a Violation of Any Law

"The unlawful prong of the UCL prohibits 'anything that can properly be called a business practice and that at the same time is forbidden by law.'" *Ferrington v. McAfee, Inc.*, 10-CV-01455-LHK, 2010 WL 3910169, at *14 (N.D. Cal. Oct. 5, 2010) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)). This prong of the UCL permits injured consumers to "borrow" violations of other laws and treat them as independently actionable under the UCL. *Ferrington*, 2010 WL 3910169, at *14.

Plaintiff identifies four laws that Uber allegedly violates, Compl. ¶ 26, but she fails to plead a violation of any of them. First, Plaintiff alleges a violation of California Civil Code §§ 1572, 1709, and 1710, which define "actual fraud" and "deceit." Collectively, these statutes require proving that the defendant made a misrepresentation with the intent to deceive. *See* Cal. Civil Code §§ 1572, 1709, 1710. But as explained above, Plaintiff fails to allege that Uber misrepresented the total cost of its services and otherwise fails to allege any material misrepresentations. Moreover, Plaintiff fails to allege any facts establishing that Uber *intended* to deceive users of the app, nor are there any alleged facts from which to reasonably infer intent. Plaintiff therefore fails to allege a violation of §§ 1572, 1709, or 1710.

Second, Plaintiff claims Uber violated California Business & Professions Code § 17500. Compl. ¶ 26. Section 17500 prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. Plaintiff's "claims under the false advertising provision of section 17500 fail for the same reason" as her UCL claim. The only "advertisement" that Plaintiff points to is a statement on Uber's website and the app that an additional 20% gratuity will be added to taxi rates, and according to Plaintiff's own allegations, a 20% additional charge was indeed added. Plaintiff fails to allege Uber made any misrepresentations, and Uber and the taxi drivers have "no obligation to advise consumers about what [they] do[] with the revenue [they] receive[] from them." *Searle*, 102 Cal. App. 4th at 1335 (dismissing 17500 claim for same reasons as UCL claim).

Plaintiff has failed to identify any laws that Uber has violated, and therefore her claim under the "unlawful" prong of the UCL must be dismissed.

**D.      Plaintiff Lacks Standing Under the UCL Because She Fails to Allege She Has Suffered Harm**

To establish standing, Plaintiff must allege that she "has lost money or property as a result of [the] unfair competition." Bus. & Prof. Code § 17204. But Plaintiff received exactly what she paid for—a taxi ride at a stated price—and she therefore lacks standing to assert a UCL claim.

"There can be no serious dispute that a purchaser of a product who receives the benefit of his bargain has not suffered Article III injury-in-fact traceable to the defendant's conduct."[3] *Tae Hee Lee*, 2014 WL 211462, at *5 (holding that plaintiffs lacked Article III and UCL standing because they had not experienced problems with their vehicles). Several courts, in many different contexts, have held that a plaintiff cannot state a UCL claim if the plaintiff received what he or she bargained for. *See, e.g., id.*; *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961–62 (9th Cir. 2009)

---

[3]   Many courts, including *Tae Hee Lee*, evaluate Article III standing and UCL standing under the same standard. *See, e.g., Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, CV 13-7431-JFW VBKX, 2014 WL 211462, at *5 (C.D. Cal. Jan. 9, 2014).

...

(affirming dismissal of UCL claim for lack of standing because plaintiffs received what they paid for in iPod); *In re Toyota Motor Corp. Hybrid Brake Litig.*, 915 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013) (granting summary judgment on benefit of the bargain claim where plaintiff received "safe and operable" anti-lock braking system, which was "precisely what he bargained for"); *Boysen v. Walgreen Co.*, No. C 11–06262 SI, 2012 WL 2953069, *7 (N.D. Cal. July 19, 2012) (dismissing the plaintiff's claim regarding the defendant's failure to disclose the presence of arsenic and lead in a beverage described as "healthy" and "100% juice" due to a lack of economic injury suffered by the plaintiff because he could only allege that "the levels of lead and arsenic in defendant's product were unsatisfactory to him," and not that the juice physically harmed him or "function[ed] less than advertised").

As explained above, Plaintiff does not allege that Uber concealed from her any aspect of her fare, including the mandatory 20% charge. According to Plaintiff herself, Uber disclosed the taxi rates and the 20% charge on its website and the Uber app. Compl. ¶ 9. In other words, Plaintiff is in exactly the same position, regardless of whether the full 20% charge went to the taxi driver. Thus, like the plaintiffs in *Tae Hee Lee* and *Birdsong*, Plaintiff here does not allege any defect in what was provided to her or that she did not receive exactly the financial bargain that she was promised—a taxi ride calculated at a disclosed rate.[4]

Because Plaintiff has failed to allege that she has suffered any harm as a result of Uber's alleged representations, she lacks standing under the UCL and her claim should be dismissed.

**II.     The UCL Does Not Apply to Non-California Residents and Non-California Conduct**

This Court should dismiss Plaintiff's UCL claim for the additional reason that Plaintiff is an Illinois resident alleging Illinois conduct, which is outside the reach of California's UCL.

There is a presumption against applying California's UCL to conduct that occurs outside the State's borders. The California Supreme Court has said, in no uncertain terms, that "the

---

[4] Plaintiff also would be in the same position if she decided not to use Uber to request taxicabs and instead hailed taxicabs on the street and paid a 20% gratuity. All Plaintiff alleges is that Uber's alleged representation caused her to pay "a substantial portion of [that] additional charge" to Uber instead of the taxi drivers. That is not harm to the Plaintiff.

1  presumption against extraterritoriality applies to the UCL in full force." *Sullivan v. Oracle Corp.*,
2  51 Cal. 4th 1191, 1207 (2011).  Courts in this District, along with state and federal courts
3  throughout California, have held repeatedly that the "general presumption against the
4  extraterritorial application of state laws" applies to the UCL, and, therefore, that the UCL does not
5  apply to "claims of non-California residents arising from conduct occurring entirely outside of
6  California." *See, e.g., Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 WL 2792442
7  (N.D. Cal. July 9, 2012) (citing *Sullivan*, 51 Cal. 4th at 1207); *Norwest Mortgage, Inc. v. Superior*
8  *Court*, 72 Cal. App. 4th 214, 222, (1999)).

9           In *Gentges*, the plaintiffs brought a putative class action against the defendant software
10 company that was "a California corporation which maintain[ed] a business office in Cupertino,
11 California" and "[sold] . . . software to business and individuals on its website . . . ."[5]  2012 WL
12 2792442 at *1.  The plaintiffs' claims were based on allegations that the defendant failed "to
13 adequately disclose to consumers that software subscriptions purchased through its website will be
14 automatically billed for software subscription renewals."  *Id.*  Noting that none of the "[p]laintiffs
15 reside[d] in California and none of the conduct that form[ed] the basis of [the] action arose
16 [there]," the court granted the defendant's motion to dismiss.  *Id.* at *6.[6]

17          The result should be no different here.  Plaintiff alleges she is an Illinois citizen who "[o]n
18 September 9, 2012, arranged for and paid for taxi cab rides in Chicago, Illinois."  Compl. ¶¶ 6, 13.
19 And the representation that allegedly harmed Plaintiff was regarding those same alleged rides.  *Id.*
20 ¶ 13 (alleging Plaintiff "was charged and paid 20% over and above the stated 'metered fare' for
21 each such ride in reliance upon Uber's representation that this additional 20% charge was a

---

23   [5]  The sales on the defendant's website were through a third party reseller, located in Minnesota, pursuant to an agreement between the defendant and that reseller.  *Gentes*, 2012 WL
24 2792442 at *2.
     [6]  *See also Stocco v. Gemological Inst. of Am., Inc.*, No. 12-CV-1291 WQH DHB, 2013 WL
25 76220, at *12 (S.D. Cal. Jan. 3, 2013) (plaintiff residents of Italy cannot bring a claim under the
   UCL against a defendant with a principal place of business in California "for conduct that
26 allegedly occurred entirely outside of California); *Norwest*, 72 Cal. App. 4th at 222 (non-
   California resident plaintiffs cannot bring a claim under the UCL against a defendant incorporated
27 in California for defendant's alleged conduct that occurred in states other than California).
28

1  '*gratuity*' . . . .") (emphasis in original).  Plaintiff does not allege that she arranged for and paid for
2  any taxi cab rides anywhere other than in Chicago, Illinois, nor does she allege that the
3  representations Uber allegedly made were regarding any services offered in California.
4        All Plaintiff alleges regarding California is that Uber has "its headquarters in San
5  Francisco, California."  Compl. ¶ 7.  But that allegation alone, which is the only connection
6  Plaintiff alleges this case has to California, is insufficient to extend the reach of the UCL to a
7  California nonresident.  *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1056 (N.D. Cal.
8  2013) (in putative class action, that defendant's undisputed principal place of business was located
9  in California was insufficient to justify application of the UCL to California nonresident's claims).
10       Because of the presumption against extraterritorial application of the UCL, and because of
11 Plaintiff's failure to make any allegations suggesting that her situation warrants rebutting that
12 presumption, this Court should dismiss the Complaint in its entirety.

13 **III.    Plaintiff's Request for Punitive Damages, Nonrestitutionary Disgorgement, and
           Compensatory Damages Should Be Dismissed**
14

15       Much of the relief that Plaintiff seeks is unavailable under the UCL as a matter of law and
16 should be dismissed.
17       "While the scope of conduct covered by the UCL is broad, its remedies are limited."
18 *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  "[U]nder the UCL,
19 prevailing plaintiffs are generally limited to injunctive relief and restitution."  *Id.* (quoting *Cel-*
20 *Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 179 (1999)).
21 Nonrestitutionary disgorgement, which is disgorgement of profits that exceeds the plaintiff's
22 losses, is not available under the UCL.  *Korea Supply*, 29 Cal. 4th at 1145 (holding
23 nonrestitutionary disgorgement is unavailable under UCL).  Similarly, "attorney fees and
24 damages, including punitive damages, are not available under the UCL."  *Id.* at 1148.
25 Accordingly, Plaintiff's request for nonrestitutionary damages, nonrestitutionary disgorgement,
26 punitive damages, and attorney's fees and costs should be dismissed.  *See* Compl. at Request for
27 Relief.
28

1    In addition, although restitution is available under the UCL, Plaintiff has failed to plead
2 any actual damages.  As discussed above, Plaintiff is in the same position whether the entire 20%
3 charge went to the driver or not.  Plaintiff has therefore failed to plead she is entitled to
4 restitutionary damages as well.

## CONCLUSION

6    For the foregoing reasons, the Court should grant Uber's Motion to Dismiss and dismiss
7 the Complaint in its entirety, with prejudice.

8 DATED: March 11, 2014    QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Stephen A. Swedlow[7]
    Stephen A. Swedlow

    Attorneys for Defendant
    Uber Technologies, Inc.

---

[7]   I, Arthur M. Roberts, attest that I have obtained permission from Stephen A. Swedlow to file this document on his behalf.