1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
   John B. Quinn (SBN: 090378)
2  johnquinn@quinnemanuel.com
   865 South Figueroa Street, 10th Floor
3  Los Angeles, CA  90017-2543
   Telephone:     (213) 443-3000
4  Facsimile:     (213) 443-3100

5
   Stephen A. Swedlow (*Pro hac vice*)
6  stephenswedlow@quinnemanuel.com
   500 W. Madison Street, Suite 2450
7  Chicago, IL  60661-2510
   Telephone:     (312) 705-7400
8  Facsimile:     (312) 705-7401

9  Arthur M. Roberts (SBN: 275272)
   arthurroberts@quinnemanuel.com
10 50 California Street, 22nd Floor
   San Francisco, CA  94111-4788
11 Telephone:     (415) 875-6600
   Facsimile:     (415) 875-6700
12
   Attorneys for Defendant
13 Uber Technologies, Inc.

14

15                    UNITED STATES DISTRICT COURT

16                  NORTHERN DISTRICT OF CALIFORNIA

17

18

19 CAREN EHRET,                          Case No. 3:14-cv-00113-EMC

20         Plaintiff,                    **NOTICE OF MOTION AND MOTION TO
                                         DISMISS AMENDED COMPLAINT**
21     v.
                                         Judge:    Edward M. Chen
22 UBER TECHNOLOGIES, Inc.,              Hearing:  August 14, at 1:30 PM
                                         Location: Courtroom 5
23         Defendant.

24

25

26

27

28

## NOTICE OF MOTION TO DISMISS COMPLAINT

Please take notice that, on August 14, 2014 at 1:30 PM or as soon thereafter as the matter may be heard, in Courtroom 5 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California 94102, defendant Uber Technologies, Inc., will, and hereby does, move for dismissal of the Amended Complaint in this action pursuant to Rule 12 of the Federal Rules of Civil Procedure.

The motion is based on this notice of motion, the memorandum set forth below, the reply memorandum, the pleadings and papers on file in this action, and any other written or oral argument presented to the Court.

**STATEMENT OF ISSUES**

(Civil Local Rule 7-4)

1.      Has Plaintiff failed to state a claim for violation of California's Business and Professions Code § 17200 ("UCL"), where the price for the services she bought was fully disclosed and where she has not alleged any damages?

2.      Does the UCL apply to Plaintiff, who is a citizen of Illinois asserting a claim based on conduct that occurred in Chicago?

3.      Has Plaintiff failed to state a claim for violation of California's Consumers Legal Remedies Act based on the same allegations as those supporting her UCL claim?

4.      Has Plaintiff failed to state a claim for breach of contract based on statements outside the four corners of the parties' written agreement, where the written agreement explicitly states that it contains the entire agreement between the parties?

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION TO DISMISS COMPLAINT ........................................................... ii

STATEMENT OF ISSUES ............................................................................................... iii

TABLE OF CONTENTS ................................................................................................. iv

INTRODUCTION ............................................................................................................. 1

LEGAL STANDARD ....................................................................................................... 3

FACTUAL ALLEGATIONS ............................................................................................ 3

ARGUMENT ................................................................................................................... 5

I.      Plaintiff Has Failed to Plead Her Claims With Particularity Under Rule 9(b) .................. 5

II.     Plaintiff Fails to State a Claim Under the UCL ............................................................. 7

        A.      Plaintiff Fails to State a Claim Under the "Unfair" Prong of the UCL
                Because, Among Other Reasons, the 20% Charge Was Properly Disclosed ........... 8

        B.      Plaintiff Fails to State a Claim Under the "Fraud" Prong of the UCL
                Because Plaintiff Has No Legitimate Interest in Knowing How Much of the
                Mandatory 20% Charge Goes to Taxi Drivers ...................................................... 11

        C.      Plaintiff Fails to State a Claim Under the "Unlawful" Prong of the UCL
                Because She Fails to Allege a Violation of Any Law ............................................ 12

        D.      Plaintiff Lacks Standing Under the UCL Because She Fails to Allege She
                Has Suffered Harm .............................................................................................. 13

        E.      The UCL Does Not Apply to Non-California Residents and Non-California
                Conduct ................................................................................................................ 14

III.    Plaintiff Fails to State a Claim Under the CLRA ......................................................... 18

        A.      The CLRA Should Be Dismissed for All the Same Reasons as the UCL
                Claim .................................................................................................................... 18

        B.      Plaintiff Fails to Allege Facts Establishing Any of the Statutory Bases for
                Liability Under the CLRA .................................................................................... 19

        C.      Plaintiff's CLRA Claim Should Be Dismissed for Failure to Allege
                Damages ............................................................................................................... 21

IV.     Plaintiff Fails to State a Claim for Breach of Contract ................................................ 21

CONCLUSION ................................................................................................................ 22

1

# **TABLE OF AUTHORITIES**

2

**Page**

3

## **Cases**

4

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ............................................................................3

5

*Bell Atlantic v. Twombly,*
  550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007) ......................3, 4

6

7

*Birdsong v. Apple, Inc.,*
  590 F.3d 955 (9th Cir. 2009).................................................................13, 14

8

*Boysen v. Walgreen Co.,*
  2012 WL 2953069 (N.D. Cal. July 19, 2012) ........................................14

9

10

*Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.,*
  971 F.2d 272 (9th Cir. 1992)..................................................................22

11

*Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.,*
  637 F.3d 1047, 1055 (9th Cir. 2011)) ....................................................5

12

13

*Cannon v. Wells Fargo Bank N.A.,*
  917 F. Supp. 2d 1025 (N.D. Cal. 2013) .................................................15

14

*Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.,*
  20 Cal. 4th 163 (1999)...........................................................................12

15

16

*Freeman v. Time, Inc.,*
  68 F.3d 285 (9th Cir. 1995) ...................................................................20

17

*Morales v. Unilever U.S., Inc.,*
  2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) ..........................................7

18

19

*Everett v. State Farm General Insurance Company,*
  162 Cal. App. 4th 649 (2008)................................................................22

20

*Ferrington v. McAfee, Inc.,*
  2010 WL 3910169 (N.D. Cal. Oct. 5, 2010) ..........................................12

21

22

*Foreman v. George Foreman Associates, Ltd.,*
  517 F.2d 354 (9th Cir. 1975).................................................................17

23

*Gentges v. Trend Micro Inc., No. C 11-5574 SBA,*
  2012 WL 2792442 (N.D. Cal. July 9, 2012) ..........................................15

24

25

*Glen Holly Entm't, Inc. v. Tektronix, Inc.,*
  100 F. Supp. 2d 1086 (C.D. Cal. 1999)..................................................7

26

*Gravquick A/S v. Trimble Navigation Int'l,*
  323 F.3d 1219 (9th Cir. 2003)................................................................16

27

28

*Gray v. Toyota Motor Sales, U.S.A.*,
   2012 WL 313703 (C.D. Cal. Jan. 23, 2012)............................................................18

*Harmon v. Hilton Grp.*,
   2011 WL 5914004 (N.D. Cal. Nov. 28, 2011) ...................................................20, 21

*Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*,
   2014 WL 211462 (C.D. Cal. Jan. 9, 2014)......................................................13, 14

*Highway Equip. Co. v. Caterpillar Inc.*,
   908 F.2d 60 (6th Cir. 1990).....................................................................................17

*Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
   2010 WL 3619884 (N.D. Cal. Sept. 10, 2010)......................................................17

*Kasky v. Nike, Inc.*,
   27 Cal. 4th 939 (2002)............................................................................................11

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)..............................................................................5, 6

*Kushner v. AT&T Corp.*, D046484,
   2006 WL 1752316 (Cal. Ct. App. June 28, 2006) ................................................10

*Mass. Mut. Life Ins. Co. v. Superior Court*,
   97 Cal. App. 4th 1282 (2002) .................................................................................21

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,
   2013 WL 791457 (N.D. Cal. Mar. 4, 2013) ..........................................................19

*McMaster v. United States*,
   731 F.3d 881 (9th Cir. 2013).....................................................................................5

*Neubronner v. Milken*,
   6 F.3d 666 (9th Cir. 1993).........................................................................................7

*Norwest Mortgage, Inc. v. Superior Court*,
   72 Cal. App. 4th 214 (1999) ...................................................................................15

*O'Connor v. Uber Technologies, Inc.*,
   2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) .........................................................17

*Peralta v. Hilton Hotels Corp.*,
   2003 WL 996217 (Cal. Ct. App. Mar. 11, 2003) ..................................................19

*Plotkin v. Sajahtera, Inc.*,
   106 Cal. App. 4th 953 (2003) ...................................................................................9

*S. Bay Chevrolet v. General Motors Acceptance Corp.*,
   72 Cal. App. 4th 861 (1999)..............................................................................7, 8, 9

*Salameh v. Tarsadia Hotel*,
   726 F.3d 1124 (9th Cir. 2013) ..................................................................................5

*Sawyer v. Mkt. Am., Inc.,*
190 N.C. App. 791, 661 S.E.2d 750 (2008) ...............................................17

*Searle v. Wyndham Int'l,*
102 Cal. App. 4th 1327 (2002)...............................................2, 8-12

*Smith v. Capital One Fin. Corp.,*
2012 WL 259515 (N.D. Cal. Jan. 27, 2012) ...............................................22

*Spiegler v. Home Depot U.S.A., Inc.,*
552 F. Supp. 2d 1036 (C.D. Cal. 2008)...............................................9

*St. Clare v. Gilead Scis., Inc. (In re Gilead Scis. Sec. Litig.),*
536 F.3d 1049 (9th Cir. 2008)...............................................3

*Sullivan v. Oracle Corp.,*
51 Cal. 4th 1191 (2011)...............................................15, 18

*In re Tobacco II Cases,*
46 Cal. 4th 298 (2009)...............................................11

*In re Toyota Motor Corp.,*
785 F. Supp. 2d 883 (C.D. Cal. 2011)...............................................19

*In re Toyota Motor Corp. Hybrid Brake Litig.,*
915 F. Supp. 2d 1151 (C.D. Cal. 2013)...............................................13

*Vess v. Ciba-Geigy Corp. USA,*
317 F.3d 1097 (9th Cir. 2003)...............................................5

*Wayne v. Staples, Inc.,*
135 Cal. App. 4th 466 (2006)...............................................9

*Wilens v. TD Waterhouse Group, Inc.,*
120 Cal. App. 4th 746 (2003)...............................................21

*World Health & Educ. Found. v. Carolina Cas. Ins. Co.,*
612 F. Supp. 2d 1089 (N.D. Cal. 2009)...............................................22

*Wright v. Adventures Rolling Cross Country, Inc.,*
2012 U.S. Dist. LEXIS 104378 (N.D. Cal. May 3, 2012) ...............................................16, 17, 18

## **Statutes**

Cal. Bus. & Prof. Code § 17200...............................................1, 4, 7, 16

Cal. Bus. & Prof. Code § 17204...............................................13

Cal. Bus. & Prof. Code § 17500...............................................12, 13

Cal. Civ. Code § 1572...............................................12

Cal. Civ. Code § 1709...............................................12

Cal. Civ. Code § 1710 ................................................................................................12

Cal. Civ. Code § 1770(a)..................................................................................17, 19, 21

Federal Rule of Civil Procedure 9(b) ..................................................................1, 5, 6, 7

Federal Rule of Civil Procedure 12(b)(6) ......................................................................3

## INTRODUCTION

Defendant Uber Technologies, Inc. has developed a mobile-phone application that enables users to request transportation services from third-party transportation providers. Plaintiff seeks to represent a nationwide class of people who used Uber's application to request trips from taxicab drivers and alleges that Uber deceived consumers regarding the automatic gratuity that Uber charged. According to Plaintiff, Uber represented that it would add a mandatory 20% gratuity to her fare, but then did not remit the full 20% charge to the taxicab driver. Under controlling precedent, Plaintiff's allegations must be dismissed.

This is Plaintiff's second attempt at pleading a viable claim. Her original complaint contained only one cause of action for violation of California's Business & Professions Code § 17200 ("UCL"), and after Uber filed its motion to dismiss, she sought leave to amend, Dkt. No. 28, apparently recognizing that her original allegations were deficient. Her amended complaint, though it adds two new causes of action—a claim under California's Consumers Legal Remedies Act ("CLRA") and a claim for breach of contract—does nothing to address the flaws in her original pleading and still fails to state viable claims.

As a procedural matter, Plaintiff fails to meet the particularity requirement of Federal Rule of Civil Procedure 9(b), which applies to allegations of fraud. Although Plaintiff essentially alleges that Uber defrauds consumers, she fails to provide enough detail to meet Rule 9(b). She fails to allege what specifically Uber represented and where, what specific statements she relied on and when she saw them, and several other key facts. Requiring Plaintiff to plead more detail would require little additional effort from Plaintiff and help Uber and the Court determine which specific representations are truly at issue in this case.

Regarding Plaintiff's substantive allegations, the primary issue for the Court to decide is whether a consumer, who has full knowledge of all the charges and fees she will pay for services, is also entitled to know what exactly a company will do with the payment received. The California Court of Appeals has already answered this question and held that a consumer has "no legitimate interest" in what a company does with mandatory charges added to bills. *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, 1334 (2002).

In *Searle*, the plaintiff was a hotel guest who was charged a mandatory 20% service charge on her room-service bill, but was not told that the entire 20% charge went to the room-service server. *Id.* at 1330. She alleged a violation of the UCL and claimed that because the hotel did not advise her of this fact, she and other guests would be induced to pay an additional gratuity that they otherwise would not have paid had they known the server was already receiving the 20% mandatory charge. *Id.* The court rejected the claim, holding that "[b]ecause the service charge is mandatory and because the hotel is free to do with the charge [] as it pleases, the service charge is simply not a gratuity which is subject to the discretion of the individual patron." *Id.* at 1335.

The holding of *Searle* applies squarely to Plaintiff's claim. Both cases deal with additional mandatory charges that are added onto the price for the actual services provided. Both plaintiffs were free to use other services or pay as much or as little additional gratuity as they would like. And neither plaintiff alleges any deception about the total cost of the services provided. On these alleged facts, under the controlling precedent set forth in *Searle* and several other cases, Plaintiff fails to state a claim under the UCL.

Plaintiff's UCL claim should also be dismissed because the UCL does not apply to extraterritorial conduct outside California. Plaintiff is an Illinois citizen who used Uber's application ("app") in Chicago, and many courts have dismissed these types of UCL claims that have no connection to California, even when the defendant is headquartered here. And although the terms and conditions that Plaintiff agreed to contain a choice-of-law clause selecting California law, that clause is insufficient to overcome the presumption against extraterritorial application of the UCL, as several other courts have held.

Plaintiff's CLRA claim should be dismissed for largely the same reasons as Plaintiff's UCL claim. UCL and CLRA claims, because they both address alleged consumer deception, are often analyzed together, and the Court should do the same here. Indeed, although the plaintiff in *Searle* alleged only a UCL claim, a later unpublished opinion from the California Court of Appeals extended the holding in *Searle* to apply to a CLRA claim based on allegedly deceptive conduct regarding the payment of a gratuity.

1       Plaintiff's breach of contract claim, which is based on the same allegations as the UCL and

2   CLRA claims, should also be dismissed.  Although Plaintiff claims that Uber's alleged statement

3   that it would charge a 20% gratuity was a contractual term, the terms and conditions that Plaintiff

4   cites in her Complaint contain an integration clause that extinguishes her claim.  Integration

5   clauses bar a party from relying on statements outside the contract, and Uber's alleged statements

6   on its website or app are not a part of Plaintiff's alleged contract with Uber.

7       For these reasons and the others discussed below, the Court should dismiss with prejudice

8   Plaintiff's suit in its entirety.

9   **LEGAL STANDARD**

10      Uber moves to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6) for

11  failure to state a claim.  In considering whether a complaint sufficiently states a claim, the court

12  must accept as true all of the factual allegations contained in the complaint.  *Ashcroft v. Iqbal*, 556

13  U.S. 662, 678 (2009).  But the court need not accept as true "allegations that are merely

14  conclusory, unwarranted deductions of fact, or unreasonable inferences."  *St. Clare v. Gilead Scis.,*

15  *Inc. (In re Gilead Scis. Sec. Litig.)*, 536 F.3d 1049, 1055 (9th Cir. 2008).  Although detailed

16  factual allegations are not required, factual allegations "must be enough to raise a right to relief

17  above the speculative level."  *Bell Atlantic v. Twombly*, 550 U.S. 544, 555, 127 S.Ct. 1955, 167

18  L.Ed.2d 929 (2007).

19  **FACTUAL ALLEGATIONS**

20      Plaintiff alleges that Uber provides a mobile phone application ("app") that allows users to

21  "summon, arrange and pay for taxicab rides and other transportation services electronically via

22  their mobile phones."  Amended Complaint (Compl.) ¶ 10.  According to Plaintiff, users pay for

23  the transportation with their credit card-accounts, which they enter into the app.  *Id.*

24      Plaintiff claims that Uber, on its website, states: "We automatically charge your credit card

25  the metered fare + 20% *gratuity*."  *Id.* ¶ 11 (italics in original).  Plaintiff also claims that the "text

26  of the app represents to users that a 20% *gratuity* will be automatically added to the metered fare."

27  *Id.* (italics in original).  Uber also allegedly represents "that the '20% gratuity is automatically

28  added for the driver.'"  *Id.*  Uber, Plaintiff alleges, intends users to rely on those representations

when requesting transportation through Uber's app.  *Id.* ¶ 11.  Plaintiff does not allege that Uber

made any other specific representations to users regarding gratuities.  *See generally* Compl.

(including allegations only regarding what users would be charged).

Plaintiff believes Uber's representations are false and misleading because Uber "does not

remit the full amount of the charge that it represents to consumers is a '*gratuity*' to the taxi

driver/owner and/or company actually providing the transportation service."  *Id.* ¶ 13.  Instead,

Plaintiff alleges, Uber "keeps a substantial portion of this additional charge for itself."  *Id.*

In reality, charges for transportation services requested through the Uber app are processed

by a third-party payment processor.  A user's payment of the charge for a trip, including the *full*

*amount of the gratuity* paid to taxi drivers, is passed by Uber to the taxi drivers who use the app,

less a fee charged by Uber to the taxi driver for use of its software and services, pursuant to an

agreement between Uber and the driver.  Uber does not retain any portion of the gratuity.  But

because Plaintiff's factual allegations must be accepted as true on a motion to dismiss, this Motion

addresses Plaintiff's incorrect characterization of the payment structure.

On September 9, 2012, Plaintiff claims she used Uber's app to arrange and pay for taxicab

rides in Chicago, Illinois and paid 20% over the stated metered fare for each ride, in reliance on

Uber's alleged representation that this additional 20% charge was a "gratuity."  *Id.* ¶ 15.  She

further claims that "Uber retained for itself a substantial portion of the 20% so-called '*gratuity*.'"

*Id.* (italics in original).  She alleges that but for Uber's alleged representations, she would not have

agreed to pay the full amount that she paid.  *Id.* ¶ 16.

Plaintiff does not allege that Uber misrepresented anything about the total amount that

would be charged for transportation services.  *See* Compl.  Nor does Plaintiff allege that Uber

represented it would pay the entire mandatory 20% charge directly to taxi drivers.  *See id.*

Plaintiff alleges five counts.  Count I alleges a violation of California's Business &

Professions Code § 17200 (UCL) under the "unfair" prong of the UCL.  *Id.* ¶¶ 25–30 Count II

alleges a violation of the UCL under the "unlawful" prong.  *Id.* ¶¶ 31–36.  Count III alleges a

violation of the UCL under the "fraudulent" prong.  *Id.* ¶¶ 37–41.  Count IV alleges violations of

California's Consumers Legal Remedies Act (CLRA).  *Id.* ¶¶ 42–59.  Count V alleges Uber

breached a contract with Plaintiff.  *Id.* ¶¶ 60–65.

## ARGUMENT

### I.      Plaintiff Has Failed to Plead Her Claims With Particularity Under Rule 9(b)

Plaintiff has failed to plead her claims with particularity under Federal Rule of Civil

Procedure 9(b).  Under Rule 9(b), "[i]n alleging fraud or mistake, a party must state with

particularity the circumstances constituting fraud or mistake."  To meet this standard, a "complaint

must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is

false or misleading about the purportedly fraudulent statement, and why it is false.'"  *Salameh v.*

*Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) *cert. denied,* 134 S. Ct. 1322, 188 L. Ed. 2d

306 (2014) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055

(9th Cir. 2011)).  "Particularity generally necessitates a great deal of specificity."  *McMaster v.*

*United States*, 731 F.3d 881, 898 (9th Cir. 2013).

Although Plaintiff has not alleged fraud as a cause of action, she must still meet Rule 9(b)

because she "alleg[es] facts that necessarily constitute fraud (even if the word 'fraud' is not

used)."  *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (quoting *Vess v. Ciba–*

*Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003)).  Plaintiff alleges claims under the UCL

and the CLRA, and the Ninth Circuit has held that those claims are subject to Rule 9(b).  "[W]e

have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for

violations of the CLRA and UCL."  *Kearns*, 567 F.3d at 1125 (citing *Vess*, 317 F.3d at 1102–05).

Plaintiff repeatedly accuses Uber of "misrepresentations and omissions," Compl. ¶¶ 6, 27, 33, 39,

55, of "fraudulent business practice", *id.* ¶¶ 2, 29, 35, 37–41, of intentionally deceiving and

defrauding consumers, *id.* ¶¶ 12, 33, 56, and claims Uber's business practices are "immoral,

unethical, oppressive, unscrupulous and substantially injurious to consumers," *id.* ¶ 28.  There can

be no serious dispute that Rule 9(b) applies to these claims.

Plaintiff alleges Uber made three misrepresentations, but fails to plead each alleged

misrepresentation with the required specificity.  First, she claims that Uber's website and app

state, "We automatically charge your credit card the metered fare + 20% *gratuity*."  Compl. ¶ 11.

For this statement, she fails to allege (1) when Uber made this statement; (2) when she saw or heard it, if at all; (3) whether she saw or heard it on the app, on the website, both, or elsewhere; or (4) whether she specifically relied on it.

Second, she alleges that "Uber further represents that the '20% gratuity is automatically added for the driver.'" *Id.* For this statement, she similarly fails to allege (1) where Uber made the statement, whether on the website, app, or somewhere else; (2) when Uber made this statement; (3) when she saw or heard it, if at all; (4) whether she saw or heard it on the app, on the website, both, or elsewhere; or (5) whether she specifically relied on it.

Third, she alleges that "when consumers, including Plaintiff and the class, arrange taxi rides on Uber's app, the text of the app represents to those consumers that a 20% *gratuity* will be automatically added to the metered fare." *Id.* For this statement, she fails to allege (1) what Uber specifically stated; (2) where on the app Uber made this statement; (3) when Uber made this statement; (4) when she saw or heard it, if at all; or (5) whether she specifically relied on it.[1]

Fourth, Plaintiff alleges that Uber "does not remit the full amount of the charge that it represents to consumers is a 'gratuity' to the taxi driver/owner and/or company actually providing the transportation service. Instead, Uber keeps a substantial portion of this additional charge for itself . . . ." Compl. ¶ 13. Uber will later demonstrate in an appropriate motion that this allegation is factually incorrect. But even for purposes of this motion, the allegation fails to meet the requirements of Rule 9(b). Plaintiff only alleges that Uber keeps a "substantial portion" of the 20% gratuity, but does not specify exactly, or even approximately, how much. Further, it is unclear why Plaintiff believes or how Plaintiff would know that Uber retains a portion of the gratuity. Plaintiff's allegation is apparently based on information and belief, but under "Rule 9(b) [] a plaintiff who makes allegations on information and belief must state the factual basis for the

---

[1]   Although Plaintiff alleges she used Uber's app "in reliance upon Uber's representation that this additional 20% charge was a 'gratuity,'" Compl. ¶ 15, she does not allege which particular alleged statement she relied upon, when she saw it, whether she saw it on the app or the website or somewhere else, or any other alleged facts that would satisfy the particularity requirements of Rule 9(b).

belief." *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993).  Plaintiff has failed to allege the basis for these allegations as she is required to do under Rule 9(b).

This lack of clarity in the Complaint undermines Uber's ability to defend itself.  The key factual questions—what *specific* statements Uber made on the app or website or both, when it made them, when Plaintiff saw them, whether she relied on them, and why she (incorrectly) believes Uber retains a portion of the gratuity—are left vague at best.[2]  Requiring Plaintiff to plead more detail, as she must do in order to meet Rule 9(b), will allow Uber and the Court to distinguish between the alleged representations that Plaintiff actually relied upon, if any, and those that she did not,[3] and should also reveal the source of Plaintiff's mistaken belief that Uber retains a portion of the gratuity.  This would require little additional effort from Plaintiff—indeed, all the additional allegations should have already been within her knowledge when she filed suit—and will help resolve this case efficiently by identifying the key areas of dispute.

## II.      Plaintiff Fails to State a Claim Under the UCL

Under Business and Professions Code section 17200, there are three types of liability: unlawful, unfair, or fraudulent.  *See S. Bay Chevrolet v. General Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 878 (1999).  A business practice can be actionable under any of these three "prongs" of the UCL, each of which applies a different standard of liability, *see id.*, but Plaintiff fails to allege facts establishing liability under any prong.

---

[2]   *See Glen Holly Entm't, Inc. v. Tektronix, Inc.*, 100 F. Supp. 2d 1086, 1096 n.2 (C.D. Cal. 1999) (requiring plaintiff to "specify the nature of Plaintiff's reliance on such claim" under Rule 9).  *Cf. Morales v. Unilever U.S., Inc.*, CIV. 2:13-2213 WBS E, 2014 WL 1389613 (E.D. Cal. Apr. 9, 2014) (stating "[b]ecause 'reliance is the causal mechanism of fraud,' a plaintiff 'proceeding on a claim of misrepresentation must demonstrate actual reliance on the allegedly deceptive or misleading statements' in order to have standing under the UCL).

[3]   It will also allow Uber and the Court to distinguish between those claims that Plaintiff herself saw and the ones, if any, that her lawyers discovered after Plaintiff had already taken her taxicab rides.

**A.      Plaintiff Fails to State a Claim Under the "Unfair" Prong of the UCL Because, Among Other Reasons, the 20% Charge Was Properly Disclosed**

To state a claim under the "unfair" prong of the UCL, a plaintiff must allege facts establishing that the defendant's actions are "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers." *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, 1335 (2002) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999). Plaintiff's allegations fail to state a UCL "unfairness" claim because the California Court of Appeals has affirmed the dismissal of a very similar claim under the UCL, stating that a defendant "has no obligation to advise consumers about what it does with the revenue it receives from them." *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327, 1335 (2002).

In *Searle*, the plaintiff asserted a UCL claim based on a *mandatory* 17% service charge that a hotel added to her room-service bill. *Id.* at 1330. Although the hotel had labeled the mandatory fee as a "service charge," the hotel in fact gave the entire 17% charge directly to the room-service servers, a fact that the hotel did not disclose to the plaintiff. *Id.* The plaintiff alleged the hotel's failure to disclose that the entire charge went to the room-service servers induced guests to pay additional gratuities that they "would not otherwise feel obligated to provide." *Id.* at 1330.

The court held that the plaintiff had failed to state a claim under the UCL. *Id.* It reasoned that the plaintiff, once she had agreed to pay for services at a stated price, had "no legitimate interest in what the hotel does with the service charge." *Id.* at 1334. The court's core holding is that a consumer, who as part of a transaction agrees to pay a mandatory charge, has no say over what a company does with that charge, and the company "has no obligation to advise consumers about what it does with the revenue it receives from them." *Id.* at 1335. This holding applies squarely to the allegations in this case, and as discussed below, all of the factors that the court in *Searle* used to supports its holding are equally present here.

First, the court in *Searle* focused on the lack of any allegation that the consumer was deceived about the *total cost* of the services it received from the defendant. *Id.* at 1330 (dismissing claim in part "[b]ecause there is no allegation the hotel deceives its guests about the costs of its room service meals"). Several other courts have also held that when a plaintiff does

not allege deception regarding the *total cost* of goods or services, there is no UCL liability. *See, e.g., Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 484 (2006) (holding that ambiguity regarding whether total price included a merchant surcharge was not misleading under the UCL because there was a "clear disclosure of the actual price [defendant] would charge its customers"); *see also Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008) *aff'd sub nom. Spiegler v. Home Depot USA, Inc.*, 349 F. App'x 174 (9th Cir. 2009) (citing *Searle*, 102 Cal. App. 4th at 1334–35) (dismissing UCL claim because "plaintiffs agreed to pay the contract price irrespective of the components included in that price"); *Plotkin v. Sajahtera, Inc.* 106 Cal. App. 4th 953, 965–966 (2003) (holding that unambiguous notice of valet parking charges on parking ticket defeated UCL claim notwithstanding failure of parking operators to notify customers of charges in advance); *S. Bay Chevrolet v. GM Acceptance Corp.*, 72 Cal. App. 4th 861, 878, 889–89 (1999) (holding method of calculating interest was not deceptive under UCL because plaintiff "knew, understood, agreed, and expected" it). Here, as in *Searle* and several other cases, Plaintiff fails to allege that she was deceived about the total cost she was charged; in fact, she alleges that Uber expressly discloses the 20% charge to users on both its website and in the app. Compl. ¶ 11. Moreover, she does not allege that Uber expressly represented that the entire 20% charge would go to the taxi driver. *See* Compl. "Because there is no allegation [Uber] deceives its [riders] about the costs of [transportation services] . . . , [Uber's] billing practice is not actionable." *Searle*, 102 Cal. App. 4th at 1330.

Second, the *Searle* court stated that "[b]ecause the service charge is *mandatory* and because the hotel is *free to do with the charge* [] *as it pleases*, the service charge is simply not a gratuity which is subject to the discretion of the individual patron." *Searle*, 102 Cal. App. 4th at 1335 (emphasis added). The hotel is "free to retain for itself . . . the service charge, or to remit all or some of the revenue to its employees," and "[w]hat a hotel does with the revenue it earns . . . is of no direct concern to hotel guests." *Id.* at 1334. Here, too, the 20% charge is allegedly mandatory, Compl. ¶ 11 (stating Uber "automatically" charges 20%), and according to *Searle*, Uber should be allowed "to do with the charge [] as it pleases," 102 Cal. App. 4th at 1335. Thus, for mandatory charges, Uber is free to pass "all or some" or none of the mandatory 20% charge to

1    taxi drivers, and the specific amount passed on to the drivers "is of no direct concern to" Plaintiff.

2    *Id.* at 1334.[4]

3          Third, the court stated that the plaintiff's desire to know the financial arrangement between

4    the hotel and the server was mere "curiosity about something, i.e., the server's financial condition,

5    in which the tipper has no legitimate interest." *Searle*, 102 Cal. App. 4th at 1335.  And mere

6    curiosity is insufficient to create a duty to disclose "what the server receives from his employer."

7    *Id.*  Although taxicab drivers are not employees—they are licensees of the Uber app, who receive

8    the fare and gratuities and pay Uber a fee—the same reasoning applies here.  If the plaintiff in

9    *Searle* "has no legitimate interest" in knowing what the servers received in tips, then the Plaintiff

10   here has no legitimate interest in what the drivers allegedly receive from Uber or what fee the

11   drivers pay to Uber for use of its software.  *Id.*  There is no reason why Plaintiff would have a

12   comparatively greater need to know the financial arrangement between a taxi driver and Uber, and

13   Plaintiff's desire to know how much of the 20% charge is passed to the taxi driver is nothing more

14   than "curiosity" that is not actionable under the UCL.  *Id.*

15         Fourth, because the hotel patrons in *Searle* were "free to both obtain meals outside their

16   rooms and to provide as small or large a gratuity as they wish, the hotel's billing practice is not

17   actionable." *Id.* at 1330.  The same is true here.  Because Plaintiff, who knew exactly what rates

18   and fees she would be charged, was free to request transportation services by any other means and

19   was also free to provide, directly to the taxi driver, "as small or large a gratuity as [she] wish[ed],

20   [Uber's] billing practice is not actionable." *Id.*

21         All of the reasons justifying the holding in *Searle* are equally present here, and Plaintiff's

22   "unfairness" claim under the UCL should be dismissed.

23

24   _____

25         [4]  *See also Kushner v. AT&T Corp.*, D046484, 2006 WL 1752316, at *11 (Cal. Ct. App. June

26   28, 2006) (unpublished) (dismissing both UCL and CLRA claims regarding whether small charge
     on telephone bill was properly disclosed and stating "Plaintiffs cannot show they have a right to

27   know the disposition of the various of income that a business receives, within the business itself")
     (citing *Searle*, 102 Cal. App. 4th at 1334).

28

**B.**       **Plaintiff Fails to State a Claim Under the "Fraud" Prong of the UCL Because Plaintiff Has No Legitimate Interest in Knowing How Much of the Mandatory 20% Charge Goes to Taxi Drivers**

To plead a claim for fraud under the UCL, a plaintiff must allege that "members of the public are likely to be deceived." *In re Tobacco II Cases*, 46 Cal. 4th 298, 312 (2009) (quoting *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)) (quotation marks omitted).  For largely the same reasons why Plaintiff's UCL "unfairness" claim should be dismissed, the Court should likewise dismiss Plaintiff's UCL fraud claim.

The court in *Searle* dismissed the plaintiff's fraud claim "[f]or largely the same reasons [it] reject[ed]" the "unfairness" claim.  *Searle*, 102 Cal. App. 4th at 1335.  The court first recognized that, to state a claim under the fraud prong of the UCL, a plaintiff need only allege that the public is "likely to be deceived."  *Id.*  And the court acknowledged that the plaintiff had alleged at least *some deception* insofar as some hotel guests might pay an additional gratuity on top of the mandatory 17% charge because they were not told that the 17% charge went directly to the room-service servers.  *See id.* (acknowledging that plaintiff alleged deceit in "fail[ing] to clearly notify hotel guests").

But even though the plaintiff had alleged some deception, the court still dismissed the UCL fraud claim because, "in arguing that it is deceitful to fail to clearly notify hotel guests that the service charge is paid to the server, [the plaintiff] again assumes the patron has some right to know what the hotel is paying the room service server."  *Searle*, 102 Cal. App. 4th at 1335.  The patron, however, has no such right to know "how much a server is being paid by his or her employer."  *Id.* "In sum, in failing to advise its guests as to how it compensates its employees, the hotel is not guilty of any deceit even under the broad provisions of the UCL."  *Id.*

Like the plaintiff in *Searle*, Plaintiff here alleges Uber fails to disclose that it retains a portion of the mandatory 20% charge for itself.  Compl. ¶ 13.  But under the precedent established in *Searle*, even assuming Plaintiff has alleged some level of deception, Plaintiff has no "right to know" the arrangement between Uber and the taxi drivers, what portion of the mandatory charge, if any, is kept by Uber, or what fee the driver pays to Uber.  102 Cal. App. 4th at 1335.  "[Uber] has no obligation to advise consumers about what it does with the revenue it receives from them."

*Id.*  Moreover, as explained above, Plaintiff fails to plead that members of the public will be deceived because Plaintiff admits that Uber discloses the 20% charge to users; they know exactly what they will be charged, which is the only material aspect of the transaction, and what Uber or the driver "does with the revenue it earns . . . is of no direct concern to" Plaintiff.  *Searle*, 102 Cal. App. 4th at 1334.

**C.   Plaintiff Fails to State a Claim Under the "Unlawful" Prong of the UCL Because She Fails to Allege a Violation of Any Law**

"The unlawful prong of the UCL prohibits 'anything that can properly be called a business practice and that at the same time is forbidden by law.'"  *Ferrington v. McAfee, Inc.*, 10-CV-01455-LHK, 2010 WL 3910169, at *14 (N.D. Cal. Oct. 5, 2010) (quoting *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999)).  This prong of the UCL permits injured consumers to "borrow" violations of other laws and treat them as independently actionable under the UCL.  *Ferrington*, 2010 WL 3910169, at *14.

Plaintiff identifies four laws that Uber allegedly violates, Compl. ¶ 26, but she fails to plead a violation of any of them.  First, Plaintiff alleges a violation of California Civ. Code §§ 1572, 1709, and 1710, which define "actual fraud" and "deceit."  Collectively, these statutes require proving that the defendant made a misrepresentation with the intent to deceive.  *See* Cal. Civ. Code §§ 1572, 1709, 1710.  But as explained above, Plaintiff fails to allege that Uber misrepresented the total cost of its services and otherwise fails to allege any material misrepresentations.  Moreover, Plaintiff fails to allege any *facts* establishing that Uber *intended* to deceive users of the app, nor are there any alleged facts from which to reasonably infer intent. Plaintiff therefore fails to allege a violation of §§ 1572, 1709, or 1710.[5]

Second, Plaintiff claims Uber violated California Business & Professions Code § 17500. Compl. ¶ 26.  Section 17500 prohibits advertising "which is untrue or misleading, and which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading."

---

[5]   Plaintiff makes a conclusory allegation that Uber "intends" consumers to rely on its representations, but alleges no facts to support that allegation.  *See, e.g.,* Compl. ¶¶ 12, 33, 49, 56.

Case No. C14-0113 EMC
Notice of Motion and Motion to Dismiss Complaint

Cal. Bus. & Prof. Code § 17500. Plaintiff's "claims under the false advertising provision of section 17500 fail for the same reason" as her UCL claim. *Searle*, 102 Cal. App. 4th at 1335 (dismissing 17500 claim because defendant had "no obligation to advise consumers about what it does with the revenue it receives from them"). The only "advertisement" that Plaintiff points to is a statement on Uber's website and the app that an additional 20% gratuity will be added to taxi rates, and according to Plaintiff's own allegations, a 20% additional charge was indeed added. Plaintiff therefore fails to allege Uber made any misrepresentations, and Uber and the taxi drivers have "no obligation to advise consumers about what [they] do[] with the revenue [they] receive[] from them." *Searle*, 102 Cal. App. 4th at 1335.

Plaintiff has failed to identify any laws that Uber has violated, and therefore her claim under the "unlawful" prong of the UCL must be dismissed.

**D.      Plaintiff Lacks Standing Under the UCL Because She Fails to Allege She Has Suffered Harm**

To establish standing, Plaintiff must allege that she "has lost money or property as a result of [the] unfair competition." Cal. Bus. & Prof. Code § 17204. But Plaintiff received exactly what she paid for—a taxi ride at a stated price—and she therefore lacks standing to assert a UCL claim.

"There can be no serious dispute that a purchaser of a product who receives the benefit of his bargain has not suffered Article III injury-in-fact traceable to the defendant's conduct."[6] *Tae Hee Lee*, 2014 WL 211462, at *5 (holding that plaintiffs lacked Article III and UCL standing because they had not experienced problems with their vehicles). Several courts, in many different contexts, have held that a plaintiff cannot state a UCL claim if the plaintiff received what he or she bargained for. *See, e.g., id.*; *Birdsong v. Apple, Inc.*, 590 F.3d 955, 961–62 (9th Cir. 2009) (affirming dismissal of UCL claim for lack of standing because plaintiffs received what they paid for in iPod); *In re Toyota Motor Corp. Hybrid Brake Litig.*, 915 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013) (granting summary judgment on benefit of the bargain claim where plaintiff received "safe

_____

[6]  Many courts, including *Tae Hee Lee*, evaluate Article III standing and UCL standing under the same standard. *See, e.g., Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, CV 13-7431-JFW VBKX, 2014 WL 211462, at *5 (C.D. Cal. Jan. 9, 2014).

and operable" anti-lock braking system, which was "precisely what he bargained for"); *Boysen v. Walgreen Co.*, No. C 11–06262 SI, 2012 WL 2953069, *7 (N.D. Cal. July 19, 2012) (dismissing the plaintiff's claim regarding the defendant's failure to disclose the presence of arsenic and lead in a beverage described as "healthy" and "100% juice" due to a lack of economic injury suffered by the plaintiff because he could only allege that "the levels of lead and arsenic in defendant's product were unsatisfactory to him," and not that the juice physically harmed him or "function[ed] less than advertised").

As explained above, Plaintiff does not allege that Uber concealed from her any aspect of her fare, including the mandatory 20% charge.  According to Plaintiff herself, Uber disclosed the taxi rates and the 20% charge on its website and the Uber app.  Compl. ¶ 11.  In other words, Plaintiff would be in exactly the same position regardless of whether the full 20% charge went to the taxi driver.  Thus, like the plaintiffs in *Tae Hee Lee* and *Birdsong*, Plaintiff here does not allege any defect in what was provided to her or that she did not receive exactly the financial bargain that she was promised—a taxi ride calculated at a disclosed rate.[7]

Because Plaintiff has failed to allege that she has suffered any harm as a result of Uber's alleged representations, she lacks standing under the UCL and her claim should be dismissed.

**E.    The UCL Does Not Apply to Non-California Residents and Non-California Conduct**

This Court should dismiss Plaintiff's UCL claim for the additional reason that Plaintiff is an Illinois resident alleging Illinois conduct, which is outside the reach of California's UCL.

There is a presumption against applying California's UCL to conduct that occurs outside the State's borders.  The California Supreme Court has said that "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially[, and] the presumption against extraterritoriality applies to the UCL in

---

[7]   Plaintiff also would be in the same position if she decided not to use Uber to request taxicabs and instead hailed taxicabs on the street and paid a 20% gratuity.  All Plaintiff alleges is that Uber's alleged representation caused her to pay "a substantial portion of [that] additional charge" to Uber instead of the taxi drivers.  Compl. ¶ 2.  That is not harm to the Plaintiff.

full force." *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1207 (2011). Courts in this District, along with state and federal courts throughout California, have held repeatedly that the "general presumption against the extraterritorial application of state laws" applies to the UCL, and, therefore, that the UCL does not apply to "claims of non-California residents arising from conduct occurring entirely outside of California." *Gentges v. Trend Micro Inc.*, No. C 11-5574 SBA, 2012 WL 2792442 (N.D. Cal. July 9, 2012) (citing *Sullivan*, 51 Cal. 4th at 1207); *see also Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222, (1999).

The result should be no different here. Plaintiff she is an Illinois citizen who "[o]n September 9, 2012, arranged for and paid for taxi cab rides in Chicago, Illinois." Compl. ¶¶ 8, 15. And the representation that allegedly harmed Plaintiff related to those same alleged rides. *Id.* ¶ 15 (alleging Plaintiff "was charged and paid 20% over and above the stated 'metered fare' for each such ride in reliance upon Uber's representation that this additional 20% charge was a '*gratuity*' . . . .") (emphasis in original). Plaintiff does not allege that she arranged for and paid for any taxi cab rides anywhere other than in Chicago, Illinois, nor does she allege that the representations Uber allegedly made were regarding any services offered in California.

Plaintiff alleges regarding California is that Uber has "its headquarters in San Francisco, California." Compl. ¶ 7. But that allegation alone, which is the only connection Plaintiff alleges this case has to California, is insufficient to extend the reach of the UCL to a California nonresident. *Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1056 (N.D. Cal. 2013) (in putative class action, that defendant's undisputed principal place of business was located in California was insufficient to justify application of the UCL to California nonresident's claims).

Plaintiff also alleges that the terms and conditions in place "[a]t the time of the transactions alleged herein" stated that:

> This Agreement shall be governed by California law, without regard to the choice or conflicts of law provisions of any jurisdiction, and any disputes, actions, claims or causes of action arising out of or in connection with this Agreement or the Service or Software shall be subject to the exclusive jurisdiction of the state and federal courts located in the City and County of San Francisco, California.

Compl. ¶ 7; *see also* Declaration of Arthur M. Roberts ("Roberts Decl."), Ex. 1, at Ex. A (final page).

This contractual choice-of-law clause, however, does not overcome the presumption against extraterritorial application of the UCL. In *Wright v. Adventures Rolling Cross Country, Inc.*, 2012 U.S. Dist. LEXIS 104378[8] (N.D. Cal. May 3, 2012) (Chen, J.), this Court held that a choice-of-law provision selecting California law did not overcome the presumption against extraterritorial application of California law. *Id.* at *11–18. The plaintiff in *Wright* asserted claims under the California Labor Code and the UCL, among others, for labor violations that occurred while he was working for the defendant as a tourist "trip leader" both inside and outside the United States. *Id.* at *2–4. The defendant moved to dismiss Plaintiff's Labor Code claim for the work the plaintiff performed abroad because of the presumption against extraterritorial application of California laws. *Id.* at *10–18. This Court held that because there is an implicit presumption against extraterritorial application of the California Labor Code, that statute did not apply to conduct occurring outside California, and the Court dismissed the Labor Code claim insofar as it was based on the plaintiff's work outside the United States. *Id.* at *13–18. This Court also dismissed the plaintiff's UCL claim for the same reason. *Id.* at *18 (holding the "Court concludes that the § 17200 claim is viable to the extent the FLSA and California Labor Code claims above are viable").

In arriving at its holding, this Court relied on a Ninth Circuit case, *Gravquick A/S v. Trimble Navigation Int'l*, 323 F.3d 1219 (9th Cir. 2003), which states that "[w]hen a law contains geographical limitations on its application, [] courts will not apply it to parties falling outside those limitations, even if the parties stipulate that the law should apply." *Id.* at 1223. Contractual choice-of-law provisions, therefore, cannot overcome geographical limitations on a state law's application. *See id.* Applying this principle, this Court in *Wright* held that the implicit presumption against extraterritorial application of the California Labor Code was a "geographical limitation" that could not be overcome by a choice-of-law clause at issue there.[9] 2012 U.S. Dist.

---

[8]  The case is not available on Westlaw.

[9]  This Court in *Wright* also supported its holding by stating that the contractual selection of California law also imported the presumption against extraterritorial application, which is also part
(footnote continued)

Case No. C14-0113 EMC
Notice of Motion and Motion to Dismiss Complaint

LEXIS 104378, at *13.  This holding is consistent with several other courts that have addressed

the issue, including one court specifically addressing a UCL claim.[10]  *Ice Cream Distributors of*

*Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 09-5815 CW, 2010 WL 3619884 (N.D. Cal.

Sept. 10, 2010) *aff'd*, 487 F. App'x 362 (9th Cir. 2012) (holding choice of law provision citing

California law did not overcome presumption against extraterritorial application of UCL); *see also*

*Highway Equip. Co. v. Caterpillar Inc.*, 908 F.2d 60, 63 (6th Cir. 1990) (holding that choice-of-

law clause did not overcome implicit presumption against extraterritorial application of Illinois

statute); *Sawyer v. Mkt. Am., Inc.*, 190 N.C. App. 791, 795, 661 S.E.2d 750, 753 (2008) (holding

that choice-of-law provision did not overcome implicit presumption against extraterritorial

application of North Carolina statute, despite absence of express geographical limitation in

statute).

        The alleged facts in *Wright* are legally indistinguishable from the allegations at issue here.

Both involve conduct occurring outside California.  *Wright*, 2012 U.S. Dist. LEXIS 104378, at *3;

Compl. ¶ 15.  Both involve contractual choice-of-law clauses that select California law.[11]  *Wright*,

2012 U.S. Dist. LEXIS 104378, at *12; Compl. ¶ 7.  Both involve California statutes that

implicitly contain a presumption against extraterritorial application.  *Wright*, 2012 U.S. Dist.

LEXIS 104378, at *13–15 (also extending holding to UCL claim); *Sullivan*, 51 Cal. 4th at 1207.

---

of California law.   2012 U.S. Dist. LEXIS 104378, at *12 (stating "there is nothing to indicate
that the parties intended to incorporate only portions of California law and exclude the
incorporation of California law's presumption against extraterritoriality"); *see also Foreman v.
George Foreman Associates, Ltd.*, 517 F.2d 354, 357 (9th Cir. 1975) (holding plaintiff
"contractually invoked the protections afford him, as well as the restrictions placed upon him, by
California law").

    [10]  *But see O'Connor v. Uber Technologies, Inc.*, C-13-3826 EMC, 2013 WL 6354534, at *4
(N.D. Cal. Dec. 5, 2013) (holding contractual choice-of-law clause overcame presumption against
extraterritorial application of UCL).  It appears that the court decided *O'Connor* without the
benefit of considering its past determination in *Wright*.  2013 WL 6354534, at *4 (stating there
were no cases presented to the court "address[ing] the question at bar—whether parties stipulated
through contract that California law would govern their relationship notwithstanding that
presumption").  *Wright* directly addresses the "question at bar" and, as set forth below, is
consistent with other courts addressing the issue.

    [11]  The court in *Wright* assumed for purposes of its analysis that a valid choice-of-law clause
applied.  2012 U.S. Dist. LEXIS 104378, at *12.

---

In fact, the allegations here present an even weaker argument for overcoming the presumption.  The plaintiff in *Wright* was contractually presumed to be a resident of California, 2012 U.S. Dist. LEXIS 104378, at *2, whereas Plaintiff here is a resident of Illinois, Compl. ¶ 8. The plaintiff in *Wright* performed some of her work in California, 2012 U.S. Dist. LEXIS 104378, at *3, whereas Plaintiff here has no connection at all to California, *see* Compl. ¶¶ 1–65.  These differences only further support dismissal of Plaintiff's UCL claim.

Because a contractual stipulation is insufficient to overcome the UCL's presumption against extraterritorial application, the Court should dismiss Plaintiff's UCL claim.

### III.    Plaintiff Fails to State a Claim Under the CLRA

Plaintiff asserts a claim under the Consumers Legal Remedies Act (CLRA) based on exactly the same conduct as the UCL claim.  Compl. ¶¶ 42–59.  But for many of the same reasons she fails to state a UCL claim, she also fails to state a claim under the CLRA.  She fails to allege facts meeting the specific elements of the CLRA; she was not deceived about the total amount she would pay; she has no legitimate interest in what Uber does with the revenue it receives; and she fails to allege any damages.  The CLRA claim should be dismissed.

####     A.    The CLRA Should Be Dismissed for All the Same Reasons as the UCL Claim

The Court should dismiss Plaintiff's CLRA claim for the same reasons as the UCL claim. Like the UCL, the CLRA protects consumers from deceptive advertising, and because of the similarity of UCL and CLRA claims, "courts often address these claims in tandem." *Gray v. Toyota Motor Sales, U.S.A.*, CV 08-1690 PSG JCX, 2012 WL 313703, at *3 (C.D. Cal. Jan. 23, 2012) *aff'd sub nom. Gray v. Toyota Motor Sales, U.S.A., Inc.*, 12-55362, 2014 WL 449073 (9th Cir. Feb. 5, 2014) (dismissing both UCL and CLRA claims under same analysis; listing cases).

Although the plaintiff in *Searle* did not address a CLRA claim, all four factors that the *Searle* court used to support its dismissal of the UCL claim apply equally to Plaintiff's CLRA claim here: (1) Plaintiff does not allege any deception about the total cost of the service Uber provided; (2) Plaintiff has no control over Uber's mandatory charges; (3) Plaintiff has no legitimate interest in the financial arrangement between Uber and drivers; and (4) Plaintiff was

1   free to choose another form of transportation or provide as large or small additional gratuity as she

2   wished. *See supra* § II.A.

3       The Court of Appeals, in fact, has already extended the holding of *Searle* to a CLRA

4   claim. In an unpublished opinion, the Court of Appeals held that a plaintiff alleging that a hotel

5   deceived guests when it failed to inform them that a mandatory service charge went entirely to the

6   server—essentially the same facts at issue in *Searle*—could not bring a CLRA claim. *Peralta v.*

7   *Hilton Hotels Corp.*, D039510, 2003 WL 996217, at *7–8 (Cal. Ct. App. Mar. 11, 2003)

8   (unpublished) (affirming denial of leave to amend to add CLRA claim under § 1770(a)(20) and

9   stating "[w]e now apply the principles announced [in *Searle*] and also extend them to the slightly

10  different allegations Plaintiff makes here").

11      In addition, as with the UCL claim, the presumption against extraterritorial application of

12  California's consumer-protection laws also applies to the CLRA. *See, e.g., McKinnon v. Dollar*

13  *Thrifty Auto. Grp., Inc.*, 12-4457 SC, 2013 WL 791457, at *4 (N.D. Cal. Mar. 4, 2013)

14  (dismissing CLRA claim based on presumption against extraterritorial application); *In re Toyota*

15  *Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011) (same). Because the conduct at issue in

16  the Complaint occurred within Illinois, the CLRA claim must be dismissed. *See supra* § II.E.

17      For all the reasons that Plaintiff's claim is not actionable under the UCL, it is also not

18  actionable under the CLRA.

19      **B.      Plaintiff Fails to Allege Facts Establishing Any of the Statutory Bases for
            Liability Under the CLRA**

20

21      Plaintiff's CLRA fails for other reasons. The CLRA statute contains several types of

22  liability for various types of allegedly deceptive advertising, and Plaintiff invokes several of these

    provisions. *See* Compl. ¶¶ 48–52. None of them apply here.

23

24      First, Plaintiff claims Uber violated Cal. Civ. Code § 1770(a)(5), which prohibits

25  "[r]epresenting that goods or services have . . . characteristics [or] benefits . . . which they do not

26  have." But Plaintiff has not pled facts showing that Uber represented its service had

    "characteristics [or] benefits . . . which [it] did not have." Plaintiff alleges that Uber's service is

27  providing an app to arrange and pay for transportation, Compl. ¶ 1, and Plaintiff does not allege

28

1   that Uber misrepresented any aspect of that service—the arrangement and payment for

2   transportation—in any way.   For example, Plaintiff does not allege that Uber promised its service

3   would allow her to request a car in under five minutes and then fail to deliver on that promise.

4   That would be an example of making a representation about a service's characteristics or benefits

5   that it does not have.  Plaintiff's allegation regarding what Uber does with the 20% gratuity has

6   nothing to do with the characteristics or benefits of Uber's actual service that Uber provided to

7   Plaintiff.

8        Second, Plaintiff alleges Uber violated § 1770(a)(9), which prohibits "[a]dvertising goods

9   or services with intent not to sell them as advertised."  Again, Plaintiff's allegations have nothing

10   to do with Uber's actual service, which is, according to Plaintiff, to arrange and pay for

11   transportation.

12        Third, Plaintiff invokes § 1770(a)(13), which prohibits "[m]aking false or misleading

13   statements of fact concerning reasons for, existence of, or amounts of price reductions."  Nothing

14   in the Complaint addresses alleged price reductions, and this subsection has no application here.

15        Fourth, Plaintiff cites § 1770(a)(14), which prohibits "[r]epresenting that a transaction

16   confers or involves rights, remedies, or obligations which it does not have or involve, or which are

17   prohibited by law."  Plaintiff does not allege that Uber made any misrepresentations regarding

18   *Plaintiff's* rights, remedies, or obligations, and Plaintiff should not be able to use the CLRA to

19   enforce the purported rights of third parties.  *Cf. Freeman v. Time, Inc.*, 68 F.3d 285, 290 (9th Cir.

20   1995) (affirming dismissal of CLRA claim under § 1770(a)(14) because defendant did not falsely

21   represent that the plaintiff had won a prize and therefore did not represent that the plaintiff had

22   "been conferred certain rights"); *Harmon v. Hilton Grp.*, C-11-03677 JCS, 2011 WL 5914004

23   (N.D. Cal. Nov. 28, 2011) *aff'd sub nom. Harmon v. Hilton Grp., PLC*, 11-18056, 2014 WL

24   504182 (9th Cir. Feb. 10, 2014) (dismissing CLRA claim under  §1770(a)(14) because hotel

25   defendant did not falsely represent that plaintiff's had a "right" to receive free newspapers).

26        Fifth, Plaintiff states Uber violates § 1770(a)(16), which prohibits "[r]epresenting that the

27   subject of a transaction has been supplied in accordance with a previous representation when it has

28   not."  Based on the statutory language, stating a claim under this subsection requires at least

1   alleging (1) the existence of a subject of a transaction; (2) a previous representation that the

2   subject of the transaction would be supplied; (3) and a later representation that the subject of the

3   transaction was supplied when it has not. *See id.* Plaintiff does not explain how this provision

4   applies to her claims. Based on Plaintiff's threadbare allegation regarding this provision, which

5   simply parrots the statutory language, Compl. ¶ 52, it is impossible to tell what Plaintiff is actually

6   alleging or how Uber has violated this provision.

7         Plaintiff has failed to state a claim under any of the subsections of § 1770(a), and her

8   CLRA should be dismissed.

9         **C.     Plaintiff's CLRA Claim Should Be Dismissed for Failure to Allege Damages**

10         Plaintiff's CLRA claim should be dismissed for the additional reason that she fails to

11   properly plead that Uber caused her any damages. "Relief under the CLRA is specifically limited

12   to those who suffer damage, making causation a necessary element of proof." *Wilens v. TD*

13   *Waterhouse Group, Inc.*, 120 Cal. App. 4th 746, 754 (2003). Accordingly, "plaintiffs in a CLRA

14   action [must] show not only that a defendant's conduct was deceptive but that the deception

15   caused them harm." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282, 1292–93

16   (2002).

17         As discussed *supra* § II.D, Plaintiff has failed to plead that Uber caused her any damages.

18   Plaintiff received exactly what she paid for: a taxi ride at a disclosed price. Her CLRA claim

19   should therefore be dismissed.

20   **IV.    Plaintiff Fails to State a Claim for Breach of Contract**

21         Plaintiff alleges that she entered into a contract with Uber, the terms of which allegedly

22   required Uber to pay the full 20% charge to the driver. Compl. ¶¶ 60–65. But Plaintiff agreed to

23   written terms and conditions, *see* Compl. ¶ 7, which state the entirety of any contract she had with

24   Uber and which do not require Uber to pay to the driver the 20% charge.

25         Under California law, "[t]o state a claim for breach of contract, a plaintiff must allege facts

26   showing (1) the existence of a contract, (2) that the plaintiff performed his duties under the

27   contract or was excused from doing so, (3) that the defendant breached the contract, and (4) that

28   the plaintiff suffered damages as a result of that breach." *Smith v. Capital One Fin. Corp.*, C 11-

1    3425 PJH, 2012 WL 259515, at *4 (N.D. Cal. Jan. 27, 2012).  The parol evidence rule bars

2    "evidence of terms not specifically included in the written contract" if the "written contract is a

3    completely integrated agreement." *Brinderson-Newberg Joint Venture v. Pac. Erectors, Inc.*, 971

4    F.2d 272, 277 (9th Cir. 1992) (barring evidence of statements outside written agreement).  Written

5    statements that are not contained within an integrated contract cannot be the basis for a breach-of-

6    contract claim.  *See id.*

7           The terms and conditions in place at the time Plaintiff used Uber's service contain an

8    integration clause.  *See* Roberts. Decl., Ex. 1, at Ex. A; *see also* Compl. ¶ 7 (citing terms and

9    conditions in place "[a]t the time of the transaction alleged herein").  The clause states:

10              This Agreement, comprises the entire agreement between you and the Company
                and supersedes all prior or contemporaneous negotiations, discussions or
11              agreements, whether written or oral, between the parties regarding the subject
                matter contained herein.

12   *Id.*

13          This clause extinguishes Plaintiff's breach-of-contract claim.  Because Plaintiff's claim is

14   based on written statements outside the contract and that are not part of the parties' agreement, she

15   fails to state a claim for breach of contract.  *Brinderson-Newberg Joint Venture*, 971 F.2d at 277–

16   80; *see also World Health & Educ. Found. v. Carolina Cas. Ins. Co.*, 612 F. Supp. 2d 1089, 1097

17   (N.D. Cal. 2009) (holding plaintiff's claims based on statements outside contract were barred by

18   integration clause on a motion to dismiss); *Everett v. State Farm General Insurance Company,*

19   162 Cal. App. 4th 649 (2008) (oral representations by insurance agents were ineffective in altering

20   the terms of a fully integrated homeowner's insurance policy).

21          In addition, as discussed *supra* § II.D, Plaintiff has failed to plead that Uber caused her any

22   damages, and her breach of contract claim should be dismissed on this basis as well.  *Smith*, 2012

23   WL 259515, at *4 (stating damages are required element of breach of contract claim).

24                                        **CONCLUSION**

25          For the foregoing reasons, the Court should grant Uber's Motion to Dismiss and dismiss

26   the Amended Complaint in its entirety, with prejudice.

27

28

1    DATED: June 11, 2014          QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3
                                   By   /s/ Stephen A. Swedlow
4                                       Stephen A. Swedlow

5                                       Attorneys for Defendant
                                        Uber Technologies, Inc.
6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28