Myron M. Cherry (SBN 50278)
mcherry@cherry-law.com
Jacie C. Zolna (admitted *pro hac vice*, Illinois ARDC #6278781)
jzolna@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279

Hall Adams (admitted *pro hac vice*, Illinois ARDC #6194886)
hall@adamslegal.nett
LAW OFFICES OF HALL ADAMS, LLC
33 North Dearborn Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 445 4900
Facsimile: (312) 445 4901

Michael Ram (SBN 104805)
mram@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

*Attorneys for Plaintiff and the Class*

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| CAREN EHRET, individually and on behalf of a class of similarly situated persons, | Case No. 3:14-cv-113-EMC |
| Plaintiff, | PLAINTIFF'S OPPOSITION TO MOTION TO DISMISS AMENDED COMPLAINT |
| v. | Date: **August 14, 2014**<br>Time: **1:30 PM** |
| UBER TECHNOLOGIES, INC., a Delaware Corporation, | Judge: **Edward M. Chen**<br>Courtroom: **5** |
| Defendant. | |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES…………………………………………………………ii-v

STATEMENT OF ISSUES TO BE DECIDED………………………………………vi

INTRODUCTION………………………………………………………………..1-2

FACTUAL BACKGROUND………………………………………………………2-3

ARGUMENT……………………………………………………………3-22

I.  Plaintiff's Fraud-Based Allegations
    Satisfy Federal Rule of Civil Procedure 9(b)………………………..………...3-6

II.  Plaintiff Has Stated a Claim Under the
     "Fraudulent" Prong of the UCL………………………………………………6-7

III.  Plaintiff Has Stated a Claim Under the "Unfair" Prong of the UCL…………8-9

IV.  Plaintiff Has Stated a Claim Under the "Unlawful" Prong of the UCL……..10-11

V.  Plaintiff Has Alleged Facts Establishing
    Uber's Liability Under the CLRA………………………………………………11-14

VI.  Plaintiff Has Alleged an Injury Because Uber's Misrepresentations
     Caused Her To Pay Money She Would Not Have Paid
     Had She Known That Uber Was Actually Keeping
     a Portion of the Gratuity as an Undisclosed Fee………………………………14-17

VII.  The UCL and CLRA Apply to Plaintiff's Claims Because
      the Unlawful Conduct Occurred In and Emanated From California………17-19

VIII.  Plaintiff's Breach of Contract Claim Is Not Barred By The Integration
       Clause Contained in Uber's Terms and Conditions of Use…………………19-22

CONCLUSION…………………………………………………………………22

i

## **TABLE OF AUTHORITIES**

*Arbitration Between City of Colfax v. Stationary Eng'rs Local 39*
*Health & Welfare Trust Fund*, 12-cv-281, 2012 WL 1156242
(N.D. Cal. Apr. 6, 2012), *appeal dismissed* (July 11, 2012)…………………………………22

*Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796 (2006)…………………………...7, 9, 12

*Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261 (C.D. Cal. 2007)………………..……..10

*Birdsong v. Apple, Inc.*, 590 F.3d 955 (9th Cir. 2009)…………………………………..……..16

*Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445 (S.D.N.Y. 2010)…………………...12, 13

*Boysen v. Walgreen Co.*, 11-cv-6262,
2012 WL 2953069 (N.D. Cal. July 19, 2012)………………………………………………….15

*Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947 (N.D. Cal. 2013)…………………..………15

*Bronson v. Johnson & Johnson, Inc.*, 12-cv-4184,
2013 WL 5731817 (N.D. Cal. Oct. 22, 2013)………………………………………………....5

*Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025 (N.D. Cal. 2013)……………..……17

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010)………...………..18

*Comer v. Micor, Inc.*, 436 F.3d 1098 (9th Cir.2006)………………………………………..21

*Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073 (C.D. Cal. 2009)……………....13, 14

*Dodson v. Tempur-Sealy Int'l, Inc.*, 13-cv-4984,
2014 WL 1493676 (N.D. Cal. Apr. 16, 2014)…………………………………………………15

*Dorfman v. Nutramax Labs., Inc.*, 13-cv-873,
2013 WL 5353043 (S.D. Cal. Sept. 23, 2013)………………………………………………...11

*Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034 (N.D. Cal. 2010)……………..……..11

*Freeman v. Time, Inc.*, 68 F.3d 285 (9th Cir. 1995)……………………………………....14

*Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999)…………………………………..8

*Gentges v. Trend Micro Inc.*, 11-cv-5574, 2012 WL 2792442 (N.D. Cal. July 9, 2012)…...…..17

*Harmon v. Hilton Grp.*, 11-cv-3677, 2011 WL 5914004 (N.D. Cal. Nov. 28, 2011),
*aff'd sub nom. Harmon v. Hilton Grp., PLC*, 554 Fed. Appx. 634 (9th Cir. 2014)………………14

ii

**TABLE OF AUTHORITIES** (cont.)

*Haskins v. Symantec Corp.*, 13-cv-1834,
2013 WL 6234610 (N.D. Cal. Dec. 2, 2013)…………………………………………..5

*Highway Equip. Co. v. Caterpillar Inc.*, 908 F.2d 60 (6th Cir. 1990)……………………...19

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098 (9th Cir. 2013)……………………...………...15

*Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*,
09-cv-5815, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010) *aff'd*,
487 Fed. Appx. 362 (9th Cir. 2012)……………………………………...……...…..19

*In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030 (N.D. Cal. 2012)……………....4, 12, 14

*In re iPhone 4S Consumer Litig.*, 12-cv-1127,
2013 WL 3829653 (N.D. Cal. July 23, 2013)……………………………...………..18

*In re iPhone Application Litig.*, 844 F. Supp. 2d 1040 (N.D. Cal. 2012)………………………...8

*In re Mattel, Inc.*, 588 F. Supp. 2d 1111 (C.D. Cal. 2008)………………………..……………18

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*,
ML 12-2317, 2012 WL 6062047 (C.D. Cal. Dec. 3, 2012)………………………………...5

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)……………………………………….....5, 11

*In re Toyota Motor Corp. Hybrid Brake Litig.*,
915 F. Supp. 2d 1151 (C.D. Cal. 2013)…………………………………...……...16

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,
Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145 (C.D. Cal. 2010)…………….....4

*Ivie v. Kraft Foods Global, Inc.*, 12-cv-2554,
2013 WL 685372 (N.D. Cal. Feb. 25, 2013)..........................................…15

*Johnson v. Wal-Mart Stores, Inc.*, 544 Fed. Appx. 696 (9th Cir. 2013)………………...15, 16

*Kairy v. Supershuttle Int'l, Inc.*, 08-cv-2993,
2012 WL 4343220 (N.D. Cal. Sept. 20, 2012)……………………………………...21

*Kearns v. Ford Motor Co.*, 567 F.3d 1120 (9th Cir. 2009)……………………………...4

*Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929 (C.D. Cal. 2012)…………...……11

iii

## <u>TABLE OF AUTHORITIES</u> (cont.)

*Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342 (2012),
*as modified on denial of reh'g* (Feb. 24, 2012), *review denied* (May 9, 2012)…………...……..11

*Kushner v. AT&T Corp.*, D046484,
2006 WL 1752316 (Cal. Ct. App. June 28, 2006)……………………………………………..9

*Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310 (2011)………………………….……..14

*Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33 (1994)……………………………..…16

*Maya v. Centex Corp.*, 658 F.3d 1060 (9th Cir. 2011)………………………………………...15

*McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457 (2006)…………………………..7

*Morrison v. TriVita, Inc.*, 12-cv-1387,
2013 WL 1148070 (S.D. Cal. Mar. 19, 2013)……………………………………............…..5

*Norcal Waste Sys., Inc. v. Apropos Tech., Inc.*, 06-cv-3410,
2006 WL 2319085 (N.D. Cal. Aug. 10, 2006)………………………………………….21-22

*Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214 (1999)…………………….17

*O'Connor v. Uber Technologies, Inc.*, 13-cv-3826,
2013 WL 6354534 (N.D. Cal. Dec. 5, 2013)………………………………….……..4, 6, 7, 19

*Peralta v. Hilton Hotels Corp.*, D039510,
2003 WL 996217 (Cal. Ct. App. Mar. 11, 2003)…………………………………………..…12

*Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909 (N.D. Cal. 2013)……………………..……...8

*Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953 (2003)……………………………..…9

*Roling v. E\*Trade Sec. LLC*, 860 F. Supp. 2d 1035 (N.D. Cal. 2012)………………………20-21

*S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861 (1999).....................8, 9

*Samet v. Procter & Gamble Co.*, 12-cv-1891,
2013 WL 3124647 (N.D. Cal. June 18, 2013)……………………………………..……...15

*Sawyer v. Mkt. Am., Inc.*, 190 N.C. App. 791 (2008)…………………………………..…19

*Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327 (2002)……………………….……...6, 8, 12

iv

## **TABLE OF AUTHORITIES** (cont.)

*Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036 (C.D. Cal. 2008),
*aff'd sub nom. Spiegler v. Home Depot USA, Inc.*, 349 Fed. Appx. 174 (9th Cir. 2009)…..…..….9

*Stocco v. Gemological Inst. of Am., Inc.*, 12-CV-1291,
2013 WL 76220 (S.D. Cal. Jan. 3, 2013)…………………………….….……………...17

*Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011)……………………………….…….17

*Sutcliffe v. Wells Fargo Bank, N.A.*, 283 F.R.D. 533 (N.D. Cal. 2012)……………….....…..18

*Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 13-cv-7431,
2014 WL 211462 (C.D. Cal. Jan. 9, 2014)…………………………………………....16

*United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772 (9th Cir. 2009)………………..21

*Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097 (9th Cir. 2003)………………...……….…...…...4

*Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285 (S.D. Cal. 2003)…………………………10-11

*Von Koenig v. Snapple Beverage Corp.*, 713 F. Supp. 2d 1066 (E.D. Cal. 2010)……..…..…….4

*Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011)………………..……..…..18

*Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466 (2006)…………………………………..8-9

*Williams v. Gerber Prods. Co.*, 552 F.3d 934 (9th Cir. 2008)……………………….…...11

*Wolschlager v. Fid. Nat. Title Ins. Co.*, 111 Cal. App. 4th 784 (2003)…………..…………..20

*Wright v. Adventures Rolling Cross Country, Inc.*, 12-cv-982,
2012 U.S. Dist. LEXIS 104378 (N.D. Cal. May 3, 2012) (not available on Westlaw)………18-19

## STATEMENT OF ISSUES TO BE DECIDED (Civil L.R. 7-4(a)(3))

The issues to be decided in Defendant's Motion are:

1)   Whether the fraud-based allegations of the Amended Complaint satisfy the pleading requirements of Rule 9(b).

2)   Whether Plaintiff has stated claims under the unfair, fraudulent and unlawful prongs of the Unfair Competition Law, California Business and Professions Code § 17200, *et seq.*

3)   Whether Plaintiff has stated a claim under § (a)(5), (9), (13), (14) and/or (16) of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.*

4)   Whether Plaintiff has alleged an injury as a result of Defendant's misconduct.

5)   Whether Plaintiff has alleged that the misrepresentations at issue were conceived, reviewed, approved or otherwise emanated from Defendant's headquarters in California and, therefore, Plaintiff has standing to assert her claims under California's Unfair Competition Law and Consumers Legal Remedies Act.

6)   Whether the payment terms of Defendant's service are barred by the parol evidence rule.

Response to Motion to Dismiss Amended Complaint
**3:14-cv-113-EMC**

## **INTRODUCTION**

Defendant Uber Technologies, Inc. ("Defendant" or "Uber") offers a mobile phone application that provides consumers with the means to obtain transportation services from third party taxi and other transportation providers. Plaintiff brings this action on behalf of herself and a class of similarly situated individuals subjected to Uber's illegal and deceptive practice of misrepresenting on its website and app that a "gratuity" will be automatically added for the driver at a set percentage of the metered fare when, in fact, Uber did not remit to the driver the full amount of gratuity represented. Instead, Uber kept a substantial portion of this charge for itself as its own additional revenue and profit on each ride arranged and paid for by consumers.

Plaintiff does not make this allegation "on information and belief," but rather asserts it as fact – a fact she looks forward to proving at the appropriate time. Uber's insistence that it did not engage in the conduct alleged is simply wrong and, in any event, not the proper grounds for a Rule 12(b)(6) motion to dismiss. Uber's other primary argument in its motion to dismiss – its reliance on *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327 (2002) – is equally misplaced. Unlike in *Searle*, which involved the imposition of a disclosed "service charge," Uber specifically represented to consumers that the 20% gratuity charge is "for the driver." This statement is unequivocally false as Uber retains a portion of this charge. By doing so, Uber is charging an *undisclosed* service fee. This is false advertising under any definition. It is no different than a charity scam in which the perpetrator solicits donations for a charitable cause, but does not remit those donations to the intended recipient. Under Uber's theory of both liability and damages, such conduct would not amount to fraud because there was no deception regarding the "total cost" paid by the consumer. Such a position is untenable and, as shown below, not supported by the law.

The remaining bases of Uber's motion to dismiss are equally flawed. For example, although Plaintiff alleged the exact contents of the misrepresentations at issue, the source of those misrepresentations, the date she was subjected to them and why they were false, Uber claims Plaintiff has not pled her fraud-based claims with sufficient particularity. Plaintiff also specifically alleged that these misrepresentations were prepared, approved and otherwise

1

emanated from Uber's California offices, website and servers.  Ignoring these allegations, Uber claims that Plaintiff has no standing to assert her California statutory claims notwithstanding a choice-of-law provision in its own terms of use dictating that California law applies, which Uber previously relied upon in successfully moving this case from Illinois to California.  As shown below, all of Uber's remaining arguments are similarly flawed in that they either misstate or ignore the allegations of the Amended Complaint or have no basis under the law.  Accordingly, Uber's motion to dismiss should be denied.

## FACTUAL BACKGROUND

Uber offers a mobile phone application or "app" that allows consumers to summon, arrange and pay for taxi rides electronically with their mobile phones.  Amended Complaint ("Amend. Cmplt.") ¶¶ 1, 10.  Payment for transportation arranged through Uber's app is made via consumers' credit card accounts, after the consumer provides the necessary credit card account information to Uber.  *Id.*  On its website and on its app Uber represented its "Hassle-free Payments" as follows: "We automatically charge your credit card the metered fare + 20% *gratuity*." (italics added).    *Id.* ¶ 11.  Uber further represented that the gratuity is automatically added "for the driver." *Id.*  Similarly, when consumers, including Plaintiff and the class, arranged for rides on Uber's app, the text of the app represented to those consumers that a 20% *gratuity* will be automatically added to the metered fare.  *Id.*  Uber, however, did not remit to the driver the full amount of the charge that it represented to consumers was a "gratuity." *Id.* ¶ 13.  Instead, Uber kept a substantial portion of this charge for itself as its own additional revenue and profit on each ride arranged and paid for by consumers.  *Id.*

Uber's representations to consumers, including Plaintiff and the class, that the charge that is automatically added or included in the fare for "gratuity" is false, misleading and likely to deceive members of the public.  *Id.* ¶ 14.  Indeed, the term "gratuity" suggests a sum paid to the driver in recognition of the transportation service that is distinct and different from the actual fare.  *Id.*  Otherwise, there is no reason to make a distinction between the "metered fare" and the "gratuity," as Uber took care to do with emphasis and repetition in its advertisements.  *Id.*  By retaining a substantial portion of the so-called "gratuity," Uber effectively increased the

"metered fare." *Id.* This is false advertising. *Id.*

On September 9, 2012, Plaintiff arranged and paid for taxi cab rides in Chicago, Illinois using Uber's app and was charged and paid 20% over and above the stated "metered fare" in reliance upon Uber's representation that this additional 20% charge was a "gratuity" and the understandable belief that it was thus different in character and purpose from the stated "metered fare" to which she had agreed and which she paid. *Id.* ¶ 15. Consistent with its practice, Uber retained for itself a substantial portion of the 20% so-called "gratuity." *Id.* Plaintiff was thus misled and proximately caused to pay sums greater than the "metered fare" for taxi cab rides based upon Uber's misrepresentation that all of the additional 20% charge over and above the "metered fare" was a "gratuity." *Id.* ¶ 16. But for Uber's misrepresentations Plaintiff would not have agreed to or paid Uber the full amount that Uber charged her. *Id.*

Plaintiff alleges that Uber's misrepresentations and omissions constitute an unfair, unlawful and fraudulent business practice in violation of the Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* ("UCL"), an unfair method of competition and unfair or deceptive practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") and a breach of contract. *Id.* ¶¶ 25-65. The deceptive practices described above were conceived, reviewed, approved and controlled from Uber's headquarters in San Francisco, California. *Id.* ¶ 6. The misrepresentations and omissions described above were also contained on Uber's website and mobile phone application, which are maintained in California. *Id.* When Plaintiff and putative class members used Uber's services those transactions, including the unlawful billing and payment for those services, were processed on Uber's servers in San Francisco, California. *Id.* At the time of Plaintiff's transactions, Uber's terms and conditions for its service also contained a choice-of-law provision providing that California law shall govern. *Id.* ¶ 7.

## ARGUMENT

### I.  Plaintiff's Fraud-Based Allegations Satisfy Federal Rule of Civil Procedure 9(b)

Uber's assertion that Plaintiff has not pled fraud with particularity is baseless. "A pleading is sufficient under Rule 9(b) if it identifies the circumstances constituting fraud so that a

3

1    defendant can prepare an adequate answer from the allegations." *In re Toyota Motor Corp.*

2    *Unintended Acceleration Mktg., Sales Practices, & Products Liab. Litig.*, 754 F. Supp. 2d 1145,

3    1171 (C.D. Cal. 2010).  This standard is satisfied if the plaintiff alleges "the who, what, where,

4    and how of the misconduct charged." *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030,

5    1037 (N.D. Cal. 2012), *quoting Vess v. Ciba-Geigy Corp.*, 317 F.3d 1097, 1106 (9th Cir. 2003).

6        Here, Plaintiff alleged the specific false statements at issue (the "what") and quoted them

7    verbatim in the Amended Complaint.  *See* Amend. Cmplt. ¶ 11 ("We automatically charge your

8    credit card the metered fare + 20% *gratuity*."  "20% gratuity is automatically added for the

9    driver," and "a 20% *gratuity* will be automatically added to the metered fare").  Plaintiff also

10   identified the source of these statements (Uber's website and app), when Plaintiff was subjected

11   to them (September 9, 2012) and why they were false and/or deceptive (because Uber does not

12   pay the full amount it represented as a gratuity to the driver).  *Id.* ¶¶ 11, 13-15.  Contrary to

13   Uber's assertion, Plaintiff also alleged that she relied on these very statements and that she would

14   not have paid the full amount Uber charged her but for these misrepresentations.  *Id.* ¶¶ 15-16.

15   These allegations are more than sufficient to satisfy Rule 9(b).  *See In re Toyota Motor Corp.*,

16   754 F. Supp. 2d at 1172 (finding similar allegations sufficient under Rule 9(b)); *Von Koenig v.*

17   *Snapple Beverage Corp.*, 713 F. Supp. 2d 1066, 1077 (E.D. Cal. 2010) (same); *see also*

18   *O'Connor v. Uber Technologies, Inc.*, 13-cv-3826, 2013 WL 6354534, *17 (N.D. Cal. Dec. 5,

19   2013) (finding similar allegations – including that "Uber advertises 'on its website and in

20   marketing materials, that gratuity is included and there is no need to tip the driver'" – were

21   sufficient to satisfy Rule 9(b)).

22       Uber's reliance on *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) is

23   misplaced.  First, the plaintiff in *Kearns* failed to "specify what the television advertisements or

24   other sales material specifically stated."  *Id.* at 1126.  Here, as noted above, Plaintiff identified

25   the specific false statements and quoted them verbatim in the Amended Complaint.  Second,

26   unlike in *Kearns*, Plaintiff alleged which statements she relied upon in making her decision to

27   use Uber's service.  *See* Amend. Cmplt. ¶¶ 11, 15 (identifying content and source of specific

28   statements and alleging that she used Uber's service "in reliance upon Uber's representation that

1   this additional 20% charge was a 'gratuity' and the understandable belief that it was thus

2   different in character and purpose from the stated 'metered fare' to which she had agreed and

3   which she paid.").

4          Even if Plaintiff did not identify the source of the misrepresentations she relied upon or

5   that she actually viewed them (she does), Rule 9(b) would still pose no obstacle because

6   "[s]hortly after *Kearns,* the California Supreme Court held that … plaintiffs can state a UCL

7   claim for a fraudulent advertising campaign *without* demonstrating that they actually viewed any

8   specific advertisement." *Haskins v. Symantec Corp.*, 13-cv-1834, 2013 WL 6234610, *4 (N.D.

9   Cal. Dec. 2, 2013) (emphasis in original), *citing In re Tobacco II Cases*, 46 Cal. 4th 298, 327

10  (2009) (holding that a plaintiff does not "need to demonstrate individualized reliance on specific

11  misrepresentations to satisfy the reliance requirement" of the UCL).

12         Moreover, the misrepresentations alleged by Plaintiff, whether they were on Uber's

13  website or its app, were substantively identical in that they all represented that a 20% "gratuity"

14  will be automatically added to the metered fare.  Plaintiff unequivocally alleged that she relied

15  on such a representation in using and paying for Uber's service.  *See* Amend. Cmplt. ¶¶ 11, 15.

16  And, while Plaintiff alleged much more, "[i]t suffices for plaintiffs to provide examples of

17  advertisements similar to those they saw as long as all the advertisements convey the core

18  allegedly fraudulent message."  *In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales*

19  *Practices Litig.*, ML 12-2317, 2012 WL 6062047, *15 (C.D. Cal. Dec. 3, 2012) ("By identifying

20  a clear common message in the advertising campaign and identifying numerous examples that

21  repeat this message, plaintiffs have adequately notified defendants of the 'who, what, when,

22  where and how of the misconduct charged.'"); *see also Bronson v. Johnson & Johnson, Inc.*, 12-

23  cv-4184, 2013 WL 5731817, *6 (N.D. Cal. Oct. 22, 2013) ("The [complaint] does not allege the

24  specific date on which Bronson visited the website or purchased the antioxidant product, but

25  *Kearns* did not establish such a requirement."); *Morrison v. TriVita, Inc.*, 12-cv-1387, 2013 WL

26  1148070, *5 (S.D. Cal. Mar. 19, 2013) ("Although [plaintiff] does not specifically state which

27  statements she found material to her decision to purchase Nopalea, that omission is not fatal

28

5

because the promotional materials conveyed a common allegedly fraudulent message (namely, that Nopalea is a cure-all).").

For these reasons, Plaintiff's allegations more than satisfy Rule 9(b).[1]

## II.    Plaintiff Has Stated a Claim Under the "Fraudulent" Prong of the UCL

Plaintiff has stated a claim under the "fraudulent" prong of the UCL because Uber's misrepresentations regarding its "gratuity" charge would likely deceive a reasonable consumer. In fact, this Court reached this same conclusion in the related case of *O'Connor v. Uber Technologies, Inc.*, 13-cv-3826, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013), in which it found the very same allegations made it "plausible that a reasonable consumer would likely be deceived" for purposes of stating a claim under the "fraudulent" prong of the UCL. *Id.* at *17.

Despite this Court's holding in *O'Connor*, Uber asserts that *Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327 (2002) requires dismissal of Plaintiff's UCL claims. Uber is wrong and *Searle* is factually distinguishable in several material respects. In *Searle*, the defendant hotel charged its guests a 17% "service charge" on room service orders. *Id.* at 1330. The plaintiff in *Searle* claimed that this billing practice was deceptive because the hotel did not disclose to its guests that this service charge was remitted to the server. *Id.* In dismissing the plaintiff's claim under the "fraudulent" prong of the UCL, the *Searle* court found that the hotel had no duty to "advise its guests as to how it compensates its employees." *Id.* at 1335.

Here, Uber did not charge Plaintiff a general (and disclosed) "*service* charge." Rather, Uber represented to Plaintiff and class members that they will be charged only two components of the transaction: the actual metered fare, plus a 20% "*gratuity*." This distinction is significant. Whereas a "service charge" indicates the payment of a "premium" or other fee with which "the patron has no legitimate interest in what the [defendant] does," *id.* at 1334, the term "gratuity" indicates a sum paid to the driver that is distinct and different from the actual fare or other fees. The *Searle* court acknowledged this distinction. *Id.* at 1335 ("Because the service charge is

---

[1] Uber also asserts – without any support – that Plaintiff's allegations were "apparently" made on information and belief. This assertion is baseless. Not a single allegation in the Amended Complaint was made on "information and belief."

**Plaintiff's Response to Motion to Dismiss**
**3:14-cv-113-EMC**

mandatory and because the hotel is free to do with the charge as it pleases, the service charge is simply not a gratuity….").  As did this Court.  *See O'Connor*, 2013 WL 6354534, *10 ("The Court rejects Defendants' argument that the included gratuity charged by Uber is the equivalent of a mandatory 'service charge'….").[2]  Indeed, Uber went one step further and affirmatively represented to consumers that the 20% gratuity charge was "for the driver," which was unequivocally false.

Plaintiff's allegations are, if anything, more akin to those in *Aron v. U-Haul Co. of California*, 143 Cal. App. 4th 796 (2006).  In *Aron*, the plaintiff alleged that U-Haul violated the fraudulent prong of the UCL by charging a $20 "fueling fee" to consumers who returned a rental truck with less fuel than when it was rented even though U-Haul did not actually replace the fuel. *Id.* at 800-01.  In rejecting the same argument that Uber advances here – "that what [U-Haul] does with the fuel charges is of no concern to the customers" – the *Aron* court noted that the plaintiff  "alleged facts sufficient to show that U–Haul's representations would be misleading to a reasonable consumer because there is no connection between the imposition of a fee or cost and whether the customer has in fact refueled the vehicle." *Id.* at 806-07.  The same reasoning applies here.  More so, in fact, since there is not only a lack of any connection between the "gratuity" charge and the hidden fee collected by Uber, but also an affirmative statement that such a charge is "for the driver" when it is really "for Uber."[3]

For these reasons, Plaintiff states a claim under the "fraudulent" prong of the UCL.

---

[2] Undoubtedly for this reason, Uber goes to great lengths in its motion to avoid characterizing the "gratuity" charge at issue as a "gratuity," but rather repeatedly refers to it as the "20% charge" or "mandatory charge."  *See* Uber's Motion to Dismiss ("Uber's MTD"), pp. 9-12.

[3] Contrary to Uber's assertion, disclosing the "total" amount charged to consumers does not insulate a defendant who lies about what that charge was for.  *See, e.g.*, *McKell v. Washington Mut., Inc.*, 142 Cal. App. 4th 1457, 1488 (2006) (finding that plaintiffs stated a cause of action under all three prongs of the UCL where defendant charged borrowers up to $400 for a service that actually cost $20 and retained the difference even though the $400 charge was disclosed on the HUD-1 settlement statement).

**III.    Plaintiff Has Stated a Claim Under the "Unfair" Prong of the UCL**

Plaintiff states a claim under the "unfair" prong of the UCL because Uber's conduct was immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers. *See* Amend. Cmplt. ¶¶ 11-16, 27-28. The test for whether a business practice is unfair,

> involves an examination of [that practice's] impact on its alleged victim, balanced against the reasons, justifications and motives of the alleged wrongdoer. In brief, the court must weigh the utility of the defendant's conduct against the gravity of the harm to the alleged victim....

*Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909, 921 (N.D. Cal. 2013), *quoting S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 886 (1999).

Here, by describing the 20% additional charge as a "gratuity … for the driver," Uber misleads consumers into believing that it is acting as an intermediary for the payment of that gratuity amount to the driver when, in fact, it is nothing more than a ruse to collect a hidden fee for itself. As a result, Plaintiff and others paid money to Uber that they otherwise would not have had they known the true facts. *See, e.g.*, Amend. Cmplt. ¶¶ 16, 29. Plaintiff, therefore, has articulated the harm caused to herself and class members. Uber, on the other hand, fails to identify any countervailing benefit or utility to its practice of misrepresenting the gratuity it charged to consumers, of which there could not possibly be any. Because Uber "offers nothing in the way of 'reasons, justifications, or motives,' or 'utility of [its] conduct,' to weigh against the alleged harm…. the Court cannot say that [its] practices are not injurious to consumers, or that any benefit to consumers outweighs the harm." *Pirozzi*, 966 F. Supp. 2d at 922, *quoting In re iPhone Application Litig.*, 844 F. Supp. 2d 1040, 1073 (N.D. Cal. 2012).[4]

In fact, rather than offering any justification for its conduct that the Court could weigh – as it must – against the harm to consumers, Uber instead relies almost exclusively on *Searle*. But, as set forth above, *Searle* provides no support for Uber's position. Uber's citation to *Wayne*

---

[4] Even if Uber did articulate a justification for its conduct, which it did not, whether "the benefits of [Uber's] conduct may ultimately outweigh the harm to consumers … is a factual determination that cannot be made at this stage of the proceedings." *In re iPhone Application Litig.*, 844 F. Supp. 2d at 1073.

*v. Staples, Inc.*, 135 Cal. App. 4th 466 (2006) is equally misplaced.  In *Wayne*, the defendant sold "declared value coverage" for packages shipped at its stores and charged consumers the price of that service, which was offered through a third party, as well as a markup that it kept for itself. *Id.* at 472, 484.    Unlike here, however, the defendant in *Wayne* specifically disclosed to consumers that it "may surcharge the cost of this product." *Id.* at 483.

The other cases cited by Uber are similarly inapplicable.  *See Plotkin v. Sajahtera, Inc.*, 106 Cal. App. 4th 953, 966 (2003) (granting summary judgment against plaintiff who claimed he was inadequately notified of a charge for valet service because the valet ticket clearly disclosed the fees and, therefore, "provide[d] reasonable and advance notice of the charge"); *Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1041, 1045-46 (C.D. Cal. 2008) *aff'd sub nom. Spiegler v. Home Depot USA, Inc.*, 349 Fed. Appx. 174 (9th Cir. 2009) (dismissing unfair business practice claim because the contract at issue "provide[d] for a total agreed upon fixed-price for the goods and services" and did "not provide that the goods and services in question would be priced on a time and materials basis," and further noting that, unlike here, the plaintiffs did "not identif[y] a single false or misleading oral or written representation allegedly made by defendant"); *S. Bay Chevrolet*, 72 Cal. App. 4th at 887 (lender's use of 365/360 method to calculate interest was not an unfair business practice because the "evidence indicated [that the plaintiff] entered into the disputed loan agreements knowing, understanding, agreeing and expecting that [the lender] would use the 365/360 method to calculate interest.").[5]

For these reasons, Uber's motion to dismiss Plaintiff's claim under the "unfairness" prong of the UCL should be denied.

---

[5] Uber's citation to the unpublished decision of *Kushner v. AT&T Corp.*, D046484, 2006 WL 1752316 (Cal. Ct. App. June 28, 2006) is not only in violation of Civil L.R. 3-4(e), but also of no use to the facts of this case. *Id.* at *11 (finding that phone company's imposition of a $1.50 "Bill Statement Fee" to customers who receive their long distance charges with their monthly local phone bill was not deceptive because "consumers were … placed on adequate notice of the total amount to be charged, and for what purpose.").  *Compare Aron*, 143 Cal. App. 4th at 805 (finding that plaintiff stated a cause of action under the "unfairness" prong of the UCL based on the defendant's misleading description of a $20 charge as a "fueling fee").

9

**Plaintiff's Response to Motion to Dismiss**
**3:14-cv-113-EMC**

**IV.    Plaintiff Has Stated a Claim Under the "Unlawful" Prong of the UCL**

Uber asserts that Plaintiff does not state a claim under the "unlawful" prong of the UCL because she has not properly alleged a violation of any other law that would support such a claim. Uber is wrong. <u>First</u>, Uber claims that Plaintiff has not pled violations of California Civil Code §§ 1572, 1709 and 1710 because she has not alleged any misrepresentations or Uber's intent to deceive. Both of these assertions are belied by the facts alleged here. Uber's representation of this charge as a "gratuity … for the driver" is unequivocally false and Uber knows it was false because its practice was to keep a portion of this charge as an undisclosed fee for itself. *See* Cal. Civ. Code § 1572(1)-(2); Cal. Civ. Code § 1710(1)-(2). Describing the charge as a "gratuity" without disclosing that the full amount of this charge will not be paid to the driver also constitutes "[t]he suppression of a fact, by one who … [gave] information of other facts which are likely to mislead for want of communication of that fact." Cal. Civ. Code § 1710(3); *see also* Cal. Civ. Code § 1572(3). In addition, Uber made a promise (*i.e.*, that it would charge a gratuity "for the driver"), which it "made without any intention of performing," which also constitutes statutory fraud. Cal. Civ. Code § 1710(4). Accordingly, Plaintiff has alleged fraudulent and deceitful conduct under California Civil Code §§ 1572, 1709 and 1710.

Plaintiff also alleged that Uber (i) represented the 20% additional charge as a "gratuity … for the driver" knowing that such representations were untrue and misleading (Amend. Cmplt. ¶¶ 11, 13, 33), (ii) "intend[ed] consumers to rely upon the[se] representations … in arranging and paying for transportation via Uber's app," (*id.* ¶ 12), and (iii) "disseminated these untrue and misleading representations as part of a plan or scheme with the intent not to sell its services as so advertised" (*id.* ¶ 33). These allegations are more than sufficient to plead fraudulent intent. *See, e.g.*, *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1268 (C.D. Cal. 2007) ("Plaintiff has alleged intent to induce reliance by alleging that 'HP intentionally concealed and/or suppressed the above facts with the intent to defraud Plaintiff and the Class.'"); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1306 (S.D. Cal. 2003) (element of fraudulent intent sufficiently pled based on allegation that the "representations and/or omissions were made with the intent not to perform and to induce Plaintiff, as a consumer, to rely and to enter into a

contract"); *Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2010) (allegation that "Defendants had no intention of delivering on the third loan, but wanted to obtain fees, commissions, and the right to seize property under the first two loans" sufficient to plead the element of fraudulent intent).

Second, Uber asserts that Plaintiff failed to allege a violation of California Business & Professions Code § 17500. Uber makes no argument in support of this assertion other than to rely on *Searle* , which, as noted above, is inapplicable. Because, as this Court previously found in *O'Connor*, Uber's marketing would deceive a reasonable consumer under the UCL it also violated California's false advertising law. *See In re Tobacco II Cases*, 46 Cal. 4th at 312, n.8 ("A violation of the UCL's fraud prong is also a violation of the false advertising law (§ 17500 et seq.)."); *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (both UCL claims and § 17500 false advertising claims "are governed by the 'reasonable consumer' test").

Lastly, Plaintiff alleges violations of the CLRA as predicate acts underlying her UCL claim. *See* Amend. Cmplt. ¶ 34. As set forth below, Plaintiff states a claim under various sections of the CLRA and such violations "form the predicate 'unlawful act[s]' for the purposes of a UCL claim." *Klein v. Chevron U.S.A., Inc.*, 202 Cal. App. 4th 1342, 1383 (2012), *as modified on denial of reh'g* (Feb. 24, 2012), *review denied* (May 9, 2012). Uber makes no challenge to the CLRA allegations in its motion to dismiss Count II of the Amended Complaint, which provides further grounds for denying its motion to dismiss this claim.

## V.    Plaintiff Has Alleged Facts Establishing Uber's Liability Under the CLRA

Plaintiff has alleged facts demonstrating Uber's liability under the CLRA. The CLRA is to be "liberally construed and applied to promote its underlying purposes, which are to protect consumers against unfair and deceptive business practices." *Keegan v. Am. Honda Motor Co., Inc.*, 838 F. Supp. 2d 929, 938 (C.D. Cal. 2012). "The standard under both the CLRA and the 'fraudulent' prong of the UCL is the 'reasonable consumer' test, which requires a plaintiff to show that members of the public are likely to be deceived by the business practice or advertising at issue." *Dorfman v. Nutramax Labs., Inc.*, 13-cv-873, 2013 WL 5353043, *10 (S.D. Cal. Sept. 23, 2013). Because both the CLRA and the UCL employ the same "reasonable consumer"

standard, Plaintiff states a claim under the CLRA for all of the reasons outlined above with respect to her UCL claim.[6]

Plaintiff's allegations are also sufficient to state a claim under several discrete provisions of the CLRA, including §§ 1770(a)(5), (9), (13), (14) and (16).  With respect to § 1770(a)(5), Uber is wrong in asserting that Plaintiff has not alleged that Uber misrepresented the characteristics and benefits of its service.  More specifically, Uber represented that, as part of its "hassle free" service, it will collect and automatically remit to the driver a 20% gratuity, thus allowing the consumer to arrange for a taxi without the necessity of pulling out his or her wallet and/or exchanging cash with the driver.  This is a characteristic and benefit of the service provided by Uber, the convenience of which Uber touts on its website and app and which is unequivocally false.  Plaintiff, therefore, has alleged a violation of § 1770(a)(5).  *See, e.g.*, *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d at 1038-39 (denying motion to dismiss CLRA claims under §§ 1770(a)(5) and (14) where plaintiffs alleged that defendant advertised its apps as free or costing a nominal fee with the intent to induce minor children to purchase game currency embedded in the apps); *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 455 (S.D.N.Y. 2010) (plaintiffs stated a claim under §§ 1770(a)(5), (9) and (14) where they alleged that the defendant described a royalty fee as a "pass through," but charged an amount that exceeded the defendant's actual royalty obligations, noting that "[w]here a business misrepresents the fees or prices charged to consumers, it violates California Law by '[r]epresenting that goods or services have ... characteristics, ... uses [or] benefits ... which they do not have.'"), *quoting* Cal. Civ. Code § 1770(a)(5) and *citing Aron*, 143 Cal. App. 4th at 806-07.

Uber claims that § 1770(a)(9) does not apply for the same reason; that is, that "Plaintiff's allegations have nothing to do with Uber's actual service."  Uber's MTD, p. 20.  But Uber's software not only arranges taxi rides for consumers, it also – as Uber repeatedly emphasizes on

---

[6] Uber's reliance on *Peralta v. Hilton Hotels Corp.*, D039510, 2003 WL 996217 (Cal. Ct. App. Mar. 11, 2003), cited in violation of Civil L.R. 3-4(e), is equally unavailing.  As in *Searle*, the plaintiff in *Peralta* brought a claim challenging a hotel's imposition of a general "service charge" on its room service.  For the same reasons set forth above with respect to the *Searle* case, the decision in *Peralta* does not apply here.  *See* Section II, above.

its website and app – provides a convenient payment method, which does not require the exchange of any cash or remuneration with the driver, but rather is performed automatically by Uber. This is an integral part of the service Uber provides. Part and parcel with this service was Uber's representation that it will automatically remit a 20% gratuity to the driver when it had no intent to remit that payment as advertised. This aspect of Uber's service, therefore, violated § 1770(a)(9). *See Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1076-77 (C.D. Cal. 2009) (denying motion to dismiss claims under §§ 1770(a)(9) and (14) where plaintiff alleged that the defendant "fail[ed] to disclose [the manner in which] it allocates payments" in connection with purchases under a credit card promotion); *see also Blessing*, 756 F. Supp. 2d at 455.

Plaintiff's allegations also fall within § 1770(a)(13) because Uber's service is, in effect, represented to the public as a free or no fee service when, as noted above, Uber actually is charging a hidden fee. Because Uber hides this fee within another charge (the gratuity) it falsely gives the impression of a lower price for its service (*i.e.*, one that does not involve a fee) when that is simply not the case.

Uber's assertion that Plaintiff has not alleged any misrepresentations regarding the rights, remedies or obligations associated with her transaction – and, therefore, has not alleged a violation of § 1770(a)(14) – ignores the allegations of the Amended Complaint. More specifically, Uber represented to consumers that, by using its service, they have an obligation to pay an additional 20% over and above the metered fare. Uber further promised that it would remit that amount to the driver. Therefore, by using Uber's service a consumer had both the obligation to pay a 20% gratuity and the right to have Uber remit that amount to the driver as it promised. Accordingly, Uber misrepresented both this obligation and right to consumers in violation of § 1770(a)(14). *See Blessing*, 756 F. Supp. 2d at 455 (denying motion to dismiss claim under § 1770(a)(14), finding that "[t]he Royalty Fee certainly imposes an 'obligation' and the alleged misrepresentation with respect to that fee … suggests that the obligation entails covering a 'pass through' of increased royalty obligations when in fact it is a source of additional

and 'substantial revenue.'"); *see also In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d at 1039; *Davis*, 650 F. Supp. 2d at 1076-77.[7]

Lastly, Plaintiff states a cause of action under § 1770(a)(16).  As noted above, Uber represented to consumers that it will charge a 20% gratuity for the driver.  By charging that amount to a consumer's credit card after the completion of the taxi ride, Uber is necessarily indicating to the consumer that that amount will be remitted to the driver when, in fact, that aspect of the transaction is not supplied in accordance with Uber's prior representations.  These allegations are sufficient to bring Uber's misrepresentations under the ambit of § 1770(a)(16).

For all these reasons, Uber's motion to dismiss Plaintiff's CLRA claim should be denied.

## VI.    Plaintiff Has Alleged an Injury Because Uber's Misrepresentations Caused Her To Pay Money She Would Not Have Paid Had She Known That Uber Was Actually Keeping a Portion of the Gratuity As an Undisclosed Fee

Uber asserts that because it disclosed the "total" price of its service, Plaintiff did not suffer any injury as a result of its misrepresentations regarding the nature of those charges. Uber's position is not supported by the law.  "A consumer who relies on … a misrepresentation … can satisfy the standing requirement … by alleging … that he or she would not have bought the product but for the misrepresentation."  *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 330 (2011).  Such an "assertion is sufficient to allege causation.… [and] economic injury." *Id.* As the Ninth Circuit recently explained:

> [P]rice advertisements matter.  Applying *Kwikset* in a straightforward manner, we hold that when a consumer purchases merchandise on the basis of false price information, and when the consumer alleges that he would not have made the

---

[7] None of the cases cited by Uber, on the other hand, are applicable to the facts alleged here. *See Freeman v. Time, Inc.*, 68 F.3d 285, 289-90 (9th Cir. 1995) (affirming dismissal of CLRA claim based on an alleged deceptive representation of winning a prize because the "promotions expressly and repeatedly state the conditions which must be met in order to win" and the "qualifying language appears immediately next to the representations it qualifies and no reasonable reader could ignore it."); *Harmon v. Hilton Grp.*, 11-cv-3677, 2011 WL 5914004, *1, 11 (N.D. Cal. Nov. 28, 2011) *aff'd sub nom. Harmon v. Hilton Grp., PLC*, 554 Fed. Appx. 634 (9th Cir. 2014) (dismissing CLRA claim based on hotel's practice of charging guests $.75 for a newspaper because "these facts were disclosed in the registration card and the sleeve" provided to the plaintiff at check-in and, therefore, "[t]here was no misrepresentation."). Unlike in *Freeman* and *Harmon*, Uber included no disclosure in its advertisements informing consumers that it would not remit the full amount of the gratuity to the driver as promised.

14

purchase but for the misrepresentation, he has standing to sue under the UCL …
because he has suffered an economic injury.

*Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).

Here, Plaintiff has alleged an injury under the standards set forth in *Kwikset* and *Hinojos*. As in those cases, Plaintiff alleged that she would not have agreed to or paid Uber the full amount that it charged her had she known of Uber's misleading representations regarding the "gratuity" charge.  *See* Amend. Cmplt. ¶ 16.  In other words, Plaintiff "alleges that [s]he and class members 'spent money that, absent defendants' actions, they would not have spent,' which constitutes 'a quintessential injury-in-fact.'"  *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 961 (N.D. Cal. 2013), *quoting Maya v. Centex Corp.*, 658 F.3d 1060, 1069 (9th Cir. 2011). Courts in this District "have overwhelmingly found that such allegations are sufficient to establish economic injury."  *Samet v. Procter & Gamble Co.*, 12-cv-1891, 2013 WL 3124647, *3 (N.D. Cal. June 18, 2013) (citing cases); *see also Johnson v. Wal-Mart Stores, Inc.*, 544 Fed. Appx. 696, 697 (9th Cir. 2013) (plaintiff pled injury based on the defendant's misrepresentation of a $9 "recycling fee" with her purchase of a $77 car battery because she "alleged that she would not have paid the additional nine dollar fee if she had known that … Wal–Mart intended to keep the nine dollars for itself."); *Ivie v. Kraft Foods Global, Inc.*, 12-cv-2554, 2013 WL 685372, *4 (N.D. Cal. Feb. 25, 2013) ("The alleged purchase of a product that plaintiff would not otherwise have purchased but for the alleged unlawful label is sufficient to establish an economic injury-in-fact for plaintiff's unfair competition claims.").[8]

---

[8] For this reason, *Boysen v. Walgreen Co.*, 11-cv-6262, 2012 WL 2953069 (N.D. Cal. July 19, 2012), cited by Uber, is easily distinguishable because the plaintiff there did "not allege that had defendant's juice been differently labeled, he would have purchased an alternative juice," but rather "only allege[d] that he purchased and consumed the fruit juices … [with] levels of lead and arsenic … [that] were unsatisfactory to him."  *Id.* at *7.  Here, Plaintiff specifically alleges that she would not have paid the amount charged by Uber had she known Uber kept a portion of it for itself as a hidden fee as opposed to paying it to the driver as promised.  *See* Amend. Cmplt. ¶ 16; *see also Samet*, 2013 WL 3124647, *3 (distinguishing *Boysen* and denying motion to dismiss because "[u]nlike in *Boysen,* Plaintiffs here allege that … they relied on the misleading product labels in purchasing the products, and had they known the truth, they would not have purchased the products….."); *Dodson v. Tempur-Sealy Int'l, Inc.*, 13-cv-4984, 2014 WL 1493676, *10 (N.D. Cal. Apr. 16, 2014) (same).

The cases cited by Uber, on the other hand, are inapposite as they all involved product defects in which none of the alleged defects came to fruition and, more importantly, the plaintiffs failed to allege any misrepresentations regarding the efficacy or safety of the product. *See Tae Hee Lee v. Toyota Motor Sales, U.S.A., Inc.*, 13-cv-7431, 2014 WL 211462, *3, *5 (C.D. Cal. Jan. 9, 2014) (plaintiffs "have not alleged an actual economic injury because they have not had any negative experience with the PCS and have not identified any false representations about the automatic pre-collision braking feature made by [the defendant]."); *Birdsong v. Apple, Inc.*, 590 F.3d 955, 960-62 (9th Cir. 2009) (plaintiffs did not have standing under UCL where they alleged that iPods were defective because they posed a risk of hearing loss but did not actually experience hearing loss themselves and "[did] not allege that Apple made any representations that iPod users could safely listen to music at high volumes for extended periods of time"); *In re Toyota Motor Corp. Hybrid Brake Litig.*, 915 F. Supp. 2d 1151, 1159 (C.D. Cal. 2013) (granting summary judgment against one, but not all, of the named plaintiffs in class action alleging defects in anti-lock braking system ("ABS") because that plaintiff received a software update to his ABS pursuant to a recall announcement that he acknowledged fixed the claimed defect).

Unlike the cases cited by Uber, Plaintiff here alleges a specific misrepresentation – that Uber would collect a "gratuity" to pay to the driver on her behalf that it actually kept for itself. Plaintiff, therefore, did *not* receive what she was promised.  By mischaracterizing its automatic 20% charge as a "gratuity" when it was not one, Uber intended to – and did – trick Plaintiff into paying an undisclosed fee to which she never agreed to pay.  *See Johnson*, 544 Fed. Appx. at 697; *see also Martin v. Heinold Commodities, Inc.*, 163 Ill. 2d 33, 42, 61 (1994) (defendant's use of the term "foreign service fee" to describe a fee that it actually kept for itself falsely gave the impression that the fee was for an expense paid to third parties and, therefore, the "plaintiffs [we]re entitled to recover the amount paid for the foreign service fee as damages … as the deception proximately caused plaintiffs to pay a fee they would not have paid had they known the truth").  Also unlike in the cases cited by Uber, Plaintiff does not rely on a hypothetical injury that may manifest in the future, but rather on an actual loss in the form of money that Plaintiff actually paid to Uber and which she would not have paid but for Uber's

misrepresentations.  Plaintiff was also damaged because Uber's ruse prevented her from making an informed comparison between cost of an Uber-arranged taxi ride and conventionally hailed/dispatched ride at a truly "metered" fare rate and, consequently, paid more for an Uber-arranged ride.  *See* Amend. Cmplt. ¶ 16.

For these reasons, Plaintiff has adequately alleged that she suffered an injury.

**VII.  The UCL and CLRA Apply to Plaintiff's Claims Because the Unlawful Conduct Occurred In and Emanated From California**

Although it successfully moved this case from Illinois to California based on its own terms of use, which specify that California law applies, Uber asserts that Plaintiff has no standing to assert her claims under California law because "[all] Plaintiff alleges regarding California is that Uber has 'its headquarters in San Francisco, California.'"  Uber's MTD, p. 15.  This argument is both wrong and disingenuous.  Plaintiff's additional allegations – in the *very same* paragraph as that cited by Uber above – identify specific wrongful conduct occurring in California, from the conception, review and approval of the deceptive practices to the maintenance of the complained of website and app and even the processing of the unlawful billing and payments.  *See* Amend. Cmplt. ¶ 6.  Uber simply ignores these allegations in its motion, which is why none of the cases it cites have any applicability.[9]

---

[9] *See Cannon v. Wells Fargo Bank N.A.*, 917 F. Supp. 2d 1025, 1055-56 (N.D. Cal. 2013) (dismissing UCL claims where plaintiffs failed to allege that any of the misconduct emanated from the defendant's principal place of business in California); *Stocco v. Gemological Inst. of Am., Inc.*, 12-CV-1291, 2013 WL 76220, *12 (S.D. Cal. Jan. 3, 2013) (dismissing UCL claims where plaintiffs were residents of Italy and failed to allege that defendant engaged in any unfair business practices within California); *Gentges v. Trend Micro Inc.*, 11-cv-5574, 2012 WL 2792442, *6 (N.D. Cal. July 9, 2012) (non-resident plaintiffs lacked standing to pursue UCL and CLRA claims where defendant's server was located outside of California and none of the complained of conduct occurred in California); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 (2011) (a decision made in California to classify certain employees as exempt was insufficient to extend the UCL to non-residents because the "adopt[ion] [of] an erroneous classification policy is not unlawful in the abstract," and only "the failure to pay legally required overtime … is an unlawful business act or practice for purposes of the UCL" and the facts did not indicate that the failure to pay overtime occurred in California); *Norwest Mortgage, Inc. v. Superior Court*, 72 Cal. App. 4th 214, 222 (1999) (holding that UCL did not apply to conduct that occurred outside of California by a defendant whose headquarters and principal place of business was in Iowa).

1    Indeed, where, like here, the offending marketing materials were "conceived, reviewed,

2    approved or otherwise controlled from [the defendant's] headquarters in California" non-

3    residents have standing to assert claims under the UCL and CLRA.  *Wang v. OCZ Tech. Grp.,*

4    *Inc.*, 276 F.R.D. 618, 629-30 (N.D. Cal. 2011).  In fact, scores of cases have found allegations

5    similar to those alleged here sufficient to confer UCL and CLRA standing to non-residents – no

6    doubt the reason Uber intentionally omitted these facts from its motion.  *Id.*; *see also In re*

7    *iPhone 4S Consumer Litig.*, 12-cv-1127, 2013 WL 3829653 (N.D. Cal. July 23, 2013) (denying

8    motion to dismiss non-resident claims under UCL and CLRA because plaintiffs alleged that the

9    defendant's "misleading marketing, promotional activities and literature were coordinated at,

10   emanate from and are developed at its California headquarters"); *Sutcliffe v. Wells Fargo Bank,*

11   *N.A.*, 283 F.R.D. 533, 548 (N.D. Cal. 2012) (non-residents had standing to bring UCL claims

12   based on allegations that the defendant was incorporated in California, received communications

13   emanating from California and were instructed to send payments to an address in California);

14   *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 379 (N.D. Cal. 2010) (California

15   consumer protection laws applied to non-residents because "Defendants are headquartered in

16   California and their misconduct allegedly originated in California"); *In re Mattel, Inc.*, 588 F.

17   Supp. 2d 1111, 1119 (C.D. Cal. 2008) (non-resident plaintiffs had standing to pursue CLRA

18   claims where they alleged that the misrepresentations at issue were "made in reports, company

19   statements, and advertising that are reasonably likely to have come from or been approved by

20   [defendant's] corporate headquarters in California").

21   Uber's reliance on *Wright v. Adventures Rolling Cross Country, Inc.*, 12-cv-982, 2012

22   U.S. Dist. LEXIS 104378 (N.D. Cal. May 3, 2012) (not available on Westlaw) is unavailing.

23   The provision relied upon in *Wright* was not a true choice-of-law provision, but rather stated that

24   the plaintiff-employees shall be deemed residents of California and "subject to California's tax

25   laws and regulations," not California's employment laws.  *Wright*, ECF No. 22, at p. 6.  Even if

26   this were a true choice-of-law provision, the Court held that the plaintiffs would still be unable to

27

28

**Plaintiff's Response to Motion to Dismiss**
**3:14-cv-113-EMC**

assert California statutory claims because *all* of the work at issue occurred *outside* of California. *Id.* at pp. 6-9.[10]

Here, most, if not all, of the misconduct occurred in California, including the conception, review and approval of the misrepresentations, the presentment of those misrepresentations on a California-based website and app and the processing of the unlawful payments. Uber's terms of use also contained a choice-of-law provision providing that California law shall govern. Under the case law cited above, Plaintiff has alleged more than enough facts to support standing under the UCL and CLRA. *See O'Connor*, 2013 WL 6354534, *4 (denying Uber's motion to dismiss non-California putative class members in related case holding that "the presumption against extraterritorial application of a law is rebutted when there is a choice-of-law clause governing the parties' relationship"). For these reasons, Uber's motion to dismiss Plaintiff's UCL and CLRA claims based on lack of standing should be denied.

## VIII. Plaintiff's Breach of Contract Claim Is Not Barred By The Integration Clause Contained in Uber's Terms and Conditions of Use

Uber claims that because the promise to pay a 20% gratuity to the driver was contained on its app and website – and not specifically recited in its terms and conditions of use on that very same website – Plaintiff's breach of contract claim based on that promise is barred by the parol evidence rule. Uber's position is untenable. The terms and conditions cited by Uber specifically applied to a consumer's use of Uber's "Software" (its app) and "Service" (defined as

---

[10] The other cases cited by Uber are also easily distinguishable and have no applicability to the facts alleged here. *See Ice Cream Distribs. of Evansville, LLC v. Dreyer's Grand Ice Cream, Inc.*, 09-cv-5815, 2010 WL 3619884, *8 (N.D. Cal. Sept. 10, 2010) *aff'd*, 487 Fed. Appx. 362 (9th Cir. 2012) (choice-of-law provision did not confer UCL standing to non-resident plaintiff because the provision only "address[ed] under what law the parties' agreement shall be construed," not "the extra-territorial application of" California law); *Highway Equip. Co. v. Caterpillar Inc.*, 908 F.2d 60, 63 (6th Cir. 1990) (refusing to apply Illinois Franchise Disclosure Act ("IFDA") to a franchise in Ohio despite choice-of-law provision in franchise agreement because "[t]he IFDA does not indicate any intention by the legislature to extend the statute to franchises located outside Illinois"); *Sawyer v. Mkt. Am., Inc.*, 190 N.C. App. 791, 794 (2008) (holding "that the North Carolina Wage and Hour Act does not apply to the wage payment claims of a nonresident who neither lives nor works in North Carolina" notwithstanding a North Carolina choice-of-law provision).

the "service supplied to you by the Company"), which necessarily includes the pricing for its service. *See* Terms and Conditions (Doc. 44-1), p. 1 ("In order to use the Service and the associated Software you must agree to the terms and conditions that are set out below."). In fact, the terms and conditions cited by Uber specifically reference the payment terms advertised on Uber's website and "Software" (*i.e.*, those that are at issue in this lawsuit):

> **Payment terms**
>
> Any fees which the Company may charge you for the Software or Service, are due immediately and are non-refundable. This no refund policy shall apply at all times regardless of your decision to terminate your usage, our decision to terminate your usage, disruption caused to our Software or Service either planned, accidental or intentional, or any reason whatsoever. **The Company reserves the right to determine final prevailing pricing** - Please note the pricing information published on the website may not reflect the prevailing pricing.
>
> The Company, at its sole discretion, make promotional offers with different features and different rates to any of our customers. These promotional offers, unless made to you, shall have no bearing whatsoever on your offer or contract. **The Company may change the fees for our Service or Software as we deem necessary for our business. We encourage you to check back at our website periodically if you are interested about how we charge for the Service of Software.**

*Id.*, p. 2 (emphasis added).

The payment terms underlying Plaintiff's breach of contract claim, therefore, are not "extrinsic," but rather were incorporated into the terms and conditions applicable to those very services. *See Wolschlager v. Fid. Nat. Title Ins. Co.*, 111 Cal. App. 4th 784, 790 (2003) ("It is, of course, the law that the parties may incorporate by reference into their contract the terms of some other document."). In fact, this Court recently rejected a virtually identical argument in *Roling v. E*Trade Sec. LLC*, 860 F. Supp. 2d 1035 (N.D. Cal. 2012). In *Roling*, the plaintiffs brought a class action against E*Trade for charging inactivity fees to customers that were not included in E*Trade's Brokerage Customer Agreements ("BCAs"), but rather were only set forth on a fee schedule available on E*Trade's website. In rejecting plaintiffs' argument that the fee schedule was extrinsic and, therefore, should not be considered, this Court found "that the fee schedule was properly incorporated by reference" because "the BCAs clearly identified the

'document' that was being incorporated—*i.e.,* E*Trade's website," which was "easily available" to the contracting parties. *Id.* at 1041-42.

The same is true here. The terms and conditions cited by Uber specifically make reference to the payment terms on Uber's website and "Software." These payment terms are readily available to Uber's customers and are part in parcel of the "service" this agreement intended to cover. In fact, Uber previously asserted – in successfully enforcing this agreement against Plaintiff in her prior Illinois action – that these same terms and conditions "provide the consumer with substantial information regarding Uber's payment provisions." *See* Uber's Memorandum in Support of Motion to Dismiss in *Ehret v. Uber Technologies, Inc.*, 12-CH-36714 (Circuit Court of Cook County, Illinois) at p. 2, attached as Ex. A to the Declaration of Hall Adams in Support of Plaintiff's Request for Judicial Notice, filed contemporaneously herewith. Indeed, in convincing the Illinois court to enforce the choice-of-venue provision contained in these very same terms and conditions based on the very same conduct alleged here Uber asserted that "[t]here can be no dispute that this case arises out of or in connection with Plaintiff's use of Uber's service." *Id.* at p. 4.[11]

Accordingly, Uber's payment terms are not "extrinsic" and, therefore, are not barred by the parol evidence rule. *See Roling*, 860 F. Supp. 2d at 1041-42; *see also Norcal Waste Sys., Inc. v. Apropos Tech., Inc.*, 06-cv-3410 CW, 2006 WL 2319085, *2, *5 (N.D. Cal. Aug. 10, 2006) (denying defendant's motion to dismiss contract claims despite integration clause where license agreement made references to "specifications" and "Software" that were  not recited in the

---

[11] Based on its prior and successful position that Plaintiff's allegations are governed by the provisions of its online terms and conditions, Uber is estopped from asserting here that these same allegations fall outside of or are extraneous to those terms and conditions. To hold otherwise would allow Uber to "claim[] the benefits of a contract while simultaneously attempting to avoid the burdens that contract imposes," which the doctrine of equitable estoppel prohibits. *Kairy v. Supershuttle Int'l, Inc.*, 08-cv-2993, 2012 WL 4343220, *9 (N.D. Cal. Sept. 20, 2012), *quoting Comer v. Micor, Inc.*, 436 F.3d 1098, 1101 (9th Cir.2006); *see also United Nat. Ins. Co. v. Spectrum Worldwide, Inc.*, 555 F.3d 772, 778 (9th Cir. 2009) ("The doctrine of judicial estoppel … was developed to prevent litigants from 'playing fast and loose' with the courts by taking one position, gaining advantage from that position, then seeking a second advantage by later taking an incompatible position.").

agreement, finding that plaintiff could, therefore, prove that the "agreement is not a complete and integrated contract" because of the agreement's "reference to additional documents that are not before the Court"); *Arbitration Between City of Colfax v. Stationary Eng'rs Local 39 Health & Welfare Trust Fund*, 12-cv-281, 2012 WL 1156242, *5-6 (N.D. Cal. Apr. 6, 2012), *appeal dismissed* (July 11, 2012) (holding that arbitrator did not err in considering a separate agreement outside the four corners of the contract at issue because it was incorporated by reference and, therefore, not barred by the contract's integration clause).[12]

## CONCLUSION

For the foregoing reasons, the Court should deny Uber's motion to dismiss.

Dated:  July 9, 2014

Respectfully submitted,

MYRON M. CHERRY & ASSOCIATES LLC
JACIE C. ZOLNA (PRO HAC VICE)

By:  _____/s/ Jacie C. Zolna_____
        Jacie C. Zolna
        Attorney for Plaintiff

MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois  60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279
jzolna@cherry-law.com

---

[12]  Indeed, if the payment terms on Uber's website were unenforceable Uber would have no recourse against a customer who did not pay because, for example, his or her credit card was declined.  In fact, accepting Uber's position would create an entire other class of consumers who paid money to Uber pursuant to unenforceable payment terms.  Uber may want to rethink its position.

**Plaintiff's Response to Motion to Dismiss**
**3:14-cv-113-EMC**

### *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing **Plaintiff's Opposition to Motion to Dismiss Amended Complaint** upon:

Arthur Miles Roberts
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111-4788
arthurroberts@quinnemanuel.com

Stephen A. Swedlow
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661-2510
stephenswedlow@quinnemanuel.com

via the electronic filing system on this 9th day of July, 2014.


_____/s/ Jacie C. Zolna_____