QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (SBN: 090378)
johnquinn@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA  90017-2543
Telephone:      (213) 443-3000
Facsimile:       (213) 443-3100

Stephen A. Swedlow (*Pro hac vice*)
stephenswedlow@quinnemanuel.com
500 W. Madison Street, Suite 2450
Chicago, IL  60661-2510
Telephone:      (312) 705-7400
Facsimile:       (312) 705-7401

Arthur M. Roberts (SBN: 275272)
arthurroberts@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA  94111-4788
Telephone:      (415) 875-6600
Facsimile:       (415) 875-6700

Attorneys for Defendant
Uber Technologies, Inc.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CAREN EHRET,<br><br>   Plaintiff,<br><br>  v.<br><br>UBER TECHNOLOGIES, Inc.,<br><br>   Defendant. | Case No. 3:14-cv-00113-EMC<br><br>**REPLY IN SUPPORT OF MOTION TO DISMISS AMENDED COMPLAINT**<br><br>Judge: Edward M. Chen<br>Hearing: August 14, at 1:30 PM<br>Location: Courtroom 5 |

# TABLE OF CONTENTS

**Page**

TABLE OF CONTENTS ..................................................................................................... ii

INTRODUCTION ............................................................................................................. 1

ARGUMENT ................................................................................................................... 1

I.      Plaintiff Has Failed to Meet the Requirements of Rule 9(b)................................. 1

II.     Plaintiff Fails to State a Claim Under the UCL .................................................. 4

        A.      Plaintiff Cannot Plead That She Has Suffered Harm ................................ 4

        B.      Plaintiff Fails to State a Claim Under the "Fraudulent" Prong of the UCL............. 6

        C.      Plaintiff Fails to State a Claim Under the "Unfair" Prong of the UCL.................... 8

        D.      Plaintiff Has Failed to State a Claim Under the "Unlawful" Prong of the
                UCL.......................................................................................... 8

        E.      The UCL Does Not Apply to Conduct Outside California ................................... 10

III.    Plaintiff Fails to State a Claim Under the CLRA................................................ 12

IV.     Plaintiff Fails to State a Claim for Breach of Contract ....................................... 14

CONCLUSION ................................................................................................................ 15

# TABLE OF AUTHORITIES

**Page**

## Cases

*In re Apple In-App Purchase Litig.,*
   855 F. Supp. 2d 1030 (N.D. Cal. 2012) ...................................................................13

*Aron v. U-Haul Co. of Cal.,*
   143 Cal. App. 4th 796 (2006) .......................................................................................7

*Baggett v. Hewlett-Packard Co.,*
   582 F. Supp. 2d 1261 (C.D. Cal. 2007) .......................................................................9

*Blessing v. Sirius XM Radio Inc.,*
   756 F. Supp. 2d 445 (S.D.N.Y. 2010) ......................................................................13

*Brazil v. Dole Food Co., Inc.,*
   935 F. Supp. 2d 947 (N.D. Cal. 2013) .........................................................................5

*Bronson v. Johnson & Johnson, Inc.,*
   12-cv-4184, 2013 WL 5731817 (N.D. Cal. Oct. 22, 2013) .......................................3

*Chavez v. Blue Sky Natural Beverage Co.,*
   268 F.R.D. 365 (N.D. Cal. 2010) ..............................................................................10

*Davis v. Chase Bank U.S.A., N.A.,*
   650 F. Supp. 2d 1073 (C.D. Cal. 2009) .....................................................................13

*Errico v. Pac. Capital Bank, N.A.,*
   753 F. Supp. 2d 1034 (N.D. Cal. 2010) .......................................................................9

*Fontenberry v. MV Transp., Inc.,*
   984 F. Supp. 2d 1062 (E.D. Cal. 2013) .....................................................................12

*Gustafson v. BAC Home Loans Servicing, LP,*
   SACV 11-915-JST ANX,2012 WL 4761733 (C.D. Cal. Apr. 12, 2012) ..................11

*Haskins v. Symantec Corp.,*
   13-CV-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) ...............................7

*Hinojos v. Kohl's Corp.,*
   718 F.3d 1098 (9th Cir. 2013)......................................................................................5

*Hsu v. OZ Optics Ltd.,*
   211 F.R.D. 615 (N.D. Cal. 2002) ................................................................................9

*Ivie v. Kraft Foods Global, Inc.,*
   12-cv-2554, 2013 WL 685372 (N.D. Cal. Feb. 25, 2013..........................................5

*In re iPhone 4S Consumer Litig.,*
   12-cv-1127, 2013 WL 3829653 (N.D. Cal. July 23, 2013)........................................10

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009) ............................................................................2, 4

*Kwikset Corp. v. Superior Court*,
   51 Cal. 4th 310 (2011) ..............................................................................................5

*Lapiner v. Camtek, Ltd.*,
   No. C 08-01327 MMC, 2011 WL 3861840 (N.D. Cal. Aug. 31, 2011) ....................3

*Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*,
   No. 07-CV-912-IEG (BLM), 2007 WL 3047093 (S.D. Cal. Oct. 16, 2007) .............9

*McKinnon v. Dollar Thrifty Auto. Grp., Inc.*,
   No. 12-4457 SC, 2013 WL 791457 (N.D. Cal. Mar. 4, 2013 .................................12

*Nguyen v. JP Morgan Chase Bank*,
   2012 WL 294936 (C.D. Cal. Feb.1, 2012) ............................................................15

*In re Mattel, Inc.*,
   588 F. Supp. 2d 1111 (C.D. Cal. 2008) .................................................................10

*Morrison v. TriVita, Inc.*,
   No. 12-cv-1387, 2013 WL 1148070 (S.D. Cal. Mar. 19, 2013) ..............................3

*O'Connor v. Uber Techs., Inc.*,
   No. C-13-3826 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ...........2, 3, 4, 5, 7, 10

*In re Oreck Corp. Halo Vacuum & Air Purifiers Mktg. & Sales Practices Litig.*,
   No. ML 12-2317, 2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) ...............................3

*Peralta v. Hilton Hotels Corp.*,
   No. D039510, 2003 WL 996217 (Cal. Ct. App. Mar. 11, 2003) .............................12

*Rosas v. Carnegie Mortgage, LLC*,
   No. CV 11-7692 CAS CWX, 2012 WL 1865480 (C.D. Cal. May 21, 2012) ..........15

*Samet v. Procter & Gamble Co.*,
   No. 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18, 2013) .................5

*Searle v. Wyndham International*,
   102 Cal. App. 4th at 1330 .............................................................5, 6, 7, 8, 9, 14

*Sherman v. The Paul Revere Life Ins. Co.*,
   No. CV 03-5730 DT(PJWX), 2004 WL 4946213 (C.D. Cal. Feb. 17, 2004) ..........14

*Spiegler v. Home Depot U.S.A., Inc.*,
   552 F. Supp. 2d 1036 (C.D. Cal. 2008) ...................................................................8

*In re Stac Elecs. Sec. Litig.*,
   89 F.3d 1399, 1405 (9th Cir. 1996) .........................................................................4

*Sullivan v. Oracle Corp.*,
   51 Cal. 4th 1191 (2011) ....................................................................................11, 12

*Sutcliffe v. Wells Fargo Bank, N.A.*,
   283 F.R.D. 533 (N.D. Cal. 2012) ...................................................................................10

*In re Tobacco II Cases*,
   46 Cal. 4th 298 (2009)................................................................................................2, 3

*In re Toyota Motor Corp.*,
   785 F. Supp. 2d 883 (C.D. Cal. 2011)...........................................................................11

*Vess v. Ciba-Geigy Corp. USA*,
   317 F.3d 1097 (9th Cir. 2003).........................................................................................3

*Von Grabe v. Sprint PCS*,
   312 F. Supp. 2d 1285 (S.D. Cal. 2003)............................................................................9

*In re Wall Data Sec. Litig.*,
   1995 U.S. Dist. LEXIS 19812 (W.D. Wash. Sept. 13, 1995) ......................................3, 4

*Wang v. OCZ Tech. Grp., Inc.*,
   276 F.R.D. 618 (N.D. Cal. 2011) ...................................................................................10

*Wayne v. Staples, Inc.*,
   135 Cal. App. 4th 466 (2006) ..........................................................................................8

## **Statutes**

Cal. Civ. Code § 1572 .............................................................................................................9

Cal. Civ. Code § 1700 .......................................................................................................13, 14

Cal. Civ. Code § 1709 .............................................................................................................9

Cal. Civ. Code § 1710 .............................................................................................................9

Cal. Civ. Code § 3358 .............................................................................................................14

Cal. Bus. & Prof. Code § 17204...............................................................................................4

Cal. Bus. & Prof. Code § 17500...............................................................................................9

Federal Rule of Civ. Proc. 9(b) ...............................................................................1, 2, 3, 4, 9

## INTRODUCTION

Plaintiff's lawsuit is based on the false premise that she has suffered an injury based on what a business chooses to do with the revenue it allegedly receives.  What she essentially seeks is a windfall—a refund of a 20% gratuity, which Uber disclosed in advance and which she agreed to pay, even though she received exactly the transportation services that she bargained for.  What's more, although she alleges she intended this payment to go to the driver, she now seeks to retain that full 20% for herself.  Even if such a claim were actionable under California law, which under controlling precedent it is not, she is not the proper plaintiff to bring it.

Plaintiff's opposition fails to rebut the arguments Uber presented in its motion.  She has failed to meet the particularity requirements of Rule 9(b).   She has failed distinguish the *Searle* case, which holds that a plaintiff has no control over what a company does with the revenue it earns from mandatory charges.  She has failed to allege any actionable injury, because she received exactly what she bargained for, which was transportation services at a disclosed rate.  She fails to establish that California law should apply to her claims.  And with respect to her contract claim, she has changed course and now argues for a contract theory that finds no support in her Amended Complaint.  For these reasons, and the others discussed below, Plaintiff's Amended Complaint should be dismissed in its entirety, with prejudice.

## ARGUMENT

### I.      Plaintiff Has Failed to Meet the Requirements of Rule 9(b)

Plaintiff does not dispute that she must meet Rule 9(b) in order to plead a claim, and instead asserts that her pleading meets the rule's requirements.  *See* Opp. at 3–6.  She is wrong.

In her opposition and complaint, Plaintiff identifies three misrepresentations that she alleges Uber made.  Opp. at 4 (citing SAC ¶ 11 ("'We automatically charge your credit card the metered fare + 20% *gratuity*,'" "'20% gratuity is automatically added for the driver,'" and "the text of the app represents to those consumers that a 20% *gratuity* will be automatically added to the metered fare")).  Rather than separately identifying the details about each of these three misrepresentations, in her brief she groups them together and claims that she has pled sufficient detail for all of them.  Opp. at 4 (claiming the Complaint alleges that Uber made the three

1   misrepresentations on "Uber's website and app" and that Plaintiff saw them on September 9,

2   2012). But the allegations in the Complaint do not support the claims she makes in her brief.

3        Although Plaintiff purports to allege reliance on each of the three alleged

4   misrepresentations, Opp. at 4, in truth it is entirely unclear which of the particular

5   misrepresentations she claims she relied on, SAC ¶ 15 (alleging only that she paid for rides "in

6   reliance upon Uber's representation that this additional 20% charge was a 'gratuity'"). Plaintiff

7   also leaves vague when she saw the alleged misrepresentations, whether it was on September 9,

8   2012, the day she claims to have used the Uber app, or some other time. *See* SAC ¶ 15. For those

9   reasons alone, she fails to meet the requirements of Rule 9(b). *Haskins v. Symantec Corp.*, 13-

10  CV-01834-JST, 2013 WL 6234610 (N.D. Cal. Dec. 2, 2013) (holding plaintiff failed to meet Rule

11  9(b) because she failed to plead reliance on specific advertisements); *see also Kearns v. Ford*

12  *Motor Co.*, 567 F.3d 1120, 1124-27 (9th Cir. 2009) (same).

13       Plaintiff further claims that even if she failed to specifically allege reliance on those three

14  misrepresentations, the law does not require her to do so. Opp. at 5. Plaintiff misstates the law

15  and relies on a case that squarely supports Uber's position. In *Haskins*, the court held that a

16  plaintiff failed to meet Rule 9(b) because she "fails to identify any specific advertisement she saw

17  and relied upon before making her purchase." 2013 WL 6234610, at *4–5. That is precisely what

18  Plaintiff has failed to do here. The language that Plaintiff cites from that case—"the California

19  Supreme Court held that, *at least in some situations*, plaintiffs can state a UCL claim for a

20  fraudulent advertising campaign *without* demonstrating that they actually viewed any specific

21  advertisement"—only applied where "those misrepresentations and false statements were part of

22  an extensive and long-term advertising campaign." *Id.* (quoting *In re Tobacco II Cases*, 46 Cal.

23  4th 298, 327 (2009)) (first italics added, second in original).[1] Plaintiff does not allege the sort of

24

25

26

_____

27   [1] Plaintiff conspicuously replaces the qualifying phrase, "at least in some situations," with an
     ellipses in her brief, drastically changing the meaning of the sentence. Opp. at 5.

28

1  "decades-long campaign" that was at issue in *Tobacco II*, 46 Cal. 4th at 327, and therefore cannot

2  use that exception to avoid pleading specific reliance on particular advertisements.[2]

3       Plaintiff also fails to plead "why" these representations are false.  *Vess v. Ciba-Geigy*

4  *Corp. USA*, 317 F.3d 1097, 1107 (9th Cir. 2003).  Instead, she makes the conclusory allegation

5  that Uber does not remit the full 20% charge to the driver, but fails to provide any explanation of

6  how Uber fails to remit the full charge or any facts providing a foundation for her claim.[3]  SAC

7  ¶ 13.  Plaintiff cannot simply assert that Uber's alleged statement that it remits the gratuity to the

8  driver is false, without alleging the factual basis for her claim.  Failing to explain the factual

9  foundation for a fraud claim is precisely the type of omission Rule 9(b) addresses.  *Lapiner v.*

10  *Camtek, Ltd.*, C 08-01327 MMC, 2011 WL 3861840 (N.D. Cal. Aug. 31, 2011) (applying Rule

11  9(b) and heightened pleading standard of PSLRA and dismissing complaint because, in part, it

12  "include[d] no foundation for plaintiff's allegation that [a] statement was false").

13       Plaintiff's allegations are very similar to those at issue in *In re Wall Data Sec. Litig.*, 1995

14  U.S. Dist. LEXIS 19812, 63-64 (W.D. Wash. Sept. 13, 1995).  In that case, the plaintiff alleged

15  that several of the defendant's representations about the status of its business were false and that,

16  contrary to public statements, the defendant was allegedly "unable to control and manage its

---

18     [2]  Plaintiff's cited cases do not apply because there the plaintiffs pled more detail regarding

19  the misrepresentations they claimed to view.  *In re Oreck Corp. Halo Vacuum & Air Purifiers*
*Mktg. & Sales Practices Litig.*, ML 12-2317, 2012 WL 6062047 (C.D. Cal. Dec. 3, 2012) (holding

20  more generalized allegations satisfied Rule 9(b) where there were *multiple* lead plaintiffs and
complaint alleged which type of advertising (infomercial, online, etc.) each plaintiff had viewed);

21  *Bronson v. Johnson & Johnson, Inc.*, 12-cv-4184, 2013 WL 5731817 (N.D. Cal. Oct. 22, 2013)

22  (plaintiffs alleged they actually viewed and then relied on the written statements on the labeled
products or on the product's website.); *Morrison v. TriVita, Inc.*, 12-cv-1387, 2013 WL 1148070

23  (S.D. Cal. Mar. 19, 2013) (plaintiff alleged personal exposure to specific examples of allegedly
deceptive statements before ultimately relying on the product's labeling claims).

24     [3]  Lacking any allegations to provide a foundation for this claim, the only reasonable
conclusion is that she makes it on information and belief.  This conclusion is supported by the fact

25  that she alleges only that Uber retains a "substantial portion" of the payment, without alleging how

26  much.  Compl. ¶ 15.  Plaintiff's response is that because she does not use the phrase "information
and belief" in the complaint, her allegation should stand.  Opp. at 6 n.1.  But if all plaintiffs could

27  avoid alleging the factual underpinning of their fraud claims by simply avoiding using the phrase,
"information and belief," then Rule 9(b) would be meaningless.

1  operating expenses" and its products were "doing much worse than internally forecast or

2  budgeted." *Id.* (quoting complaint). The court said that "[o]ne is left to wonder, however, what

3  facts have led plaintiffs to conclude that [defendant] was having this problem," and that whatever

4  the "factual basis is [for these allegations], it is not apparent from reading the Amended

5  Complaint." *Id.* That is exactly the problem here. What is the basis for Plaintiff's claim that

6  Uber did not remit the gratuity to her taxi driver, and how could she know whether the full gratuity

7  was remitted? The answer "is not apparent from reading the Amended Complaint[.]" *See id.*

8      Plaintiff's failure to allege the basis for her conclusory allegations strikes at *the* core issue

9  in this lawsuit and at least two of the purposes of Rule 9(b), which are "to protect those whose

10 reputation would be harmed as a result of being subject to fraud charges; and [] to 'prohibit []

11 plaintiff[s] from unilaterally imposing upon the court, the parties and society enormous social and

12 economic costs absent some factual basis." *Kearns*, 567 F.3d at 1125 (quoting *In re Stac Elecs.*

13 *Sec. Litig.*, 89 F.3d 1399, 1405 (9th Cir. 1996)). Before Plaintiff can proceed with her claims of

14 fraud and subject Uber to further litigation, expense, and harm to its reputation, she must allege

15 facts explaining the basis for her conclusory allegation that Uber's representations are false.[4]

16 **II.    Plaintiff Fails to State a Claim Under the UCL**

17      **A.    Plaintiff Cannot Plead That She Has Suffered Harm**

18      Plaintiff's UCL claims should also be dismissed because she has failed to allege, and

19 cannot allege, she "has lost money or property as a result of [the] unfair competition." Cal. Bus.

20 & Prof. Code § 17204; Mot. at 13–14. She received exactly what was promised—transportation

21 services at a disclosed price—and she therefore has not suffered any cognizable injury.

22

23 _____

24      [4]  Plaintiff cites to the Court's opinion in *O'Connor v. Uber Techs., Inc.*, No. C-13-3826

25 EMC, 2013 WL 6354534 (N.D. Cal. Dec. 5, 2013), which held that allegations regarding a
   mandatory charge were sufficient to meet Rule 9(b). *Id.* at *17. But that case is distinguishable;

26 the plaintiffs in *O'Connor* are drivers, who would have a comparatively greater foundation for
   alleging they did not receive gratuities, whereas Plaintiff has not alleged any foundation for her

27 conclusory claim. Further, unlike in *O'Connor*, the allegation regarding gratuities is the only issue
   in this case.

28

1    Plaintiff relies on case law addressing misrepresentations about "sale" merchandise being

2  "marked down from a fictitious 'original' or 'regular' price."  *Hinojos v. Kohl's Corp.*, 718 F.3d

3  1098, 1101 (9th Cir. 2013); *see also Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 317 (2011)

4  (holding plaintiff stated claim by alleging products, which were represented as "Made in USA,"

5  were in fact made elsewhere).  But these cases involve misrepresentations about the purported

6  value of the product that the plaintiffs purchased, and Plaintiff here does not allege that Uber

7  claimed its service was falsely "on sale," or that the transportation services she received were

8  somehow different from what Uber advertised.  In that respect, Plaintiff's allegations are

9  materially different from those at issue in the cases she relies upon.[5]

10   Although Plaintiff cites a portion of the opinion in *Kwikset*, which states that a "consumer

11  who relies on a product label and challenges a misrepresentation contained therein can satisfy the

12  standing required of [the UCL] by alleging . . . that he or she would not have bought the product

13  but for the misrepresentation," 51 Cal. 4th at 330, Plaintiff leaves out the rest of the paragraph,

14  Opp. at 14, which shows that the court was addressing very different claims.  After the sentence

15  that Plaintiff quoted in her brief, Opp. at 14, the court states that the plaintiff had stated a claim

16  because the defendant's statements misrepresented the product as more valuable than "it actually

17  [was]," and so she did not receive what she had bargained for.  *Kwikset*, 51 Cal. 4th at 330.  In

18  other words, there must be some difference between what Plaintiff paid for and what she received.

19  Here Plaintiff alleges she was aware of the 20% charge before she chose to use Uber's app and

20  was apparently satisfied with the transportation services she received.  *See* Compl. ¶ 15.  There is

21  no difference between what she paid for and what she received, and with respect to the gratuity,

22  she has no control over what Uber does with it: as discussed in *Searle*, what Uber does "with the

23  revenue it earns . . . is of no direct concern" to Plaintiff.  *Searle*, 102 Cal. App. 4th at 1334.

24

25   [5]  Opp. at 15, citing *Brazil v. Dole Food Co., Inc.*, 935 F. Supp. 2d 947, 961 (N.D. Cal. 2013)

26  (alleging there was a difference between the product as labeled and product as it actually was);
   *Samet v. Procter & Gamble Co.*, 5:12-CV-01891 PSG, 2013 WL 3124647 (N.D. Cal. June 18,

27  2013) (same); *Ivie v. Kraft Foods Global, Inc.*, 12-cv-2554, 2013 WL 685372, *4 (N.D. Cal. Feb.
   25, 2013) (same).

28

1    Plaintiff herself is not the person who has suffered injury from Uber's alleged retention of

2    a portion of the gratuity, and she has therefore failed to allege any damages flowing from Uber's

3    alleged representations.  Her UCL claim should be dismissed on this basis alone.

4         **B.        Plaintiff Fails to State a Claim Under the "Fraudulent" Prong of the UCL**

5         Uber explained in its motion why the California Court of Appeals' opinion in *Searle v.*

6    *Wyndham International* requires dismissing Plaintiff's UCL claim, Mot. at 8–10, and Plaintiff's

7    attempt to distinguish that case on immaterial factual differences is unpersuasive.

8         Plaintiff attempts to distinguish *Searle* on the basis that the hotel in *Searle* labeled the

9    mandatory charge a "service charge," while Uber allegedly labeled it a gratuity.  Opp. at 6–7.  But

10   that factual distinction does not require a different result because the reasoning behind *Searle*

11   applies equally to the facts alleged here.

12        In *Searle*, the court set out four factors that supported its holding, all of which apply here.

13   Mot. at 8–10.  The court first focused on the fact that there was no alleged deception about the

14   total cost of the service.  *Searle*, 102 Cal. App. 4th at 1330.  The same is true here.  Mot. at 8–9.

15   The court then said that because the charge was mandatory, the hotel was free to do with the

16   charge as it pleased.  *Searle*, 102 Cal. App. 4th at 1335.  Again, the same is true here; Uber's

17   charge is allegedly mandatory.  Mot. at 9–10.  The last two factors were that the consumer's

18   interest in what the hotel does with the funds is mere "curiosity," and that the consumers were free

19   to obtain services elsewhere, as well as to provide as large or small gratuity as they wished.

20   *Searle*, 102 Cal. App. 4th at 1335, 1330.  These factors also apply here.  Mot. at 10.  Those were

21   the critical factors driving the court's opinion—not the particular label placed on the mandatory

22   charge—and Plaintiff has not identified any other rationale for the opinion in *Searle* that would

23   require a different result.

24        Plaintiff appears to argue that the distinction between *Searle* and this case is that Plaintiff

25   alleges Uber deceptively calls its charge a "gratuity" when it is actually a service charge.  Opp. at

26   6–7.  But the plaintiff in *Searle* also alleged deception about the nature of the mandatory charge; it

27   is therefore not a distinction.  Mot. at 11.  In *Searle*, the plaintiff alleged that the hotel deceived

28   consumers in "failing to expressly advise patrons" that the service charge was paid in full to hotel

1    servers and that "the hotel is engaging in a *deceptive practice* which induces patrons to pay

2    gratuities patrons would not otherwise feel obligated to provide."  102 Cal. App. 4th at 1330

3    (emphasis added); *see also id.* at 1334 (stating plaintiff alleges defendant "is tricking consumers

4    into paying servers more than they would otherwise provide"); *id.* at 1335 (acknowledging that

5    plaintiff alleged deceit in "fail[ing] to clearly notify hotel guests").  Both the plaintiff in *Searle* and

6    Plaintiff here allege that the defendant deceived them about the nature of the mandatory charge

7    and to whom it is paid.

8         Plaintiff also relies on another case, *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796

9    (2006), and claims that her allegations are more similar to *Aron* than they are to *Searle*.  Opp. at 7.

10   *Aron* differs for several reasons.  *Aron* held that a plaintiff had successfully stated a UCL claim

11   based on the defendant's practice of charging a "fueling fee" to consumers who returned vehicles

12   with less gas than they originally had, but defendant did not in fact replace the fuel.  143 Cal. App.

13   805–07.  The court in *Aron* actually cited to *Searle* and stated that *Searle* did not control the

14   outcome there because *Searle* involved "a *mandatory* charge which the plaintiff alleged unfairly

15   induced him to alter his tipping policies.  In contrast, the complaint here concerns a charge that U-

16   Haul defends as being *avoidable* by the consumer, and thus not part of the standard cost of

17   service." *Id.* at 806 (emphasis added).  *Aron* therefore is not applicable to mandatory charges like

18   the one at issue here and applies only "avoidable" charges.  *Id.*

19        The reasoning behind the court's opinion in *Searle* applies squarely here, and Plaintiff has

20   failed to identify and material factual distinction that compel a different result.[6]

21

22   _____

23       [6]  Plaintiff also mischaracterizes the Court's opinion in another case involving Uber, arguing
     that the Court held "it 'plausible that a reasonable consumer would likely be deceived' for
24   purposes of stating a claim under the 'fraudulent' prong of the UCL."  Opp. at 6 (quoting
     *O'Connor v. Uber Tech., Inc.*, No. C-13-3826 EMC, 2013 WL 6354534, at * 17 (N.D. Cal. Dec.
25   5, 2013)).  Plaintiff again omits the rest of the sentence.  Opp. at 6.  The Court held it plausible
     that the alleged deception would be "to the detriment of *drivers*[,]" which are the sole plaintiffs in
26   *O'Connor.*  2013 WL 6354534, at * 17 (emphasis added).  The Court did not hold that "a
     reasonable consumer would likely be deceived" to her *own* detriment.  Indeed, that is the crux of
27   Uber's argument above.

28

**C.**      **Plaintiff Fails to State a Claim Under the "Unfair" Prong of the UCL**

For the same reasons discussed above and in Uber's motion, Plaintiff has not stated a claim under the unfair prong of the UCL.  Mot. at 8–10.  Plaintiff's response is that the Court must weigh the alleged harm against the alleged benefit of the defendant's practice, and claims that because Uber's practice harms consumers yet provides no benefit, that Plaintiff has alleged an "unfair" practice under the UCL.  Opp. at 8.  Yet Plaintiff simply assumes her conclusion, that Uber harms consumers.  As discussed above, the *Searle* opinion rejects Plaintiff's conclusion and states that what a company "does with the revenue it receives . . . is of no direct concern to" its customers.  102 Cal. App. 4th at 1334.

Plaintiff also discusses a number of Uber's authorities, but misunderstands their relevance here.  Opp. at 9.  Those authorities stand for the proposition that courts, when evaluating UCL claims, consider whether a defendant deceived consumers regarding the total cost of good or services provided and focus less on the components of that price.  *See, e.g.*, *Wayne v. Staples, Inc.*, 135 Cal. App. 4th 466, 484 (2006) (holding that ambiguity regarding whether total price included a merchant surcharge was not misleading under the UCL because there was a "clear disclosure of the actual price [defendant] would charge its customers"); *see also Spiegler v. Home Depot U.S.A., Inc.*, 552 F. Supp. 2d 1036, 1046 (C.D. Cal. 2008) *aff'd sub nom. Spiegler v. Home Depot USA, Inc.*, 349 F. App'x 174 (9th Cir. 2009) (citing *Searle*, 102 Cal. App. 4th at 1334–35) (dismissing UCL claim because "plaintiffs agreed to pay the contract price irrespective of the components included in that price").  Like in these cases, Uber allegedly disclosed the total cost of the services it provided to Plaintiff, and this fact bears on whether Uber's conduct is actionable.  And just as the court in *Searle* found that "because there is no allegation the [defendant] deceives [consumers] about the costs of its [services]" that this weighed in favor dismissal, the Court should make the same finding here.  102 Cal. App. at 1330.

**D.**      **Plaintiff Has Failed to State a Claim Under the "Unlawful" Prong of the UCL**

Uber established in its Motion that Plaintiff has failed to plead a violation of the unlawful prong of the UCL because she has not alleged facts showing Uber has violated any laws.  Mot. at

12–13.  Plaintiff's response is primarily a rehash of its other arguments and does nothing to rebut Uber's arguments.

First, pleading fraudulent intent is a requirement of the statutes Plaintiff relies upon for her claim under the UCL's unlawful prong.  Mot. at 12.  Not only has Plaintiff failed to properly plead any misrepresentations (as discussed above), but as Uber showed in its Motion, Plaintiff has only made the conclusory allegation that Uber "intends" consumers to rely on its alleged representations, without alleging any *facts* to support that allegation.  Compl. ¶¶ 12, 33, 49, 56.  Although a Plaintiff can aver fraudulent intent generally, "a plaintiff must point to facts which show that defendant harbored an intention" to defraud the plaintiff.  *Mat-Van, Inc. v. Sheldon Good & Co. Auctions, LLC*, No. 07-CV-912-IEG (BLM), 2007 WL 3047093 (S.D. Cal. Oct. 16, 2007) (quoting *Hsu v. OZ Optics Ltd.*, 211 F.R.D. 615, 620 (N.D. Cal. 2002)) (holding conclusory allegation about defendant's intention did not satisfy Rule 9(b)); *Hsu*, 211 F.R.D. at 620 (holding that allegation that defendant "had no intention to be bound by the terms as agreed" failed to meet Rule 9(b)).  Plaintiff's conclusory allegations about fraudulent intent do not meet this standard and the UCL unlawful claim should be dismissed insofar as it is based on Cal. Civ. Code §§ 1572, 1709, and 1710.[7]

Second, Plaintiff fails to allege a violation of Business & Professions Code § 17500.  This claim should be dismissed for the same reasons that the Court should dismiss the UCL claim.  *Searle*, 102 Cal. App. 4th at 1335 (dismissing "claims under the false advertising provision of section 17500 fail for the same reason" as plaintiff's UCL claims).

---

[7]  The cases Plaintiff relies upon are distinguishable.  Opp. at 10–11; *Baggett v. Hewlett-Packard Co.*, 582 F. Supp. 2d 1261, 1267 (C.D. Cal. 2007) (alleging claim for fraudulent concealment, which court acknowledges is subject to lower pleading requirements due to concealment); *Von Grabe v. Sprint PCS*, 312 F. Supp. 2d 1285, 1305-06 (S.D. Cal. 2003) (court found allegations "general and vague" and only found they met Rule 9(b) because of allegations regarding several other misrepresentations that, "taken as a whole," met the rule; no such other allegations are at issue here); *Errico v. Pac. Capital Bank, N.A.*, 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2010) (allegations of intent, "that Defendants had no intention of delivering on the third loan, but wanted to obtain fees, commissions, and the right to seize property under the first two loans," were far more detailed than Plaintiff's conclusory allegations).

1    Third, for the reasons discussion in Uber's motion, Mot. at 18–21, and as discussed below

2    at § III, Plaintiff fails to state a violation of the CLRA, and so the UCL claims under the unlawful

3    prong should be dismissed insofar as it relies on a violation of the CLRA.[8]

4         **E.    The UCL Does Not Apply to Conduct Outside California**

5    Uber established in its motion that the UCL does not apply to Plaintiff's allegations, which

6    involve conduct outside California.  Mot. at 14–18.  In her opposition, Plaintiff argues that her

7    allegations establish sufficient contacts with California to justify applying the UCL and CLRA to

8    her claims, but her allegations of contacts with California are conclusory and she fails to cite

9    relevant authority for her arguments.

10   Plaintiff's primary argument is that the following paragraph from the Amended Complaint

11   permits applying the UCL to her claims, but the allegations are conclusory and insufficient:

12       The deceptive practices alleged herein were conceived, reviewed, approved and
         otherwise controlled from Defendant's headquarters in San Francisco, California.
13       Furthermore, the misrepresentations and omissions alleged herein were contained
         on Defendant's website and mobile phone application, which are maintained in
14       California. When Plaintiff and class members used Defendant's services those
         transactions, including the billing and payment for those services, were processed
15       on Defendant's servers in San Francisco, California.

16   Compl. ¶ 6; Opp. at 17–19.

17   Although Plaintiffs claim that "scores of cases" have found similar allegations sufficient to

18   overcome the presumption against extraterritorial application (and then cite to five cases that are

19   distinguishable on multiple grounds),[9] these are exactly the types of conclusory allegations that

20

21   —————————————

22   [8]   Plaintiff states that "Uber makes no challenge to the CLRA allegations in its motion to
     dismiss," and on that basis seeks denial of this portion of Uber's motion.  Opp. at 11.  Uber, of
23   course, did challenge the CLRA claims, and it would have been duplicative to raise those
     arguments twice, given that the UCL unlawful violation rises and falls with the CLRA claim itself.
24   [9]   *Chavez v. Blue Sky Natural Beverage Co.,* 268 F.R.D. 365 (N.D. Cal. 2010) (allegations of
     misrepresentations were sufficient for *actual* products where the products *originated* in
25   California); *In re Mattel, Inc.,* 588 F. Supp. 2d 1111 (C.D. Cal. 2008) (non-residents had standing
     where defendant introduced *actual* products that were introduced through California ports);
26   *Sutcliffe v. Wells Fargo Bank, N.A.,* 283 F.R.D. 533 (N.D. Cal. 2012) (plaintiff and defendant had
     actual correspondence and contact); *In re iPhone 4S Consumer Litig.,* 12-cv-1127, 2013 WL
27   3829653 (N.D. Cal. July 23, 2013) (denying motion to dismiss where product was manufactured,
         (footnote continued)
28

several courts have held are insufficient to overcome the presumption.  *Gustafson v. BAC Home Loans Servicing, LP*, SACV 11-915-JST ANX, 2012 WL 4761733, at *5–6 (C.D. Cal. Apr. 12, 2012) (holding allegation that "Defendants' scheme was devised, implemented and directed from [defendants'] offices in California" was "too vague to 'plausibly suggest an entitlement to relief' under the UCL"); *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191, 1208 (2011) (holding UCL did not apply to employment-misclassification claim for employees outside California, even where California-based defendant made the decision to misclassify the employees in California); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 (C.D. Cal. 2011) (dismissing UCL and CLRA claims because allegation that "the decision to . . . engage in deceptive marketing was made, in part, in California" lacked "sufficient detail that the point of dissemination from which advertising and promotion literature *that they saw or could have seen* is California").

The California Supreme Court's holding in *Sullivan* applies here.  The plaintiff in *Sullivan* alleged that Oracle, a corporation headquartered in California, had improperly classified the plaintiff and a class of others as independent contractors rather than employees.  51 Cal. 4th at 1194–96.  The plaintiff alleged that the employment classification decision occurred in California, and therefore argued that the presumption against extraterritorial application was overcome.  *Id.* at 1206–09.  But the court held that the place of payment or non-payment of overtime wages was the key fact that would control whether California law applied, not the location where the classification decision was made.  *Id.*  Because the plaintiff had failed to allege the non-payment of wages occurred in California, the allegations were insufficient to apply the UCL.  *Id.*

Applying this rationale, which focuses on the *location of non-payment* as the critical factor for determining whether the UCL applies, it is clear that the nexus of Plaintiff's claim is outside California.  Although plaintiff makes the conclusory allegation that the "deceptive practices alleged herein were conceived, reviewed, approved and otherwise controlled" from California, which as discussed above are insufficiently vague, *Gustafson*, 2012 WL 4761733, at *5–6, the

designed, and produced in California); *Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011) (allegations were sufficient where product was distributed *from* California).

1    court's inquiry should focus on the location of the non-payment, not the location where the alleged

2    policy was adopted. *Sullivan*, 51 Cal. 4th at 1206–09. This makes sense because the alleged

3    misrepresentations regarding gratuity only become misrepresentations once Uber allegedly failed

4    to follow through on its alleged promise to pay the driver the full gratuity, which was allegedly

5    broken only when Plaintiff paid a gratuity *in Chicago* that Uber then failed to remit to a driver *in*

6    *Chicago*. Compl. ¶ 15. Under the controlling precedent in *Sullivan*, which focuses on the location

7    of payment or non-payment, her UCL claim should be dismissed. *See also Fontenberry v. MV*

8    *Transp., Inc.*, 984 F. Supp. 2d 1062, 1067-69 (E.D. Cal. 2013) (holding that because plaintiff

9    failed to plead that non-payment occurred in California, presumption against extraterritorial

10   application was not overcome).

11          Because the CLRA also contains a similar presumption against extraterritorial application,

12   these arguments apply equally to Plaintiff's CLRA claim as well.[10] *McKinnon v. Dollar Thrifty*

13   *Auto. Grp., Inc.*, 12-4457 SC, 2013 WL 791457, at *4 (N.D. Cal. Mar. 4, 2013) (stating

14   presumption applies to CLRA claims).[11]

15   **III.    Plaintiff Fails to State a Claim Under the CLRA**

16          In its motion, Uber cited several cases dismissing both UCL claims and CLRA claims

17   under the same analysis, including a case extending the holding in *Searle* to a CLRA claim. Mot.

18   at 18–19; *Peralta v. Hilton Hotels Corp.*, D039510, 2003 WL 996217, at *7–8, 1 (Cal. Ct. App.

19   Mar. 11, 2003) (unpublished) (affirming denial of leave to amend to add CLRA claim under

20   § 1770(a)(20) and stating "[w]e now apply the principles announced [in *Searle*] and also extend

21   them to the slightly different allegations Plaintiff makes here"). Because Plaintiff's UCL claims

22   should be dismissed, so too should its CLRA claims. *See Peralta*, 2003 WL 996217, at *7–8.

---

23
24          [10]   Although Uber did not explicitly argue in its motion for applying the presumption against
     extraterritorial application to Plaintiff's CLRA claim, Plaintiff briefed this issue with respect to the
25   CLRA in her Opposition, Opp. at 17–19, and therefore no prejudice that would result from ruling
     on this issue.
26          [11]   Though Uber obtained dismissal of Plaintiff's original Illinois claim based on a choice of
27   *venue* clause in Uber's terms and conditions, it would not be inequitable to enforce the limitations
     of California law against her. It was Plaintiff's choice to assert causes of action that do not apply
28   to her out-of-state claim.

In addition, Plaintiff fails to state a claim under each of the statutory provisions she asserts under the CLRA.  Regarding Cal. Civ. Code § 1700(a)(5), Plaintiff fails to allege that Uber "represent[ed] that goods or service have . . . characteristics [or] benefits . . . which they do not have."  *Id.*  As Uber established in its Motion, Plaintiff has no complaints about the transportation services that she received, and her allegations about the 20% gratuity is unrelated to the services actually provided.[12]  Mot. at 19–20.  The same is true for her claim under § 1770(a)(9), which prohibits "[a]dvertising goods or services with intent not to sell them as advertised."  Uber's service encompasses arranging and paying for transportation, and Plaintiff's allegations fall outside the scope of Uber's service.[13]

Plaintiff fails to state a claim under § 1770(a)(13) because she fails to allege that Uber made misrepresentations about the "reasons for, existence of, or amounts of price reductions."  In response, Plaintiff claims that "Uber's service is, in effect, represented to the public as a free or no fee service when, as noted above, Uber is actually charging a hidden fee." Opp. at 13.  But nowhere is this allegation in the complaint.  Further, § 1770(a)(13) involves misrepresentations about the reasons for "price reductions," as when a retailer offers something on "sale" when it is in fact the normal price, and there is no similar allegation about "price reductions" at issue here.

Plaintiff has also failed to state a claim under § 1770(a)(14), which prohibits "[r]epresenting that a transaction confers or involves rights, remedies, or obligations which it does

---

[12]  Plaintiff cites two cases to support her argument that she has stated a claim under § 1170(a)(5), but neither apply to the facts alleged here because both involve excessive fees or hidden costs, and here the total price was undisputedly disclosed.  *In re Apple In-App Purchase Litig.*, 855 F. Supp. 2d 1030, 1039 (N.D. Cal. 2012) (involving allegation that the defendant represented a product as "free" when it was not); *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445, 450 (S.D.N.Y. 2010) (involving allegation that defendant overcharged for royalty costs that were represented as "pass[ed] through" to consumers).

[13]  Plaintiff also cites two cases to support her argument regarding § 1770(a)(9), but those cases also involve excessive fees and hidden costs.  *Davis v. Chase Bank U.S.A., N.A.*, 650 F. Supp. 2d 1073, 1076 (C.D. Cal. 2009) (alleging that defendant's allocation of payments on credit card to new purchases, rather than preexisting purchases, increased credit-card finance charges); *Blessing*, 756 F. Supp. 2d at 450 (involving allegation that defendant overcharged for royalty costs that were represented as "pass[ed] through" to consumers).

1    not have or involve, or which are prohibited by law."  Plaintiff claims that she had an "*obligation*

2    to pay a 20% gratuity and the *right* to have Uber remit that amount to the driver as it promised."

3    Opp. at 13 (emphasis added).  But there is no allegation that the transaction did not "confer[] or

4    involve[]" the obligation for Plaintiff to pay the 20% charge.  And Plaintiff, as discussed above

5    and as set forth in *Searle*, has no "right" to determine what Uber does with the revenue it earns.

6    102 Cal. App. 4th at 1334.  For these reasons, Plaintiff fails to state a claim under the CLRA.

7    **IV.    Plaintiff Fails to State a Claim for Breach of Contract**

8            In its Motion, Uber argued that even if the contract Plaintiff alleged in her complaint was

9    valid and enforceable, Plaintiff could not state a claim for a breach of that contract because she

10   failed to allege any damages.  Mot. at 22 (arguing that "Plaintiff has failed to plead that Uber

11   caused her any damages" and incorporating by reference § II.D).  Plaintiff does not address this

12   argument in her opposition.  *See* Opp. at 19–22 (discussing only the integration clause in Uber's

13   Terms and conditions); *see also id.* at 14–17 (discussing only alleged harm resulting from Uber's

14   alleged misrepresentations and not from Uber's alleged breach of contract).

15           Uber's argument is simple: if Uber had performed its alleged promise to pay the full "20%

16   gratuity" to the driver, Plaintiff would still be in *exactly* the same economic position.  Regardless

17   of whether Uber paid the gratuity to the driver or not, she would have no more or no less money.

18   The alleged failure to "remit [that charge] as a true gratuity as promised," SAC ¶ 64, cannot give

19   rise to a breach-of-contract claim, as "Plaintiff would be in exactly the same position regardless of

20   whether the full 20% charge went to the taxi driver."  Mot. at 14.  "It is well established in the

21   common law, as well as in the California Civil Code, that the maximum recovery on contract

22   claims is limited to the economic equivalent of performance of the contract."  *Sherman v. The*

23   *Paul Revere Life Ins. Co.*, No. CV 03-5730 DT(PJWX), 2004 WL 4946213, at *4 (C.D. Cal. Feb.

24   17, 2004) (dismissing breach-of-contract claim with prejudice) (citing Cal. Civ. Code § 3358

25   ("Except as expressly provided by statute, no person can recover a greater amount in damages for

26   the breach of an obligation, than he could have gained by the full performance thereof on both

27   sides.")).  By Plaintiff's own allegations, she would have gained nothing more if Uber had

28

1    fulfilled the alleged promise it made (i.e., the maximum she can recover is zero), and therefore,

2    her breach-of-contract claim fails.

3        In addition, to counter Uber's argument that the merger clause in Uber's terms and

4    conditions extinguish her contract claim, Plaintiff argues that "'[t]he payment terms underlying

5    Plaintiff's breach of contract claim . . . are not 'extrinsic,' but rather were incorporated into the

6    terms and conditions applicable to" Uber's software and service.  Opp. at 19–20 (citing

7    *Wolschlager v. Fid. Nat. Title Ins. Co.*, 111 Cal. App. 4th 784, 790 (2003)).  But Plaintiff fails to

8    allege this theory *in the complaint*.  Regardless of whether extrinsic pricing terms were

9    incorporated in the Terms and Conditions Uber, the contract that Plaintiff alleges Uber breached is

10   the one allegedly created by Plaintiff's alleged acceptance of Uber's alleged "promise[] that, in

11   exchange for providing its service, it will charge the consumer both the metered fare as well as an

12   additional '20% gratuity.'"  SAC ¶ 61.

13       Only in response to Uber's Motion, in support of which Uber argues that the Terms and

14   Conditions represented "the entirety of any contract she had with Uber," Mot at 21, does Plaintiff

15   argue that those alleged "payment terms" were incorporated by reference into the Terms and

16   Conditions.  That is an improper attempt to "present new allegations absent from" her SAC.

17   *Rosas v. Carnegie Mortgage, LLC*, No. CV 11-7692 CAS CWX, 2012 WL 1865480, at *5 n.5

18   (C.D. Cal. May 21, 2012) (noting that the plaintiffs improperly alleged breaches of different

19   contracts in their brief in opposition to the defendants' motion to dismiss) (citing *Nguyen v. JP*

20   *Morgan Chase Bank*, 2012 WL 294936, at *3 (C.D. Cal. Feb.1, 2012) (noting that a "[p]laintiff

21   cannot defend against a motion to dismiss by relying on new allegations in [its] Opposition that

22   are absent from the current complaint")). The only contract between Uber and Plaintiff is the

23   Terms and Conditions, and because Plaintiff does not allege that Uber breached that contract in the

24   SAC, or that the so-called pricing terms were incorporated into that contract by reference, her

25   breach-of-contract claim fails.

26                                **CONCLUSION**

27       For the foregoing reasons, the Court should grant Uber's Motion to Dismiss and dismiss

28   the Second Amended Complaint in its entirety, with prejudice.

1   DATED: July 23, 2014          QUINN EMANUEL URQUHART & SULLIVAN, LLP

2

3                     By   /s/ Stephen A. Swedlow

4                        Stephen A. Swedlow

5                        Attorneys for Defendant

6                        Uber Technologies, Inc.

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28