1
2
3
4
5                       UNITED STATES DISTRICT COURT
6                       NORTHERN DISTRICT OF CALIFORNIA
7
8    CAREN EHRET,                                No. C-14-0113 EMC
9              Plaintiff,
10        v.                                     **ORDER GRANTING IN PART AND
                                                 DENYING IN PART DEFENDANT'S
11   UBER TECHNOLOGIES, INC.,                    MOTION TO DISMISS**

12             Defendant.                        **(Docket No. 44)**
13   _____/
14                          **I.   INTRODUCTION**

15        Plaintiff Caren Ehret seeks to represent a nationwide class of customers who have hired

16   passenger car service drivers through Defendant Uber Technologies, Inc.'s ("Uber") mobile phone

17   application.  She alleges that Uber charges a 20% fee above the metered fare for each ride that it

18   misrepresents as a "gratuity" that is automatically added "for the driver."  In reality, Plaintiff alleges

19   that a substantial portion of this "gratuity" is retained by Uber as an additional revenue source.

20   Plaintiff asserts claims under the California Unfair Competition Law, Consumer Legal Remedies

21   Act, and for breach of contract.  Pending before the Court is Uber's motion to dismiss all of

22   Plaintiff's claims.  For the following reasons, the Court **GRANTS** in part and **DENIES** in part

23   Uber's motion.

24                       **II.   FACTUAL BACKGROUND**

25        Uber provides a mobile phone application that permits consumers to "summon, arrange and

26   pay for taxi cab rides and other transportation services electronically via their mobile phone."  First

27   Amended Complaint ("FAC") ¶ 10 (Docket No. 40).  Consumers provide payment through the Uber

28   app through credit card information provided by the consumers.  *Id.*  Plaintiff alleges that on its

**United States District Court**
For the Northern District of California

1  website and in its application, Uber represents 'Hassle-free Payments" by stating: "We automatically

2  charge your credit card the metered fare + 20% *gratuity*." *Id.* ¶ 11.  Uber allegedly further

3  represents that the "20 % gratuity is automatically added for the driver." *Id.*  Finally, when rides are

4  arranged through the Uber app, "the text of the app represents to those consumers that a 20%

5  *gratuity* will be automatically added to the metered fare." *Id.*

6       Contrary to its representations, Uber allegedly fails to remit the full amount of the "gratuity"

7  charge to its drivers. *Id.* ¶ 13.  Rather, it "keeps a substantial portion of this additional charge for

8  itself as its own additional revenue and profit on each ride arranged and paid for by consumers." *Id.*

9  Plaintiff contends that Uber's "gratuity" representations are false, misleading, and likely to deceive

10  members of the public insofar as the term "gratuity" suggests a sum paid to the driver that "is

11  distinct and different from the actual fair." *Id.* ¶ 14.  Plaintiff further alleges that by continually

12  misrepresenting the "gratuity" in its advertisements and then keeping a substantial portion of the

13  gratuity, Uber "effectively increases the 'metered fare' and/or is charging an undisclosed fee.  This

14  is false advertising." *Id.*

15       On September 9, 2012, Plaintiff utilized Uber's app to arrange for a taxi cab ride in Chicago,

16  Illinois.  *Id.* ¶ 15.  Plaintiff alleges that she was misled into "paying sums greater than the 'metered

17  fare' for taxi cab rides based upon Uber's misrepresentations that all of the additional 20% charge

18  over and above the 'metered fare' was a 'gratuity.'" *Id.* ¶ 16.  Accordingly, "but for" Uber's

19  misrepresentations, Plaintiff alleges she "would not have agreed to or paid Uber the full amount that

20  Uber charged her and that she paid to Uber." *Id.*

21       Plaintiff asserts five causes of action on behalf of a class.  First, she alleges that the conduct

22  alleged constitutes an unfair business practice in violation of California's Unfair Competition Law

23  ("UCL"), Cal. Bus. & Prof. Code § 17200.  *Id.* ¶¶ 25-30.  Second, she alleges that the conduct

24  constitutes an unlawful business practice in violation of the UCL insofar as the conduct in question

25  violates California Civil Code §§ 1572, 1709, 1710, and 1750 and California Business and

26  Professions Code  § 17500.  *Id.* ¶¶ 31-36.  Third, Plaintiff contends that Uber's actions constitute a

27  fraudulent business practice in violation of the UCL.  *Id.* ¶¶ 37-41.  Fourth, Plaintiff alleges a

28  violation of the Consumers Legal Remedies Act ("CLRA"), Cal. Civ. Code  § 1750, *et seq.*  *Id.*

¶¶ 42-59.  Finally, Plaintiff contends that Uber breached its contract with her and the class by failing to remit the full amount of the collected gratuity to the drivers.  *Id.* ¶¶ 60-65.  Uber has moved to dismiss all of Plaintiffs asserted claims.

### III.   DISCUSSION

Under Federal Rule of Civil Procedure 12(b)(6), a party may move to dismiss based on the failure to state a claim upon which relief may be granted.  *See* Fed .R. Civ. P. 12(b)(6).  A motion to dismiss based on Rule 12(b)(6) challenges the legal sufficiency of the claims alleged.  *See Parks Sch. of Bus. v. Symington*, 51 F.3d 1480, 1484 (9th Cir. 1995).  In considering such a motion, a court must take all allegations of material fact as true and construe them in the light most favorable to the nonmoving party, although "conclusory allegations of law and unwarranted inferences are insufficient to avoid a Rule 12(b)(6) dismissal."  *Cousins v. Lockyer,* 568 F.3d 1063, 1067 (9th Cir. 2009).  While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.' "  *Id.*  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal,* 556 U.S. 662 (2009); *see also Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 556 (2007).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than sheer possibility that a defendant acted unlawfully."  *Iqbal,* 129 S.Ct. at 1949.

Insofar as Plaintiff's claims sound in fraud, her complaint must meet the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009).  Rule 9(b) provides: "In alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake.  Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally."  Fed. R. Civ. P. 9(b).  To satisfy Rule 9(b), the "complaint must 'identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false.'"  *Salameh v. Tarsadia Hotel*, 726 F.3d 1124, 1133 (9th Cir. 2013) (quoting *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc*., 637 F.3d 1047, 1055 (9th Cir. 2011)).  This encompasses the circumstances surrounding reliance.  *See Kearns*, 567 F.3d at 1125 (holding that the complaint did

United States District Court

For the Northern District of California

not meet the standard of Rule 9(b) partly because the plaintiff failed to specify when he was exposed to the allegedly fraudulent advertisements, which ones he found material, and on which ones he relied).

A.    Plaintiff Has Pled Sufficient Detail Under Rule 9(b)

To begin, the Court finds that Plaintiff has pleaded her UCL cause of action with sufficient particularity to satisfy Fed. R. Civ. P. 9(b).  In her FAC, Plaintiff alleges that on September 9, 2012, she used Uber's App to arrange and pay for taxi cab rides in Chicago, IL, and paid 20% over the metered fare "in reliance upon Uber's representation that the 20% charge was a 'gratuity.'"  FAC ¶ 15. She further alleged that on its website and in its application, Uber advertises a "Hassle-free Payment" which automatically charges the consumer the metered fair and 20% gratuity."  *Id.* ¶ 11. She further alleges that"[b]ut for Uber's misrepresentations Plaintiff would not have agreed to or paid Uber the full amount Uber charged her."  FAC ¶ 16.  Despite these allegations, Uber contends that Plaintiff has failed to allege when Uber made the alleged representations, when Plaintiff allegedly saw or heard the statement in question, whether she saw it on the website or in the application, and whether she "specifically relied on it."  Docket No. 44, at 6.

The Court finds that Plaintiff's allegations are sufficiently specific as to when and where Uber made the alleged misrepresentations.  While the FAC does not expressly allege when and where Plaintiff saw the statements, it does allege that on September 9, 2012 she used the App and paid the 20% additional charge in reliance on Uber's representation that it was a "gratuity."  FAC ¶ 15.  The inference is that she knew there was a "20% gratuity" charge and that the source of her knowledge was the App and/or website, if not precisely on September 9, 2012, sometime before then.  Plaintiff has specified the statements on which she allegedly relied.  The Court declines to require Plaintiff to allege the precise web pages viewed and the precise date she viewed the representation.  *See Bronson v. Johnson & Johnson, Inc.*, C 12-04184 CRB, 2013 WL 5731817 (N.D. Cal. Oct. 22, 2013) ("Defendants contend[] that Plaintiffs fail to allege 'which pages of the website' were reviewed, 'when' they were viewed, . . . .  But *Kearns* [*v. Ford Moto Co.*, 567 F.3d 1120 (9th Cir. 2009)] did not require such specific allegations.").  To so require would be unrealistic and needlessly impede access to an important remedial statute.  *See In re Tobacco II Cases*, 46 Cal.

1  4th 298, 328 (2009) ("[W]here, as here, a plaintiff alleges exposure to a long-term advertising

2  campaign, the plaintiff is not required to plead with an unrealistic degree of specificity that the

3  plaintiff relied on particular advertisements or statements.").

4      Similarly, the Court finds that Plaintiff has sufficiently alleged that Uber's

5  misrepresentations were false and misleading and why they were false and misleading.  Specifically,

6  it is alleged that Uber has represented that a 20% gratuity charge is added to each metered fair but

7  that Uber keeps a "substantial" sum for itself.  FAC ¶ 13, 14.  Uber contends that Plaintiff has failed

8  to allege how much is "substantial" and that this allegation is factually incorrect.  Nonetheless, the

9  Court concludes that Plaintiff's allegation is sufficient for purposes of Rule 9(b) and the motion to

10  dismiss stage.  The ultimate question under Rule 9(b) is not whether the allegation has been or likely

11  will be proven, but whether the allegations are "specific enough to give defendants notice of the

12  particular misconduct which is alleged to constitute the fraud charged so that they can defend against

13  the charge and not just deny that they have done anything wrong."  *Bly-Magee v. California*, 236

14  F.3d 1014, 1019 (9th Cir. 2001) (citation omitted)).  The Court concludes that Plaintiff's allegations

15  have provided Uber with sufficient detail to defend against Plaintiff's allegations.

16  B.    <u>Plaintiff Has Stated a Claim under the UCL and CLRA</u>

17      Uber has moved to dismiss the UCL and CLRA claims on a number of bases.  Uber contends

18  that Plaintiffs UCL and CLRA claims fail (1) because the UCL does not apply to non-California

19  residents alleging non-California conduct; and (2) because she has failed to allege standing under

20  either statute.  The Court first addresses Uber's extraterritoriality arguments, then its standing

21  arguments, before addressing the sufficiency of Plaintiff's allegations.

22      1.    <u>Plaintiff's Claims Do Not Require Extra-Territorial Application of Either the UCL or</u>

23          <u>the CLRA</u>

24      California's Supreme Court has made clear that there is a strong presumption against the

25  extra-territorial application of California law.  In *Sullivan v. Oracle Corp.*, 51 Cal. 4th 1191 (2011),

26  the court reiterated this long-held rule:

27          However far the Legislature's power may theoretically extend, we
          presume the Legislature did not intend a statute to be "operative, with
28          respect to occurrences outside the state, . . . unless such intention is

5

**United States District Court**
For the Northern District of California

clearly expressed or reasonably to be inferred from the language of the act or from its purpose, subject matter or history."

*Id.* at 1207 (quoting *Diamond Multimedia Systems, Inc. v. Superior Court*, 19 Cal. 4th 1036, 1059 (1999)) (internal citation and quotation marks omitted). This presumption against the extra-territorial application has been established in California for almost a century. *See N. Alaska Salmon Co. v. Pillsbury*, 162 P. 93, 94 (Cal. 1916). In *Sullivan*, the California Supreme Court made explicit that this presumption applies to the UCL, noting that "[n]either the language of the UCL nor its legislative history provides any basis for concluding the Legislature intended the UCL to operate extraterritorially," and, therefore, the presumption against extraterritoriality "applies to the UCL in full force." *Id.* Simply put, "the UCL does not apply to actions occurring outside of California that injure non-residents." *Ice Cream Distributors of Evansville, LLC v. Dreyer's Grand Ice Cream*, Inc., C-09-5815 CW, 2010 WL 3619884 (N.D. Cal. Sept. 10, 2010), *aff'd*, 487 F. App'x 362 (9th Cir. 2012) (internal citation and quotation marks omitted). Courts have assumed the presumption against extraterritoriality applies equally to the CLRA and, based on the reasoning in *Sullivan*, the Court finds no basis to hold otherwise. *See McKinnon v. Dollar Thrifty Auto. Grp., Inc.*, No. C-12-4457-SC, 2013 WL 791457 (N.D. Cal. Mar. 4, 2013); *In re iPhone 4S Consumer Litig.*, No. C-12-1127-CW, 2013 WL 3829653 (N.D. Cal. July 23, 2013).

However, the critical question presented by Plaintiff's complaint is whether application of the UCL and CLRA in the circumstances alleged actually entails an extraterritorial application of those statutes. Multiple courts – including the California Supreme Court in *Sullivan* – have permitted the application of California law where the plaintiffs' claims were based on alleged misrepresentations that were disseminated from California. In *Sullivan*, the court distinguished the cases of *Weshba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001) and *Clothsrigger, Inc. v. GTA Corp.*, 191 Cal. App. 3d 605 (1997), by noting that, in those cases, "the unlawful conduct that formed the basis of the out-of-state plaintiffs' claims (i.e., fraudulent misrepresentations made to induce consumer transactions), and that justified the application of California law to resolve those claims, occurred in California." *Sullivan*, 51 Cal. 4th at 1208 n.10. In *Weshba*, the California Court of Appeals, in the context of Cal. Bus. & Prof. Code § 17500, rejected the argument that

United States District Court

For the Northern District of California

1   California's unfair business law "cannot support nationwide class certification." *Id.* at 241.  First,

2   the court noted that the defendant (Apple) was a "California corporation" and that the brochures

3   containing the purported misrepresentations "were prepared in and distributed from California." *Id.*

4   at 242.  A rule permitting application of the UCL or CLRA where the alleged fraudulent activity

5   emanated from California is consistent with the California Supreme Court's statement in *In Re*

6   *Tobacco II Cases*, 46 Cal. 4th 298 (2009) that the UCL's focus is "on the defendant's conduct,

7   rather than the plaintiff's damages, in service of the statute's larger purpose of protecting the general

8   public against unscrupulous business practices." *Id.* at 312.

9         Multiple federal district courts have denied motions to dismiss similar claims to those raised

10  in this action on the basis of alleged extraterritorial application of California law.  For example, in *In*

11  *re iPhone 4S Consumer Litigation*, No. C12-1127 CW, 2013 WL 3829653 (N.D. Cal. July 23,

12  2013), plaintiffs asserted, *inter alia*, UCL and CLRA claims against Apple based on alleged

13  misrepresentations regarding the functionality of the iPhone 4's "Siri" feature.  *Id.* at *4.  Judge

14  Wilken noted that "California courts have concluded that 'state statutory remedies may be invoked

15  by out-of-state parties when they are harmed by wrongful conduct occurring in California.'"  *Id.* at

16  *7 (quoting *Norwest Mortg., Inc. v. Superior Ct.*, 72 Cal. App. 4th 214, 224-25 (1999)).  She noted

17  that the Plaintiffs had alleged that that

18           their injuries were caused by Apple's wrongful conduct in false
            advertising that originated in California.  Here, Plaintiffs have alleged
19           that Apple's purportedly misleading marketing, promotional activities
            and literature were coordinated at, emanate from and are developed at
20           its California headquarters, and that all "critical decisions" regarding
            the marketing and advertising were made within the state.

21

22  On this basis, Judge Wilken held that "California's presumption against the extraterritorial

23  application of its statutes therefore does not bar the claims of the out-of-state Plaintiffs, because this

24  principle is 'one against an intent to encompass conduct occurring in a foreign jurisdiction in the

25  prohibitions and remedies of a domestic statute.'"  *Id.* (quoting *Diamond Multimedia Sys.*, 19 Cal.

26  4th at 1060 n.20).  Numerous cases are in accord.  *See TRC & Assocs. v. NuScience Corp.*, No. 2:13-

27  cv-6903-ODW(CWx), 2013 WL 6073004, at *5 (C.D. Cal. Nov. 18, 2013) ("[T]he alleged

28  fraudulent conduct occurred in California.  The Complaint is not based solely on a commercial

United States District Court

For the Northern District of California

transaction outside of California, but is instead based on material misrepresentations originating in California with NuScience, traveling through Florida, and ending up in Ohio with TRC."); *Wang v. OCZ Tech. Group, Inc.*, 276 F.R.D. 618, 630 (N.D. Cal. 2011)  ("Though Wang's allegations of OCZ's California-based conduct are general, they provide a sufficient basis at the pleading stage for the invocation of California law. . . .  [T]he facts alleged are that the misleading marketing, advertising, and product information are 'conceived, reviewed, approved, or otherwise controlled from [OCZ's] headquarters in California.'"); *In re Mattel, Inc.*, 588 F. Supp. 2d 1111, 1119 (C.D. Cal. 2008) ("Plaintiffs have adequately alleged that Mattel and Fisher-Price's conduct occurred, if at all, in – or had strong connections to – California.  Plaintiffs complain of misrepresentations made in reports, company statements, and advertising that are reasonably likely to have come from or been approved by Mattel corporate headquarters in California." (citation omitted)).

   In the FAC, Plaintiff alleges that Uber is a "Delaware corporation with its headquarters in San Francisco, California."  FAC ¶ 9.  It further alleges that:

> The deceptive practices alleged herein were conceived, reviewed, approved and otherwise controlled from Defendant's headquarters in San Francisco, California.  Furthermore, the misrepresentations and omissions alleged herein were contained on Defendant's website and mobile phone application, which are maintained in California.  When Plaintiff and class members used Defendant's services those [sic] transactions, including the billing and payment for those services, were processed on Defendant's servers in San Francisco, California.

*Id.* ¶ 6.  On the basis of these allegations, the Court finds that Plaintiff has alleged a sufficient nexus between California and the misrepresentations which form the basis of Plaintiff's claims. Specifically, allegations that the misrepresentations were developed in California, contained on websites and an application that are maintained in California, and that billing and payment of services went through servers located in California distinguish this case from those relied upon by Uber in its reply brief.  *Compare Cannon v. Wells Fargo N.A.*, 917 F. Supp. 2d 1025, 1055-56 (N.D. Cal. 2013) (allegations that the defendant was headquartered in California were insufficient to plausibly allege that the advertising in question originated from California); *Gustafson v. BAC Home Loans Servicing, LP*, No. SACV 11-915-JST (ANx), 2012 WL 4761733, at *6 (C.D. Cal. Apr. 12, 2012) (finding the single allegation that "Defendants' scheme was devised, implemented and

1   directed from BAC Home Loans Servicing's and Balboa's offices in California" was "too vague to

2   'plausibly suggest an entitlement to relief'"); *In re Toyota Motor Corp.*, 785 F. Supp. 2d 883, 917 &

3   n.26 (C.D. Cal. 2011) (noting that "Plaintiffs have not alleged that marketing decisions about the

4   representations each Plaintiff saw in his or her home country were made in California").

5          Plaintiff has provided sufficient factual allegations from which the Court can plausibly infer

6   that Uber's alleged gratuity misrepresentations emanated from California.  Accordingly, the Court

7   concludes that, for purposes of the motion to dismiss, application of the UCL and CLRA in these

8   circumstances would not constitute extra-territorial application of these statutes and therefore

9   **DENIES** Uber's motion on this ground.

10              2.    Plaintiff Has Sufficiently Alleged Standing Under the UCL and CLRA

11         Uber contends that Plaintiff's CLRA and UCL claims fail because Plaintiff has failed to

12  allege economic harm.  Proposition 64 amended the UCL to require a Plaintiff to demonstrate that

13  she had "lost money or property as a result of [the] unfair competition."  Cal. Bus. & Prof. Code

14  § 17204.  Accordingly, standing under the UCL is far narrower than traditional federal standing

15  requirements: "We note UCl's standing requirements appear to be more stringent than the federal

16  standing requirements.  Whereas a federal plaintiff's 'injury in fact' may be intangible and need not

17  involve lost money or property, Proposition 64, in effect, added a requirement that a UCL plaintiff's

18  'injury in fact' specifically involve 'lost money or property.'"  *Troyk v. Farmers Group, Inc.*, 171

19  Cal. App. 4th 1305, 1348 n.31 (2009).  Similarly, a plaintiff will have standing under the CLRA if

20  she "suffers *any damage* as a result of the use or employment any person of a method, act, or

21  practice declared to be unlawful by Section 1770."  *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107

22  (9th Cir. 2013) (emphasis in original) (quoting Cal. Civ. Code § 1780(a)).  "[A]ny plaintiff who has

23  standing under the UCL's and FAL's 'lost money or property' requirement will, *a fortiori*, have

24  suffered 'any damage' for purposes of establishing CLRA standing."  *Id.* at 1108.

25         In *Kwisket v. Superior Court*, 51 Cal. 4th 310 (2011), the California Supreme Court

26  addressed the UCL's standing requirement in the context of allegedly misleading advertising.

27  There, plaintiff alleged that Kwikset Corporation produced locksets which were falsely represented

28

in advertising to have been "Made in U.S.A." *Id.* at 316. The Court held that there "are innumerable ways in which economic injury from unfair competition may be shown" such as:

> A plaintiff may (1) surrender in a transaction more, or acquire in a transaction less, than he or she otherwise would have; (2) have a present or future property interest diminished; (3) be deprived of money or property to which he or she has a cognizable claim; or (4) be required to enter into a transaction, costing money or property, that would otherwise have been unnecessary.

*Id.* at 323. Further, the Court found that"[n]either the text of Proposition 64 nor the ballot arguments in support of it purport to define or limit the concept of 'lost money or property'" and that it did not "supply an exhaustive list of the ways in which unfair competition may cause economic harm." *Id.* Ultimately, on the facts of *Kwikset*, the Court found the following allegations sufficient to establish standing under the UCL:

> (1) Kwikset labeled certain locksets with "Made in U.S.A." or a similar designation, (2) these representations were false, (3) plaintiffs saw and relied on the labels for their truth in purchasing Kwikset's locksets, and (4) plaintiffs would not have bought the locksets otherwise.

*Id.* at 328. The Ninth Circuit has noted that "*Kwikset* emphasized that Proposition 64 was enacted *not* to eliminate individual consumer suits when the consumer was actually deceived by a misleading advertisement, but rather to stop 'fishing expeditions' by consumers and attorneys who may have never even intended to purchase a product that was being falsely advertised." *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1107 (9th Cir. 2013).

Plaintiff alleges that, but for Uber's "gratuity" misrepresentations, "Plaintiff would not have agreed to or paid Uber the full amount that Uber charged her and that she paid to Uber." FAC ¶ 16. Uber argues this allegation is insufficient to allege that Plaintiff lost money or property for purposes of the UCL. Rather, it argues that Plaintiff received precisely what she bargained for – a "taxi ride at a stated price. Docket No. 44, at 13. Therefore, it contends that "Plaintiff would be in exactly the same position regardless of whether the full 20% charge went to the taxi driver." *Id.* at 14. Relatedly, at the hearing, Uber argued that because the 20% fee allegedly misrepresented as a "gratuity" was a mandatory fee that Plaintiff could not have avoided, how Uber chose to distribute the collected fee was a "mere curiosity" to Plaintiff and, therefore, not an economic injury.

United States District Court

For the Northern District of California

1    The Court finds that Plaintiff has adequately alleged an economic injury.  First, in discussing

2    the "benefit of the bargain" defense upon which Uber relies, the Ninth Circuit has noted that, under

3    *Kwikset*, the defense is "permissible only if the misrepresentation that the consumer alleges was not

4    'material.'"  *Hinojos*, 718 F.3d at 1107.  "A misrepresentation is judged to be 'material' if a

5    reasonable man would attach importance" or "if the maker of the representation knows or has reason

6    to know that its recipient regards or is likely to regard the matter as important in determining his

7    choice of action, although a reasonable man would not so regard it."  *Kwikset*, 51 Cal. 4th at 333

8    (internal citations and quotation marks omitted).  "[T]he materiality of a misrepresentation is

9    typically an issue of fact, and therefore should not be decided at the motion to dismiss stage."

10   *Hinojos*, 718 F.3d at 1107 n.7 (citing *In re Steroid Hormone Product Cases*, 181 Cal.App.4th 145

11   (2010)).  That is the case here.  *Cf. Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 969 (2002) ("For a

12   significant segment of the buying public, labor practices do matter in making consumer choices.")

13   Second, by alleging that she would not have agreed to the full amount that Uber charged her

14   but for Uber's purported misrepresentation, Plaintiff has alleged a sufficiently material

15   misrepresentation.  Contrary to Uber's argument, to obtain standing under the UCL, it is not

16   necessary to allege and prove the plaintiff would not have entered the transaction but for the

17   misrepresentation.  Such but-for causation is only one of the "innumerable" ways of establishing

18   standing identified in *Kwikset*, 51 Cal. 4th at 323.  Economic injury sufficient to support UCL

19   standing exists where the plaintiff "surrender[ed] in a transaction more, or acquire[d] less than he or

20   she otherwise would have."  *Id.*  As Uber acknowledged, a UCL claim is stated when the plaintiff,

21   as a result of a defendant's misrepresentation, did not receive what he or she had bargained for.

22   Reply Br., p. 5.  This makes sense; materiality for purposes of the UCL is defined not in terms of a

23   "but for" cause, but whether a reasonable person "would attach importance" to it.  *Kwikset*, 51 Cal.

24   4th at 333.  Here it is enough that Plaintiff has alleged that but for Uber's misrepresentations, she

25   would not "have agreed to or paid Uber the full amount that Uber charged her and that she paid to

26   Uber."  FAC ¶ 16.

27   Whether Plaintiff had the option of not paying the additional fee (the 20% gratuity) because

28   it was integral to Uber's charge is immaterial to standing under the UCL.  A number of cases are

United States District Court

For the Northern District of California

1   instructive on this point.  In *Blessing v. Sirius XM Radio Inc.*, 756 F. Supp. 2d 445 (S.D.N.Y. 2010),

2   the court interpreted the CLRA's standing requirements.  There, plaintiffs who purchased

3   defendant's satellite digital radio services alleged that the defendant had misrepresented in its

4   customer agreements that a "royalty fee" would be included in the subscription cost and that this

5   charge would be "limited  to the amount necessary to 'pass through' its own increased costs.'"  *Id.* at

6   450.  Instead, Plaintiffs alleged that the royalty fee charged "exceeded the amount of Defendant's

7   increase in royalty obligations."  *Id.*  Plaintiffs asserted a claim under the CLRA, and the Southern

8   District of New York found that plaintiffs could proceed with this claim.  It held that the "California

9   plaintiffs suffered injury by paying a Royalty Fee that was greater than what it would have been had

10  it been calculated as an actual 'pass through' of the fee paid by Defendant.  This states a claim under

11  § 1770(a)(5) [of the CLRA]."  *Id.* at 455.  Importantly, the court did not suggest the payment of the

12  included "royalty fee" was avoidable by the consumer.

13          Similarly, in *Johnson v. Wal-Mart Stores, Inc.*, 544 F. App'x 697 (9th Cir. 2013), plaintiff

14  alleged that Wal-Mart included a $9 fee every time a customer purchased a car battery and

15  misrepresented the fee was required by California law.  In fact, California law did not require the

16  imposition of the fee and Wal-Mart kept the nine dollars for itself.  *Id.* at 697  Plaintiff alleged that

17  "she would not have paid the additional nine dollar fee if she had known that California law did not

18  require her to pay it and that Wal-Mart intended to keep the nine dollars for itself."  *Id.*  The Ninth

19  Circuit found that these factual allegations "permit a reasonable inference that Johnson paid more

20  'than she otherwise would have' if Wal-Mart had not engaged in the alleged misrepresentation."  *Id.*

21          Uber contends that this case is distinguishable on this basis since the fee was not

22  "mandatory" because the customers could opt to not give Wal-Mart the old battery and avoid the

23  fee.  Uber mis-reads *Johnson*.  First, the complaint in that action did not allege that plaintiffs could

24  have avoided the recycling fee by *not* bringing in an old car battery; rather, it alleged that the fee

25  could only be avoided *by bringing in* an old car battery.  Second, and more significantly, the Ninth

26  Circuit in *Johnson* did not find significant (or even mention) the fact that recycling fee was

27  somehow avoidable.  Rather, it simply stated that it was "reasonable to infer that [plaintiff], if

28

1  correctly informed, would not have given Wal-Mart the nine dollar fee in addition to paying

2  seventy-seven dollars for the battery." *Id.*

3       These cases are consistent with longstanding rule that under the UCL even a mandatory

4  charge can be deceptive if it is labeled as something it is not.  For example, in *McKell v. Washington*

5  *Mutual, Inc.*, *supra*, 142 Cal. App. 4th 1457, plaintiff alleged that Washington Mutual had

6  represented in its statements that certain costs of underwriting and wire transfers were included.

7  These fees were "mandatory" insofar as Washington Mutual required home buyers to pay them.

8  Nonetheless, the court found that plaintiff had stated a claim under the UCL's fraudulent prong:

9              Looking at these documents, plaintiffs reasonably would conclude that
              the fees charged were the costs Washington Mutual incurred in
10             providing these services.  The fees charged were substantially above
              Washington Mutual's costs, however. . . .  Washington Mutual's
11             practice of charging its customers more for services than the actual
              cost of those services, with no indication to the customers that they
12             were doing so, may constitute a deceptive business practice within the
              meaning of the UCL, as a reasonable consumer likely would believe
13             that fees charged in connection with a home mortgage loan bore some
              correlation to services rendered.

14

15  *Id.* at 1472; *see also People v. Dollar Rent-A-Car Sys., Inc.*, 211 Cal. App. 3d 119, 129 (1989)

16  (holding that the defendant violated the UCL by charging for the "retail cost" of car repairs in excess

17  of actual repair costs).

18       To hold otherwise would result in perverse outcomes.  Were the UCL to recognize economic

19  injury only where a consumer proves he or she would not have entered the transaction at all would

20  mean that someone who, for example: (1)  bought a computer advertised at a processor speed of

21  2ghz but which actually ran at 1.8ghz; (2) purchased a car advertised as having an engine that ran at

22  250 horsepower when, in fact, it only had 225 horsepower; (3) paid for service in which the seller

23  that falsely represented it included necessary transaction fees; or (4) donated to a charity which

24  falsely representing that a certain percentage of the funds would go to beneficiaries as opposed to

25  overhead, would be left with no remedy under the UCL despite being defrauded by the defendant if

26  she cannot prove she would not have entered the transaction at all.  The economic injury

27  requirement of Proposition 64 was not intended to gut the UCL; it was intended to stop drive-by

28  lawsuits and "fishing expeditions" by attorneys representing clients who never intended to purchase

United States District Court

For the Northern District of California

the product.  *See Hinojos*, 718 F.3d at 1107; *see also Kwikset*, 51 Cal. 4th at 321 ("While the voters clearly intended to restrict UCL standing, they just as plainly preserved standing for those who *had* had business dealings with a defendant and had lost money or property as a result of the defendant's unfair business practices.").  Allowing standing in the case at bar – where a false representation is made to raise the price of a service which the plaintiff would not have agreed to pay had the truth been told, does not frustrate the purpose of Proposition 64; rather, it furthers it.[1]

At the hearing, Uber relied extensively on the California Court of Appeal decision in *Searle v. Wyndham International, Inc.*, 102 Cal. App. 4th 1327 (2002).  There, plaintiff alleged that after ordering room service at one of defendant's hotels, she was assessed a 17% service charge which was, in fact, a gratuity paid to the server.  At the same time, the room service bill allegedly contained a blank line for the customer to add a tip or gratuity.  *Id.* at 1330.  Plaintiff alleged that the service charge was deceptive under the UCL as customers were "not advised the service charge is in fact a gratuity paid to the server."  *Id.*  The California Court of Appeal found that plaintiff had failed to state a claim, finding that "[w]hat a hotel does with the revenue it earns – either from the mini-bar, in home movies or its room service charges – is of no direct concern to hotel guests."  *Id.* at 1334.  Rather, the "room service patron[] is given both clear notice the service being offered comes at a hefty premium and the freedom to decline the service. . . .  [T]he patron has no legitimate interest in what the hotel does with the service charge."  *Id.*

*Searle* is readily distinguishable.  There, the defendant made no representation about the nature of the service charge or where the collected funds would be distributed.  There was no representation made one way or the other regarding whether the "service charge" was actually a gratuity payable to the server.  Rather, it was – as Uber repeatedly argued at the hearing – a mandatory charge that was presented to the plaintiff as a charge attendant to ordering room service.  In the case at bar, in contrast, it is alleged that Uber expressly represented a 20% charge was added

---

[1] Indeed, it is also plausible that had Uber not made the alleged misrepresentation, the total fee it charged would have been less than what it charged with the misrepresentation.  In this regard, there is an arguable cause-in-fact in that consumers paid more than they would have but for Uber's alleged misrepresentation.

United States District Court

For the Northern District of California

1  to every metered fare specifically for purposes of paying the driver a gratuity.  In short, in *Searle*,

2  there was no misrepresentation; here, allegedly, there was.[2]

3      The Court cannot conclude at the motion to dismiss stage that Uber's representations

4  regarding gratuities is immaterial as a matter of law.  Accordingly, Uber's motion to dismiss

5  Plaintiff's UCL and CLRA claims for lack of standing is **DENIED**.

6      3.    Plaintiff Has Stated a Claim Under the UCL's Fraudulent and Unfairness  Prongs

7      To state a claim under the UCL's fraudulent prong based on false advertising or promotional

8  practices "it is necessary only to show that members of the public are likely to be deceived."  *In re*

9  *Tobacco II*, 46 Cal. 4th at 312.  The standard for finding a likelihood of deception is that of a

10  "reasonable consumer who is neither the most vigilant and suspicious of advertising claims nor the

11  most unwary and unsophisticated, but instead is 'the ordinary consumer within the target

12  population.'"  *Chapman v. Skype Inc.*, 220 Cal. App. 4th 217, 226 (2013) (quoting *Lavie v. Procter*

13  *& Gamble Co.*, 105 Cal. App. 4th 496, 509-10 (2003)).  As this Court recognized in *O'Connor v.*

14  *Uber Technologies, Inc.*, No. C-13-3826 EMC, 2013 WL 6354534 (N.D Cal. Dec. 5, 2013), three

15  separate tests have developed to determine if conduct is "unfair" for purposes of the UCL.  *Id.* at

16  *16-17.  In this case, both parties apply the test which holds that conduct is "unfair" if it is

17  "immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers."  *See*

18  *Plumlee v. Pfizer, Inc.*, No. 13-cv-0414-LHK, 2014 WL 4275519, at *5 (N.D. Cal. Aug. 29, 2014)

19  ("A business practice violates the unfair prong of the UCL if it is contrary to 'established public

20  policy or if it is immoral, unethical, oppressive or unscrupulous and causes injury to consumers

21  which outweighs its benefits.'").

---

24      [2] Uber's reliance on *Aron v. U-Haul Co. of Cal.*, 143 Cal. App. 4th 796 (2006) for the same
proposition is misplaced.  In that case, the court found that the challenged refueling fee was as a
25  practical matter unavoidable and unfair.  The court did not hold that a UCL claim cannot lie where a
challenge fee is avoidable.  Other cases cited by Uber in its briefs involve situations in which no
26  misrepresentation affecting the efficacy of the product was found.  *See, e.g.*, *Tae Hee Lee v. Toyota*
*Motor Sales, U.S.A., Inc.*, 13-cv-7331, 2014 WL 211462, at *5 (C.D. Cal. Jan. 9, 2014) ("In this
27  case, Plaintiffs have not alleged an actual economic injury because they have not had any negative
experiences with the PCS and have not identified any false representations about the automatic pre-
28  collision braking feature made by Toyota.").

United States District Court

For the Northern District of California

1    In addressing similar allegations regarding Uber's alleged "gratuity" misrepresentations, this

2    Court has previously held:

3           The Complaint alleges the following: Uber advertises "on its website
            and in marketing materials, that gratuity is included and there is no
4           need to tip the drive," reasonable customers would expect that drivers
            would receive that gratuity, Uber does not remit the entirety of the
5           gratuity to drivers, and as such, Uber's statements are "deceptive and
            misleading." These allegations make it plausible that a reasonable
6           consumer would likely be deceived to the detriment of drivers.

7    *O'Connor*, 2013 WL 6354534, at *17. Similarly, here, Plaintiff has alleged that Uber represents that

8    it automatically charges consumer credit card "the metered fare + 20% *gratuity*" and that this "20%

9    gratuity is automatically added for the driver" while, at the same time, it "keeps a substantial portion

10   of this additional charge for itself as its own additional revenue and profit." FAC ¶ 13. These

11   allegations are sufficient to plausibly allege that a reasonable consumer would be deceived and, as a

12   result of this deception, they expended more money than they otherwise would have but for the

13   misrepresentation (as discussed above).

14          Similarly, in determining whether a business practice is unfair under the approach adopted

15   by the parties, "California courts balance the 'impact on its alleged victim' against 'the reasons,

16   justifications, and motives of the alleged wrongdoer.'" *Plumlee*, 2014 WL 4275519, at *5 (quoting

17   *McKell v. Wash. Mut., Inc.*, 142 Cal. App. 4th 1457, 1473 (2006)). As discussed above, Plaintiff has

18   alleged that Uber adds a fee above its metered fair, misrepresents this fee as a gratuity that is given

19   to the consumers, and keeps a substantial portion of this fee to boost its revenue. The Court cannot

20   conclude at this early stage that the alleged cost of this misrepresentation to Uber's consumers is

21   justified by Uber's reasons and motives. *See Pirozzi v. Apple, Inc.*, 966 F. Supp. 2d 909 (N.D. Cal.

22   2013) ("Apple offers nothing in the way of 'reasons, justifications, or motives,' or 'utility of [its[

23   conduct,' to weigh against the alleged harm. Thus, 'the Court cannot say that Apple's practices are

24   not injurious to consumers, or that any benefit to consumers outweighs the harm.'" (citation

25   omitted)).

26          In arguing that Plaintiff has failed to state a claim under either the fraudulent or unfairness

27   prongs of the UCL, Uber relies almost exclusively on the California Court of Appeal's decision in

28   *Searle*, discussed above. Uber appears to contend that *Searle* stands for the proposition that where a

16

1   charge is mandatory, the consumer has no legitimate interest in what is ultimately done with the

2   funds recouped as a result of that charge.  Similarly, it contends that, under *Searle*, so long as a

3   consumer is not deceived about the *total cost* of the services it receives from the defendant, the UCL

4   is not offended.  Docket No. 44, at 8-9.

5        For the reasons stated above in connection with standing, Uber reads *Searle* too broadly.

6        The Court finds that Plaintiff has stated a claim under the UCL's fraudulent and unfairness

7   prongs, and Uber's motion to dismiss on this ground is **DENIED**.

8        4.        Plaintiff Has Stated a Claim Under the CLRA.

9        The CLRA prohibits "unfair methods of competition and unfair or deceptive acts or practices

10  undertaken by any person in a transaction intended to result or which results in the sale or lease of

11  goods or services to any consumer."  Cal. Civ. Code § 1770.  Plaintiff alleges that Uber violated a

12  number of the CLRA's provisions.

13       First, Plaintiff alleges that Uber has violated  § 1770(a)(5), which makes it unlawful to

14  represent "that goods or services have . . . characteristics . . . which they do not have."  Cal. Civ.

15  Code  § 1770(a)(5).  Similarly, Plaintiff alleges a violation of  § 1770(a)(9) which prohibits

16  "advertising goods or services with intent not to sell them as advertised."  *Id.*  § 1770(a)(9).

17  Plaintiff's arguments under both sections are similar – that Uber representing that it would collect

18  and automatically remit a 20% gratuity to the driver, "thus allowing the consumer to arrange for a

19  taxi without the necessity fo pulling out his or her wallet and/or exchanging cash with the driver,"

20  Uber has misrepresented a characteristic and benefit of its service.  Docket No. 46, at 12.  The Court

21  finds Plaintiffs allegations are sufficient to state a claim under  § 1770(a)(5).  As alleged, Uber

22  represents that its application service remits a 20% gratuity to drivers when, in fact, it does not do

23  so.  This is sufficient to allege that Uber's service was advertised as having a characteristic it did not

24  have. *Cf. Blessing*, 756 F. Supp. 2d, at 455  (holding that the plaintiffs had stated a claim for

25  violation of sections 1770(a)(5) and 1770(a)(9), where the defendant represented it was charging a

26  "pass through" royalty fee, but where the actual royalty fee was much less).

27       Second, Plaintiffs have alleged that Uber has violated  § 1770(a)(14), which prohibits a

28  defendant from "[r]epresenting that a transaction confers or involves rights , remedies, or obligations

which it does not have or involve, or which are prohibited by law." Cal. Civ. Code § 1770(a)(14). The Court finds that Plaintiff has sufficiently alleged a violation of this provision. The allegation that Uber represented that the 20% gratuity fee would be remitted to drivers is sufficient to allege the existence of an obligation on the part of Uber – an obligation that Uber misrepresented by using the charged fee as a revenue source. *See Blessing*, 756 F. Supp. 2d at 455 (finding that plaintiff had stated a claim under § 1770(a)(14) because, the "royalty fee" imposed by the defendant "certainly imposes an 'obligation' and the alleged misrepresentation with respect to that fee . . . suggests that the obligation entails covering a 'pass through' of increased royalty obligations when in fact it is a source of additional and 'substantial revenue'").

However, the Court finds that Plaintiff has failed to state a claim under §§ 1770(a)(13) or 1770(a)(16). Section 1770(a)(13) prohibits making "false or misleading statements of fact concerning reasons for, existence of, or amounts of price reductions." Cal. Civ. Code § 1770(a)(13). Plaintiff has failed to state a claim under this section because she has failed to allege that Uber made any representations with regards to a "fee reduction" nor, contrary to her arguments in her opposition, has she alleged that Uber ever represented that its service was a "free or no fee service." Finally, § 1770(a)(16) makes unlawful "[r]epresenting that the subject of a transaction has been supplied in accordance with a previous representation when it has not." *Id.* § 1770(a)(16). Plaintiff asserts that Uber violated § 1770(a)(16) by charging the consumer's credit card after representing that it would remit the 20% gratuity to the driver. She argues that charging the card is "necessarily" "representing" that Uber would remit the amount according to its prior representation. The Court disagrees. This subsection "appears to target not the initial representation in a transaction, but a subsequent representation which is deceptive." *Blessing*, 756 F. Supp. 2d at 455. Here, Plaintiff has not alleged the existence of a representation subsequent to the alleged initial misrepresentation, and the Court concludes that the subsequent charging of the credit card does not constitute a "representation" on the part of Uber.

5.    <u>Plaintiff Has Stated a Claim Under the UCL's Unlawful Prong</u>

"By proscribing 'any unlawful' business practice, section 17200 borrows violations of other laws and treats them as unlawful practices that the unfair competition law makes independently

18

**United States District Court**
For the Northern District of California

actionable." *Cel-Tech Commc'ns, Inc. v. Los Angeles Cellular Tel. Co.*, 20 Cal. 4th 163, 180 (1999) (citations and quotation marks omitted). The UCL's "coverage is sweeping, embracing anything that can properly be called a business practice and that at the same time is forbidden by law." *Id.* Because the Court finds that Plaintiff has adequately alleged a violation of the CLRA, she has also sufficiently alleged a violation under the unlawfulness prong of the UCL.

### 6. <u>Summary</u>

For the foregoing reasons, the Court finds that Plaintiff has stated a claim under the fraudulent, unfairness, and unlawful prongs of the UCL. Further, Plaintiff has stated a claim under the CLRA to the extent she relies on § 1770(a)(5), (9), (14) but has failed to state a claim under the CLRA to the extent she relies on § 1770(a)(13), (16). Accordingly, Uber's motion to dismiss is **GRANTED** with respect to CLRA claims under § 1770(a)(13) and (16); in all other respects the motion to dismiss is **DENIED**.

### C. <u>Plaintiff Has Failed to State a Claim for Breach of Contract</u>

Under California law, "[a] cause of action for breach of contract requires proof of the following elements: (1) existence of the contract; (2) plaintiff's performance or excuse for nonperformance; (3) defendant's breach; and (4) damages to plaintiff as a result of the breach." *CDF Firefighters v. Maldonado*, 158 Cal. App. 4th 1226, 1239 (2008). Where a plaintiff has failed to allege that the defendant's breach has caused her to suffer any damage, a breach of contract action for damages will not lie. *See Low v. LinkedIn Corp.*, 900 F. Supp. 2d 1010, 1028 (N.D. Cal. 2012) (noting that to state a claim for breach of contract, plaintiff must plead "the contract, plaintiffs' performance . . . defendant's breach, and damage to plaintiff therefrom"); *see also Bramalea Cal., Inc. v. Reliable Interiors, Inc.*, 119 Cal. App. 4th 468 (2004) ("A breach of contract is not actionable without damage."). Further, "[t]o establish contractual damages, a Plaintiff must establish 'appreciable and actual damage,'" – "[n]ominal damages, speculative harm, or threat of future harm do not suffice to show legally cognizable injury." *Id.*

Uber argues in its motion, even if the alleged breach in question had not occurred – that is, if Uber had remitted the 20% gratuity as it allegedly promised in its advertisements – Plaintiff (and the class of Uber customers) would be in precisely the same financial position as they are *after* the

19

**United States District Court**

For the Northern District of California

1   breach.  According to Uber, Plaintiff has not, and cannot, allege that they suffered damages for

2   purposes of a breach of contract action.

3       In contrast to its briefing on the UCL claim, Plaintiff does not respond to the argument that it

4   has suffered cognizable contract damages, even if the parol evidence of the advertisement is

5   considered in interpreting the terms and conditions of the contract.  Plaintiff's failure to respond is

6   understandable.  Under common law contract principles, a promisee's right to enforce a contract

7   term that benefits a third party depends on whether that third party is a "creditor" beneficiary or a

8   "donee" beneficiary.  If the beneficiary is a creditor, the promisee can sue for contract damages for

9   the promisor's failure to benefit the donee.  If the beneficiary is a donee, the promisee cannot sue for

10  such damages.

11      In *In re Marriage of Smith & Maescher*, 21 Cal. App. 4th 100 (1993), the court addressed a

12  marital separation agreement in which the husband agreed to pay for his children's undergraduate

13  education.  *Id.* at 104.  Eventually, the husband stopped paying the expenses, and the wife filed an

14  action to enforce the separation agreement.  The marital separation agreement was governed by

15  Massachusetts law and the court, applying the Restatement (Second) of Contracts held that in that

16  case, the "promisee cannot recover damages which may be suffered by the intended third party

17  beneficiary."  *Id.* at 107.  The court noted that the Restatement differentiates between "creditor"

18  beneficiaries (that is, beneficiaries who receive payments from the promisor of a debt or obligation

19  owed the beneficiary by the promisee) and "donee" beneficiaries who essentially receives a "gift" in

20  the form of the promisor's obligation to it.  *Id.* at 106.  The court then held that if a "promisor does

21  not pay the promisee's debt to the creditor beneficiary, then the promisee will remain liable to the

22  beneficiary for the full amount of the debt and could directly suffer damages in this full amount.  In

23  contrast, if the promisor does not perform its obligation to the donee beneficiary, the promisee will

24  not be liable to the beneficiary for such performance," and thus will not incur cognizable damages to

25  support a claim for breach of contract against the promisor.  *Id.* at 106.  The court did note, a

26  promisee may sue for specific performance.  *Id.*

27      While tips or gratuities may be customary in the service industry, they are not binding

28  obligations on the part of customers.  Uber's failure to remit the 20% gratuity to the drivers does not

United States District Court

For the Northern District of California

1  leave Plaintiff or the putative class members liable to the drivers for any debt or amount.

2  Accordingly, the drivers are properly considered donee beneficiaries. *See Dateline Builders, Inc. v.*

3  *City of Santa Rosa*, 146 Cal. App. 3d 520, 526 (1983) ("A person is a donee beneficiary only if the

4  promisee's contractual intent is either to make a gift to him *or to confer on him a right against the*

5  *promisor*." (emphasis added)).  Hence, Plaintiff cannot seek damages for breach of contract for

6  Uber's failure to benefit drivers.  Plaintiff has not and, on the basis of the allegations in the FAC,

7  cannot allege that Uber's alleged breach of the contract caused her to suffer any contract damages.[3]

8            Such a holding is not inconsistent with the Court's holding above that Plaintiffs' have

9  suffered an economic injury for purposes of the UCL.  Breach of contract actions seeking recovery

10  of damages are focused on placing plaintiffs in the same position they would have been in had

11  defendants performed their contractual obligations.  *See, e.g.*, *General Employees Trust Fund v.*

12  *Victory Bldg. Maint., Inc.*, No. C06-6654 CW (MEJ), 2007 WL 1288393, at *5 (N.D. Cal. Apr. 11,

13  2007).  For the reasons stated above, Plaintiffs are not entitled to any money damages under this test.

14  Plaintiffs UCL claim, by contrast, is not limited to the strictures of the alleged contractual terms its

15  prescriptions are aimed at unlawful or unfair business practices (wherein a violation may be found

16  even if conduct violates no specific law).  *See Cel-Tech Commc'ns,* 20 Cal. 4th at 180 ("In other

17  words, a practice is prohibited as 'unfair' or 'deceptive' even if not 'unlawful' and vice versa.").

18  Nor is the UCL geared to award traditional contract damages.  *See  In re Tobacco II*, 46 Cal. 4th at

19  312 ("'A UCL action is equitable in nature; damages cannot be recovered. . . .  We have stated under

20  the UCL, [p]revailing plaintiffs are generally limited to injunctive relief and restitution.'" (quoting

21  *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal.4th 1134, 1144 (2003)).  Under the UCL claim,

22  the operative effect of the 20% gratuity statement is not a contractual promise, but rather an alleged

23  misrepresentation which skewed the transaction and caused Plaintiffs to expend more money than

24  they otherwise would have had the representation not been made.  Stated another way, the breach of

25  contract claim looks at the 20% gratuity statement and asks how Plaintiffs can be put in the same

26

27  _____

28      [3] Plaintiff does not seek specific performance or assert any common law fraud claims.

21

situation they would be in had Defendants performed.  The UCL claim looks at the 20% gratuity statement and asks how Plaintiffs would be positioned had the misrepresentation not been made.

Accordingly, Uber's motion to dismiss this claim is **GRANTED** and the claim is dismissed with prejudice.[4]

## IV.   CONCLUSION

For the foregoing reasons, Uber's motion to dismiss Plaintiff's UCL claims is **DENIED**. Further, Uber's motion to dismiss Plaintiff's CLRA claim is **DENIED** to the extent Plaintiff's claim is predicated on Cal. Civ. Code § 1770(a)(5), (9), (14) and **GRANTED** to the extent the claim is predicated on Cal. Civ. Code § 1770(a)(13), (16).  The CLRA claim under these latter provisions is dismissed with prejudice.  Finally, Uber's motion to dismiss is **GRANTED** to the extent it seeks dismissal of Plaintiff's breach of contract claim.  That claim is dismissed with prejudice.

This order disposes of Docket No. 44.


IT IS SO ORDERED.


Dated:  September 17, 2014

_____
EDWARD M. CHEN
United States District Judge

---

[4] The Court notes that in *O'Connor v. Uber* it dismissed a claim alleging breach of implied contract asserted under a third-party beneficiary theory brought on behalf of the drivers.  *See O'Connor v. Uber Techs., Inc.*, No. C13-3826 EMC, 2014 WL 4382880, at *6-8 (N.D. Cal. Sept. 4, 2014).  The class in *O'Connor* chose to rely on an implied-in-fact contract theory that the Court found was barred by an express provision of Uber's terms and conditions.  The plaintiff in *O'Connor* did not allege, as Plaintiffs do here, that the gratuity-based representations were incorporated by reference into the Terms and Conditions.

United States District Court
For the Northern District of California