QUINN EMANUEL URQUHART & SULLIVAN, LLP
John B. Quinn (SBN: 090378)
johnquinn@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA   90017-2543
Telephone:     (213) 443-3000
Facsimile:      (213) 443-3100

Stephen A. Swedlow (*pro hac vice*)
stephenswedlow@quinnemanuel.com
Amit B. Patel (*pro hac vice*)
amitbpatel@quinnemanuel.com
500 W. Madison Street, Suite 2450
Chicago, IL  60661-2510
Telephone:     (312) 705-7400
Facsimile:      (312) 705-7401

Arthur M. Roberts (SBN: 275272)
arthurroberts@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA   94111-4788
Telephone:     (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for Defendant
Uber Technologies, Inc.

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| CAREN EHRET,<br><br>             Plaintiff,<br><br>      v.<br><br>UBER TECHNOLOGIES, Inc.,<br><br>             Defendant. | Case No. 3:14-cv-00113-EMC<br><br>**REPLY IN SUPPORT OF DEFENDANT'S MOTION FOR RELIEF FROM NOVEMBER 26, 2014 NONDISPOSITIVE PRETRIAL ORDER OF MAGISTRATE JUDGE**<br><br>Judge: Edward M. Chen |

## INTRODUCTION

The Court should grant Defendant's Motion for Relief from Magistrate Judge Ryu's Order of November 26, 2014. Plaintiff has offered nothing in her Opposition that changes that.

## ARGUMENT

Plaintiff presents a distorted history of this case to the Court. In requesting a stay of production of emails from custodians Travis Kalanick, Ryan Graves and Andrew MacDonald, Uber pointed out that Plaintiff has repeatedly told the Court that she does not need these emails in order to file her upcoming motion for class certification. (Dkt. No. 90 at 3.) In her Opposition, Plaintiff responded that, "[w]hile Plaintiff originally believed she would not need the ESI production prior to filing a motion for class certification, Uber has since taken the position – as it repeated throughout its motion – that it has a 'decentralized business model.'" (Dkt. No. 91 at 3.) Thus, Plaintiff claims to have only now been alerted to the fact that *"*Uber is clearly attempting to set up as a defense to class certification that the misrepresentations at issue did not emanate from its San Francisco headquarters and, therefore, Plaintiff (who is an Illinois resident) can not pursue a class action for claims under California's consumer fraud statutes." (*Id*.)

Once again, Plaintiff plays fast and loose with the facts of this case and hopes that the Court will not notice. As the Court will recall, Uber argued in its Motion to Dismiss, filed on June 11, 2014, that "[t]his Court should dismiss Plaintiff's UCL claim for the additional reason that Plaintiff is an Illinois resident alleging Illinois conduct, which is outside the reach of California's UCL." (Dkt. No. 44 at 14.) Plaintiff responded to this argument in her Opposition to Uber's Motion to Dismiss, expressly arguing that Uber's alleged misrepresentations "emanated from California." (Dkt. No. 46 at 17.) Perfectly aware of this argument, Plaintiff went on to inform the Court, in *three* separate Case Management Statements, that "Plaintiff would like to file a motion for class certification as soon as possible and believes she can do so after Defendant's initial production of documents (*i.e.*, before Defendant's production of emails and ESI)." (Dkt. No. 68 at ¶ 20(c); Dkt. No. 62 at ¶ 20(c); Dkt. No. 59 at ¶ 20(c).) In other words, Plaintiff's sole response to Uber's request for an extended deadline for the production of these emails is false.

Plaintiff cannot take whatever position benefits her most at any given time, first claiming that she needs no emails when she wishes to file her class certification motion, then later claiming that the emails are necessary for the motion—knowing from early on that the extraterritoriality argument would be in issue. Without any legitimate opposition from Plaintiff on this matter, if the Court orders that the emails of additional custodians be produced, Uber respectfully requests that the deadline for the production be provisionally scheduled for June 26, 2015, after the resolution of Plaintiff's motion for class certification.

However, the Court should alternatively order that Mr. Kalanick and Mr. Graves should not be added as email custodians at all. Nothing in Plaintiff's Opposition rebuts the sworn testimony offered by Uber that "it is highly unlikely that any email discussing how Uber calculated the gratuity charge for uberTAXI in the five cities at issue here would not be in the possession of one of [the cities'] General Managers." Decl. of Ilya Abyzov, at ¶ 2. Instead, Plaintiff apparently believes that Mr. Kalanick and Mr. Graves' involvement with Uber's business in general – which spans many more cities than at issue here and of which uberTAXI is only a small part – means that they must have been significantly involved with the one narrow aspect of Uber's business relevant to Plaintiff's claim. This is simply false. As Uber has already explained, the large majority of the decision making and discussion about the gratuity for uberTAXI occurred at Uber's local city team level. *See* Decl. of Ilya Abyzov, at ¶ 1. Thus, the vast majority of responsive documents will be in the possession of one of the initial General Manager custodians. *See id*. at ¶ 2. In response to this sworn testimony, Plaintiff offers the reported quote of an unnamed friend of Mr. Kalanick, recalling that Mr. Kalanick used his phone extensively at a bachelor party in Las Vegas. (Dkt. No. 91 at 1.)

Realizing the weakness of this argument, Plaintiff resorts to claiming that these additional custodians are proper because their email accounts may contain a *single* communication relevant to her claim. Plaintiff claims that Uber has "assert[ed] that every single communication Mr. Kalanick or Mr. Graves ever had regarding Uber taxi was with one of the five general managers." (Dkt. No. 91 at 1.) Not only is this a mischaracterization of Uber's argument, it is also irrelevant to the appropriate legal standard. Under the Federal Rules of Civil Procedure, the Court must

limit discovery if "the burden or expense of the proposed discovery outweighs its likely benefit." Fed. R. Civ. P. 26(b)(2)(C)(iii).  Mr. Kalanick and Mr. Graves do not become appropriate email custodians simply because they may possess a *single* relevant communication.

Under this standard, Uber has already explained that any possible benefit of this discovery would be grossly outweighed by the burden it would pose to Uber.  Despite Plaintiff's wildly incorrect assumption that the ESI search parameters agreed upon by the parties "will only yield documents that are clearly relevant to this suit," (Dkt. No. 91 at 2) Uber's review of the emails from the initial General Manager custodians has already uncovered thousands of documents that are in no way relevant to the suit.  This will almost certainly be true for the emails of Uber's high level executives as well, who were less involved with the gratuity at issue in this case than the General Managers.  Given that reviewing these documents – which sworn testimony indicates will be of practically no value – will cost Uber nearly $100,000, Decl. of Arthur Roberts, at ¶ 1, the addition of these custodians clearly represents an undue burden under Rule 26(b)(2)(C)(iii).

The vast majority of the emails (tens of thousands) yielded by the search terms are simply user inquiries attaching their uberTAXI receipts.[1]  These receipts are within the scope of the search terms because they specifically identify the 20% charge as a "Gratuity & Service Charge." Suppl. Decl. of A. Roberts, Ex. A.  Indeed, *every receipt* sent to every potential class member in this suit, including the receipt that Plaintiff herself received from Uber, identified the 20% charge as a "Gratuity & Service Charge."  *See id.* at ¶ 3.

Thus, Uber told every member of the purported class exactly what Plaintiff claims was concealed, which makes the burden on Uber to produce these emails especially disproportionate and unwarranted.  Plaintiff's core claim is that Uber concealed the fact that part of the automatic 20% charge associated with uberTAXI was actually a service charge.  But the blog post announcing uberTAXI in Chicago explicitly stated that Uber would add a "20% charge to cover gratuity *and service fees*."[2]  (Emphasis added.)  And as Uber will prove, Uber sent an email to

---

[1]  All of these inquiries, which the General Managers and Mr. Kalanick were copied on, must be reviewed individually in order to determine whether the inquiry relates to gratuity.
[2]  *See* http://blog.uber.com/2012/04/18/chicago-taxi-uber/ (last accessed Dec. 18, 2014).

Plaintiff and every other Chicago-based user containing identical language in April 2012. Further, as mentioned, every receipt contained this language as well.[3]  Given that Plaintiff's claim is almost certainly untenable in light of these facts, the burden of adding further custodians clearly outweighs its benefit.  *Cf. Fernandez v. California Dep't of Correction & Rehab.*, No. 2:11-CV-01125 MCE, 2014 WL 794332, at *2 (E.D. Cal. Feb. 27, 2014) (stating court must consider "needs of the case" and "importance of the discovery in resolving the issues").

Finally, Plaintiff's proposal that Uber turn over thousands of confidential emails from its high-level executives without reviewing them for responsiveness is, of course, nothing more than a ploy to obtain confidential financial and trade secret information unrelated to this case.  As discussed above, Uber's review of the emails from the initial General Manager custodians has already uncovered tens of thousands of documents unrelated to any issue in this suit.  The same is almost certainly true of the emails of Uber's high-level executives.  Nor would Plaintiff's proposal reduce Uber's burden in reviewing these documents.  Even were Uber to only review the emails for privilege, Uber would still have to thoroughly review each and every one of those emails.  Thus, the burden would be exactly the same as a responsiveness review.  Further, Plaintiff has failed to follow the proper procedure for raising such a proposal by failing to meet and confer and failing to file a letter with Judge Ryu.  *See* Magistrate Judge Ryu's Standing Order (August 6, 2014).  Plaintiff completely neglected to meet and confer with Uber about this discovery request and thus Plaintiff's proposal is not even properly before the Court.[4]

## CONCLUSION

For the foregoing reasons, Uber respectfully requests that this Court grant Uber's Motion for Relief from the November 26, 2014 Nondispositive Pretrial Order of Magistrate Judge Ryu.

---

[3]  Uber did not retain any portion of any amount designated as a gratuity.  Because the driver's payment to Uber was calculated based on a percentage of the metered fare (generally 10% of the metered fare), adding a 20% charge did not increase the amount of money the driver paid to Uber, and had the effect of increasing the payment to the driver by 20% of the metered fare.  Further, because money is fungible, it is nonsensical to assert that it is possible to trace the fee that drivers paid to Uber back to some portion of an indivisible sum of money paid by the user.

[4]  If the Court were to consider this proposal, Uber would elect to expend the resources to conduct its own review of the additional custodians' emails for responsiveness to avoid granting Plaintiff access to confidential financial and trade secret information unrelated to this case.

DATED: December 19, 2014        QUINN EMANUEL URQUHART & SULLIVAN, LLP


By      /s/ Stephen A. Swedlow
    Stephen A. Swedlow
    Attorney for Uber Technologies, Inc.

Stephen A. Swedlow (Pro hac vice)
    stephenswedlow@quinnemanuel.com
Amit B. Patel (Pro hac vice)
    amitbpatel@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
500 W. Madison St., Suite 2450
Chicago, IL 60661
Telephone:   (312) 705-7400
Facsimile:   (312) 705-7401

Arthur M. Roberts
    arthurroberts@quinnemanuel.com
Quinn Emanuel Urquhart & Sullivan, LLP
50 California St., 22nd Floor
San Francisco, CA 94111
Telephone:   (415) 875-6600
Facsimile:   (415) 875-6700