Myron M. Cherry (SBN 50278)
mcherry@cherry-law.com
Jacie C. Zolna (admitted *pro hac vice*, Illinois ARDC #6278781)
jzolna@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279

Hall Adams (admitted *pro hac vice*, Illinois ARDC #6194886)
hall@adamslegal.net
LAW OFFICES OF HALL ADAMS, LLC
33 North Dearborn Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 445 4900
Facsimile: (312) 445 4901

Michael Ram (SBN 104805)
mram@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311
**Attorneys for Plaintiff and the Class**

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| **CAREN EHRET, individually and on behalf of a class of similarly situated persons,** | **Case No. 3:14-cv-113-EMC** |
| **Plaintiff,** | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF HER MOTION FOR CLASS CERTIFICATION** |
| **v.** | **Date:** **October 8, 2015** |
| **UBER TECHNOLOGIES, INC., a Delaware Corporation,** | **Time:** **1:30 PM** |
| **Defendant.** | **Judge:** **Edward M. Chen** **Courtroom:** **5** |

## REDACTED VERSION OF DOCUMENT SOUGHT TO BE SEALED

## **TABLE OF CONTENTS**

**TABLE OF AUTHORITIES**………………………………………………………………..iii-iv

**STATEMENT OF ISSUES TO BE DECIDED**…………………………………………..v

**INTRODUCTION**………………………………………………………………………1

**FACTUAL BACKGROUND**………………………………………………………1-3

**ARGUMENT**……………………………………………………………………3-14

    **A.**    **The Size of the Class Easily Satisfies the Numerosity Requirement** ......................4

    **B.**    **There Are Common Questions of Law and Fact** ................................. 4-6

    **C.**    **Plaintiff's Claims Are Typical of the Class**........................................... 6-7

    **D.**    **Plaintiff and Her Counsel Will Fairly and Adequately Represent the Class**............................................................................7

    **E.**    **Questions of Law and Fact Common to the Class Predominate and Class Treatment is the Superior Method for Adjudicating the Controversy** ........................................... 8-14

        **1.**    *The issues of whether Uber's uniform misrepresentations are material and likely to deceive a reasonable consumer predominate over any individual issues* ...................................... 8-13

        **2.**    *Class treatment is the superior method of adjudicating this case* ........... 13-14

1

## TABLE OF AUTHORITIES

2

*Astiana v. Kashi Co.*, 291 F.R.D. 493 (S.D. Cal. 2013) ....................................................8, 10

3

*Bruno v. Quten Research Inst., LLC*, 280 F.R.D. 524 (C.D. Cal. 2011) ......................................10

4

5

*Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*,
249 F.R.D. 334 (N.D. Cal. 2008)...................................................................................................4

6

*Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365 (N.D. Cal. 2010) ............... 6, 7, 12-13

7

8

*del Campo v. Am. Corrective Counseling Servs., Inc.*,
254 F.R.D. 585 (N.D. Cal. 2008)...............................................................................................8-9

9

*Delarosa v. Boiron, Inc.*, 275 F.R.D. 582 (C.D. Cal. 2011) ........................................................9

10

*Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088 (N.D. Cal. 2007)......................................9-10

11

*Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147 (1982) ...................................................................6

12

13

*Guido v. L'Oreal, USA, Inc.*, 284 F.R.D. 468 (C.D. Cal. 2012),
*on reconsideration*, 11-cv-1067, 2012 WL 2458118 (C.D. Cal. June 25, 2012) ........................14

14

*Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) .......................................... 5, 6-7, 8, 13

15

16

*In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346 (N.D. Cal. 2005)......................................4

17

*In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145 (2010) ............................................9

18

*In re Tobacco II Cases*, 46 Cal. 4th 298 (2009)............................................................................9

19

20

*Johns v. Bayer Corp.*, 280 F.R.D. 551 (S.D. Cal. 2012),
*appeal dismissed* (Apr. 12, 2012) ...................................................................................9, 13, 14

21

*Johnson v. Gen. Mills, Inc.*, 274 F.R.D. 282 (C.D. Cal. 2011)....................................................9

22

23

*Keegan v. Am. Honda Motor Co., Inc.*,
284 F.R.D. 504 (C.D. Cal. 2012) *leave to appeal denied*,
12-cv-80138, 2012 WL 7152289 (9th Cir. Nov. 9, 2012) ...........................................................10

24

*Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal. App. 4th 1282 (2002)..................................10

25

*O'Donovan v. CashCall, Inc.*, 278 F.R.D. 479 (N.D. Cal. 2011) ...........................................4, 7, 8

26

27

*Pecover v. Elec. Arts Inc.*, No. C 08-2820 VRW,
2010 WL 8742757 (N.D. Cal. Dec. 21, 2010)..............................................................................13

28

iii

*Plascencia v. Lending 1st Mortg.*,
259 F.R.D. 437 (N.D. Cal. 2009), *order clarified*,
07-cv-4485, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) .........................................................8

*Ries v. Arizona Beverages USA LLC*,
287 F.R.D. 523 (N.D. Cal. 2012), *appeal dismissed* (Jan. 25, 2013) ..................................4, 5, 6, 9

*Smith v. Cardinal Logistics Mgmt. Corp.*, 07-cv-2104,
2008 WL 4156364 (N.D. Cal. Sept. 5, 2008) ...........................................................................13

*Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541 (2011) ..............................................1, 5, 6

*Wang v. OCZ Tech. Grp., Inc.*, 276 F.R.D. 618 (N.D. Cal. 2011)..................................10

*Wershba v. Apple Computer, Inc.*, 91 Cal. App. 4th 224 (2001)..................................13

*Wolph v. Acer Am. Corp.*, 272 F.R.D. 477 (N.D. Cal. 2011) .........................................6, 7, 8, 9, 13

*Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117 (C.D. Cal. 2010)........................................10

OTHER AUTHORITIES

7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane,
*Federal Practice & Procedure* § 1777 (2d ed. 1986) .....................................................8

**Plaintiff's Memo ISO Motion for Class Certification**
**3:14-cv-113-EMC**

1

## STATEMENT OF ISSUE TO BE DECIDED (Civil L.R. 7-4(a)(3))

2      The issue to be decided is whether the Court should certify this case as a class action

3  pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3).

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.    **INTRODUCTION**

Defendant Uber Technologies, Inc. ("Defendant" or "Uber") offers a mobile phone application or "app" that provides consumers with the means to obtain transportation services from third party taxi and other transportation providers.  Plaintiff brings this action on behalf of herself and a class of similarly situated individuals who were subjected to Uber's illegal and deceptive practice of misrepresenting on its website and other marketing materials that a "gratuity" will be automatically added at a set percentage of the metered fare when, in fact, Uber does not remit the full amount of gratuity represented to the taxi driver.  Instead, Uber keeps a substantial portion of this additional charge as a hidden fee.

Because this lawsuit challenges uniform representations that apply equally to Plaintiff and all class members, class treatment is the appropriate and superior method of resolving this dispute.  Indeed, it is a textbook example of a class action as the determination of whether Uber's uniform representations are likely to deceive a reasonable consumer "will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2545 (2011).  Class certification should therefore be granted.

## II.    **FACTUAL BACKGROUND (Civil L.R. 7-4(a)(4))**

Uber's app allows consumers to summon, arrange and pay for taxi cab rides electronically with their mobile phones.  Payment for transportation arranged through Uber's app is made via consumers' credit card accounts, after the consumer provides the necessary credit card account information to Uber.  On its website Uber represented its "Hassle-free Payments" as follows: "We automatically charge your credit card the metered fare + 20% gratuity."  *See* Amended Complaint (Doc. 40) at ¶ 11.  From the time Uber began providing taxi service in Chicago in April 2012, Uber represented on its website, on its blog, and in emails to consumers that Uber would "automatically charge [the consumer's] credit card the metered fare + 20% gratuity" and that the gratuity is automatically added "for the driver."  *See* Uber's website and other marketing materials, collectively attached hereto as **Ex. A**.  Uber made substantively identical representations to consumers in Boston, San Francisco, Washington DC, and New York City, all of which offered Uber's taxi-hailing service during the relevant time period.  *See* Uber's

1

website and other marketing materials for these cities, collectively attached hereto as **Ex. B**.

Uber, however, does not remit to the driver the full amount of the charge that it represented to consumers as a "gratuity." Instead, Uber keeps a substantial portion of this additional charge for itself as its own additional revenue and profit on each ride arranged and paid for by consumers, including Plaintiff and the class. Documents produced by Uber in this litigation confirm that Uber retained 8-10% of the "gratuity" that was represented to be "for the driver." For example, Uber's training materials for current and prospective taxi drivers assert that: ████████████████████████████████████████████████████ ████████████████████████████████████████████ *See* **Ex. C**. These documents also confirm that ██████████████████ ████████████████████ ████████ *Id.* Uber's internal emails and spreadsheets further confirm that Uber did not remit the full 20% "gratuity" to drivers, but rather provided drivers with only 12% of the purported gratuity charge. *See* **Exs. D-E**; see also

Uber nonetheless has taken the position in the litigation – at least initially – that it "does not retain any portion of the gratuity." *See* Uber's Motion to Dismiss (Doc. 44) at p. 4:12; *see also id.* at 6:14-18 (stating that Uber "will later demonstrate in an appropriate motion that [the allegation that it keeps a portion of the gratuity charge] is factually incorrect"); Joint Discovery Letter Brief (Doc. 74) at p. 6 n.7 ("[N]o matter what value the gratuity was set at, Uber took no portion of it."). But not only do Uber's own records confirm that it was keeping a portion of the gratuity charge, they also demonstrate that Uber was knowingly and intentionally defrauding its customers by – as one internal PowerPoint presentation candidly asserted – ██████████ ██████████████████████████████████ *See* **Ex. F** (further stating that ████████████████████████████████████████ ████████████████████████ .

Notably, Uber ceased this practice shortly after this lawsuit was initially filed in Illinois so that going forward ████████████████████ *See* March 22, 2013 email, attached hereto as **Ex. G**. In response to this change, the Operations Manager in Boston exclaimed ████████████████████████████████████████ *Id.*; *see also*

**Plaintiff's Memo ISO Motion for Class Certification**
**3:14-cv-113-EMC**

1    March 25, 2013 email, attached hereto as **Ex. H** ███████████████████████████
2    ████████████████████████████████████████████████████████████████████████████████
3    █████████████████ ).

4           On September 9, 2012, Plaintiff arranged and paid for a taxi cab ride in Chicago, Illinois
5    using Uber's app and was charged and paid 20% over and above the stated "metered fare" with
6    the understandable belief that that charge would go "to the driver" as represented by Uber.  *See*
7    Amended Complaint (Doc. 40) at ¶ 15; *see also* Deposition of Caren Ehret at 23:1-3, attached
8    hereto as **Ex. I** ("I was under the assumption from what was on the screen that I saw that [the
9    driver] would get the full 20 percent."); *see also id.* at 35:4-7 ("As a consumer, I think it's fair to
10   know how much of the percentage is going to the driver, you know.  I want to know that my
11   gratuity, whatever I paid him, he's getting.").  Consistent with its practice, Uber retained for
12   itself a substantial portion of the 20% so-called "gratuity."  In fact, the taxi driver told Ms. Ehret
13   at the conclusion of her ride that Uber retains a portion of his gratuity.  *Id.* at 22:8-22.

14          Plaintiff's complaint alleges that Uber's misrepresentations constitute an unfair, unlawful
15   and fraudulent business practice in violation of the Unfair Competition Law, California Business
16   and Professions Code § 17200, *et seq.* ("UCL"), an unfair method of competition and unfair or
17   deceptive practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et*
18   *seq.* ("CLRA") and a breach of contract.  *Id.* ¶¶ 25-65.[1]  Plaintiff brings this action as a class
19   action pursuant to Federal Rules of Civil Procedure 23(a) and 23(b)(3) on behalf of herself and a
20   class of individuals defined as: "All individuals who arranged and paid for taxi rides through
21   Uber's service from April 18, 2012 to March 25, 2013."

22                            **ARGUMENT (Civil L.R. 7-4(a)(5))**

23          The Court should certify this case as a class action because all of the prerequisites of
24   Federal Rule of Civil Procedure 23(a) are met, as well as the requirements of Rules 23(b)(3).
25   Under Rule 23(a), class certification is appropriate if: (1) the class is so numerous that joinder of
26   all members is impracticable, (2) there are questions of law or fact common to the class, (3) the

27

28   _____

[1] On September 19, 2014, the Court dismissed Plaintiff's breach of contract claim and the CLRA
claim to the extent it was predicated on Cal. Civ. Code §§ 1770(a)(13) and (16).  *See* Doc. 64.

1    claims or defenses of the representative parties are typical of the claims or defenses of the class,
2    and (4) the plaintiff will fairly and adequately protect the interests of the class.  If these four
3    factors are met, the proposed class must also satisfy one of the Rule 23(b) prerequisites.  Plaintiff
4    presently seeks certification under Rules 23(b)(3), the requirements of which are, as shown
5    below, also met here.

6    **A.    The Size of the Class Easily Satisfies the Numerosity Requirement.**

7            The numerosity requirement of Rule 23(a)(1) is clearly satisfied here.  There is no fixed
8    number that satisfies the numerosity requirement, but "as a general matter, a class greater than
9    forty often satisfies the requirement, while one less than twenty-one does not."  *Ries v. Arizona*
10   *Beverages USA LLC*, 287 F.R.D. 523, 536 (N.D. Cal. 2012), *appeal dismissed* (Jan. 25, 2013)
11   (finding numerosity requirement met where the proposed class numbered well over forty
12   members); *see also Californians for Disability Rights, Inc. v. Cal. Dep't of Transp.*, 249 F.R.D.
13   334, 346-47 (N.D. Cal. 2008) (numerosity established where class had at least 22 members).  A
14   plaintiff need not state the exact number of class members to satisfy this requirement, nor is there
15   a set number above which impracticability of joinder is presumed.  *See O'Donovan v. CashCall,*
16   *Inc.*, 278 F.R.D. 479, 488 (N.D. Cal. 2011) (finding numerosity satisfied with class in the ten
17   thousands).  Furthermore, "[a] court may make common sense assumptions to support a finding
18   that joinder would be impracticable."  *In re Rubber Chems. Antitrust Litig.*, 232 F.R.D. 346, 350-
19   51 (N.D. Cal. 2005) (citing 1 Robert Newberg, *Newberg on Class Actions*, § 3:3 (4th ed. 2002)).

20           Here, according to Uber's discovery responses, over ▮▮▮▮▮ taxi rides were taken by
21   consumers during the time period disclosed by Uber.  *See* Uber's Second Amended Response to
22   Interrogatory No. 6, attached hereto as **Ex. J** (listing ▮▮▮▮▮ rides between April 1, 2012 and
23   March 25, 2013).  Because the class includes every one of these consumers there are at least ▮▮▮
24   ▮▮▮▮▮ class members dispersed over five cities nationwide.  This class size easily satisfies the
25   numerosity requirement.

26   **B.    There Are Common Questions of Law and Fact.**

27           The commonality element of Rule 23(a)(2) is satisfied here because there are questions of
28   law or fact common to the class.  The commonality requirement of Rule 23(a)(2) is construed

4

less rigorously than the "predominance" requirement of Rule 23(b)(3).  *See Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019 (9th Cir. 1998).  Rule 23(a)(2) has been construed permissively; "a common core of salient facts with disparate legal remedies" is sufficient to find commonality, as is "the existence of shared legal issues with divergent factual predicates."  *Id.* at 1019-20 (finding class members' claims satisfied "the minimal requirements of Rule 23(a)(2)" where all stemmed from the same source – an allegedly defective liftgate latch – even though members may have possessed different avenues of redress); *see also Ries*, 287 F.R.D at 537-38 (finding commonality where entire proposed class suffered the same injuries flowing from the defendant's same alleged misrepresentations, noting that "a perfect identity of facts and law is not required" to establish commonality).  To satisfy this requirement, the class claims "must depend upon a common contention" that "must be of such a nature that it is capable of classwide resolution – which means that determination of its truth or falsity will resolve an issue that is central to the validity of each one of the claims in one stroke."  *Dukes*, 131 S. Ct. at 2551.

In this case, the common questions of law and fact include:

a.  Whether Defendant represented on its website and other marketing materials that gratuity will be automatically added at a set percentage of the metered fare;

b.  Whether Defendant kept a portion of the amount that it represented was for gratuity as a hidden fee;

c.  Whether Defendant's misrepresentations were material under the reasonable consumer standard;

d.  Whether Defendant's misrepresentations would likely deceive a reasonable consumer;

e.  Whether Defendant's conduct constituted an unfair business practice in violation of the UCL;

f.  Whether Defendant's conduct constituted an unlawful business practice in violation of the UCL;

g.  Whether Defendant's conduct constituted a fraudulent business practice in violation of the UCL;

**Plaintiff's Memo ISO Motion for Class Certification**
**3:14-cv-113-EMC**

h.  Whether Defendant's conduct constitutes a violation of Cal. Civ. Code §
    1770(a)(5);

i.  Whether Defendant's conduct constitutes a violation of Cal. Civ. Code §
    1770(a)(9);

j.  Whether Defendant's conduct constitutes a violation of Cal. Civ. Code §
    1770(a)(14);

k.  Whether Plaintiff and class members are entitled to damages and the proper
    measure of such damages; and

l.  Whether Defendant should be required to make restitution under the UCL and, if
    so, the proper measurement of restitution.

The claims of Plaintiff and the class in this case, therefore, are based upon the same common contentions, the resolution of which will be dispositive of each class member's claims "in one stroke." *Dukes*, 131 S. Ct. at 2545. Indeed, Rule 23(a)(2) is routinely found satisfied in cases where, like here, the claims stem from a defendant's uniform representations or advertisements. *See, e.g.*, *Ries*, 287 F.R.D. at 537 (finding a "common core of salient facts" in class action alleging that defendant violated the UCL and CLRA by using the terms "All Natural" or "100% natural" to advertise its beverages); *Wolph v. Acer Am. Corp.*, 272 F.R.D. 477, 484 (N.D. Cal. 2011) (finding commonality satisfied where claims stemmed from the same set of core facts as to whether defendant sold defective notebook computers); *Chavez v. Blue Sky Natural Beverage Co.*, 268 F.R.D. 365, 377 (N.D. Cal. 2010) (finding commonality where the class members' claims all depended on whether the defendant's marketing materials were unlawful, unfair, deceptive or misleading to a reasonable consumer).

The commonality requirement is similarly met in this case.

## C.  Plaintiff's Claims Are Typical of the Class.

Rule 23(a)(3) is satisfied because Plaintiff's claims are typical of the claims of other class members. Notably, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *Gen. Tel. Co. of Sw. v. Falcon*, 457 U.S. 147, 157–58 n.13 (1982). The requirement is a permissive standard under which "representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon*,

6

150 F.3d at 1020.  Thus, typicality is satisfied where other members have the same or similar injury, the action is based on conduct which is not unique to the named plaintiff, and other class members have been injured by the same course of conduct.  *See O'Donovan*, 278 F.R.D. at 491.

Here, the typicality requirement is clearly met as all class members' claims are premised on Uber's common course of conduct (*i.e.*, Uber's untrue representation that the 20% charge over and above the metered fare went to their driver as a "gratuity").  Courts routinely find typicality where class members are, like here, affected by a defendant's common course of conduct.  *See, e.g.*, *Wolph*, 272 F.R.D. at 486-87 (finding typicality where class of consumers alleged violations of UCL and CLRA based on defendant's misleading marketing of notebook computers); *Chavez*, 268 F.R.D. at 378 (typicality satisfied where plaintiff's claims arose out of the same allegedly false statement made on every one of defendant's beverage containers).

Plaintiff, therefore, satisfies Rule 23(a)(3)'s typicality requirement.

**D.      Plaintiff and Her Counsel Will Fairly and Adequately Represent the Class.**

Rule 23(a)(4) is satisfied because Plaintiff and her counsel will fairly and adequately represent and protect the interests of the class.  First, the named Plaintiff has no interests antagonistic to or conflicting with other members of the class she seeks to represent.  Like the other members of the class, the named Plaintiff's interests lie in ensuring that Uber compensates all members of the class for its past wrongs, sharing the common contention that Uber's misrepresentation of the true nature of its "gratuity" charge constitutes an unfair, unlawful, and fraudulent business practice in violation of the UCL and the CLRA.

Plaintiff has also retained attorneys who are ready, willing and able to vigorously prosecute this action on behalf of the class.  Plaintiff's counsel comprises well-respected members of the legal community with decades of experience in class actions of similar size, scope, and complexity to the instant action.  *See* Declarations of Myron Cherry, Hall Adams and Michael Ram, attached hereto as **Exs. K-M**.  The requirements of Rule 23(a)(4) are clearly satisfied.

**E.      Questions of Law and Fact Common to the Class Predominate and Class Treatment is the Superior Method for Adjudicating the Controversy.**

      **1.      *The issues of whether Uber's uniform misrepresentations are material and likely to deceive a reasonable consumer predominate over any individual issues.***

This case should be certified under Rule 23(b)(3) because common issues of law and fact predominate over individual issues, if any, that may exist.  Certification under Rule 23(b)(3) is appropriate "whenever the actual interests of the parties can be served best by settling their differences in a single action."  7A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice & Procedure* § 1777 (2d ed. 1986).  In other words, "a central concern of the Rule 23(b)(3) predominance test is whether adjudication of common issues will help achieve judicial economy."  *O'Donovan*, 278 F.R.D. at 492 (internal citations omitted).  Predominance is met where "common questions present a significant aspect of the case and they can be resolved for all members of the class in a single adjudication."  *Hanlon*, 150 F.3d at 1022 (citations omitted).

Here, "generalized evidence" of Uber's fraudulent practice of misrepresenting the nature of its gratuity charge "would prove [the case] elements on a class-wide basis," satisfying the predominance requirement.  *O'Donovan*, 278 F.R.D. at 493.  Furthermore, where, like here, a class action challenges the legality of a defendant's common course of conduct under consumer protection laws, that issue is routinely found to predominate over all others for purposes of satisfying Rule 23(b)(3).  *See, e.g.*, *Astiana v. Kashi Co.*, 291 F.R.D. 493, 505 (S.D. Cal. 2013) (predominance requirement satisfied for class of consumers alleging violations of the UCL and CLRA based on defendant's common advertising scheme of marketing its food products as containing "Nothing Artificial"); *Wolph*, 272 F.R.D. at 488 (finding predominance where action challenged defendant's misleading packaging of its notebook computers under UCL and CLRA); *Plascencia v. Lending 1st Mortg.*, 259 F.R.D. 437, 448 (N.D. Cal. 2009), *order clarified*, 07-cv-4485, 2011 WL 5914278 (N.D. Cal. Nov. 28, 2011) (finding predominance and certifying UCL class under Rule 23(b)(3) because consumers' fraud claim arose from defendant's common course of conduct); *del Campo v. Am. Corrective Counseling Servs., Inc.*, 254 F.R.D. 585, 596 (N.D. Cal. 2008) (finding predominance where consumers challenged "Defendants' alleged

8

1  standardized conduct and whether that conduct amount[ed] to actionable misrepresentations"
2  regarding an unlawful pattern of mailing letters in violation of UCL).
3       Uber nonetheless has indicated that class certification is purportedly not appropriate due
4  to individualized issues of reliance and extraterritorial application of the UCL and CLRA.
5  Neither of these arguments have merit.  With respect to reliance under the UCL and CLRA, it is
6  sufficient for the plaintiff to "establish[] an inference of justifiable reliance (and thus
7  causation/damages) that can be applied to all class members by showing a material
8  misrepresentation as determined by the reasonable man standard." *Delarosa v. Boiron, Inc.*, 275
9  F.R.D. 582, 589 n.3 (C.D. Cal. 2011) (certifying (b)(2) and (b)(3) classes under the UCL and
10 CLRA based on false statement on product packaging); *see also Ries*, 287 F.R.D. at 538 ("As
11 with the UCL […], under the CLRA, causation, on a class[-]wide basis, may be established by
12 *materiality*.") (internal citations omitted); *In re Tobacco II Cases*, 46 Cal. 4th 298, 327 (2009)
13 ("[A] presumption, or at least an inference, of reliance arises whenever there is a showing that a
14 misrepresentation was material … [meaning] a reasonable man would attach importance to its
15 existence or nonexistence in determining his choice of action in the transaction in question.")
16 (internal citations omitted); *In re Steroid Hormone Prod. Cases*, 181 Cal. App. 4th 145, 157-58
17 (2010) (reversing denial of class certification of CLRA claim where a reasonable person would
18 find important the unlawful nature of the product's sale or receipt in determining whether to
19 purchase the product).
20      Materiality of the misrepresentation is an objective standard that is susceptible to
21 common proof.  *Wolph*, 272 F.R.D. at 488 (finding that product label statements presented
22 common proof of materiality under UCL and CLRA because "it is reasonable to infer that they
23 were communicated to all class members" at the point of purchase); *see also Johns v. Bayer*
24 *Corp.*, 280 F.R.D. 551, 557 (S.D. Cal. 2012), *appeal dismissed* (Apr. 12, 2012) (noting that
25 California consumer protection laws take an objective approach of the *reasonable* consumer, not
26 the particular consumer); *Johnson v. Gen. Mills, Inc.*, 274 F.R.D. 282, 287 (C.D. Cal. 2011)
27 (discussing objective standard and certifying (b)(3) class under UCL and CLRA); *Falk v. Gen.*
28

9

1    *Motors Corp.*, 496 F. Supp. 2d 1088, 1095 (N.D. Cal. 2007) ("Materiality, for CLRA claims, is

2    judged by the effect on a 'reasonable consumer.'") (citation omitted).

3            Accordingly, if the misrepresentations at issue are found to be material, "an inference of

4    reliance would arise as to the entire class." *Mass. Mut. Life Ins. Co. v. Superior Court*, 97 Cal.

5    App. 4th 1282, 1292-93 (2002) (citing cases) (affirming certification of class under UCL and

6    CLRA); *see also Astiana*, 291 F.R.D. at 501, 504 (partially granting motion for (b)(3) class

7    certification under both the UCL and CLRA and noting that the causation required by the CLRA

8    does not make plaintiffs' claims unsuitable for class treatment because causation as to individual

9    class members is commonly proved by materiality); *Keegan v. Am. Honda Motor Co., Inc.*, 284

10    F.R.D. 504, 530-31 (C.D. Cal. 2012) *leave to appeal denied*, 12-cv-80138, 2012 WL 7152289

11    (9th Cir. Nov. 9, 2012) (certifying a (b)(3) class of UCL and CLRA purchasers and noting that

12    "causation can be shown as to an entire class by proving materiality"); *Bruno v. Quten Research*

13    *Inst., LLC*, 280 F.R.D. 524, 535 (C.D. Cal. 2011) (certifying (b)(3) class under UCL and CLRA

14    since "the product was marketed with a material misrepresentation, which *per se* establishes an

15    injury"); *Yumul v. Smart Balance, Inc.*, 733 F. Supp. 2d 1117, 1125 (C.D. Cal. 2010)

16    ("California courts have held that reasonable reliance is not an element of claims under the UCL,

17    FAL, and CLRA.").   As shown above, Plaintiff will be able to demonstrate that Uber's

18    misrepresentations were objectively material, rendering individual reliance determinations

19    unnecessary.

20            The extraterritorial application of the UCL and CLRA also do not pose any barriers to

21    class certification.   Where, like here, the offending marketing materials were "conceived,

22    reviewed, approved or otherwise controlled from [the defendant's] headquarters in California"

23    non-resident class members have standing to assert claims under the UCL and CLRA. *Wang v.*

24    *OCZ Tech. Grp., Inc.*, 276 F.R.D. 618, 629-30 (N.D. Cal. 2011).

25            The misrepresentations and transactions at issue here were contained on Uber's website

26    and mobile phone application, which are maintained on Uber's servers in San Francisco,

27    California. *See* Testimony of Andrew MacDonald at 152:20-153:13, 163:19-21, 168:11-16,

28    169:12-14, attached hereto as **Ex. N** (Uber's General Manager of Chicago Operations testifying

1   that Uber "track[s] every single trip initiated and completed in our database," that "a customer

2   who wants a taxi can request through the Uber app" and that those transactions are "stored on

3   [Uber's] servers in San Francisco").  When Plaintiff and putative class members used Uber's

4   services those transactions, including the unlawful billing and payment for those services, were

5   also processed on servers in California.  *Id.*  Approximately ██% of class member taxi rides

6   occurred in San Francisco and Uber's terms of use contained a choice-of-law provision

7   providing that California law shall govern.  *See* Uber's Second Amended Response to

8   Interrogatory No. 6 (**Ex. J**); Amended Complaint (Doc. 40) at ¶ 7.

9       More importantly, the decision to hide the service fee in the gratuity charge emanated

10  from and was approved by Uber's headquarters in San Francisco.  Uber's assertion that the

11  General Managers of each individual city independently decided the manner in which to

12  represent the gratuity charge defies all credulity.  One would have to believe that five different

13  people in five different cities just happened to all decide on the exact same manner of concealing

14  an undisclosed fee in the gratuity charge without any input or direction from Uber's

15  headquarters.  Not only is such an assertion completely implausible, but it is also belied by the

16  internal emails produced by Uber, which demonstrate that the executives and Product Managers

17  in San Francisco dictated and coordinated the misleading gratuity charge.

18      For example, ████████████████████████████

19  ████████████████████████████████████████

20  ████████████████████████████████████████

21  ████████████████████████  *See* September 13, 2012 email exchange,

22  attached hereto as **Ex. O**.  ████████████████████

23  ████████████████████████████████████████

24  ████████████████  *Id.*

25      ████████████████████████████████████

26  ████████████████████████████████████████

27  ████████████████  *See* September 17, 2012 email, attached hereto as **Ex.**

28  **P**.  These instructions made clear that ████████████████

11

1    *Id.* (emphasis added).  Despite Uber's previous assertion that Mr. Kalancik's emails should not

2    be produced in this litigation because individual General Managers are the decision-makers

3    (which we now know is false) and that the only emails he would be involved in would be

4    included in the General Manager emails (also false), the production of his emails yielded

5    communications demonstrating that he was clearly involved in the marketing of Uber's services.

6    *See, e.g.,* July 2, 2012 email ███████████████████████████████████████████████████████

7    ███████████████████████████████████████████████████████████████████████████████████

8    ███████████████████████████████████████████ , attached hereto as **Ex. Q**.

9            Further demonstrating that the decision-making with respect to Uber's gratuity charge

10   emanated from California is the fact that ██████████████████████████████████████████████

11   ███████████████████████████████████████████████████████████████████████████████████

12   █████████████████████████████████ . *See* March 22, 2013 email (**Ex. G**) (██████████████

13   ███████████████████████████████████████████████████████████████████████████████████

14   █████████████████████████████████ ).   Other emails further demonstrate that the

15   executives at Uber's headquarters in San Francisco were routinely involved in marketing

16   decisions regarding Uber's gratuity charge.  *See, e.g.,* June 14, 2012 email, attached hereto as

17   **Ex. R** (████████████████████████████████████████████████████████████████████████████

18   ███████████████████████████████████████████████████████████████████████████████████

19   ████████████████████████████████ ; October 18, 2012 email, attached hereto as **Ex. S**  ███████

20   ███████████████████████████████████████████████████████████████████████████████████

21   ████████████████████ .

22           This and other evidence will unequivocally demonstrate that the misleading statements at

23   issue in this suit were reviewed, approved or otherwise emanated from California, rendering

24   moot any argument by Uber that choice of law issues defeat class certification.   Indeed, if

25   anything, whether or not the UCL and CLRA should be applied extraterritorially is yet another

26   common issue – established through common proof – applicable to the entire class.   Courts

27   routinely certify nationwide classes under the UCL and CLRA under similar factual

28   circumstances.   *See, e.g., Chavez,* 268 F.R.D. at 379 (certifying nationwide class under the

12

1  CLRA and UCL because "Defendants are headquartered in California and their misconduct

2  allegedly originated in California"); *Wolph*, 272 F.R.D. at 486 (certifying nationwide class under

3  the CLRA and UCL because the plaintiffs demonstrated "that the 'decisions regarding

4  marketing, sales, and pricing' likely would have been made in California"); *Pecover v. Elec. Arts*

5  *Inc.*, 08-cv-2820, 2010 WL 8742757, at *17 (N.D. Cal. Dec. 21, 2010) (applying UCL to

6  nationwide class where, among other things, the defendant included a California choice-of-law

7  provisions in its online terms of service, was headquartered in California, and made

8  anticompetitive pricing decisions in California); *Wershba v. Apple Computer, Inc.*, 91 Cal. App.

9  4th 224, 242 (2001) (affirming certification of nationwide class under UCL and CLRA where

10  defendant had its principal place of business in California and the brochures containing the

11  representations at issue were prepared in California).

12      For these reasons, Plaintiff has satisfied the predominance requirement of Rule 23(b)(3).

13          **2.      *Class treatment is the superior method of adjudicating this case.***

14      A class action is superior to any other available means for the fair and efficient

15  adjudication of this controversy.  The damages suffered by Plaintiff and the other class members

16  are relatively small compared to the burden and expense that would be required to individually

17  litigate their claims against Uber, so it would be impracticable for class members to individually

18  seek redress for Uber's wrongful conduct.  Where the damages sought by each class member are

19  not large, class members have a reduced interest in individually controlling the litigation.  *See*

20  *Smith v. Cardinal Logistics Mgmt. Corp.*, 07-cv-2104, 2008 WL 4156364, *11 (N.D. Cal. Sept.

21  5, 2008); *see also Johns*, 280 F.R.D. at 559 (finding class action superior where the small

22  amount in controversy for each individual consumer was under $10, making individual claims

23  economically infeasible).  Accordingly, litigating individual class members' claims "would not

24  only unnecessarily burden the judiciary, but would prove uneconomic for potential plaintiffs,"

25  making the class action proposed here "paradigmatic."  *Hanlon*, 150 F.3d at 1023.

26      As noted above, evidence demonstrating that Uber's advertising was misleading and

27  deceptive applies equally to all class members, such that the necessary discovery for any named

28  Plaintiff would overlap nearly entirely with that of other class members.  Litigating individual

1  class members' claims would produce a multiplicity of cases – congesting the judicial system –

2  and create a potential for inconsistent or contradictory judgments.  Class treatment, by contrast,

3  provides manageable judicial treatment calculated to bring a rapid conclusion to the litigation of

4  all claims arising from Uber's common misconduct.  *See, e.g.*, *Guido v. L'Oreal, USA, Inc.*, 284

5  F.R.D. 468, 484 (C.D. Cal. 2012), *on reconsideration*, 11-cv-1067, 2012 WL 2458118 (C.D. Cal.

6  June 25, 2012) (superiority requirement satisfied where consumers filed putative class action

7  against seller of anti-frizz hair care product alleging it had failed to properly label the product as

8  flammable in violation of the UCL and CLRA, noting that "class actions to enforce compliance

9  with consumer protection laws are desirable and should be encouraged") (internal citations

10  omitted); *Johns*, 280 F.R.D. at 559 (certifying class under Rule 23(b)(3) where plaintiffs brought

11  UCL and CLRA claims alleging that they would not have purchased defendant's multivitamins

12  but for defendant's claims that they provided prostate health benefits).

13         For these reasons, class certification is appropriate under Rule 23(b)(3).

14         **WHEREFORE,** Plaintiff respectfully requests the Court to enter an order (i) certifying

15  this case as a class action, (ii) designating Plaintiff as the representative of the class, and (iii)

16  appointing Myron M. Cherry and Jacie C. Zolna of Myron M. Cherry & Associates, LLC, Hall

17  Adams of the Law Offices of Hall Adams LLC and Michael Ram of Ram, Olson, Cereghino &

18  Kopczynski LLP as class counsel.

19  Dated:  July 16, 2015

20                                            Respectfully submitted,

21                                            Myron M. Cherry & Associates LLC

22                                            MYRON M. CHERRY (50278)

23                                       By:  _____/s/ Jacie C. Zolna_____

24                                             Jacie C. Zolna

                                          Attorney for Plaintiff

25  Myron M. Cherry & Associates LLC

26  30 North LaSalle Street, Suite 2300
   Chicago, Illinois  60602

27  Telephone: (312) 372-2100
   Facsimile: (312) 853-0279

28  mcherry@cherry-law.com

### *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing **Plaintiff's Notice of Motion, Motion for Class Certification and Memorandum of Points and Authorities in Support Thereof** upon:

Arthur Miles Roberts
arthurroberts@quinnemanuel.com
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111

Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
Amit B. Patel
amitbpatel@quinnemanuel.com
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661

via the electronic filing system on this 16th day of July, 2015.


_____/s/ Jacie C. Zolna _____