# Ex. C
## (filed under seal)

# Ex. D
## (filed under seal)

# Ex. E
## (filed under seal)

# Ex. F
## (filed under seal)

# Ex. G
## (filed under seal)

# Ex. H
## (filed under seal)

# Ex. I

# In the Matter of:

## *Caren Ehret*

## *vs.*

## *Uber Technologies*

---

## *Caren Ehret*

## *December 19, 2014*

---

**MERRILL CORPORATION**

LegaLink, Inc.

311 South Wacker Drive
Suite 300
Chicago, IL 60606
Phone: 312.386.2000
Fax: 312.386.2275

Caren Ehret     December 19, 2014

Page 21

| 11:02:05 | 1 | Q   Word of -- |
| 11:02:05 | 2 | A   Again, new to the market, word of mouth, yes. |
| 11:02:08 | 3 | Q   Word of mouth. |
| 11:02:08 | 4 |     Do you recall through word of mouth anything |
| 11:02:11 | 5 | else that had been told to you about the Uber Taxi |
| 11:02:13 | 6 | Service? |
| 11:02:14 | 7 | A   No. |
| 11:02:18 | 8 | Q   Did you consider Uber Black Car Service before |
| 11:02:21 | 9 | choosing Taxi? |
| 11:02:23 | 10 | A   I don't think so. |
| 11:02:27 | 11 | Q   Did you ever consider using Uber Taxi after that |
| 11:02:33 | 12 | one ride? |
| 11:02:33 | 13 | A   No. |
| 11:02:34 | 14 | Q   Why not? |
| 11:02:36 | 15 | A   Because I wasn't happy with the outcome. |
| 11:02:39 | 16 | Q   What about the outcome were you unhappy with? |
| 11:02:42 | 17 | A   The fact that -- of why we're here today, that I |
| 11:02:46 | 18 | felt like I was not communicated to honestly about how |
| 11:02:52 | 19 | the gratuity would work. |
| 11:02:59 | 20 | Q   What were you told about the gratuity? |
| 11:03:02 | 21 | A   When I signed up for him to come pick me up that |
| 11:03:06 | 22 | day, it said 20 percent gratuity to the driver. |
| 11:03:11 | 23 | Q   It said that where? |
| 11:03:13 | 24 | A   On the app, or on my -- whatever I was looking |

Caren Ehret     December 19, 2014

Page 22

| | | |
|---|---|---|
| 11:03:20 | 1 | at via the app on my phone. |
| 11:03:24 | 2 | Q    Is there anywhere else that you saw any |
| 11:03:26 | 3 | information about the billing practice, which includes |
| 11:03:31 | 4 | gratuity, from Uber? |
| 11:03:32 | 5 | A    Not that I can recall, no. |
| 11:03:46 | 6 | Q    You were unhappy that what then didn't happen as |
| 11:03:50 | 7 | a result of the ride? |
| 11:03:52 | 8 | A    So my understanding from the view on the phone |
| 11:03:56 | 9 | was that the driver would get the full 20 percent |
| 11:03:59 | 10 | gratuity.  And during the course of our ride it came to |
| 11:04:05 | 11 | my attention from him -- I chat with cab drivers.  I get |
| 11:04:09 | 12 | car sick if I look at my phone, so I always chat up the |
| 11:04:13 | 13 | people I'm with. |
| 11:04:13 | 14 | I was by myself and the cab driver.  And so I |
| 11:04:17 | 15 | asked him, you know, this is my first time in Uber Taxi, |
| 11:04:20 | 16 | how do you like driving for them, isn't it great that |
| 11:04:24 | 17 | you get a guaranteed 20 percent gratuity, because I'm |
| 11:04:28 | 18 | sure lots of passengers probably aren't always good |
| 11:04:31 | 19 | tippers, and he said, well, I don't.  And I said, what |
| 11:04:33 | 20 | do you mean?  It said you get -- I give you a 20 percent |
| 11:04:36 | 21 | gratuity.  And he said, I only get half.  And that |
| 11:04:40 | 22 | wasn't apparent to me when I had requested the ride. |
| 11:04:44 | 23 | Q    It wasn't apparent to you that the driver would |
| 11:04:46 | 24 | only get half of the gratuity? |

cd398c22-ecf9-4ddd-9391-a6d338da6a92

Caren Ehret      December 19, 2014

Page 23

| 11:04:48 | 1 | A   Correct.  I was under the assumption from what |
| 11:04:52 | 2 | was on the screen that I saw that he would get the full |
| 11:04:55 | 3 | 20 percent. |
| 11:05:01 | 4 | Q   Did you have an assumption as to how much of the |
| 11:05:04 | 5 | metered fare the taxi driver would get? |
| 11:05:08 | 6 | A   The 20 percent. |
| 11:05:10 | 7 | Q   I'm sorry.  So the meter says a number. |
| 11:05:13 | 8 | A   Correct. |
| 11:05:13 | 9 | Q   And then there's this other charge that you're |
| 11:05:16 | 10 | calling gratuity? |
| 11:05:17 | 11 | A   Correct. |
| 11:05:18 | 12 | Q   How much of the number on the meter did you |
| 11:05:20 | 13 | expect or assume the driver would get? |
| 11:05:23 | 14 | A   Oh, the metered fare?  None.  I mean, I don't -- |
| 11:05:26 | 15 | I didn't ask how that back piece works.  I was concerned |
| 11:05:35 | 16 | about him saying he only got half the gratuity. |
| 11:05:36 | 17 | I mean, the taxi driver, you know, I don't know |
| 11:05:38 | 18 | how much goes -- of the metered fare, I don't know. |
| 11:05:42 | 19 | Q   Did you have any assumption one way or another? |
| 11:05:44 | 20 | A   No. |
| 11:05:45 | 21 | Q   Do you know today how much of the -- |
| 11:05:48 | 22 | A   No. |
| 11:05:49 | 23 | Q   -- metered fare the taxi driver gets? |
| 11:05:51 | 24 | A   No. |

cd398c22-ecf9-4ddd-9391-a6d338da6a92

Caren Ehret     December 19, 2014

Page 35

| 11:18:06 | 1 | A But isn't that hypothetical? |
| 11:18:09 | 2 | Q But you still have to answer the question even |
| 11:18:11 | 3 | if you think it's a hypothetical. |
| 11:18:13 | 4 | A I just think -- As a consumer, I think it's fair |
| 11:18:16 | 5 | to know how much of the percentage is going to the |
| 11:18:18 | 6 | driver, you know. I want to know that my gratuity, |
| 11:18:23 | 7 | whatever I paid him, he's getting. |
| 11:18:26 | 8 | Q If you knew before you tried to take the taxi |
| 11:18:30 | 9 | through Uber Taxi that half of the gratuity was going to |
| 11:18:34 | 10 | the driver and half was going to Uber, would you have |
| 11:18:37 | 11 | taken the taxi? |
| 11:18:39 | 12 | A I don't know. Maybe, maybe not. |
| 11:19:13 | 13 | (Document marked as Deposition |
| 11:19:13 | 14 | Exhibit 1 for identification.) |
| 11:19:19 | 15 | Q I'm handing you what I've marked as Exhibit 1 to |
| 11:19:22 | 16 | your deposition. Do you recognize that document? |
| 11:19:27 | 17 | A Yes. |
| 11:19:29 | 18 | Q If you -- We were talking about the fees charged |
| 11:19:36 | 19 | on this. The fare breakdown says fare specified by |
| 11:19:42 | 20 | driver as 13.25. Do you see that? |
| 11:19:45 | 21 | A Yes. |
| 11:19:46 | 22 | Q Did you have any understanding as to who got |
| 11:19:48 | 23 | what portions of that 13.25? |
| 11:19:51 | 24 | A No. |

# Ex. J
## (filed under seal)

# Ex. K

## DECLARATION OF MYRON M. CHERRY

I, Myron M. Cherry, declare as follows:

1.      I am the founder and managing partner at Myron M. Cherry & Associates, LLC (the "Firm"), and our Firm represents the Plaintiff in this action.  I have personal knowledge of the facts set forth in this declaration and, if called to testify, could and would testify competently thereto.

2.      I and others in our Firm have wide experience in class actions as well as complex litigation.  I have represented plaintiffs and defendants in a variety of substantive litigation including without limitation civil rights, contract, antitrust, fraud, securities actions, environmental issues, tort cases, and EEOC matters.  I have tried cases to verdict before courts in several jurisdictions.  A substantial part of my practice since approximately 1972 involves plaintiff contingency litigation, including class action litigation.

3.      In the course of my career, I have persuaded courts to break with precedent for the benefit of my clients in numerous areas of law, including the law of contracts, class actions under Title VII, and issues of nuclear safety under the Atomic Energy and Nuclear Regulatory Commission Acts.

4.      The Firm, while based in Illinois, handles matters throughout the country and has lawyers licensed to practice in California, the District of Columbia, Minnesota and Wisconsin, as well as Illinois. The Firm is experienced in coordinating and handling large and complicated cases, alone and in cooperation with other lawyers.

5.      I graduated from Northwestern University Law School in 1962 and have been practicing law for over 50 years, engaging exclusively in practice as a litigation and trial lawyer. I was an editor of the Northwestern Law Review and was awarded Order of the Coif.  I am

admitted to practice in the United States District Court for the Northern District of California and am also admitted to practice and have appeared before various Courts of Appeal, as well as the Supreme Court of the United States.[1] I am also a member of the Bar in the states of Illinois, California, Wisconsin and the District of Columbia.

6. I am, and have been for several years, an Adjunct Professor at Northwestern University School of Law teaching Trial Practice. I am also a graduate of the Harvard Law School course on Mediation. The Firm also devotes a significant amount of time to public interest issues, including community affairs, political affairs, *pro bono* representation and assisting indigent individuals – work for which one of my Firm's partners was recently recognized with the United States District Court for the Northern District of Illinois' Award for Excellence in *Pro Bono* Service (see paragraph 10 below).

7. Over the years, I and lawyers in my Firm have recovered hundreds of millions of dollars in verdicts and settlements for the classes, individuals and entities whom we have represented. This is reflected in the list of my Firm's attorneys' notable cases attached hereto as **Ex. 1**. Some of the Firm's more recent results in class actions and complex litigation include the following:

- The Firm was appointed lead class counsel and recovered $44 million for a class of Senior Pilots of United Airlines in a class action alleging that the pilots' union, Air Line Pilots Association, International ("ALPA"), improperly distributed the proceeds of $550 million in convertible notes it received as part of United Airline's bankruptcy. According to published reports at the time, this settlement represented the largest amount ever paid by a union for violation of the duty of fair representation. *Mansfield v. Air Line Pilots Ass'n Int'l* (Case No. 06-cv-6869, N.D. Ill.).

---

[1] I am admitted to practice in the following federal courts: U.S. Supreme Court, First Circuit Court of Appeals, Seventh Circuit Court of Appeals, Ninth Circuit Court of Appeals, District of Columbia Circuit Courts of Appeals, U.S. District Court for the Northern District of Illinois, U.S. District Court for the Central District of Illinois, U.S. District Court for the Eastern District of Wisconsin, U.S. District Court for the Northern District of California, U.S. District Court for the Central District of California and U.S. District Court for the Southern District of California.

- The Firm was retained by the Illinois Department of Financial and Professional Regulation as a special examiner to assist in its investigation of contingent commissions and related practices, such as steering and bid-rigging, in the insurance industry, including Aon Corporation and Arthur J. Gallagher & Co.   In addition to its factual investigation, the Firm coordinated efforts with the Illinois Department of Financial and Professional Regulation and Attorney Generals.   Approximately $250 million was obtained in settlements as a result of this coordinated effort.

- The Firm was appointed co-lead counsel and obtained a $15 million settlement in a class action against multiple defendants alleging that they had caused toxins to contaminate the groundwater in an area covering approximately 1,000 homes. *Muniz, et al. v. Rexnord Corp., et al.* (Case No. 04-cv-2405, N.D. Ill.).

- The Firm prosecuted an action against a major Wall Street law firm, Sullivan & Cromwell, for legal malpractice in connection with a complex corporate reorganization that required a payoff of public debt.   Shortly before trial, the Firm obtained a $25.5 million settlement, one of the largest settlements or verdicts recorded in a legal malpractice case. *Ventas, Inc. v. Sullivan & Cromwell* (Case No. 5232-02, Superior Court of the District of Columbia).

- The Firm was appointed to the executive committee in a class action on behalf of defrauded purchasers of advertising space in the Chicago Sun Times, which resulted in a settlement of $15 million in cash and other benefits to the class. *In re Chicago Sun-Times Circulation Litigation* (Case. No. 04 CH 9757, Circuit Court of Cook County, Illinois).

- We were one of several firms spearheading a class action case challenging the constitutionality of a state statute enabling municipalities to enact ordinances imposing a fee or tax on wireless telephone users.  After the Illinois Supreme Court affirmed the trial court's declaration that the fee was unconstitutional, our Firm was instrumental in obtaining a partial settlement valued at approximately $30 million. After that, we successfully obtained not only class certification with respect to the plaintiffs, but also obtained certification of a defendant class, and then settled the remaining claims against the defendant class for approximately $18 million, for a total settlement of approximately $48 million. *PrimeCo Personal Communications, L.P., et al. v. Illinois Commerce Commission, et al.* (Case. No. 98 CH 5500, Circuit Court of Cook County, Illinois).

8.     Our Firm is also currently active in a number of pending complex litigation and/or class actions, including, but not limited to:

- *Hammarquist, et al. v. United Continental Holdings, Inc., et al.* (Case No. 13-cv-1509, N.D. Ill.):  Appointed co-lead interim class counsel in putative nationwide class action against United Airlines for unilateral reduction in benefits to its frequent flyer programs.

- *Otero v. Dart, et al.* (Case No. 12-cv-3148, N.D. Ill.):  Appointed lead class counsel in

certified class action against the Sherriff of Cook County for alleged unlawful detention of individuals acquitted of wrongdoing.

- *Barnes, et al. v. Air Line Pilots Association, International* (Case No. 13-cv-6243, N.D. Ill.): Putative class action against union by two subclasses of United pilots for union's breach of its duty of fair representation in unilaterally selecting an allocation methodology for a $225 Million lump sum payment for retroactive pay.

- *In re Testosterone Replacement Therapy Products Liability Litigation* (Case No. 14-cv-1748 / MDL No. 2545, N.D. Ill.): Appointed co-liaison counsel in MDL against manufacturers of testosterone drugs for false and misleading advertising, negligence, failure to warn, and breach of warranties.

9.    The Firm is prepared and able to commit whatever financial resources and attorney time might be necessary in this litigation to obtain the best possible result for the class. The Firm has more than adequate resources to fund and staff this litigation and has a long track record of doing so in past cases.

10.    In addition to myself, I am prepared to commit the resources of other seasoned lawyers to the prosecution of this lawsuit, including, but not limited to, Jacie C. Zolna.  Mr. Zolna is a partner at Myron M. Cherry & Associates, LLC and has been practicing law for over 12 years.  He received his J.D. from DePaul University College of Law where he graduated with honors and was a member of the DePaul Law Review.  Mr. Zolna is admitted to the Illinois Bar, the Minnesota Bar, the United States District Court for the Northern District of Illinois, the Seventh Circuit Court of Appeals and the Federal Trial Bar.  He has been substantively involved in a number of complex matters during his career (including those referenced above), and has argued cases before both the Illinois Appellate Court and the Seventh Circuit Court of Appeals. On May 23, 2013, the United States District Court for the Northern District of Illinois presented Mr. Zolna with the Award for Excellence in *Pro Bono* Service for his outstanding pro bono and public interest representation.  The Firm is able and intends to commit additional lawyers and/or staff to this case as need dictates.

4

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 16, 2015

Myron M. Cherry

# Ex. 1

NOTABLE RESOLVED AND PENDING CASES OF THE
ATTORNEYS OF MYRON M. CHERRY & ASSOCIATES, LLC

## GENERAL CLASS ACTIONS & COMPLEX LITIGATION

**Mansfield v. Air Line Pilots Ass'n Int'l, 06-cv-6869 (N.D. Ill.)**
The firm was appointed lead class counsel and recovered $44 million for a class of Senior Pilots of United Airlines in a class action, in which United Airlines was an intervening party, alleging that the defendant improperly distributed the proceeds of $550 million in convertible notes it received as part of United Airline's bankruptcy. According to published reports at the time, this settlement represents the largest amount ever paid by a union for violation of the duty of fair representation.

**Ventas, Inc. v. Sullivan & Cromwell, No. 5232-02 (Sup. Ct., D.C.)**
The firm prosecuted an action against a major Wall Street law firm, Sullivan & Cromwell, for legal malpractice resulting from advice given in connection with a complex corporate reorganization that required a payoff of public debt. Shortly before trial, the firm obtained a $25.5 million settlement, one of the largest settlements or verdicts recorded in a legal malpractice case.

**In re Chicago Sun-Times Circulation Litigation, No. 04 CH 9757 (Cook County, Ill.)**
The firm was appointed to the executive committee in a class action on behalf of defrauded purchasers of advertising space in the Chicago Sun Times, which resulted in a settlement of $15 million in cash and other benefits to the class.

**Muniz, et al. v. Rexnord Corp., No. 04-cv-2405 (N.D. Ill.)**
The firm was appointed co-lead counsel and obtained a $15 million settlement in a class action against multiple defendants alleging that they had caused toxins to contaminate the groundwater in an area covering approximately 1,000 homes.

**Otero v. Dart, et al., No. 12-cv-3148 (N.D. Ill.)**
The firm was appointed lead counsel in certified class action against the Sherriff of Cook County for alleged unconstitutional detention of individuals acquitted of wrongdoing at trial.

**Jacobson v. Bd. of Ed. of City of Chicago, No. 94 L 5360 (Cook County, Ill.)**
The firm was retained by other attorneys to take over prosecution of class action brought on behalf of former Chicago public school principals who were unlawfully terminated as a result of a public act that was later found to be unconstitutional. Due to the firms' efforts, the suit settled for $2 Million, an amount sufficient to compensate almost all class members the full amount of their lost wages.

**Illinois ex rel. Zolna-Pitts v. ATI Holdings, LLC, No. 12 CH 27483 (Cook County, Ill.)**
The firm prosecuted a whistleblower suit on behalf of former employee for alleged widespread insurance fraud in connection with the defendants' alleged practice of overbilling for physical therapy services.

## CONSUMER CLASS ACTIONS

**Hammarquist, et al. v. United Continental Holdings, Inc., et al., No. 13-cv-1509 (N.D. Ill.)**
Appointed co-lead interim class counsel in putative nationwide class action against United Airlines for unilateral reduction in benefits to its frequent flyer programs.

**Chultem v. Ticor Title Ins. Co. / Colella v. Chicago Title Ins. Co., No. 06 CH 9488 (Cook County, Ill.)**
Certified class action for defendants' alleged practice of paying illegal kickbacks to attorney agents in exchange for the referral of title insurance business.

**PrimeCo Personal Comm., L.P., v. Ill. Commerce Comm'n, No. 98 CH 5500 (Cook County, Ill.)**
We were one of several firms working together on a class action challenging the constitutionality of a state statute enabling municipalities to enact ordinances imposing a fee or tax on wireless telephone users. After the Illinois Supreme Court affirmed the trial court's declaration that the fee was unconstitutional, our firm was instrumental in obtaining a partial settlement valued at approximately $30 million. After that, we successfully obtained not only class certification with respect to the plaintiffs, but also obtained certification of a defendant class, and then settled the remaining claims against the defendant class for approximately $18 million, for a total settlement of approximately $48 million.

DEFENSE AND GOVERNMENT INVESTIGATIONS

**Contingent Commissions and Bid-Rigging Investigation of Insurance Industry**
The firm was retained by the Illinois Department of Financial and Professional Regulation as a special examiner to assist in its investigation of contingent commissions and related practices, such as steering and bid-rigging, in the insurance industry, including Aon Corporation and Arthur J. Gallagher & Co. In addition to its factual investigation, the firm assisted in coordinating efforts with the Illinois Department of Financial and Professional Regulation and Attorney Generals. Approximately $250 million was obtained in settlements as a result of this coordinated effort.

**Cheek v. United States, 498 U.S. 192 (1991)**
The firm successfully argued the landmark case regarding the interpretation of willfulness under the criminal provisions of the Internal Revenue Code.

**Castagnola v. Hewlett-Packard Company, No. 11-cv-5772, 2012 WL 2159385 (N.D. Cal. 2012)**
The firm successfully defended a nationwide class action alleging deceptive advertising in connection with the online marketing of defendant's membership programs and obtained a dismissal of the case in its entirety and with prejudice.

**EEOC v. International Profit Associates, Inc., No. 01-cv-4427, 2007 WL 3120069 (N.D. Ill. 2007)**
The firm represented a company in a massive "pattern or practice" sexual harassment case brought by the EEOC. During the course of its representation, the firm obtained a number of significant and unique decisions, including a landmark decision eliminating the ability of the EEOC to establish liability on a class basis and obtain a global punitive damage award, a decision that departed from a long line of pro-EEOC cases and, for the first time ever, allowed a defendant-employer in a "pattern or practice" suit to challenge each individual's claim on summary judgment. The decision is often cited around the country.

**Colombik & Associates, Inc., et al. v. Burgess, et al., No. 02 CH 1579 (Lake County, Ill.)**
The firm represented a management consulting firm that was sued by a former business partner alleging theft of trade secrets. The suit sought damages in excess of $40 million and an injunction to prevent the company from operating its newly-formed tax consulting business. The firm defeated the temporary/preliminary injunction, obtained dismissal of the trade secret claims and, ultimately, negotiated a modest settlement, all of which allowed the thriving tax consulting business to continue uninterrupted and grow into one of the company's most successful divisions – generating over $40 million in annual revenues.

2

### Additional Government Investigations

The firm has successfully represented companies and individuals being investigated by Attorney Generals, the Federal Trade Commission and other government agencies throughout the United States, including in Illinois, California, New York, Florida, Texas, Arkansas, Missouri, Iowa and Wisconsin.

## NOTABLE PUBLIC INTEREST CASES

### Lyon v. Illinois High Sch. Ass'n, No. 13-cv-00173, 2013 WL 140926 (N.D. Ill. 2013) dissolved, 2013 WL 309205 (N.D. Ill. 2013)

The firm obtained a temporary injunction against the Illinois High School Association on behalf of a high school athlete enjoining the IHSA from prohibiting him from participating in his high school's wrestling program as a fifth-year senior. While the injunction was later dissolved, the student was allowed to wrestle the remainder of the regular season of his senior year. The lawsuit was profiled in the *Chicago Sun-Times* and on the front page of the *Chicago Daily Law Bulletin*.

### Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Engineers, 191 F.3d 845 (7th Cir. 1999), rev'd, 531 U.S. 159 (2001)

In litigation and administrative proceedings, the firm stopped the construction of a huge landfill on a parcel of land in Cook and Kane counties. This litigation was pursued in Illinois Circuit, Appellate, and Supreme Courts, as well as the Federal District Court, Seventh Circuit Court of Appeals and the U.S. Supreme Court. The firm obtained an injunction and a subsequent order from the Seventh Circuit Court of Appeals banning the construction of the landfill. Although the U.S. Supreme Court later reversed, the firm assisted in negotiating a sale of the property to a government entity. The landfill was never built and the land became a protected wetland preserve.

## OTHER NOTABLE RESULTS

### Siegler v. Illinois Superconductor Corp., No. 96 CH 5824 (Cook County, Ill.)

The firm represented a client for breach of an oral contract for the purchase of securities. The firm obtained a unique, unprecedented decision from the Circuit Court of Cook County confirming that under the Uniform Commercial Code oral contracts for the purchase and sale of securities are enforceable. The firm tried the case and obtained a $6.5 million judgment.

### International Profit Associates, Inc. v. Paisola, 461 F. Supp. 2d 672 (N.D. Ill. 2006)

The firm obtained an injunction shutting down a website that was posting negative and defamatory information about one its clients and obtained a first-of-its-kind decision on internet law which continues to be cited around the Country.

# Ex. L

## DECLARATION OF HALL ADAMS

I, Hall Adams, declare as follows:

1.       I am the founder and managing member of The Law Offices of Hall Adams, LLC. I have personal knowledge of the facts set forth in this declaration and, if called to testify, could and would testify competently thereto.

2.       In my nearly three decades of practicing law, I have tried cases and gone to verdict over one hundred times, arbitrated and mediated at least as many cases, and briefed and argued numerous appeals. I have obtained several multi-million dollar verdicts and settlements for my clients. I have trial and litigation experience in several areas of law, including breach of contract, legal malpractice, securities fraud, personal injury and class actions, including being appointed class counsel. I have an AV Preeminent Rating on LexisNexis Martindale-Hubbell and have been designated one of Chicago's Top Lawyers every year since 2011.

3.       I am admitted to practice in the Seventh Circuit Court of Appeals, United States District Court for the Northern District of Illinois, United States District Court for the Central District of Illinois, United States District Court for the Southern District of Illinois and the Illinois Supreme Court. I have been admitted *pro hac vice* in several other jurisdictions.

4.       I graduated from Loyola University of Chicago School of Law in 1987. From 1990-2003, I was a trial lawyer at a large Chicago law firm at which I became the Managing Partner. I founded my present law firm in 2004. Prior to entering private practice I served as a Marine Corps Officer and Judge Advocate, during which time I prosecuted and defended service members charged with criminal misconduct at courts martial, including obtaining the acquittal of two clients charged with capital murder.

I declare under penalty of perjury that the foregoing is true and correct.

Dated: July 16, 2015

_____
Hall Adams