# Ex. M

Myron M. Cherry (California State Bar No. 50278)
mcherry@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279

Hall Adams (admitted *pro hac vice*)
hall@adamslegal.net
LAW OFFICES OF HALL ADAMS, LLC
33 North Dearborn Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 445-4900
Facsimile: (312) 445-4901

Michael F. Ram (SBN 104805)
mram@rocklawcal.com
Karl Olson (SBN 104760)
kolson@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, CA  94111
Tel:  415-433-4949
Fax:  415-433-7311

Attorneys for Plaintiff and the Class

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| CAREN EHRET, individually and on behalf of a class of similarly situated persons,<br><br>Plaintiff,<br><br>v.<br><br>UBER TECHNOLOGIES, INC., a Delaware Corporation.<br><br>Defendant. | Case No. 3:14-cv-113-EMC<br><br>**DECLARATION OF MICHAEL F. RAM IN SUPPORT OF MOTION FOR CLASS CERTIFICATION**<br><br>Date:      **October 8, 2015**<br>Time:      **1:30 p.m.**<br>Place:     **Courtroom 5, 17th Floor**<br>           **San Francisco, CA**<br>           **[Hon. Edward M. Chen]**<br><br>**Orig. Complaint Filed:  January 8, 2014** |

/ / /

/ / /

1      I, Michael F. Ram, declare as follows:

2      1.    I am an attorney admitted to the Bar of the State of California I am a partner at

3 Ram, Olson, Cereghino & Kopczynski LLP, co-counsel for Plaintiffs in this case. I have personal

4 knowledge of the following facts.

5      2.    I make this declaration in support of Plaintiffs' Motion for certification of the

6 class.

7      3.    Ram, Olson, Cereghino & Kopczynski LLP is a class action, media law, and

8 construction defect firm founded in 1997 by lawyers who began their careers in 1982 at Morrison

9 & Foerster in San Francisco.

10     4.    I have been co-lead counsel in numerous national consumer class actions. Our

11 firm's participation has contributed to consumer class action settlements that have paid billions of

12 dollars in compensation to millions of victims of unfair and illegal practices.

13     5.    I have 33 years of class action experience. I am admitted to practice before the

14 Supreme Court of the United States and various state and lower federal courts. I graduated cum

15 laude from Harvard Law School in 1982. I have participated in several class action trials and in

16 1992 I was a co-recipient of the Trial Lawyer of the Year Award given by Trial Lawyers for

17 Public Justice.

18     6.    From 1993 through 1997, I was a partner with Lieff, Cabraser, Heimann and

19 Bernstein where I represented plaintiffs in several major class actions, including:

20        • *Cox v. Shell*, Civ. No 18,844 (Obion County Chancery Court, Tennessee

21          (Chancellor Maloan). A nationwide class of approximately six million owners of

22          property equipped with defective polybutylene plumbing systems and yard service

23          lines. The settlement has paid out a billion dollars in compensation to consumers.

24        • *In re Louisiana-Pacific Inner-Seal Litigation*, No. CV-95-879 JO-LEAD (District

25          of Oregon). A nationwide class of homeowners with defective exterior siding on

26          their homes.

27

28

1       •  *ABS Pipe Litigation*, Judicial Council Coordination Proceeding No. 3126 Contra

2        Costa County Superior Court). A nationwide class of homeowners with defective

3        ABS pipes.

4     7.     In 1997, I reunited with lawyers I practiced with in the early 1980s to found Levy,

5 Ram, & Olson, now Ram, Olson, Cereghino & Kopczynski. With Ram, Olson, Cereghino &

6 Kopczynski, I continue to focus on consumer class actions. I am currently, and have been, co-

7 lead counsel in a number of consumer class actions including a national certified class of half a

8 million owners of allegedly dangerous glass pane gas fireplaces in *Keilholtz et al. v. Superior*

9 *Fireplace Company*, N.D. Cal Case No. CV-08-00836 CW (class settlement recently approved). I

10 was co-lead counsel for plaintiffs in *Chamberlan v. Ford Motor Company*, N.D. Cal Case No.

11 CV-03-2628 CW, a national class action involving defective intake manifolds that generated four

12 published opinions, including one by the Ninth Circuit, and settled one court day before the class

13 trial. I was liaison class counsel in *In re Google Buzz User Privacy Litigation*, No. 10-cv-00672-

14 JW (N.D. Cal.) and co-lead counsel for plaintiffs in *Whitaker v. Health Net of California*, Inc.,

15 N.D. Cal. Case No. 2:11-cv-0910 KJM DAD, another case involving California's Confidentiality

16 of Medical Information Act. I was also co-counsel for plaintiffs in a number of additional

17 consumer class actions, including:

18       •  *Milligan v. Toyota Motor Sales*, U.S.A., Inc., United States District Court, N.D.

19        Cal. Case No. C09-05418-RS. I served as co-counsel for a national class of

20        235,000 past and present owners of Toyota RAV-4 vehicles manufactured in

21        2001-2003 for defects in the transmission and electronic control modules (settled

22        on national basis).

23       •  *In re Kitec Plumbing System Products Liab. Litigation*, United States District

24        Court, N.D. Texas, Case No. 09-MD-2098. I served as co-lead counsel for a multi-

25        national class action involving claims concerning defective Kitec plumbing

26        systems in more than 225,000 homes in the United States and Canada (settled on

27        national basis).

28

1       •   *Richison v. American Cemwood Corp.*, San Joaquin Superior Court Case No.

2         005532.

3     I served as co-counsel for a multistate class of tens of thousands of owners of homes and

4 other structures on which defective Cemwood Shakes were installed.

5       •   *Williams v. Weyerhaeuser*, San Francisco Superior Court Case No. 995787. I

6         served as co-counsel on behalf of a nationwide class of hundreds of thousands or

7         millions of owners of homes and other structures with defective Weyerhaeuser

8         hardboard siding.

9       •   *Naef v. Masonite, Mobile County*, Alabama Circuit Court Case No. CV-94-4033. I

10         served as co-counsel on behalf of a nationwide class of homeowners with

11         defective hardboard siding on their homes. Settlement payments exceeded a

12         billion dollars.

13       •   *Keilholtz v. Superior Fireplace Co.*, United States District Court, N.D. Cal. Case

14         No. 08-cv-00836. I was Co-Lead Counsel in a certified class action representing

15         500,000 owners of allegedly defective glass pane glass fireplaces that settled on a

16         nationwide basis.

17       •   *Hanlon v. Chrysler Corp.*, 150 F.3d 1011 (9th Cir. 1998) (approving national class

18         action consumer settlement).

19       •   *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174 (2010) (reversing denial of class

20         certification in consumer class action).

21       •   *Gardner v. Stimson Lumber Co.* (King County Wash. No. 2-17633-3-SEA)

22         (nationwide consumer class action involving defective siding).

23       •   *Rosenberg v. U-Haul* (Santa Cruz Super Ct. No. CV-144045 (certified consumer

24         class action for false and deceptive conduct tried successfully to judgment).

25     8.    In October 2005, I co-authored with Elizabeth J. Cabraser an article entitled "New

26 Class Certification Developments in Non-Personal Injury Product Defect/Consumer Protection

27 Cases: Nationwide vs. Statewide Classes and the Role of Choice of Law." Published by the ABA

28 for the National Institute on Class Actions.

1    9.    Exhibit A to this declaration is a true and correct copy of Ram, Olson, Cereghino

2    & Kopczynski's firm resume.

3    I declare under penalty of perjury under the laws of the State of California that the

4    foregoing is true and correct.

5    Executed this 1st day of July, 2015, at San Francisco, California.

6

7                                                    */s/ Michael F. Ram*
                                            Michael F. Ram (SBN 104805)
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# EXHIBIT A

RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
ATTORNEYS

## RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

Ram, Olson, Cereghino & Kopczynski LLP is a class action, media law, and construction

defect litigation law firm founded by experienced class action and media lawyers who began

their careers in 1982 at Morrison & Foerster in San Francisco. They reunited after pursuing

diverse and successful litigation practices, culminating in partnerships at other San Francisco

firms. The partners' practical experience and excellent reputation among the bench and bar

allow the firm to provide high-caliber legal services with small firm responsiveness and

efficiency. The firm's partners have consistently achieved the highest ratings for legal ability

and ethics.

# RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

## KARL OLSON

Karl Olson specializes in defending news media clients and individuals against defamation and "SLAPP suits" (Strategic Lawsuits Against Public Participation). He has successfully defended dozens of such cases, disposing of most of them at a very early stage. He also specializes in handling cases involving access to government records. In 2005, he received the James Madison Award from the Northern California Society of Professional Journalists given annually to one legal counsel. In 2007, he won a landmark California Supreme Court case involving public access to public employee salaries. He is currently handling a variety of media law and other cases.

Mr. Olson's practice has also emphasized consumer and employment class action litigation, employment law, insurance coverage and bad faith litigation, construction defect and real estate litigation, and other commercial litigation matters. He has been counsel in cases recovering millions of dollars for consumers, employees and corporate insureds. He has extensive experience in both the trial and appellate courts and has been counsel in dozens of reported appellate decisions. He has been named a "Northern California Super Lawyer" and as one of the "Best Lawyers in America." Mr. Olson's practice has also focused on pre-publication and pre-broadcast counseling; intellectual property matters such as copyright and trademark infringement claims; and trade secret litigation. He has authored numerous articles on media law issues and lectured widely on defamation and First Amendment topics for both professional journalists and lawyers.

From 1982 to 1983, Mr. Olson was a research attorney for Justice Joseph Grodin of the California Supreme Court. He worked as an associate at Morrison & Foerster from 1983 to 1986 and was at Cooper, White & Cooper as an associate from 1986 to 1989 and as a partner from 1990 to 1997 before starting Levy, Ram & Olson in 1997 and Ram & Olson in 2009.

For several years running Mr. Olson has been named a "Northern California Super Lawyer" and has been named one of the Best Lawyers in America.

Mr. Olson was born, raised and still lives in San Francisco.

**Education:**
- University of California's Hastings College of the Law, 1982 (magna cum laude, Order of the Coif)
- Articles Editor, Hastings Law Journal

**Professional Associations and Memberships:**
- ABA Forum on Communications Law

# Ram, Olson, Cereghino & Kopczynski LLP

**Bar Admissions:**

- Mr. Olson is admitted to practice in the Supreme Court of the United States, the 9th Circuit Court of Appeals, the U.S. District Courts for the Northern, Eastern and Central Districts of California, and in the State of California.

# RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

## MICHAEL F. RAM

Michael F. Ram is a consumer class action lawyer with 33 years of experience at both the trial and appellate court levels. He is admitted to practice before the Supreme Court of the United States and various state and federal courts. He graduated cum laude from Harvard Law School in 1982. In 1992 he was a co-recipient of the Trial Lawyer of the Year Award given by Trial Lawyers for Public Justice.

From 1993 through 1997, Mr. Ram was a partner with Lieff, Cabraser, Heimann and Bernstein where he participated in representing plaintiffs in several major class actions, including:

- *Cox v. Shell*, Civ. No 18,844 (Obion County Chancery Court, Tennessee (Chancellor Maloan). A nationwide class of approximately six million owners of property equipped with defective polybutylene plumbing systems and yard service lines. The settlement has paid out a billion dollars in compensation to consumers.

- *In re Louisiana-Pacific Inner-Seal Litigation*, No. 95-cv-879 (Dist. Oregon filed June 19, 1995). A nationwide class of homeowners with defective exterior siding on their homes.

- *ABS Pipe Litigation,* Judicial Council Coordination Proceeding No. 3126 (Contra Costa County Superior Court). A nationwide class of homeowners with defective ABS pipes.

In 1997, Mr. Ram reunited with lawyers he practiced with in the early 1980s to found Levy, Ram & Olson, now Ram, Olson, Cereghino & Kopczynski ("ROCK"). With ROCK, he continues to focus on consumer class actions. He is currently, and has been, co-lead counsel in a number of consumer class actions including a national certified class of half a million owners of allegedly dangerous glass pane gas fireplaces in *Keilholtz et al. v. Superior Fireplace Company*, No. 08-cv-00836 (N.D. Cal. 2008). He was co-lead counsel for plaintiffs in *Chamberlan v. Ford Motor Company,* No. 03-cv-2628 (N.D. Cal. filed June 5, 2003), a class action involving defective intake manifolds that generated four published opinions, including one by the Ninth Circuit, and settled one court day before the class trial. He was also co-counsel for plaintiffs in a number of other consumer class actions, including:

- *Richison v. American Cemwood Corp.,* San Joaquin Superior Court Case No. 005532. Mr. Ram served as co-counsel for a multistate class of tens of thousands of owners of homes and other structures on which defective Cemwood Shakes were installed.

- *Williams v. Weyerhaeuser,* San Francisco Superior Court Case No. 995787. Mr. Ram served as co-counsel on behalf of a nationwide class of hundreds of

# RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

thousands or millions of owners of homes and other structures with defective Weyerhaeuser hardboard siding.

- *Naef v. Masonite,* Mobile County, Alabama Circuit Court Case No. CV-94-4033. Mr. Ram served as co-counsel on behalf of a nationwide class of homeowners with defective hardboard siding on their homes. Settlement payments are approaching a billion dollars.

- *Keilholtz v. Superior Fireplace Co.,* No. 08-cv-00836 (N.D. Cal. 2008). Co-Lead Counsel in a certified class action representing 500,000 owners of allegedly defective glass pane glass fireplaces.

- *Chamberlan v. Ford Motor Co.,* 402 F.3d 952 (9th Cir. 2005) (affirming class certification; Ram & Olson co-lead counsel).

- *Hanlon v. Chrysler Corp.,* 150 F.3d 1011 (9th Cir. 1998) (approving class action settlement).

- *McAdams v. Monier, Inc.* (2010) 182 Cal. App. 4th 174 (reversing denial of class certification in consumer class action). We tried to 7.6 million verdict. After verdict Judge excluded our statistician. We are appealing.

- *Gardner v. Stimson Lumber Co.* (King County Wash. No. 2-17633-3-SEA) (nationwide consumer class action involving defective siding).

- *Rosenberg v. U-Haul* (Santa Cruz Superior Ct. No. CV-144045 (certified consumer class action for false and deceptive conduct tried successfully to judgment).

- *In re Google Buzz User Privacy Litigation,* No. 10-cv-00672-JW (N.D. Cal. 2011) (approving class action settlement).

- *Whitaker v. Health Net of California, Inc., and International Business Machines Corp,* No. 2:11-cv-0910 KJM DAD (E.D. Cal. 2011) (electronic privacy class action under the California Confidentiality of Medical Information Act).

Over the years, Ram & Olson's and ROCK's cases have helped shape the law in the consumer class action area, to the benefit of consumers. In addition to vindicating the rights of numerous classes of consumers in particular cases by successfully certifying class actions by way of contested motions, several of Ram & Olson's cases have gone on to become landmark appellate decisions.

# RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

For example, in *McAdams v. Monier* (2010) 182 Cal. App. 4th 174, Mr. Ram represents a class of consumers who allege that the defendant/manufacturer affirmatively represented that its roof tiles had a 50-year lifetime, that their color was permanent, and that they were maintenance-free. *Id.* In reversing the denial of class certification, the Court of Appeal held that an inference of common reliance was adequate to show causation as to each class member.

In *Chamberlan v. Ford Motor Co.*, 402 F.3d at 952, the Ninth Circuit denied Ford's petition to appeal class certification in a case alleging that Ford had made material omissions to consumers, and underscored that review of district courts' rulings certifying class actions should be a "rare occurrence." *Id.*

And in *Hanlon v. Chrysler Corp.*, 150 F.3d at 1011 – a case cited in many class action approval papers filed in federal court – the Ninth Circuit approved a settlement negotiated on behalf of a class of owners of 1984 through 1994 minivans with defective rear latches on 1984-1994.

Over the past several years, as co-lead counsel, Mr. Ram has helped to certify numerous class actions by way of contested motions. These cases include:

- *Naef v. Masonite,* No. CV-94-4033 (Mobile County, Alabama Circuit Court);

- *Chamberlan v. Ford Motor Company,* No. 03-cv-2628 (N.D. Cal. filed June 5, 2003);

- *Mazza v. Amer. Honda*, 254 F.R.D. 610 (C.D. Cal. 2009);

- *Amico v. General Motors Corp.* (Maricopa County Ariz. Super Ct. No. 2004-092816);

- *McAdams v. Monier, Inc.*, 182 Cal. App. 4th 174 (2010) (reversing denial of class certification in consumer class action);

- *Richison v. American Cemwood Corp.* (San Joaquin Civil Action No. 005532);

- *Gross, et al., v. Mobil Oil Corp., et al.,* No. 95-cv-01237 (N.D. Cal. filed April 12, 1995);

- *Keilholtz et al. v. Superior Fireplace Company*, No. 08-cv-00836 (N.D. Cal. filed February 6, 2008);

- *National Association of Radiation Survivors v. Walters* No. 83-c-1861 (N.D. Cal. filed April 13, 1983); and

RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

- *Rosenberg v. U-Haul Co. of California* (Santa Cruz Sup. Ct. No. CV144045).

For several years running Mr. Ram has been named a "Northern California Super Lawyer" by Law & Politics.

# RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

## JEFFREY CEREGHINO

**Areas of Practice:**

Jeffrey B. Cereghino is a partner at Ram, Olson, Cereghino & Kopczynski LLP, located in San Francisco, California. His practice area primarily focuses upon complex litigation and class actions. He represents consumers in class action matters as well as property owners in complex construction and product liability actions.

He has been or is a class counsel on *Blangeras v. Stimson Lumber Company* (exterior siding), King County Superior Court, Washington; *Trinity Properties v. Central Sprinkler Company* (fire sprinklers), United States District Court, Eastern District of Pennsylvania; *The Sutterfield Owners Association v. Tyco International* (fire sprinklers), San Francisco Superior Court, California; *Weiner v. Shake Company of California* (roofing tiles), Contra Costa County Superior Court, California; *Whitley, et al. v. Perfection Corporations, et al.* (hot water heaters), United States District Court, Western District of Missouri; *Sun v. Mexalit, SA* (roofing tiles), Los Angeles County Superior Court, California; *Vega v. Mallory* (rent overcharges), Sacramento County Superior Court, California; *Shah v. Recon* (roofing tiles), Contra Costa County Superior Court, California; *In Re Elevator Litigation* (anti-trust), United States District Court, Southern District of New York; *Wallace v. Monier Company* (roofing tiles), Placer County Superior Court, California; *Ruyack v. Del Webb* (soil and foundations), Maricopa County Superior Court, Arizona; *Garner v. State Farm* (underpayment of claims), United States District Court, Northern District of California; *Ward v. Ipex, Inc.* (water pipes), United States District Court, Central District of California; *Fliss v. Ipex, Inc.* (water pipes), United States District Court, Western District of Washington, *Lyle J. Muenzenberger, et al. v. North Salinas Partners, LLC, et al,* (product liability), Monterey County Superior Court, and *; Milligan v. Toyota Motor Co.,* United States District Court, Northern District of California. He is presently class counsel for the administration of the *Forestex Siding* claims program which provides recovery for thousands of property owners in seven states.

**Legal History:**

Previously a Partner at Merrill, Nomura & Molineux, LLP and Principal at Berding & Weil, LLP, Mr. Cereghino has been practicing law since 1982, and has settled or tried over 90 complex multi-family construction, class action, single family home and/or product defect cases, resulting in a recovery in excess of $345 million.

Mr. Cereghino has been retained on several occasions as counsel to Building Owners and Managers Association (BOMA) to represent the interests of BOMA members in nationwide building product defect claims. Mr. Cereghino has been a frequent lecturer to various real estate industry groups, including common interest development organizations, BOMA, real estate organizations, and state and local health officials involved in "toxic mold" issues. He has spoken at the National Multi-Housing Council on mold and mold related issues. He is admitted to numerous Federal District Courts, the Ninth Circuit Court of Appeals and multiple state courts.

# Ram, Olson, Cereghino & Kopczynski LLP

## JAN A. KOPCZYNSKI

Jan A. Kopczynski is one of the founding partners of Ram, Olson, Cereghino, & Kopczynski LLP in San Francisco, California. He specializes in handling complex construction-defect cases, consumer and product-liability class actions, as well as business litigation and real-estate disputes. He also provides general counsel to the firm's commercial and community-association clients.

During his fourteen years of practice, Mr. Kopczynski has negotiated millions of dollars in settlements for his clients as a result of successful mediations, arbitrations, and court trials. He has also been involved in the litigation and settlement of many product-liability class actions, including *Richison et al. v. American Cemwood Corporation* (San Joaquin Superior Court); *Carr et al. v. Stimson Lumber Company* (Alameda County Superior Court); *Melvin Weiner v. Cal-Shake, Inc.* (Contra Costa County Superior Court); and *Trinity Properties v. Central Sprinkler Company of California* (Contra Costa Superior Court).

### Education

Mr. Kopczynski received his Juris Doctor degree in 1998 from Santa Clara University School of Law in Santa Clara, California. He received his Bachelor of Arts degree, *Magna Cum Laude*, in political science from the University of California at San Diego in 1992 as well as a Masters Degree, *with honors*, in 1993. He is a recipient of two Research Scholar awards (1991 and 1992) from the University of California at San Diego. In addition to studying law at Santa Clara University, he participated in the law school's Moot Court Competition and was selected as a member of the Trial Team, which competed in two elite trial competitions during his final year of law school.

### Bar Admissions

Mr. Kopczynski is a member of the State Bar of California (1999) and is admitted to practice before the United States District Court for the Northern District of California (1999) and the United States Court of Appeals for the Ninth Circuit (2005). He is also a member of the Bar Association of San Francisco.

### Publications

Mr. Kopczynski has published numerous articles regarding legal issues involving community associations, the construction process, class actions, energy deregulation, and community-association management. His most recent articles include *Helping Lambs Slay Lions* (ECHO Journal, October 2010), *The Right to a Jury Trial in Disputes with Developers* (ECHO Journal, January 2009), *What Does it Mean for a Board Member to be a Fiduciary* (ECHO Journal, October 2008), *The Myth of Public Agency Protection in the Building Permit Process* (ECHO Journal, June 1999). All of Mr. Kopczynski's articles can be found on the ROCK website.

# RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP

## SUSAN BROWN

Susan S. Brown is an associate with Ram, Olson, Cereghino, & Kopczynski LLP ("ROCK"). Her practice primarily focuses on complex litigation and class actions. Prior to joining ROCK, she practiced with one of Canada's top 10 civil litigation boutiques and with a consumer and employment class action firm in Mill Valley, California. She has been class counsel on numerous successful consumer, investment fraud, and financial services class actions, and has represented individual plaintiffs in employment, debtor, investment fraud, and consumer litigation. She also serves as a pro bono attorney with the Bar Association of San Francisco's Consumer Debt Clinic. Ms. Brown was named a 2015 Super Lawyers Rising Star for Northern California.

### Education

Ms. Brown received her Juris Doctor degree from the University of Toronto in Ontario, Canada. She received her Bachelor of Arts degree, with first class honors, from the University of Alberta, and her Masters Degree from the University of Toronto, also with honors. While studying law at the University of Toronto, she earned first class honors in the moot court program and served as an advocate at the student community legal aid clinic, where she represented clients in a variety of civil and administrative matters.

### Bar Memberships

Ms. Brown is a member of the State Bar of California and is admitted to practice before the United States District Court for the Northern District of California. She is also licensed to practice in Ontario, Canada.

# Ex. N

```
 1              IN THE UNITED STATES DISTRICT COURT
                   NORTHERN DISTRICT OF ILLINOIS
 2                        EASTERN DIVISION

 3   YELLOW GROUP LLC, YELLOW CAB AFFILIATION,  ) No. 12 C 7967
     INC.; TAXI AFFILIATION SERVICES LLC; YC1   )
 4   LLC, 5 STAR FLASH, INC.; CHICAGO MEDALLION )
     ONE LLC; and YOUR PRIVATE LIMOUSINE, INC., )
 5                                              )
                          Plaintiffs,           )
 6                                              )
                                                )
 7               v.                             )
                                                )
     UBER TECHNOLOGIES, INC.,                   ) April 29, 2013
 8                                              ) Chicago, Illinois
                                                ) 9:55 a.m.
 9                        Defendant.            ) HEARING

10                    TRANSCRIPT OF PROCEEDINGS
         BEFORE THE HONORABLE SHARON JOHNSON COLEMAN
11

12   APPEARANCES:

13   For the Plaintiff:    MICHAEL BEST & FRIEDRICH LLC (ILLINOIS)
                           180 North Stetson Avenue
14                         Suite 2000
                           Chicago, Illinois  60601
15                         BY:  MR. MICHAEL A. STIEGEL
                                MR. PAUL R. COBLE
16                              MS. CARRIE A. HALL

17   For the Defendant:    QUINN EMANUEL URQUHART & SULLIVAN LLP
                           500 West Madison Street
18                         Suite 2450
                           Chicago, Illinois  60606
19                         BY:  MR. STEPHEN A. SWEDLOW
                                MR. ANDREW H. SCHAPIRO
20                              MR. AMIT BHIKHU PATEL

21

22

23             TRACEY DANA McCULLOUGH, CSR, RPR
                     Official Court Reporter
24                   219 South Dearborn Street
                           Room 1426
25                 Chicago, Illinois  60604
                       (312) 922-3716
```

MacDonald - direct

1  Q    Yes.

2  A    Because we were in discussions with the City.

3  Q    And the lobbyist is who?

4  A    Mike Casper.

5  Q    Is he a registered lobbyist?

6  A    I believe so.

7  Q    Have you heard of Mike Casper before you came to Chicago?

8  A    No.

9  Q    Did you know he was the Mayor's lawyer when the Mayor was

10  challenged during the election?

11  A    I did not know that.

12         MR. STIEGEL:  One moment, Your Honor.

13     (Brief pause.)

14         MR. STIEGEL:  That's all I have.  Thank you, Your

15  Honor.

16         THE COURT:  All right.  Thank you Counsel.  Move into

17  your direct.

18                  DIRECT EXAMINATION

19  BY MR. SWEDLOW:

20  Q    Can you describe for the Court the process from before a

21  user requests a ride from Uber through taxi.

22  A    Sure.  So starting from the very beginning.  The customer

23  downloads the app or signs up online.  They enter in their

24  information, enter their credit card information.  When they

25  want to request a taxi ride through the app, the -- they can

MacDonald - direct

1  either enter their address or the GPS picks up where they are.

2  They hit a button which says request a taxi.  At that point a

3  request goes out to the closest taxi driver who can either

4  accept or deny the request.  And then it continues cycling

5  through until it's accepted or until there's no longer anyone

6  close enough.

7          When the car arrives, the app user gets in.  The

8  driver starts their meter as they would for any street hail or

9  other taxi fare.  At the end of the ride the driver stops their

10 meter, enters the metered amount into the -- into their driver

11 app.  At which point the customer's charged the metered amount

12 plus whatever gratuity they've set, plus a dollar twenty-five

13 service fee.  And then the customer hops out of the car.

14 Q    Can you explain how that process works for Uber black car.

15 A    Yep.  It's a similar ordering process.  When they open the

16 app, they just toggle over to the black car option.  At that

17 point a request goes out.  Again, the -- it's on the driver,

18 the limousine company to accept or deny it.  Once they've

19 accepted it, they then have the customer's name and their phone

20 number.  At that point the trips's arranged.

21          The driver will turn around and go to the customer

22 location.  The driver at the beginning of the trip will start

23 the driver app, which then conveys GPS signals and time signals

24 to the Uber server.  At the end of the trip the driver hits

25 stop.  At that point the fare is calculated on Uber's servers,

MacDonald - direct

1    Q    Let me just ask the question.  What does this page show?

2    A    It shows trips initiated in those areas.

3    Q    Do you have some estimate of what percentage of total taxi

4    trips are initiated through Uber?

5              MR. STIEGEL:  Objection, Your Honor.  Foundation.

6              THE COURT:  Objection sustained.  Objection

7    sustained.  Ask a question before so that he would know.

8    BY MR. SWEDLOW:

9    Q    Okay.  Do you have some understanding -- do you know how

10   many trips Uber taxi has initiated?

11   A    Yes.

12   Q    What percentage of the total taxi trips in Chicago are

13   initiated through Uber?

14             MR. STIEGEL:  Same objection, foundation.  I mean,

15   the fact that he says he knows --

16             THE COURT:  Yes.  Objection sustained.  How does he

17   know?  Based on some of his testimony today, I need some more.

18   BY MR. SWEDLOW:

19   Q    Okay.  How do you know how many taxi trips Uber initiates?

20   A    So we, we track every single trip initiated and completed

21   in our database.  And I have access to that database.

22   Q    And that database tracks trips by GPS coordinates?

23   A    By GPS coordinates, by vehicle type.  A variety of data

24   points.

25   Q    And do you know how many trips were initiated for any

MacDonald - cross

1   Q    Yes.

2   A    I did.  I ran this analysis.

3   Q    And how did you do that?

4   A    So we -- when a request --

5   Q    You mean you when you say we?

6   A    Well, I was going to say when a request, we take the data,

7   we being Uber.  I can tell you how I specifically pulled the

8   data from the database or how we build the database.  What are

9   you --

10  Q    I want to know how you got this data.

11  A    Okay.  So it starts with we being Uber collecting the data

12  from every request that comes through.  So a customer who wants

13  a taxi can request through the Uber app.  At that point we know

14  the GPS locations of where that request came from.  That's then

15  logged in our database.  So I -- we have that for every trip

16  originated from the Uber app.  So then I have access to our

17  database through a querying program.  I ran a poll where I

18  basically asked for the requests between, you know, longitude

19  and latitude point A, B, C, D.  How many requests happened

20  between -- you know, the data that we're citing here is from

21  June 30th, 2012 to present time.

22        So that -- you know, I ran that query with the data

23  for each of these underserved areas using the borders of the

24  areas as defined by the City of Chicago as the GPS coordinates.

25  And then simply just summed the data.

MacDonald - cross

1   Q    Who gave you the latitude and longitude?

2   A    There are publicly available tools online where you can

3   point -- place points on a Google map to pull the corresponding

4   latitude and longitude points as defined by the City.  So the

5   City defines four streets, we can place the GPS points on those

6   streets.

7   Q    So you went to a Google map and you determined the

8   longitudes and latitudes?

9   A    So we used an online --

10  Q    Yes?

11  A    No.

12  Q    Okay.  And when you -- where is this information stored

13  within Uber?

14  A    It's stored on our servers in San Francisco.

15  Q    And it's not publicly available, right?

16  A    No.

17  Q    And if I wanted to get this information, I'd have to ask

18  you for it, for the underlying data, isn't that correct?

19  A    I believe so.

20  Q    And do you know if you made a mistake when you were

21  calculating the underlying data?

22  A    I didn't make a mistake.

23  Q    And how do you know that?

24  A    I checked multiple times.

25  Q    When you say you checked multiple times, tell me how you

# Ex. O
**(filed under seal)**

# Ex. P
## (filed under seal)

# Ex. Q
## (filed under seal)

# Ex. R
## (filed under seal)

# Ex. S
## (filed under seal)