Myron M. Cherry (SBN 50278)
mcherry@cherry-law.com
Jacie C. Zolna (admitted *pro hac vice*, Illinois ARDC #6278781)
jzolna@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279

Hall Adams (admitted *pro hac vice*, Illinois ARDC #6194886)
hall@adamslegal.net
LAW OFFICES OF HALL ADAMS, LLC
33 North Dearborn Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 445 4900
Facsimile: (312) 445 4901

Michael Ram (SBN 104805)
mram@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
101 Montgomery St., #1800
San Francisco, California 94104
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF CALIFORNIA**
**SAN FRANCISCO DIVISION**

| | |
|---|---|
| **CAREN EHRET, individually and on behalf of a class of similarly situated persons,**<br><br>　　　　　**Plaintiff,**<br><br>　　　　　**v.**<br><br>**UBER TECHNOLOGIES, INC., a Delaware Corporation,**<br><br>　　　　　**Defendant.** | **Case No. 3:14-cv-113-EMC**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date:　　　September 15, 2016<br>Time:　　　1:30 PM<br>Judge:　　 Edward M. Chen<br>Courtroom: 5 |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on September 15, 2016, at 1:30 PM, the undersigned will appear before the Honorable Edward M. Chen in Courtroom 5 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, and shall then and there present Plaintiff's Motion for Preliminary Approval of Class Action Settlement.

Plaintiff Caren Ehret ("Plaintiff" or "Ehret") respectfully requests the Court to preliminarily approve the settlement of this class action. This motion is based on this Notice of Motion and Motion for Preliminary Approval of Class Action Settlement, as well as all records and papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this Motion.

**STATEMENT OF ISSUE TO BE DECIDED (Civil L.R. 7-4(a)(3))**

The issue to be decided in this Motion is whether the Court should preliminarily approve the settlement of this certified class action.

## I. INTRODUCTION

After years of hard-fought litigation, the parties have reached a settlement that provides Plaintiff and the class with essentially a full refund of the amount at issue in this suit. More specifically, Plaintiff alleged that despite representing to consumers that it will charge a 20% gratuity for taxi service requested through its app, Defendant retained a portion of this charge for itself, typically 40% to 50% of the gratuity charge. The settlement reached by the parties provides for the creation of a fund sufficient to provide refunds of essentially the *entirety* of this amount to *all* class members.

Class Counsel's attorneys' fees and costs will be paid separate from and in addition to the class relief. Notably, despite working on a contingency basis and risking a considerable amount of time and expense prosecuting this case, the amount of attorneys' fees sought by Class Counsel will actually be significantly less than their lodestar amount without any multiplier. Class Counsel made this concession to ensure that Class Members will receive full relief without any off-set or pro-rata reductions for attorneys' fees.

For these reasons, and those that follow, Plaintiff respectfully requests the Court to preliminarily approve this settlement

## II. BACKGROUND (Civil L.R. 7-4(a)(4))

Defendant Uber Technologies, Inc. ("Uber") offers a mobile phone application or "app" that allows consumers to summon, arrange and pay for taxi cab rides electronically via their mobile phones. Amended Complaint (Doc. 40) ("Amend. Compl.") at ¶¶ 1, 10. Plaintiff alleged that payment for transportation arranged through Uber's app is made via consumers' credit card accounts, after the consumer provides the necessary credit card account information to Uber. *Id.* Plaintiff alleged that during the relevant class period, Uber represented on its website and other marketing material its "Hassle-free Payments" as follows: "We automatically charge your credit card the metered fare + 20% gratuity." *Id.* at ¶ 11. Plaintiff further alleged that Uber represented that the gratuity is automatically added "for the driver." *Id.* Despite these alleged representations, Plaintiff alleged that Uber does not remit to the driver the full amount of the charge that it represents to consumers is a "gratuity." *Id.* at ¶ 13. Instead, Plaintiffs alleged,

Uber keeps a substantial portion of this additional charge for itself as its own additional revenue and profit on each ride arranged and paid for by consumers, typically 40% of the 20% gratuity charge. *Id*.

On October 1, 2012, Plaintiff, individually and on behalf of other similarly situated individuals, filed suit against Uber in the Circuit Court of Cook County, Illinois. That suit was dismissed based on a forum selection clause contained in Uber's terms and conditions. On January 8, 2014, Plaintiff re-filed her class action suit in the United States District Court for the Northern District of California. Plaintiff filed an Amended Complaint on April 28, 2014. The Amended Complaint alleged that Uber's purported misrepresentations and omissions constitute an unfair, unlawful and fraudulent business practice in violation of the Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* ("UCL"), an unfair method of competition and unfair or deceptive practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") and a breach of contract. *Id.* at ¶¶ 25-65.

On September 17, 2014, the Court entered an order denying Uber's motion to dismiss the Amended Complaint with respect to Plaintiff's claims predicated on Cal. Bus. & Prof. Code § 17200 and Cal. Civ. Code § 1770(a)(5), (9) and (14) and granting Defendant's motion to dismiss with respect to Plaintiff's claims predicated on Cal. Civ. Code § 1770(a)(13) and (16) and for breach of contract. On December 2, 2015, the Court certified this case as a class action and defined the class as:

> All individuals who received Uber's e-mail with the representation that the 20% charge would be gratuity only, who then arranged and paid for taxi rides through Uber's service from April 20, 2012 to March 25, 2013 (the "Class").

December 2, 2015 Order (Doc. 118).

Both prior to and subsequent to the Court's class certification decision, the parties conducted a significant amount of discovery, investigated the facts and analyzed the relevant legal issues with regard to the claims and defenses asserted in the lawsuit. Uber produced information to Plaintiff indicating that the Class as defined by the Court consists of approximately 46,882 members who were charged approximately $859,653.65 for the 20%

1  gratuity charge at issue in this lawsuit.

2  The parties have informally met and conferred on numerous occasions over the past
3  several years in an effort to reach a settlement. The parties also engaged in a formal mediation
4  on June 29, 2015 before Martin Quinn, Esq. at JAMS. While no settlement was reached at that
5  mediation, the parties thereafter continued to discuss settlement possibilities, which ultimately
6  resulted in reaching the terms of the settlement embodied in the Settlement Agreement attached
7  hereto as **Ex. A**.

### III. SUMMARY OF SETTLEMENT TERMS

9  The settlement reached by the parties provides Class Members with virtually a full refund
10 of the amount of the gratuity charge that Plaintiff claimed was retained by Uber. More
11 specifically, Uber will create a fund of $343,861.46 (the "Settlement Fund") for purposes of
12 paying each Class Member an amount equal to 40% of the alleged gratuity charge – essentially
13 the full amount that Plaintiff claimed was retained by Uber (the "Class Member Payments"). *See*
14 Settlement Agreement at ¶¶ 1, 7 (**Ex. A**).

15 Because Uber does not maintain mailing addresses of users, each Class Member must
16 provide the settlement administrator a valid mailing address in order to receive his or her Class
17 Member Payment via a settlement check. *Id.* at ¶ 2. With respect to Class Members who have
18 an existing Uber account and either fail to timely provide a valid mailing address or who fail to
19 cash their settlement checks, Uber will credit their Uber account in an amount equal to their
20 individual Class Member Payment. *Id.* at ¶¶ 2, 4. Class Members will receive notice by email at
21 the email addresses on their Uber accounts. *Id.* at ¶ 8. The settlement administrator will also
22 develop and maintain a website that will contain a copy of the notice, information about the
23 settlement and a mechanism though which Class Members can submit a mailing address for their
24 settlement checks. *Id.* at ¶ 10.

25 Separate and apart from the Settlement Fund, Uber will also pay $10,000 toward fees and
26 costs incurred for the administration of the settlement. *Id.* at ¶ 11. A portion of the settlement
27 administration costs will also be paid from the Settlement Fund in an amount equal to the lesser
28 of (i) $35,000, or (ii) the total amount of all Class Member Payments for Class Members who no

longer have an Uber account and either failed to timely provide a mailing address or failed to cash their settlement check. *Id.* All remaining settlement administration costs will be incurred by Class Counsel. *Id.*

Class Members may opt-out of the class and the settlement by mailing a written request for exclusion to the settlement administrator no later than 49 days after the class notice is sent. *Id.* at ¶ 13. Within this same amount of time, Class Members who do not opt-out can object to the proposed settlement and/or the attorneys' fees and costs requested by Class Counsel by filing a written objection with the Court and delivering a copy of the objection to Class Counsel and counsel for Uber. *Id.* at ¶ 15.

## IV.    ARGUMENT (Civil L.R. 7-4(a)(5))

Because the settlement reached here provides substantial and meaningful relief to the Class, the Court should grant preliminary approval and order that notice be sent to Class Members in accordance with the terms of the Settlement Agreement. "[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Curtis-Bauer v. Morgan Stanley & Co.*, No. 06-cv-3903, 2008 WL 4667090, *4 (N.D. Cal. Oct. 22, 2008) (acknowledging "the Ninth Circuit's policy favoring settlement, particularly in class action law suits.") (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)); *In re High-Tech Employee Antitrust Litig.*, 11-cv-02509, 2015 WL 5159441, *5 (N.D. Cal. Sept. 2, 2015) (noting "the well-established principle that 'voluntary conciliation and settlement are the preferred means of dispute resolution.'") (quoting *Officers for Justice,* 688 F.2d at 625).

Review of a proposed class action settlement generally involves both a preliminary and final approval hearing. *Manual for Complex Litigation, (Fourth)* § 21.632 at 490-91 (2010). At the preliminary approval stage, the court must "make a preliminary determination on the fairness, reasonableness, and adequacy of the settlement terms and must direct the preparation of notice of the certification, proposed settlement, and date of the final fairness hearing." *Id.* At this stage, "the Court may grant preliminary approval of a settlement and direct notice to the

1  class if the settlement: (1) appears to be the product of serious, informed, non-collusive
2  negotiations; (2) has no obvious deficiencies; (3) does not improperly grant preferential
3  treatment to class representatives or segments of the class; and (4) falls within the range of
4  possible approval." *Harris v. Vector Mktg. Corp.*, 08-cv-5198, 2011 WL 1627973, *7 (N.D. Cal.
5  Apr. 29, 2011). "Closer scrutiny is reserved for the final approval hearing." *Id.*

6  The settlement here clearly satisfies all of these requirements and should proceed to the
7  next step of notifying Class Members and conducting a final fairness hearing.

**A.    The Settlement Should Be Preliminarily Approved.**

*1.    The settlement was the product of serious, informed, non-collusive negotiations.*

The settlement is presumptively fair because there is nothing to suggest collusion between the parties. On the contrary, all material terms of the Settlement Agreement were reached after multiple adversarial settlement discussions, including a private mediation before Martin Quinn, Esq. at JAMS. *See Satchell v. Fed. Exp. Corp.,* No. 03-cv-2659, 2007 WL 1114010, *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The parties also engaged in extensive discovery and had the benefit of several decisions from the Court, most notably its ruling on the key legal issues in this case presented in Uber's motion to dismiss and the decision certifying, in part, the case as a class action. Plaintiff also obtained in discovery information on the size of the class and potential damages. Plaintiff and Class Counsel, therefore, "had adequate information before them to gauge the value of the class's claims and assess whether [Uber's] proffered settlement amounts adequately compensated the class members for their damages. *Harris*, 2011 WL 1627973, *8.

The settlement, therefore, was the product of serious, informed and arm's length negotiations.

*2.    The settlement has no obvious deficiencies.*

The settlement has no obvious deficiencies and confers a substantial benefit to the Class. In short, as many as 46,882 Class Members will receive essentially a full refund of the amounts at issue in this suit and the settlement also provides a mechanism to credit Class Members'

accounts in the event they fail to provide an address for their settlement check or fail to cash it. In other words, the settlement was designed to ensure that all Class Members obtain essentially full relief. Given the substantial nature of the relief and the uncertainties of protracted litigation, the settlement is well within the range of possible approval and has no obvious deficiencies.

### 3. *The settlement provides equal relief to all Class Members.*

The settlement also provides equal treatment to all Class Members. As noted above, all Class Members will receive an amount equal to 40% of the gratuity charge that they paid during the relevant class period. In other words, all Class Members are getting the same relief. While the settlement also provides for an incentive award to the named Plaintiff, such an award does "not render the settlement unfair, since 'the Ninth Circuit has recognized that service awards to named plaintiffs in a class action are permissible and do not render a settlement unfair or unreasonable.'" *Nen Thio v. Genji, LLC*, 14 F. Supp. 3d 1324, 1335 (N.D. Cal. 2014) (quoting *Harris,* 2011 WL 1627973, *9). Accordingly, the settlement in no way improperly grants preferential treatment to certain Class Members or segments of the Class.

### 4. *The settlement falls within the range of possible approval.*

In deciding whether a class action settlement falls within the range of possible approval, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Harris*, 2011 WL 1627973, *9 (quoting *Vasquez v. Coast Valley Roofing, Inc.*, 670 F. Supp. 2d 1114, 1125 (E.D. Cal. 2009)). This factor clearly favors preliminary approval. As noted above, Plaintiff's claims are based on Uber allegedly retaining a portion of the 20% charge that it represented as a "gratuity" during the class period. It was Uber's position in this litigation that Plaintiff and the Class could only recover monies that it actually retained (Uber maintained that it did not retain any portion of the gratuity). Thus, under this theory, Plaintiff and Class Members could not recover any amounts other than the portion of the gratuity retained by Uber. Again, Uber claimed that was none while Plaintiff alleged that it was typically 40% of the 20% gratuity charge. The settlement reached by the parties provides substantial relief to Class Members in that it refunds essentially the *full amount* of the gratuity charge Plaintiff

claimed was retained by Uber. For this reason alone, the settlement falls within the range of possible approval and should be preliminarily approved.

Nonetheless, at the preliminary approval stage, the Court may also "preview the factors that ultimately inform final approval: (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of class members to the proposed settlement." *Harris*, 2011 WL 1627973, *9. All of these factors favor preliminary approval of the settlement as well.

First, while Plaintiff believes strongly in the merits of her case, Uber vigorously contested both liability and the ability of Plaintiff and Class Members to recover damages. Furthermore, the merits of the case likely would have been decided by a jury, the outcome of which was far from certain for either side. Uber also claimed that its terms of use included an arbitration clause during a significant portion of the class period, the applicability and enforceability of which had not yet been decided by the Court. The terms of the settlement, on the other hand, provide significant monetary relief to Class Members.

Second, it goes without saying that trying a class action lawsuit to conclusion would have been a complex, lengthy and expensive endeavor, and appeals almost certainly would have followed any judgment. As alluded to above, Class Counsel has already expended a significant amount of fees and expenses litigating this case to date and will certainly continue to expend substantial time, effort and cost if further litigation is required. In light of the amount at stake in this lawsuit, the second factor clearly favors preliminary approval of the settlement.

The third and fourth factors also clearly weigh in favor of preliminary approval. As noted above, the settlement amount is large enough to ensure that *all* Class Members can obtain essentially a *full refund* of the amount at issue in this lawsuit. The risk of maintaining a class action through trial is significant in light of the full recovery Class Members can obtain now. In

other words, Class Members can obtain nearly full relief now without the risk, expense and uncertainty of a trial. These factors clearly favor preliminary approval.

With respect to the fifth factor, the case settled only after years of litigation in two forums and the completion of extensive discovery. Due to the extensive investigation and discovery that occurred, including with respect to the class size and damages, both parties were in position to fully assess the strengths and weaknesses of the claims and defenses in negotiating this settlement. Accordingly, this factor favors preliminary approval of the settlement as well.

In connection with the sixth factor – the opinion of competent counsel – Plaintiff submits the Declaration of Myron M. Cherry, a lawyer with over 50 years of experience in complex and class action litigation. *See* Declaration of Myron M. Cherry ("Cherry Decl."), attached hereto as **Ex. B**. Based on his extensive experience, Mr. Cherry opines that the settlement is fair, reasonable and adequate and provides a significant benefit to the Class. *See* Cherry Decl. at ¶ 5; *see also Smith v. Am. Greetings Corp.*, 14-cv-02577, 2016 WL 362395, *5 (N.D. Cal. Jan. 29, 2016) ("Here, class counsel have demonstrated that they are sufficiently informed about the current dispute and that [counsel] has more than 20 years of experience defending and prosecuting class actions. *** In light of the foregoing, class counsel's support for the settlement weighs in favor of approving the settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d 1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness."); *Clesceri v. Beach City Investigations & Protective Servs., Inc.*, 10-cv-3873, 2011 WL 320998 (C.D. Cal. Jan. 27, 2011) ("Courts give weight to counsels' opinions regarding the fairness of a settlement, when it is negotiated by experienced counsel.").

With respect to the last factor, Plaintiff is aware of no opposition to the settlement among anyone, much less the effected Class Members. This factor, therefore, also favors preliminary approval of the settlement.[1]

---

[1] Because there is no governmental participant to this suit, the seventh factor is not applicable here.

**B.    The Requested Incentive Award and Award of Attorneys' Fees and Costs are Reasonable and Appropriate.**

The proposed incentive award of $10,000 to the named Plaintiff is fair and reasonable. As the Ninth Circuit has observed:

> Incentive awards are fairly typical in class action cases. Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general. Awards are generally sought after a settlement or verdict has been achieved.

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis and citations omitted).

Plaintiff took the initiative to be named in the lawsuit and stayed actively involved in the litigation for several years, including responding to discovery, searching for and producing documents, being deposed and communicating with Class Counsel. *See* Declaration of Caren Ehret, attached hereto as **Ex. C**. Under such circumstances, the relatively modest amount of $10,000 for an incentive award is more than fair and reasonable. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-md-1827, 2011 WL 7575003, *2 (N.D. Cal. Dec. 27, 2011) (approving $15,000 incentive awards for 11 class representatives "in recognition of their work performed for the benefit of the Class and risks undertaken"); *Singer v. Becton Dickinson & Co.*, 08-cv-821, 2010 WL 2196104, *6 (S.D. Cal. June 1, 2010) (finding class representative award of $25,000 reasonable); *Craftwood Lumber Co. v. Interline Brands, Inc.*, 11-cv-4462, 2015 WL 1399367, *6 (N.D. Ill. Mar. 23, 2015) ("[A]n [incentive] award of $25,000 is in line … with the mean percentage of incentive fees awarded in class actions nationwide.").

Considering the excellent value of the settlement, the benefits conferred on the Class and Class Counsel's knowledge and experience, the requested attorneys' fees and costs are also fair and reasonable. Class Counsel achieved an excellent settlement while ultimately avoiding the uncertainties and risks of a trial. For several years, Class Counsel dedicated substantial time and incurred substantial out-of-pocket costs – all on a contingency basis – in litigating this case and will continue to expend a significant amount of time and resources throughout the settlement approval and administration process.

1  Class Counsel will seek an award of attorneys' fees and costs, to be paid separately by
2  Uber, in an amount of $431,138.54. Class Counsel will file their petition supporting its request
3  for attorneys' fees and costs no later than 21 days prior to the deadline for Class Members to
4  object to the settlement. Despite taking this case on a contingency basis and risking a
5  considerable amount of their own funds to prosecute this case, the amount of attorneys' fees
6  sought by Class Counsel will actually be significantly less than their loadstar amount without any
7  multiplier. Class Counsel made this concession to ensure that Class Members will receive full
8  relief without any off-set or pro-rata reductions for attorneys' fees.

**C.  The Proposed Form And Method Of Class Notice Satisfies Due Process.**

Rule 23(e)(1) of the Federal Rules of Civil Procedure provides that when the parties reach a proposed class action settlement, "[t]he court must direct notice in a reasonable manner to all Class Members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23 further provides that "the court must direct to Class Members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B).

Here, the parties have agreed to provide notice of the settlement to the class via email at the email addresses Class Members used to register their Uber accounts. A website will also be created that will provide information on the lawsuit and the settlement. Under the circumstances, particularly because all Class Members were required to provide a valid email address to Uber in order to register for an account and take the taxi rides at issue in this suit, such notice more than satisfies Rule 23's notice and due process requirements. *See, e.g., In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 586 (N.D. Cal. 2015) (approving notice plan that "primarily called for direct notice by e-mail to all members of the Settlement Class to the addresses used in connection with their LinkedIn premium accounts, as well as the creation of a detailed settlement website," finding that "individual notice was especially accessible, since Defendant had access to class members' primary email addresses"); *Browning v. Yahoo! Inc.*, No. 04-cv-01463, 2007 WL 4105971, *4 (N.D. Cal. Nov. 16, 2007) ("Email notice was particularly suitable in this case, where settlement class members' claims arise from their visits to Defendants' Internet

1  websites."); *Morey v. Louis Vuitton N. Am., Inc.*, 11-cv-1517, 2014 WL 109194, *4 (S.D. Cal.
2  Jan. 9, 2014) (finding that email notice to class members "constituted the best notice practicable
3  under the circumstances … [and] fully complied with due process principles and Federal Rule of
4  Civil Procedure 23.").

5  The notice was collaboratively written by the parties, written in plain English and clearly
6  provides information to Class Members about the benefits of the settlement, how to be excluded
7  from the class or object to the settlement, and how Class Members' legal rights are affected by
8  remaining in or opting out of the class.  For these reasons, the notice plan agreed to in the
9  settlement is the best notice practicable and affords Class Members with all due process
10 protections required by Rule 23.  As such, the proposed notice plan should be approved.

11 **WHEREFORE,** Plaintiff requests the Court to (i) grant preliminary approval of the
12 settlement, award of attorneys' fees and costs and the named Plaintiff's incentive award, (ii)
13 direct that notice be sent to the Class in accordance with the terms of the Settlement Agreement,
14 and (iii) set a final approval hearing between one-hundred twenty-six (126) and one-hundred
15 forty seven (147) days after entry of an order preliminarily approving the settlement.

16 Dated:  July 20, 2016

Respectfully submitted,

MYRON M. CHERRY & ASSOCIATES LLC
JACIE C. ZOLNA (admitted *pro hac vice*, Illinois ARDC #6278781)

By:  _____/s/ Jacie C. Zolna_____
       Jacie C. Zolna
       Attorney for Plaintiff

MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois  60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279
mcherry@cherry-law.com

## *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing **Plaintiff's Notice of Motion** and **Motion for Preliminary Approval of Class Action Settlement** upon:

Arthur Miles Roberts
arthurroberts@quinnemanuel.com
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111

Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661

via the electronic filing system on this 20th day of July, 2016.

_____/s/ Jacie C. Zolna_____