Myron M. Cherry (SBN 50278)
mcherry@cherry-law.com
Jacie C. Zolna (admitted *pro hac vice*, Illinois ARDC # 6278781)
jzolna@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279
*Attorneys for Plaintiff and the Class*

Stephen A. Swedlow (admitted *pro hac vice*)
stephenswedlow@quinnemanuel.com
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661
Telephone: (312) 705-7400
Facsimile: (312) 705-7401
*Attorneys for Defendant*

[Additional counsel on signature page]

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| CAREN EHRET, individually and on behalf of a class of similarly situated persons, | ) ) ) Case No. 3:14-cv-113-EMC ) |
| Plaintiff, | ) **JOINT SUPPLEMENTAL BRIEF ON** ) **PLAINTIFF'S MOTION FOR PRELIMINARY** ) **APPROVAL OF SETTLEMENT** |
| v. | ) ) |
| UBER TECHNOLOGIES, INC., a Delaware Corporation, | ) ) ) |
| Defendant. | ) ) |

Pursuant to the Court's September 2, 2016 Order, Plaintiff Caren Ehret ("Plaintiff") and Defendant Uber Technologies, Inc. ("Defendant" or "Uber") (collectively, the "Parties") submit the following Joint Supplemental Brief on Plaintiff's Motion for Preliminary Approval of Settlement. Plaintiff responds to Topics 1, 2, and 4, and Uber responds to Topic 3.

**Plaintiff's Responses**

### Topic 1 - Attorneys' Fees

The lodestar method should be used to calculate Class Counsel's attorneys' fees because Plaintiff and the Class obtained full restitution and Class Counsel should be awarded their fees under the fee-shifting provisions of the California Unfair Competition Law (UCL) and Consumer Legal Remedies Act (CLRA). When, as is the case here, the Court sits in diversity jurisdiction, "state law governs both the right to recover attorney's fees and the computation of their amount." *Collado v. Toyota Motor Sales*, *U.S.A., Inc.*, 550 Fed. Appx. 368, 369-370 (9th Cir. 2013). "Under California law, '[i]n so-called 'fee shifting' cases ... the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method.'" *Tait v. BSH Home Appliances Corp.*, No. SACV100711DOCANX, 2015 WL 4537463, at *10 (C.D. Cal. July 27, 2015), *appeal dismissed* (Jan. 13, 2016) (citing cases) (quoting *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000)); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes … where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation.").

Here, Plaintiff successfully certified claims with fee-shifting provisions pursuant to California state law. Class Counsel undertook socially beneficial litigation on a contingent basis and obtained a settlement that essentially reimburses Class Members in full the amounts at issue in the litigation. This is also not a common fund settlement in that the amount awarded to Class Counsel does not affect the amount going to Class Members. *Tait*, 2015 WL 4537463, at *11 ("[T]his is not a common fund case. Unlike in a common fund settlement, whatever amount of fees is awarded to class counsel, it will not affect the amount going to class members.").

The Court should also not treat this settlement as a "constructive common fund" because the amount allocated to the class is already large enough to provide essentially full restitution to all Class Members. More specifically, the settlement provides a set amount for Class Member settlement payments, equal to the amount Plaintiff claims was retained by Uber. Uber separately agreed to pay Class Counsel's attorneys' fees, but only up to a cap. Any lesser amount awarded for fees does not increase the fund available for Class Members – that amount is already large enough to provide full restitution to the class – but rather simply reduces the amount Uber is required to pay for fees. In other words, the fully reimbursed class stands nothing to gain by a reduction in the fee award sought by Class Counsel (which, as previously noted, is already at a significant reduction from their lodestar amount).

And while the amount requested in fees is in excess of the amount awarded to the class that is solely a function of the size of the class and amount of damages at issue. This was a complex class action lawsuit against a giant, well-funded and well-lawyered company that put up a vigorous defense for over three years in two jurisdictions. The time and effort expended by Class Counsel would have been the same had this case involved a class of one million or one thousand. Ultimately, one would be hard pressed to obtain a better result for the class; that is, to obtain a settlement fund for the class *in excess* of their restitutionary damages. Because Class Counsel was able to obtain essentially full relief for the class it is only fair to award them the full amount of their fees (although, as shown in Class Counsel's accompanying declaration, the amount sought is actually much less than that).

In other words, had this case gone to trial and had Class Counsel obtained a judgment in the amount of $343,861.46, Class Counsel would have filed a fee petition under the UCL's and CLRA's fee-shifting provisions for the full amount of their fees. Class Counsel should not be disadvantaged for obtaining full relief for the class without the need for a trial. In short, Class Counsel took this case on a contingent basis, litigated against a well-funded and well-defended

defendant for over three years with no guarantee of payment and ultimately obtained an excellent settlement for the class while agreeing to a substantial discount on their fees.[1]

Per the Court's request, Class Counsel filed a declaration supporting their lodestar amounts to date.

**Topic 2 - Full Verdict Value of Case**

At issue in this suit was Plaintiff's allegation that Uber retained a portion – typically 40% – of the automatic 20% gratuity charge for taxi service requested through its app during the class period.  During the litigation, Uber produced information indicating that the Class as defined by the Court was charged approximately $859,653.65 for the 20% gratuity charge.[2]  Forty percent of that amount – *i.e.*, the amount Plaintiff alleged was retained by Uber – is $343,861.46, the possible amount Plaintiff and the class could recover under the UCL and CLRA had they succeeded at trial. *See, e.g., Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).  Thus, an estimated full verdict value of the case for Plaintiff's UCL and CLRA claims is as follows:

| Claims | Restitution | Punitive Damages | Estimated Full Verdict Value |
|---|---|---|---|
| Cal. Bus. & Prof. Code § 17200 | $343,861.46 | N/A | $343,861.46 |
| Cal. Civ. Code § 1770(a)(5), (9) and (14) | $343,861.46 | Available, but not readily quantifiable. | $343,861.46 (plus potential punitive damages) |

While the Court correctly noted that the CLRA allows a plaintiff to seek punitive damages, such damages are not readily quantifiable and it is certainly reasonable – given the virtually full restitution provided to Class Members – that the settlement does not provide an additional amount for punitive damages.  Thus, while the settlement does not provide for payment of punitive damages, it does provide essentially a full refund of the amounts at issue in the suit.

---

[1] It should be noted that the total amount requested by Class Counsel ($431,138.54) is for both fees **and costs**, including settlement administration costs.  Class Counsel has already paid out-of-pocket costs in the amount of $23,329.78 and will likely incur additional costs in the tens of thousands of dollars for the settlement administration.  The total amount requested, therefore, will likely break down to $370,000-$380,000 in attorneys' fees with the remainder going toward out-of-pocket costs.

[2] This data was produced by Uber confidentially and can be produced to the Court for an *in camera* review if necessary.

**Topic 4 - Incentive Award**

In connection with her motion for preliminary approval, Plaintiff submitted a declaration describing her involvement and efforts in this lawsuit to date. More specifically, Plaintiff stated:

> I have stayed actively involved in this litigation since its inception over four years ago. Among other things, I responded to discovery requests, searched for and produced documents and was deposed by Defendant's counsel. I routinely communicated with class counsel with respect to the status of the case, as well as my views on the prosecution of the lawsuit. I can state with certainty that I have conferred with class counsel, either in person or by phone, on several dozens of occasions to discuss these matters.

*See* Doc. 134-1 at 27. Despite these efforts, Plaintiff is willing to seek a reduced incentive award in the amount of $5,000. *See* Doc. 137 (referencing $5,000 as "a reasonable amount" for an incentive award) (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)).

Dated: September 8, 2016

                                          Respectfully submitted,

                                          MYRON M. CHERRY & ASSOCIATES LLC
                                          JACIE C. ZOLNA (admitted *pro hac vice*)

                                          By:    /s/ Jacie C. Zolna
                                                  Jacie C. Zolna
                                                  Attorney for Plaintiff

                                          30 North LaSalle Street, Suite 2300
                                          Chicago, Illinois 60602
                                          Telephone: (312) 372-2100
                                          Facsimile: (312) 853-0279
                                          jzolna@cherry-law.com

                                          Hall Adams (admitted *pro hac vice*,
                                          Illinois ARDC # 6194886)
                                          LAW OFFICES OF HALL ADAMS, LLC
                                          33 North Dearborn Street, Suite 2350
                                          Chicago, Illinois 60602
                                          Telephone: (312) 445 4900
                                          Facsimile: (312) 445 4901
                                          hall@adamslegal.net

Michael Ram (SBN 104805)
RAM, OLSON, CEREGHINO
& KOPCZYNSKI LLP
555 Montgomery Street, Suite 820
San Francisco, California 94111
Telephone: (415) 433-4949
Facsimile: (415) 433-7311
mram@rocklawcal.com

*Attorneys for Plaintiff and the Class*

**Defendant's Response**

**Topic 3 - Distribution of the Settlement Fund**

As an initial matter, all Class Members who timely submit an address to the Settlement Administrator will receive a cash payment. Only those Class Members who do not respond, or who do not cash their checks, will receive Uber credit. Thus, the credits set forth in the Settlement Agreement will be automatically paid only to those Class Members who do not receive a cash payment.

There are several reasons why crediting the credit cards of Class Members as part of a class action settlement—which Uber has never done—is highly disfavored.

*First*, more than 10% of the Class Members' Uber accounts do not have a valid credit card associated with them. Thus, for these Class Members crediting their credit card is not possible.

*Second*, the Visa, Mastercard, and American Express rules applicable to merchants likely prohibit using credits as a method of distributing class action settlement funds. *See* Visa Core Rules and Visa Product and Service Rules[3] § 5.11.1.1 (stating rules contemplate credits as being tied to an "original Transaction," and the original transaction must be identified on the Transaction Receipt); Mastercard Transaction Processing Rules[4] § 3.10.1 ("A Merchant must process a refund

---

[3] Available at https://usa.visa.com/content/dam/VCOM/download/about-visa/visa-rules-public.pdf (last visited September 7, 2016).

[4] Available at https://www.mastercard.us/content/dam/mccom/en-us/documents/rules/transaction-processing-rules-june-2016.pdf (last visited September 7, 2016).

Transaction *only for the purpose of* crediting funds to a Cardholder for returned products, cancelled services, or a price adjustment related to a prior purchase.") (emphasis added); American Express Merchant Reference Guide[5] § 4.7 ("A Credit may occur when a Merchant processes a refund for purchases or payments made on the Card."). Each set of rules requires that the credit be related to a specific prior transaction. But the settlement payment is not a credit tied to a particular past transaction. Instead, the settlement payment represents an amount that Uber has agreed to pay in order to resolve this case. Although each Class Member has past transactions with Uber, sometimes dozens of them, the payment does not relate to any single original transaction, and because the payments at issue occurred more than three years ago, for many Class Members those original transactions may have occurred on different credit cards than the ones now associated with their Uber accounts. Accordingly, using credit cards to make settlement payments is likely a violation of Visa's, Mastercard's, and American Express's merchant rules applicable to Uber. Further, Uber's business relies on its ability to process hundreds of thousands of transactions per day, and maintaining good business relationships with credit card companies is important to Uber. Crediting Class Members' credit cards to pay settlement amounts in violation of applicable rules would disrupt Uber's relationships with the credit card companies.

*Third*, and relatedly, there is a risk that crediting over 40,000 Class Members' credit cards, without the credits being tied to a specific transaction, could trigger automatic fraud detection rules and terminate Uber's ability to pay Class Members in this manner. Indeed, due to the unprecedented nature of such transactions, it is unclear how the credit card systems would respond.

*Fourth*, it is not uncommon for riders to link their account to a corporate credit card, a spouse's credit card, or another family members' credit card. Uber has no feasible method of verifying whether the credit card currently associated with a Class Members' account is the Class Members' personal credit card, and not a corporate card, a (former) spouse's card, or other

---

[5] Available at https://www209.americanexpress.com/merchant/singlevoice/singlevoiceflash/USEng/pdffiles/MerchantPolicyPDFs/US_%20RefGuide.pdf (last visited September 7, 2016).

relatives' card. Blindly crediting the Class Members' credit cards may ultimately pay the wrong individual or be otherwise problematic for the Class Member (e.g. by creating accounting difficulties between the Class Member and their employer).

*Fifth*, applying credit to a credit card is normally a manual process. To process over 40,000 credits, Uber would have to expend considerable resources to develop customized software.

*Sixth*, there is a transaction cost of approximately $0.05 to $0.10 associated with each credit, which would increase the settlement cost to Uber or reduce the payment to Class Members.

For these reasons, crediting Class Members' credit cards is not an appropriate method for distributing Class Member Payments.

DATED: September 8, 2016

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By  /s/ Stephen A. Swedlow
Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
500 W. Madison Street, Suite 2450
Chicago, IL  60661-2510
Telephone:    (312) 705-7400
Facsimile:      (312) 705-7401

Arthur M. Roberts (SBN: 275272)
arthurroberts@quinnemanuel.com
50 California Street, 22nd Floor
San Francisco, CA  94111-4788
Telephone:    (415) 875-6600
Facsimile:      (415) 875-6700

Attorneys for Defendant
Uber Technologies, Inc.