Myron M. Cherry (SBN 50278)
mcherry@cherry-law.com
Jacie C. Zolna (admitted *pro hac vice*, Illinois ARDC #6278781)
jzolna@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279

Hall Adams (admitted *pro hac vice*, Illinois ARDC #6194886)
hall@adamslegal.net
LAW OFFICES OF HALL ADAMS, LLC
33 North Dearborn Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 445 4900
Facsimile: (312) 445 4901

Michael Ram (SBN 104805)
mram@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
101 Montgomery St., #1800
San Francisco, California 94104
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

*Attorneys for Plaintiff and the Class*

**UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| **CAREN EHRET, individually and on behalf of a class of similarly situated persons,**<br><br>**Plaintiff,**<br><br>v.<br><br>**UBER TECHNOLOGIES, INC., a Delaware Corporation,**<br><br>**Defendant.** | Case No. **3:14-cv-113-EMC**<br><br>**PLAINTIFF'S NOTICE AND PETITION FOR ATTORNEYS' FEES AND COSTS**<br><br>Date:      February 9, 2017<br>Time:      1:30 PM<br>Judge:     Edward M. Chen<br>Courtroom: 5 |

1  **TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

2      **PLEASE TAKE NOTICE** that on February 9, 2017 at 1:30 PM, the undersigned will
3  appear before the Honorable Edward M. Chen in Courtroom 5 of the United States District Court
4  for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, and
5  shall then and there present Plaintiff's Petition for Attorneys' Fees and Costs.

6      Plaintiff Caren Ehret ("Plaintiff" or "Ehret") respectfully requests the Court to approve
7  Class Counsel's requested attorneys' fees and costs and her requested incentive award.  This
8  Petition is based on this Notice and Petition for Attorneys' Fees and Costs, as well as all records
9  and papers on file in this action, any oral argument, and any other evidence that the Court may
10 consider in hearing this Petition.

## STATEMENT OF ISSUE TO BE DECIDED (Civil L.R. 7-4(a)(3))

The issue to be decided in this Petition is whether the Court should approve Class Counsel's requested attorneys' fees and costs and the requested incentive award for the named Plaintiff.

## I. INTRODUCTION

After years of hard-fought litigation, the parties reached a settlement that provides Plaintiff and the class with essentially a full refund of the amount at issue in this suit. More specifically, Plaintiff alleged that despite representing to consumers that it will charge a 20% gratuity for taxi service requested through its app, Defendant retained a portion of this charge for itself, typically 40% of the gratuity charge. The settlement reached by the parties provides for the creation of a fund sufficient to provide refunds of the *entirety* of this amount to *all* class members.

In light of the comprehensive relief they obtained, Class Counsel's request for $431,138.54 in attorneys' fees and costs is reasonable and appropriate. In fact, despite working on a contingency basis and risking a considerable amount of time and expense prosecuting this case, the amount of attorneys' fees sought by Class Counsel is substantially less than their loadstar amount without any multiplier. For these reasons, and those that follow, the Court should approve Class Counsels' request for fees and costs, as well as the modest incentive award for the named Plaintiff.

## II. BACKGROUND (Civil L.R. 7-4(a)(4))

Defendant Uber Technologies, Inc. ("Uber") offers a mobile phone application or "app" that allows consumers to summon, arrange and pay for taxi cab rides electronically via their mobile phones. Amended Complaint (Doc. 40) ("Amend. Compl.") at ¶¶ 1, 10. Plaintiff alleged that payment for transportation arranged through Uber's app is made via consumers' credit card accounts, after the consumer provides the necessary credit card account information to Uber. *Id*. Plaintiff alleged that during the relevant class period, Uber represented on its website and other marketing material its "Hassle-free Payments" as follows: "We automatically charge your credit card the metered fare + 20% gratuity." *Id.* at ¶ 11. Plaintiff further alleged that Uber represented that the gratuity is automatically added "for the driver." *Id.* Despite these alleged representations, Plaintiff alleged that Uber does not remit to the driver the full amount of the charge that it represents to consumers is a "gratuity." *Id.* at ¶ 13. Instead, Plaintiff alleged, Uber kept a substantial portion of this additional charge for itself as its own additional revenue and profit on each ride arranged and paid for by consumers, typically 40% of the 20% gratuity charge. *Id.*

On October 1, 2012, Plaintiff, individually and on behalf of other similarly situated individuals, filed suit against Uber in the Circuit Court of Cook County, Illinois. That suit was dismissed based on a forum selection clause contained in Uber's terms and conditions. On January 8, 2014, Plaintiff re-filed her class action suit in the United States District Court for the Northern District of California. Plaintiff filed an Amended Complaint on April 28, 2014. The Amended Complaint alleged that Uber's purported misrepresentations and omissions constitute an unfair, unlawful and fraudulent business practice in violation of the Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* ("UCL"), an unfair method of competition and unfair or deceptive practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") and a breach of contract. *Id.* at ¶¶ 25-65.

On September 17, 2014, the Court entered an order denying Uber's motion to dismiss the Amended Complaint with respect to Plaintiff's claims predicated on Cal. Bus. & Prof. Code § 17200 and Cal. Civ. Code § 1770(a)(5), (9) and (14) and granting Defendant's motion to dismiss with respect to Plaintiff's claims predicated on Cal. Civ. Code § 1770(a)(13) and (16) and for breach of contract. On December 2, 2015, the Court certified this case as a class action and defined the class as:

> All individuals who received Uber's e-mail with the representation that the 20% charge would be gratuity only, who then arranged and paid for taxi rides through Uber's service from April 20, 2012 to March 25, 2013 (the "Class").

December 2, 2015 Order (Doc. 118).

Both prior to and subsequent to the Court's class certification decision, the parties conducted a significant amount of discovery, investigated the facts and analyzed the relevant legal issues with regard to the claims and defenses asserted in the lawsuit. Uber produced information to Plaintiff indicating that the Class as defined by the Court consists of approximately 46,882 members who were charged approximately $859,653.65 for the 20% gratuity charge at issue in this lawsuit.

The parties have informally met and conferred on numerous occasions over the past several years in an effort to reach a settlement. The parties also engaged in a formal mediation on June 29, 2015 before Martin Quinn at JAMS. While no settlement was reached at that time, the parties

2

**Petition for Attorneys' Fees and Costs
3:14-cv-113-EMC**

thereafter continued to discuss settlement possibilities, which ultimately resulted in reaching the terms of the settlement embodied in the Settlement Agreement attached hereto as **Ex. A**.

### III.     SUMMARY OF SETTLEMENT TERMS

The settlement provides Class Members with virtually a full refund of the amount of the gratuity charge that Plaintiff claimed was retained by Uber.  More specifically, Uber will create a fund of $343,861.46 (the "Settlement Fund") for purposes of paying each Class Member an amount equal to 40% of the alleged gratuity charge – essentially the full amount that Plaintiff claimed was retained by Uber (the "Class Member Payments").  *See* Settlement Agreement at ¶¶ 1, 7 (**Ex. A**).

Because Uber does not maintain mailing addresses of its users, each Class Member must provide the settlement administrator a valid mailing address in order to receive his or her Class Member Payment via a settlement check.  *Id.* at ¶ 2.  With respect to Class Members who have an existing Uber account and either fail to timely provide a valid mailing address or who fail to cash their settlement checks, Uber will credit their Uber account in an amount equal to their individual Class Member Payment.  *Id.* at ¶¶ 2, 4.

Class Members will receive notice by email at the email addresses on their Uber accounts.  *Id.* at ¶ 8.  The settlement administrator will also develop and maintain a website that will contain a copy of the notice, information about the settlement and a mechanism though which Class Members can submit a mailing address for their settlement checks.  *Id.* at ¶ 10.

Separate and apart from the Settlement Fund, Uber will also pay $10,000 toward fees and costs incurred for the administration of the settlement.  *Id.* at ¶ 11.  A portion of the settlement administration costs will also be paid from the Settlement Fund in an amount equal to the lesser of (i) $35,000, or (ii) the total amount of all Class Member Payments for Class Members who no longer have an Uber account and either failed to timely provide a mailing address or failed to cash their settlement check.  *Id.*  All remaining settlement administration costs will be incurred by Class Counsel.  *Id.*

Class Members may opt-out of the class and the settlement by mailing a written request for exclusion to the settlement administrator no later than 49 days after the class notice is sent (*i.e.*,

3

December 23, 2016). *Id.* at ¶ 13. Within this same amount of time, Class Members who do not opt-out can object to the proposed settlement and/or the attorneys' fees and costs requested by Class Counsel by filing a written objection with the Court and delivering a copy of the objection to Class Counsel and counsel for Uber. *Id.* at ¶ 15.[1]

### IV.   ARGUMENT (Civil L.R. 7-4(a)(5))

The Court should approve Class Counsel's request for fees and costs because it is fair and reasonable in light of the work performed and results achieved for the class. The Court should also approve the requested incentive award for the named Plaintiff for her willingness to litigate this action on behalf of the class and the efforts she expended in prosecuting the case.

**A.   The amount requested for attorneys' fees and costs are reasonable and appropriate.**

   ***1.   The lodestar method should be used to calculate Class Counsel's attorneys' fees.***

The lodestar method should be used to calculate Class Counsel's attorneys' fees because Plaintiff and the class obtained full restitution and Class Counsel should be awarded their fees under the fee-shifting provisions of the California Unfair Competition Law (UCL) and Consumer Legal Remedies Act (CLRA). When, as is the case here, the Court sits in diversity jurisdiction, "state law governs both the right to recover attorney's fees and the computation of their amount." *Collado v. Toyota Motor Sales*, *U.S.A., Inc.*, 550 Fed. Appx. 368, 369-370 (9th Cir. 2013). "Under California law, '[i]n so-called 'fee shifting' cases ... the primary method for establishing the amount of 'reasonable' attorney fees is the lodestar method.'" *Tait v. BSH Home Appliances Corp.*, No. SACV100711DOCANX, 2015 WL 4537463, at *10 (C.D. Cal. July 27, 2015), *appeal dismissed* (Jan. 13, 2016) (citing cases) (quoting *Lealao v. Beneficial California, Inc.*, 82 Cal. App. 4th 19, 26 (2000)); *see also In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 941 (9th Cir. 2011) ("The 'lodestar method' is appropriate in class actions brought under fee-shifting statutes … where the legislature has authorized the award of fees to ensure compensation for counsel undertaking socially beneficial litigation.").

---

[1] As of the date of this filing, not a single objection has been made to the settlement, the requested attorneys' fees and costs or the proposed incentive award to the named Plaintiff.

The settlement should not be treated as a "constructive common fund" because the amount allocated to the class is already large enough to provide essentially full restitution to all Class Members. More specifically, the settlement provides a set amount for Class Member settlement payments, equal to the amount Plaintiff claims was retained by Uber.[2] Uber separately agreed to pay Class Counsel's attorneys' fees, but only up to a cap. Any lesser amount awarded for fees does not increase the fund available for Class Members – that amount is already large enough to provide full restitution to the class – but rather simply reduces the amount Uber is required to pay for fees. In other words, the fully reimbursed class stands nothing to gain by a reduction in the fee award sought by Class Counsel, which is already at a significant reduction from their lodestar amount.

Here, Plaintiff successfully certified claims with fee-shifting provisions pursuant to California state law. Class Counsel undertook socially beneficial litigation on a contingent basis and obtained a settlement that essentially reimburses Class Members in full the amounts at issue in the litigation. This is also not a common fund settlement in that the amount awarded to Class Counsel does not affect the amount going to Class Members. *Tait*, 2015 WL 4537463, at *11 ("[T]his is not a common fund case. Unlike in a common fund settlement, whatever amount of fees is awarded to class counsel, it will not affect the amount going to class members.").

And while the amount requested in fees and costs is in excess of the amount awarded to the class that is solely a function of the size of the class and amount of damages at issue. This was a complex class action lawsuit against a giant, well-funded and well-lawyered company that put up a vigorous defense for over three years in two jurisdictions. The time and effort expended by Class Counsel would have been the same had this case involved a class of one million or one thousand. Ultimately, one would be hard pressed to obtain a better result for the class; that is, to obtain a settlement fund for the class *in excess* of their restitutionary damages. Because Class

---

[2] Uber produced information during the litigation indicating that the class as defined by the Court was charged approximately $859,653.65 for the 20% gratuity charge. Forty percent of that amount – *i.e.*, the amount Plaintiff alleged was retained by Uber – is $343,861.46, the possible amount Plaintiff and the class could recover under the UCL and CLRA had they succeeded at trial. *See, e.g., Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1144 (2003).

Counsel was able to obtain essentially full relief for the class it is only fair to award them the full amount of their fees (although, as shown below, the amount sought is actually much less than that).

In other words, had this case gone to trial and had Class Counsel obtained a judgment in the amount of $343,861.46, Class Counsel would have filed a fee petition under the UCL's and CLRA's fee-shifting provisions for the full amount of their fees. Class Counsel should not be disadvantaged for obtaining full relief for the class without the need for a trial. In short, Class Counsel took this case on a contingent basis, litigated against a well-funded and well-defended defendant for several years with no guarantee of payment and ultimately obtained an excellent settlement for the class while agreeing to a substantial discount on their fees.

For these reasons, the Court should use the lodestar method to calculate Class Counsel's attorneys' fees.

### 2. *The requested attorneys' fees are fair and reasonable.*

Considering the excellent value of the settlement, the benefits conferred on the class and Class Counsel's knowledge and experience, the requested attorneys' fees and costs are fair and reasonable. Attorney fees under the lodestar method are "calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Yahoo Mail Litig.*, No. 13-CV-4980-LHK, 2016 WL 4474612, at *9 (N.D. Cal. Aug. 25, 2016) (quoting *In re Bluetooth*, 654 F.3d at 941). "The district court may adjust this lodestar figure 'upward or downward by an appropriate positive or negative multiplier reflecting a host of reasonableness factors,'" including "the quality of representation, the benefit obtained for the class, the complexity and novelty of the issues presented, and the risk of nonpayment." *Id.* (quoting *In re Bluetooth*, 654 F.3d at 941-42).

A reasonable hourly rate is the "rate prevailing in the community for similar work performed by attorneys of comparable skill, experience, and reputation." *Camacho v. Bridgeport Fin., Inc.*, 523 F.3d 973, 979 (9th Cir. 2008) (quoting *Barjon v. Dalton*, 132 F.3d 496, 502 (9th Cir. 1997)). "An attorney's actual billing rate is presumptively appropriate to use as the lodestar market

rate." *In re Animation Workers Antitrust Litigation*, No. 14-CV-4062-LHK, 2016 WL 6663005, at *6 (N.D. Cal. Nov. 11, 2016).

Attached hereto is a summary of the hours performed by Class Counsel broken down by task. *See* Class Counsel Lodestar Summary, attached hereto as **Ex. B**. Class Counsel also submits herewith a description of their background and experience and their customary hourly rates, as well as detailed billing records reflecting the amount of time expended on this matter, by whom and the hourly rate for such services. *See* Declarations of Myron M. Cherry, Hall Adams and Michael Ram, attached hereto as **Exs. C-E**.[3]

As set forth in these records, the law firms that have worked on this case collectively expended 1,326.50 hours and $667,572.50 in attorneys' fees on this matter and have incurred $28,318.26 in out-of-pocket costs. These amounts are more than reasonable given the nature of the services performed and the complexity of the case. Class Counsel's hourly rates are also consistent with the fair market rate for attorneys of comparable experience, skill and reputation in the San Francisco legal market and comparable markets nationwide, and are the rates at which the attorneys have been retained by other paying clients. *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2015 WL 5158730, at *9 (N.D. Cal. Sept. 2, 2015) (finding hourly rates for partners as high as $975 and non-partners from $310 to $800 "reasonable in light of prevailing market rates in this district"); *In re Magsafe Apple Power Adapter Litig.*, No. 5:09-CV-01911-EJD, 2015 WL 428105, at *12 (N.D. Cal. Jan. 30, 2015) ("In the Bay Area, reasonable hourly rates for partners range from $560 to $800, for associates from $285 to $510, and for paralegals and litigation support staff from $150 to $240.") (citing cases); *Rose v. Bank of Am. Corp.*, No. 5:11-CV-02390-EJD, 2014 WL 4273358, at *7–8 (N.D. Cal. Aug. 29, 2014), *reconsideration denied*, No. 5:11-CV-02390-EJD, 2015 WL 1969094 (N.D. Cal. May 1, 2015) (finding billing rates as high as $525 for associate and $775 for partners reasonable).

Furthermore, while the factors referenced above actually support an increased multiplier, the attorneys' fees requested here are substantially *less* than Class Counsel's lodestar amount.

---

[3] Class Counsel's billing records are being filed under seal. Un-redacted courtesy copies of these records will be submitted to chambers.

Indeed, Class Counsel provided excellent representation for the class, engaged in extensive discovery and exhaustive investigative efforts, defeated Uber's motion to dismiss, successfully certified the class and prosecuted the case against a well-funded adversary that put up a vigorous defense. The claims also raised novel legal questions that had not yet been squarely addressed by existing law. *Compare Searle v. Wyndham Int'l*, 102 Cal. App. 4th 1327 (2002) (dismissing similar, but factually and legally distinguishable, claims involving alleged misrepresentation of a "service charge"). Class Counsel also dedicated substantial time for several years and in two jurisdictions prosecuting this action and incurred substantial out-of-pocket costs all on a contingency basis with no guarantee of payment.

Most importantly, Class Counsel achieved an excellent settlement that provided the class with essentially full relief. And while the total amount awarded to the class is relatively modest, that is solely a function of the total amount of damages at issue – <u>not</u> because Plaintiff only partially prevailed on her claims. *See Quesada v. Thomason*, 850 F.2d 537, 540 (9th Cir. 1988) ("[I]t is inappropriate for a district court to reduce a fee award below the lodestar simply because the damages obtained are small."); *Caudle v. Bristow Optical Co.*, 224 F.3d 1014, 1029 n.11 (9th Cir. 2000), *as amended on denial of reh'g* (Nov. 2, 2000) (holding that it is an abuse of discretion for a district court to reduce award of attorneys' fees "because 'the amount of recovery' … realized was itself modest").

In short, despite taking this case on a contingency basis, risking tens of thousands of dollars in potentially unrecoverable costs and not being paid for their services for nearly four years of work, the fees requested by Class Counsel will be at a significant discount from their normal hourly rate. In fact, after deducting actual and anticipated costs, the requested fee award would result in a blended rate of approximately $277-283/hour (approximately $368,000-$376,000 in attorneys' fees divided by 1,326.50 hours). The requested fees, therefore, are more than reasonable.[4]

---

[4] The total amount requested by Class Counsel ($431,138.54) is for both fees **and costs**, including settlement administration costs. Class Counsel has already paid out-of-pocket costs in the amount of $28,318.26 and will likely incur additional costs in the tens of thousands of dollars for the settlement administration. *See* Cherry Decl. at ¶ 11 (**Ex. C**). The total amount requested, therefore, will likely break down to $368,000-$376,000 in attorneys' fees with the remainder going toward out-of-pocket costs.

Lastly, the costs incurred by Class Counsel were reasonable and necessary, most of which were for filing fees, deposition transcripts, hosting for Defendant's document production, the mediation before Martin Quinn and travel expenses.[5]  All of these costs were reasonable and necessary to the successful prosecution of the lawsuit.

For these reasons, the Court should approve Class Counsel's request for attorneys' fees and costs in the amount of $431,138.54.

**B.    The Court should approve the incentive award to the named Plaintiff for her efforts in successfully prosecuting this action.**

The proposed incentive award of $5,000 to the named Plaintiff is fair and reasonable.  As the Ninth Circuit has observed:

> Incentive awards are fairly typical in class action cases.  Such awards are discretionary, and are intended to compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general.  Awards are generally sought after a settlement or verdict has been achieved.

*Rodriguez v. West Publishing Corp.*, 563 F.3d 948, 958-59 (9th Cir. 2009) (emphasis and citations omitted).

Plaintiff took the initiative to be named in the lawsuit and stayed actively involved in the litigation for several years, including responding to discovery, searching for and producing documents, being deposed and communicating with Class Counsel.  *See* Declaration of Caren Ehret, attached hereto as **Ex. F**.  Plaintiff took time off of work to participate in the litigation and, due to publicity of the case, was subject to regular inquiries about her participation by her employer, colleagues and clients.  *Id.* at ¶¶ 3, 5.

Plaintiff also agreed to reduce her requested incentive award from $10,000 to $5,000.  Under such circumstances, the relatively modest amount of $5,000 for an incentive award is more

---

[5] Even though the majority of the taxi rides at issue in this case took place in Chicago, Illinois, and other cities outside of California, a forum selection clause in Uber's terms and conditions necessitated the prosecution of this action in San Francisco, California.  Some travel expenses by Chicago counsel, therefore, were unavoidable.  With few exceptions, however, Plaintiff enlisted the services of her local co-counsel in San Francisco, Ram, Olson, Cereghino & Kopczynski LLP, to handle Court hearings and other matters necessitating an appearance in California.

than fair and reasonable. *See, e.g., In re TFT-LCD (Flat Panel) Antitrust Litig.*, 07-md-1827, 2011 WL 7575003, *2 (N.D. Cal. Dec. 27, 2011) (approving $15,000 incentive awards for 11 class representatives "in recognition of their work performed for the benefit of the Class and risks undertaken"); *Craftwood Lumber Co. v. Interline Brands, Inc.*, 11-cv-4462, 2015 WL 1399367, *6 (N.D. Ill. Mar. 23, 2015) ("[A]n [incentive] award of $25,000 is in line … with the mean percentage of incentive fees awarded in class actions nationwide."); *see also* Doc. 137 (referencing $5,000 as "a reasonable amount" for an incentive award) (quoting *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2012 WL 381202, at *7 (N.D. Cal. Feb. 6, 2012)); *In re Yahoo Mail Litig.*, 2016 WL 4474612, at *11 ("The Ninth Circuit has established $5,000.00 as a reasonable benchmark award for representative plaintiffs.").

**WHEREFORE,** Plaintiff requests the Court to (i) approve and award $431,138.54 in attorneys' fee and costs to Class Counsel, and (ii) approve and award Caren Ehret an incentive award in the amount of $5,000.

Dated:  December 1, 2016

Respectfully submitted,

MYRON M. CHERRY & ASSOCIATES LLC
JACIE C. ZOLNA (admitted *pro hac vice*, Illinois ARDC #6278781)

By:  _____/s/ Jacie C. Zolna_____
       Jacie C. Zolna
       Attorney for Plaintiff

MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois  60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279

## *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing **Plaintiff's Notice and Petition for Attorneys' Fees and Costs** upon:

Arthur Miles Roberts
arthurroberts@quinnemanuel.com
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111

Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661

via the electronic filing system on this 1st day of December, 2016.

_____/s/ Jacie C. Zolna_____