Myron M. Cherry (SBN 50278)
mcherry@cherry-law.com
Jacie C. Zolna (admitted *pro hac vice*, Illinois ARDC #6278781)
jzolna@cherry-law.com
MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois 60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279

Hall Adams (admitted *pro hac vice*, Illinois ARDC #6194886)
hall@adamslegal.net
LAW OFFICES OF HALL ADAMS, LLC
33 North Dearborn Street, Suite 2350
Chicago, Illinois 60602
Telephone: (312) 445 4900
Facsimile: (312) 445 4901

Michael Ram (SBN 104805)
mram@rocklawcal.com
RAM, OLSON, CEREGHINO & KOPCZYNSKI LLP
101 Montgomery St., #1800
San Francisco, California 94104
Telephone: (415) 433-4949
Facsimile: (415) 433-7311

**Attorneys for Plaintiff and the Class**

# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
### SAN FRANCISCO DIVISION

| | |
|---|---|
| **CAREN EHRET, individually and on behalf of a class of similarly situated persons,** )<br><br>**Plaintiff,** )<br><br>**v.** )<br><br>**UBER TECHNOLOGIES, INC., a Delaware Corporation,** )<br><br>**Defendant.** ) | **Case No. 3:14-cv-113-EMC**<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>**Date:** **February 9, 2017**<br>**Time:** **1:30 PM**<br>**Judge:** **Edward M. Chen**<br>**Courtroom:** **5** |

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on February 9, 2017, at 1:30 PM, the undersigned will appear before the Honorable Edward M. Chen in Courtroom 5 of the United States District Court for the Northern District of California, 450 Golden Gate Avenue, San Francisco, California, and shall then and there present Plaintiff's Motion for Final Approval of Class Action Settlement.

Plaintiff Caren Ehret ("Plaintiff" or "Ehret") respectfully requests the Court to approve the settlement of this class action.  This motion is based on this Notice of Motion and Motion for Final Approval of Class Action Settlement, as well as all records and papers on file in this action, any oral argument, and any other evidence that the Court may consider in hearing this Motion.

1

## **STATEMENT OF ISSUE TO BE DECIDED (Civil L.R. 7-4(a)(3))**

2        The issue to be decided in this Motion is whether the Court should approve the settlement

3 of this certified class action.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## I.      **INTRODUCTION**

After years of hard-fought litigation, the parties reached a settlement that provides Plaintiff and the class with essentially a full refund of the amount at issue in this suit.  More specifically, Plaintiff alleged that despite representing to consumers that it will charge a 20% gratuity for taxi service requested through its app, Defendant retained a portion of this charge for itself, typically 40% of the gratuity charge.  The settlement reached by the parties provides for the creation of a fund sufficient to provide refunds of the *entirety* of this amount to *all* class members.  It is not surprising, therefore, that not a single one of the over 46,000 members of the class opted out of or filed an objection to the proposed settlement.  For this reason, and those that follow, Plaintiff respectfully requests that the Court grant final approval of the settlement.

## II.      **BACKGROUND (Civil L.R. 7-4(a)(4))**

Defendant Uber Technologies, Inc. ("Uber") offers a mobile phone application or "app" that allows consumers to summon, arrange and pay for taxi cab rides electronically via their mobile phones.  Amended Complaint (Doc. 40) ("Amend. Compl.") at ¶¶ 1, 10.  Plaintiff alleged that payment for transportation arranged through Uber's app is made via consumers' credit card accounts, after the consumer provides the necessary credit card account information to Uber.  *Id.* Plaintiff alleged that during the relevant class period, Uber represented on its website and other marketing material its "Hassle-free Payments" as follows: "We automatically charge your credit card the metered fare + 20% gratuity."  *Id.* at ¶ 11.  Plaintiff further alleged that Uber represented that the gratuity is automatically added "for the driver."  *Id.*  Despite these alleged representations, Plaintiff alleged that Uber does not remit to the driver the full amount of the charge that it represents to consumers is a "gratuity."  *Id.* at ¶ 13.  Instead, Plaintiff alleged, Uber kept a substantial portion of this additional charge for itself as its own additional revenue and profit on each ride arranged and paid for by consumers, typically 40% of the 20% gratuity charge.  *Id.*

On October 1, 2012, Plaintiff, individually and on behalf of other similarly situated individuals, filed suit against Uber in the Circuit Court of Cook County, Illinois.  That suit was dismissed based on a forum selection clause contained in Uber's terms and conditions.  On January 8, 2014, Plaintiff re-filed her class action suit in the United States District Court for the Northern

1

District of California.  Plaintiff filed an Amended Complaint on April 28, 2014.  The Amended Complaint alleged that Uber's purported misrepresentations and omissions constitute an unfair, unlawful and fraudulent business practice in violation of the Unfair Competition Law, California Business and Professions Code § 17200, *et seq.* ("UCL"), an unfair method of competition and unfair or deceptive practice in violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, *et seq.* ("CLRA") and a breach of contract.  *Id.* at ¶¶ 25-65.

On September 17, 2014, the Court entered an order denying Uber's motion to dismiss the Amended Complaint with respect to Plaintiff's claims predicated on Cal. Bus. & Prof. Code § 17200 and Cal. Civ. Code § 1770(a)(5), (9) and (14) and granting Defendant's motion to dismiss with respect to Plaintiff's claims predicated on Cal. Civ. Code § 1770(a)(13) and (16) and for breach of contract.  On December 2, 2015, the Court certified this case as a class action and defined the class as:

> All individuals who received Uber's e-mail with the representation that the 20% charge would be gratuity only, who then arranged and paid for taxi rides through Uber's service from April 20, 2012 to March 25, 2013 (the "Class").

December 2, 2015 Order (Doc. 118).

Both prior to and after the Court's class certification decision, the parties conducted a significant amount of discovery, investigated the facts and analyzed the relevant legal issues regarding the claims and defenses asserted in the lawsuit.  Uber produced information to Plaintiff indicating that the Class as defined by the Court consists of approximately 46,882 members who were charged approximately $859,653.65 for the 20% gratuity charge at issue in this lawsuit.

The parties have informally met and conferred on numerous occasions over the past several years in an effort to reach a settlement.  The parties also engaged in a formal mediation on June 29, 2015 before Martin Quinn at JAMS.  While no settlement was reached at that time, the parties thereafter continued to discuss settlement possibilities, which ultimately resulted in reaching the terms of the settlement embodied in the Settlement Agreement attached hereto as **Ex. A**.

### III.     SUMMARY OF SETTLEMENT TERMS

The settlement provides Class Members with virtually a full refund of the amount of the gratuity charge that Plaintiff claimed was retained by Uber.  More specifically, Uber will create a

2

fund of $343,861.46 (the "Settlement Fund") for purposes of paying each Class Member an amount equal to 40% of the alleged gratuity charge – essentially the full amount that Plaintiff claimed was retained by Uber (the "Class Member Payments"). *See* Settlement Agreement at ¶¶ 1, 7 (**Ex. A**).

Because Uber does not maintain mailing addresses of its users, each Class Member must provide the settlement administrator a valid mailing address in order to receive his or her Class Member Payment via a settlement check. *Id.* at ¶ 2. With respect to Class Members who have an existing Uber account and either fail to timely provide a valid mailing address or who fail to cash their settlement checks, Uber will credit their Uber account in an amount equal to their individual Class Member Payment. *Id.* at ¶¶ 2, 4.

Separate and apart from the Settlement Fund, Uber will also pay $10,000 toward fees and costs incurred for the administration of the settlement. *Id.* at ¶ 11. A portion of the settlement administration costs will also be paid from the Settlement Fund in an amount equal to the lesser of (i) $35,000, or (ii) the total amount of all Class Member Payments for Class Members who no longer have an Uber account and either failed to timely provide a mailing address or failed to cash their settlement check. *Id.* All remaining settlement administration costs will be incurred by Class Counsel. *Id.*

## IV.   CLASS NOTICE, OPT-OUTS AND OBJECTIONS

Notice of the settlement was sent to Class Members via email at the email addresses associated with their Uber accounts. *See* Declaration of Corinne Lefler ("Lefler Decl.") at ¶ 5-6, 8, attached hereto as **Ex. B**. The settlement administrator also developed and maintained a website that contained a copy of the notice, information about the settlement and a mechanism though which Class Members can submit a mailing address for their settlement checks. *Id.* at ¶ 9. Not a single Class Member opted-out of the class or the settlement, nor was there a single objection to the proposed settlement. *Id.* at ¶¶ 11-12.

## V.   ARGUMENT (Civil L.R. 7-4(a)(5))

Because the settlement reached here provides substantial and meaningful relief to the Class, the Court should find the settlement to be fair, adequate and reasonable and grant final approval.

3

"[T]here is a strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Syncor ERISA Litig.*, 516 F.3d 1095, 1101 (9th Cir. 2008); *see also Curtis-Bauer v. Morgan Stanley & Co.*, No. 06-cv-3903, 2008 WL 4667090, *4 (N.D. Cal. Oct. 22, 2008) (acknowledging "the Ninth Circuit's policy favoring settlement, particularly in class action law suits.") (citing *Officers for Justice v. Civil Serv. Comm'n of City & Cty. of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982)); *In re High-Tech Employee Antitrust Litig.*, 11-cv-02509, 2015 WL 5159441, *5 (N.D. Cal. Sept. 2, 2015) (noting "the well-established principle that 'voluntary conciliation and settlement are the preferred means of dispute resolution.'") (quoting *Officers for Justice,* 688 F.2d at 625).

A district court should approve a class action settlement if it determines that the "proposed settlement is fundamentally fair, adequate, and reasonable." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998). To evaluate the fairness of a settlement, the district court must consider the following factors: "(1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement." *Churchill Vill., L.L.C. v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004). In addition, "the settlement may not be the product of collusion among the negotiating parties." *Id.* at 576.

Because each of these factors favors approval of the settlement reached here, and there is no evidence of collusion amongst the parties, the Court should find the settlement fair, adequate and reasonable and grant final approval.

## A.   The strength of Plaintiff's case.

The first factor favors approval because the terms of the settlement are commensurate with the strength of Plaintiffs' claims. While Plaintiff believes strongly in the merits of her case and withstood a motion to dismiss, Uber vigorously contested both liability and the ability of Plaintiff and Class Members to recover damages. The merits of the case also would have likely been decided by a jury, the outcome of which was far from certain for either side. Uber also claimed

that its terms of use included an arbitration clause during a significant portion of the class period, the applicability and enforceability of which had not yet been decided by the Court.  In short, the settlement provides significant monetary relief to Class Members for hotly contested claims.

**B.     The risk, expense, complexity and likely duration of continued litigation.**

It goes without saying that trying a class action lawsuit to conclusion would have been a complex, lengthy and expensive endeavor, and appeals almost certainly would have followed any judgment.  Class Counsel has already expended a significant amount of fees and expenses litigating this case to date and would certainly expend substantial time, effort and cost if further litigation is required.  In light of the amount at stake in this lawsuit, the second factor clearly favors approval of the settlement.  *See Ebarle v. Lifelock, Inc.*, No. 15-CV-00258-HSG, 2016 WL 5076203, at *4 (N.D. Cal. Sept. 20, 2016) ("Given Defendant's willingness to defend against this action, there would be no guarantee in a favorable result even if the parties were to proceed through protracted litigation.  In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class in a litigation which otherwise could have taken years to complete.  These factors weigh in favor of approving the settlement.").

**C.     The risk of maintaining class action status throughout the trial.**

The third factor also weighs in favor of approval.  As noted above, the settlement amount is large enough to ensure that *all* Class Members can obtain essentially a *full refund* of the amount at issue in this lawsuit.  The risk of maintaining a class action through trial is significant in light of the full recovery Class Members can obtain now.  Uber, for example, intended to attempt to enforce an arbitration clause that it claims was included in its terms of use during a significant portion of the class period.  An unfavorable ruling on the enforceability of that provision may have substantially reduced the class or otherwise negatively impacted the certified class.  *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 587 (N.D. Cal. 2015) ("[T]he notion that a district court could decertify a class at any time is an inescapable and weighty risk that weighs in favor of a settlement.").  In other words, Class Members can obtain nearly full relief now without the risk, expense and uncertainty of maintaining a class action through trial.  This factor, therefore, clearly favors approval of the settlement.

5

**D.      The amount offered in settlement.**

The amount of the settlement clearly weighs in favor of approving the settlement.  As noted above, Plaintiff's claims are based on Uber allegedly retaining a portion of the 20% charge that it represented as a "gratuity" during the class period.  It was Uber's position in this litigation that Plaintiff and the Class could only recover monies that it actually retained (Uber maintained that it did not retain any portion of the gratuity).  Thus, under this theory, Plaintiff and Class Members could not recover any amounts other than the portion of the gratuity retained by Uber.  Again, Uber claimed that was none while Plaintiff alleged that it was typically 40% of the 20% gratuity charge.  The settlement reached by the parties provides substantial relief to Class Members in that it refunds essentially the *full amount* of the gratuity charge Plaintiff claimed was retained by Uber. The relief awarded to the Class, therefore, weighs heavily in favor of settlement approval.

**E.      The extent of discovery completed and the stage of the proceedings.**

With respect to the fifth factor, the case settled only after years of litigation in two forums and the completion of extensive discovery.  Due to the extensive investigation and discovery that occurred, including with respect to the class size and damages, both parties were in position to fully assess the strengths and weaknesses of the claims and defenses in negotiating this settlement. *See* Declaration of Myron M. Cherry ("Cherry Decl.") at ¶ 6, attached hereto as **Ex. C**. Accordingly, this factor favors approval of the settlement as well.

**F.      The experience and views of counsel.**

In connection with the sixth factor – the views of experienced counsel – Plaintiff submits the Declaration of Myron M. Cherry, a lawyer with over 50 years of experience in complex and class action litigation.  *See* Cherry Decl. (**Ex. C**).  Based on his extensive experience, Mr. Cherry opines that the settlement is fair, reasonable and adequate and provides a significant benefit to the Class.  *Id.* at ¶ 5; *see also Smith v. Am. Greetings Corp.*, 14-cv-02577, 2016 WL 362395, *5 (N.D. Cal. Jan. 29, 2016) ("Here, class counsel have demonstrated that they are sufficiently informed about the current dispute and that [counsel] has more than 20 years of experience defending and prosecuting class actions. *** In light of the foregoing, class counsel's support for the settlement weighs in favor of approving the settlement."); *In re Omnivision Techs., Inc.*, 559 F. Supp. 2d

6

1036, 1043 (N.D. Cal. 2008) ("The recommendations of plaintiffs' counsel should be given a presumption of reasonableness.").

**G.     The presence of a governmental participant.**

There is no governmental participant to this suit.  The parties did, however, send CAFA notice to the applicable government agencies.  *See* Lefler Decl. at ¶¶ 2-4 (**Ex. B**); *see also In re Google Referrer Header Privacy Litig.*, 87 F. Supp. 3d 1122, 1134 (N.D. Cal. 2015) ("[T]he Class Administrator complied with the CAFA notice requirement….  No objections from a government official have been received.  Thus, this factor favors the settlement.").

**H.     The amount of opposition to settlement among affected parties.**

There was no opposition to the settlement by the class.  Of the over 46,000 Class Members, not a single one submitted an objection to the settlement, nor did any Class Member elect to opt out.  *See* Lefler Decl. at ¶¶ 11-12 (**Ex. B**).  The lack of any opposition whatsoever to the settlement strongly favors final approval.  *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 967 (9th Cir. 2009) (affirming district court's finding of "a favorable reaction to the settlement among class members given that, of 376,301 putative class members to whom notice of the settlement had been sent, 52,000 submitted claims forms and only fifty-four submitted objections"); *Winans v. Emeritus Corp.*, No. 13-CV-03962-HSG, 2016 WL 107574, at *6 (N.D. Cal. Jan. 11, 2016) (finding that "overwhelming majority of settlement class members reacted favorably to the proposed settlement" where of the 21,277 class members only 25 opted out and two submitted objections); *Altamirano v. Shaw Indus., Inc.*, No. 13-CV-00939-HSG, 2016 WL 1271046, at *5 (N.D. Cal. Mar. 31, 2016) (finding that one opt-out out of 735 class members favors settlement approval); *In re Linkedin User Privacy Litig.*, 309 F.R.D. at 589 ("Here, out of approximately 798,000 class members, 47,336 have submitted valid claims, only 57 have timely opted out, and only six have filed objections.  These numbers show an overall positive reaction by the class, which supports final approval."); *Walsh v. Kindred Healthcare*, No. C 11-00050 JSW, 2013 WL 6623190, at *5 (N.D. Cal. Dec. 16, 2013) (finding "that the reaction of the class to the Settlement Agreement is favorable" where of the 64,505 class members only 145 opted out and only one filed an objection).

**I.     The settlement was the product of non-collusive negotiations.**

The settlement should be approved because there is nothing to suggest collusion between the parties.  On the contrary, all material terms of the Settlement Agreement were reached after multiple adversarial settlement discussions, including a private mediation before Martin Quinn at JAMS.  *See Satchell v. Fed. Exp. Corp.,* No. 03-cv-2659, 2007 WL 1114010, *4 (N.D. Cal. Apr.13, 2007) ("The assistance of an experienced mediator in the settlement process confirms that the settlement is non-collusive.").

The parties also engaged in extensive discovery and had the benefit of several decisions from the Court, most notably its ruling on key legal issues presented in Uber's motion to dismiss and the decision certifying the case as a class action.  Plaintiff also obtained in discovery information on the size of the class and potential damages.  Plaintiff and Class Counsel, therefore, "had adequate information before them to gauge the value of the class's claims and assess whether [Uber's] proffered settlement amounts adequately compensated the class members for their damages."  *Harris v. Vector Mktg. Corp.*, No. C-08-5198 EMC, 2011 WL 1627973, at *8 (N.D. Cal. Apr. 29, 2011).

The settlement, therefore, was the product of serious, informed and arm's length negotiations.

**WHEREFORE,** Plaintiff requests the Court to enter an order finding that the settlement of this matter is fair, adequate and reasonable and granting final approval of the settlement.

Dated:  January 12, 2017                    Respectfully submitted,

MYRON M. CHERRY & ASSOCIATES LLC
JACIE C. ZOLNA (admitted *pro hac vice*, Illinois
ARDC #6278781)

By:  _____/s/ Jacie C. Zolna_____
             Jacie C. Zolna
             Attorney for Plaintiff

MYRON M. CHERRY & ASSOCIATES LLC
30 North LaSalle Street, Suite 2300
Chicago, Illinois  60602
Telephone: (312) 372-2100
Facsimile: (312) 853-0279

8

### *CERTIFICATE OF SERVICE*

The undersigned hereby certifies that he served the foregoing **Plaintiff's Notice of Motion** and **Motion for Final Approval of Class Action Settlement** upon:

Arthur Miles Roberts
arthurroberts@quinnemanuel.com
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
50 California Street, 22nd Floor
San Francisco, California 94111

Stephen A. Swedlow
stephenswedlow@quinnemanuel.com
QUINN, EMANUEL, URQUHART & SULLIVAN, LLP
500 West Madison Street, Suite 2450
Chicago, Illinois 60661

via the electronic filing system on this 12th day of January, 2017.


_____/s/ Jacie C. Zolna_____